| David W. Scofield - 4140<br>**PETERS \| SCOFIELD**<br>*A Professional Corporation*<br>7430 Creek Road, Suite 303<br>Sandy, Utah 84093-6160<br>Telephone: (801) 322-2002 Ext. 102<br>Direct Dial: (801) 858-3402<br>Toll Free: (888) 296-3998<br>Facsimile: (801) 912-0320<br>Email: dws@psplawyers.com | **POMERANTZ LLP**<br>Jeremy A. Lieberman<br>(*pro hac vice forthcoming*)<br>J. Alexander Hood II<br>(*pro hac vice forthcoming*)<br>600 Third Avenue, 20th Floor<br>New York, New York 10016<br>Telephone: (212) 661-1100<br>Facsimile: (212) 661-8665<br>Email: jalieberman@pomlaw.com<br>Email: ahood@pomlaw.com | **POMERANTZ LLP**<br>Patrick V. Dahlstrom<br>(*pro hac vice forthcoming*)<br>10 South La Salle Street, Suite 3505<br>Chicago, Illinois 60603<br>Telephone: (312) 377-1181<br>Facsimile: (312) 377-1184<br>Email: pdahlstrom@pomlaw.com |
|---|---|---|

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GELT TRADING, LTD., a Cayman Islands limited company,<br><br>     Plaintiff,<br>v.<br><br>CO-DIAGNOSTICS, INC., a Utah Corporation, DWIGHT EGAN, JAMES NELSON, EUGENE DURENARD, EDWARD MURPHY, RICHARD SERBIN, REED BENSEN, BRENT SATTERFIELD,<br><br>     Defendants. | MOTION OF STEPHEN WILEY FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL; MEMORANDUM OF LAW IN SUPPORT<br><br><br>No.: 2:20-cv-00368-CMR<br>Honorable Cecelia M. Romero<br>United States Magistrate Judge |

| | |
|---|---|
| FERNANDO HERNANDEZ, Individually and on Behalf of All Others Similarly Situated, | No.: 2:20-cv-00481-JNP-JCB |
| Plaintiff, | Honorable Jill N. Parrish United States District Judge |
| v. | |
| CO-DIAGNOSTICS, INC., DWIGHT EGAN, JAMES NELSON, EUGENE DURENARD, EDWARD MURPHY, RICHARD SERBIN, REED BENSON, and BRENT SATTERFIELD, | |
| Defendants. | |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................................3

STATEMENT OF FACTS ......................................................................................................3

ARGUMENT ..........................................................................................................................8

I.     THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL
PURPOSES.............................................................................................................8

II.    WILEY SHOULD BE APPOINTED LEAD PLAINTIFF ....................................9

       A.    Wiley Is Willing to Serve as Class Representative....................................10

       B.    Wiley Has the "Largest Financial Interest" ..............................................11

       C.    Wiley Otherwise Satisfies the Requirements of Rule 23 of the
Federal Rules of Civil Procedure..............................................................12

       D.    Wiley Will Fairly and Adequately Represent the Interests of the
Class and Is Not Subject to Unique Defenses...........................................14

III.   LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE
APPROVED ...........................................................................................................14

CONCLUSION.......................................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adamson v. Bowen*,
855 F.2d 668 (10th Cir. 1988) ...............................................................................12

*Baby Neal v. Casey*,
43 F.3d 48 (3d Cir. 1994)........................................................................................13

*Bassin v. Decode Genetics, Inc.*,
230 F.R.D. 313 (S.D.N.Y. 2005) ..............................................................................9

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006)....................................................................................13

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
252 F.R.D. 188 (S.D.N.Y. 2008) ..............................................................................8

*Darwin v. Taylor*, No. 12-cv-01038-CMA-CBS,
2012 U.S. Dist. LEXIS 152838 (D. Colo. Oct. 23, 2012) .......................................11

*Friedman v. Quest Energy Ptnrs. LP*,
261 F.R.D. 607 (W.D. Okla. 2009)..........................................................................11

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001).....................................................................................14

*In re Comverse Tech., Inc., Sec. Litig.*, No. 06-CV-1825,
2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007)..........................................11

*In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC),
2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009) .....................................8, 9

*In re NPS Pharms., Inc.*, No. 2:06-cv-00570-PCG-PMW,
2006 U.S. Dist. LEXIS 87231 (D. Utah. Nov. 17, 2006) ..................................11, 12

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp.2d 286 (E.D.N.Y. 1998) ..........................................................................11

*In re Ribozyme Pharm. Sec. Litig.*,
192 F.R.D. 656 (D. Colo. 2000) ..............................................................................13

*In re Tronox, Inc. Sec. Litig.*,
262 F.R.D. 338 (S.D.N.Y. 2009) ...............................................................................8

ii

*Johnson v. Celotex Corp.*,
  899 F.2d 1281 (2d Cir. 1990)..................................................................................................8

*Lane v. Page*,
  250 F.R.D. 634 (D.N.M. 2007)........................................................................................12, 14

*Lax v. First Merch. Acceptance Corp.*,
  1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997)...........................................................11

*Malcolm v. Nat'l Gypsum Co.*,
  995 F.2d 346 (2d Cir. 1993)..................................................................................................8

*Meyer v. Paradigm Med. Indus.*,
  225 F.R.D. 678 (D. Utah 2004) .......................................................................................12, 13

## Statutes

15 U.S.C. § 78u-4(a)(3)(B)(i) & (ii) .............................................................................................9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) .........................................................................................11

Private Securities Litigation Reform Act of 1995 ................................................................. *passim*

## Rules

Fed. R. Civ. P. 23.................................................................................................................. *passim*

Fed. R. Civ. P. 42.....................................................................................................................8, 12

Relief requested: Movant Stephen Wiley ("Wiley"), by and through his undersigned counsel, will and does hereby move this Court, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing Wiley as Lead Plaintiff on behalf of a class consisting of all persons other than the above-captioned defendants ("Defendants") who purchased or otherwise acquired Co-Diagnostics, Inc. ("Co-Diagnostics" or the "Company") securities between February 25, 2020 and May 15, 2020, both dates inclusive (the "Class Period"); and (3) approving Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel and Peters | Scofield, a professional corporation ("Peters | Scofield") as Liaison Counsel for the Class.

In support of this motion, Wiley submits a Memorandum of Law, the Declaration of Jeremy A. Lieberman submitted herewith, the pleadings and other filings herein, and such other written and oral arguments as may be presented to the Court.

Grounds: This motion is made on the grounds that:

(1) The Related Actions at issue here clearly involve common questions of law *and* fact. Each action was brought against the Company, as well as certain officers and directors of the Company, in connection with violations of the federal securities laws. Accordingly, the Related Actions allege substantially the same wrongdoing—namely, that defendants issued materially false and misleading statements and omissions that artificially inflated the price of the Company's securities and subsequently damaged the Class when the Company's stock price crashed as the truth emerged.

2

(2) Wiley is the most adequate lead plaintiff within the meaning of the PSLRA based on his losses of approximately $38,461 in connection with his transactions in Co-Diagnostics securities during the Class Period, which were suffered as a result of Defendants' wrongful conduct as alleged in the complaint in the above-captioned action (the "Action").  Further, Wiley satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure, as his claims are typical of other Class members' claims, and he will fairly and adequately represent the Class; and

(3) Wiley's selections of counsel should be approved because Wiley has selected lead and liaison counsel with extensive experience in litigation involving issues similar to those raised in the Action.

## MEMORANDUM OF LAW

## PRELIMINARY STATEMENT

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant who possesses the largest financial interest in the outcome of the action and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Wiley, with losses of approximately $38,461 in connection with his transactions in Co-Diagnostics securities during the Class Period, believes that he has the largest financial interest in the relief sought in this Action within the meaning of the PSLRA.  Wiley further satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure as he is an adequate representative with claims typical of the other Class members.  Accordingly, Wiley respectfully submits that he should be appointed Lead Plaintiff, and that his selections of Pomerantz as Lead Counsel and Peters | Scofield as Liaison Counsel should be approved.

## STATEMENT OF FACTS

As the Covid-19 global pandemic began to spread to the United States, government and public health officials on the state and federal levels moved quickly to establish strategies to prevent the disease from devastating the country. Universally, those government strategies were predicated on establishing effective systems for mass testing of the U.S. population for the Covid19 virus.

Fast, accurate, and readily accessible testing for Covid-19 provides government officials with crucial health information and data needed to combat the pandemic.  It allows them to assess, in real-time, outbreaks of the virus and to take appropriate policy actions—such as quarantining and social distancing measures intended to prevent further mass transmission.  And it allows them to allocate and, if necessary, seek resources to ensure that our public and private health systems

3

can appropriately provide care for Covid-19 patients who require medical intervention and treatment.

To be sure, the ingenuity and industriousness of American enterprise has been integral to country's response to the Covid-19 pandemic. Health officials have worked closely with U.S. and international medical and pharmaceutical companies to develop Covid-19 tests, to seek potential therapeutics for the virus, and to ultimately obtain a vaccine. And many American companies have stepped up to this tremendous challenge, working with government counterparts to mitigate and hopefully end this pandemic.

There are, however, some companies and corporate executives who have sought to unfairly exploit this novel pandemic for their financial gain—including by, among other things, misleading the public about the efficacy of their products in combatting the pandemic. Defendant Co-Diagnostics is one of those companies.

As explained in greater detail below, Co-Diagnostics, its directors and officers— including PhD-level scientists who should know better—made continual, knowing and willful misstatements about their main product, a Covid-19 diagnostic test, to pump of the price of Co-Diagnostics' stock while the officers and directors exercised low priced options and dumped their stock into the market. Their fraudulent misstatements, and disregard for the basic scientific principles that make their falsity of their statements clear in retrospect, cost investors to lose millions of dollars.

Unlike many securities fraud cases, the Co-Diagnostics fraud is blunt and simple to understand. Early in the Covid-19 pandemic, drug companies were racing to create an accurate diagnostic test for the virus that had quick response times. Co-Diagnostics seemingly won that race. Co-Diagnostics announced that it had received regulatory clearance to sell its tests in the European Community on February 24, 2020—the first company in the world to receive this

4

clearance.  Then, on April 6, 2020 the company announced that it had received emergency use authorization for its tests from the U.S. Food and Drug Administration.

Throughout this time and thereafter, Co-Diagnostics, its Chief Technology Officer, and its other officers and directors made unequivocal statements to the market *that its Covid-19 tests were 100% accurate*—a staggering claim that appeared to set Co-Diagnostics apart from other competitors developing Covid-19 tests.  As was later revealed, however, this was not true: Co-Diagnostics' Covid-19 tests are materially less than 100% accurate – a discrepancy that can have momentous adverse consequences if Co-Diagnostics' tests are used on a widespread basis, as intended.[1]  Nonetheless, Co-Diagnostics' market-first test, together with its claims that its tests were perfectly accurate, allowed Co-Diagnostics to sign lucrative contracts with state governments in the U.S. and governments around the world.

As a result of this misrepresentation and the influx of taxpayer dollars to Co-Diagnostics, the company's stock soared—until it crashed.  The crash came when Co-Diagnostics began acting evasively about its Covid-19 tests' true accuracy and regulatory authorities contradicted claims made by Co-Diagnostics about the accuracy of diagnostic tests.

Prior to the release of the news undermining Co-Diagnostics' false claims of 100% accuracy, Co-Diagnostics' stock enjoyed an all-time high stock price of $29.72 per share and a market capitalization of over $800 million.  This was quite an accomplishment for a company that was at risk of being delisted from the exchange on New Year's Day, 2020, when it was trading at

---

[1] As stated herein, diagnostics tests that are even slightly less than 100% accurate in clinical testing can have extraordinary public health consequences when it comes to practical testing accuracy in a field setting. For example, if a diagnostics test has a 98% "specificity" and "sensitivity" rate (two metrics that factor into a test's accuracy), the practical effect is that 1 in 3 tests will return false positive results for Covid-19. For this reason, it is critical that market leaders in this area have nearly perfect accuracy metrics in clinical settings.

$.91 and was worth less than $25 million. Just a year ago Co-Diagnostics was in danger of being delisted from NASDAQ on July 2, 2019 because it was consistently trading under a dollar; now it was trading at thirty times that. Co-Diagnostics officers and directors were poised to make a fortune on the inflated stock price.

On May 14, 2020, Co-Diagnostics was set to announce its first quarter earnings after markets closed. Before the markets closed and before the earnings call, however, news outlets reported that Co-Diagnostics was reticent to participate in U.S.-based testing to verify its accuracy claims.

As public reports casting doubt on Co-Diagnostics claims of 100% accuracy began to circulate, the stock declined rapidly. After negative information about the Co-diagnostics' tests began to be reported, the stock went from its daily high of $29.52, down to $20, and hit an intraday low of $18.35 before closing at $22.13. The losses on May 14, 2020, were so sudden that the stock stopped trading at one or two periods during the day, and its losses may have been higher but for NASDAQ's intervention.

After markets closed and with this information in hand, Co-Diagnostics issued an earnings report for the first quarter of 2020 and held a call that commented on the company's future prospects. On the call, CEO Dwight Egan offered a glowing report explaining that the company had sold 6 million tests, and had already purchased components to manufacture an additional 20 million tests that were already ordered by customers.

On the call, neither Egan nor its Chief Financial Officer, Reed Benson, made mention of the public statements made by third parties relating to the tests' accuracy. Notably, Chief Science Officer, and inventor of Co-Diagnostics' technology, Brent Satterfield, Ph. D., was absent from the call and did not address the allegations after boasting to the market about Co-Diagnostics'

6

Covid-19 testing accuracy in press releases in the weeks leading to the company's earnings announcement.

That evening, in response to other drug companies' widely-reported test accuracy struggles, financial news services began reporting that the U.S. Food and Drug Administration announced publicly that no Covid-19 test is 100% accurate. Of course, this announcement by the FDA undermined Co-Diagnostics' claims about its tests' perfect accuracy.

When markets opened on May 15, 2020, the stock slid to $15.80 per share. The stock never rebounded, and today trades at severely reduced volume for between $15 and $16 per share, with expectations that the stock will trend lower due to the company's product not being what it promised, public skepticism, and the realization by investors that Co-Diagnostics was a flash-in-the-pan company that achieved astronomical gains by deceiving the public while it was wrestling with an unprecedented global pandemic.

During this time, and with a cloud of doubt hanging over the company's claims of accuracy, Co-Diagnostics' directors and officers have been rapidly exercising stock options for pennies per share and immediately selling their shares into the market reaping millions of dollars from the fraud-inflated price of the stock. The Officers and Directors, knowing the truth of the company's products and its future prospects, are taking their profits at cost to the public markets before the company inevitably becomes a penny stock once more. The investing public at large does not have the luxury of purchasing its shares at pennies on the dollar. Investors who believed Co-Diagnostics claims of 100% accuracy have lost hundreds of millions of dollars as a result of Co-Diagnostics' blatantly fraudulent statements to the investing public.

This class action, therefore, seeks to hold Co-Diagnostics and its executives to account for their misrepresentations on behalf of defrauded investors.

7

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Wiley and other Class members have suffered significant losses and damages.

## ARGUMENT

### I.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of related cases is appropriate, where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay and overlap in adjudication:

> Where actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such order concerning proceedings therein as may tend to avoid unnecessary costs or delay. Fed. R. Civ. P. 42(a).  *See also* Manual for Complex Litigation (Third), § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact.  *See* Fed. R. Civ. P. 42 (a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation.  *See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *4–8 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Related Actions at issue here clearly involve common questions of law ***and*** fact.  Each action was brought against the Company, as well as certain officers and directors of the Company, in connection with violations of the federal securities laws.  Accordingly, the Related Actions allege substantially the same wrongdoing—namely, that defendants issued materially false and misleading statements and omissions that artificially inflated the price of the Company's securities and subsequently damaged the Class when the Company's stock price crashed as the truth emerged.  Consolidation of the Related Actions is therefore appropriate.  *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *In re GE*, 2009 U.S. Dist. LEXIS 69133), at *5 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

## II.    WILEY SHOULD BE APPOINTED LEAD PLAINTIFF

Wiley should be appointed Lead Plaintiff because he has the largest financial interest in the Action and otherwise meets the requirements of Rule 23.  Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of lead plaintiff in class actions brought under the Securities Act and the Exchange Act, respectively.  The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) & (ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice.  Under this section, the Court "shall" appoint "the presumptively most adequate

9

plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Wiley satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### A.    Wiley Is Willing to Serve as Class Representative

On June 18, 2020, counsel for plaintiff in the first-filed Related Action, caused a notice to be published over *PRNewswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against the Defendants herein, and advised investors of Co-Diagnostics securities that they had until August 17, 2020—*i.e.*, 60 days—to file a motion to be appointed as Lead Plaintiff (the "Notice"). *See* Declaration of Jeremy A. Lieberman in Support of Motion of Wiley for Appointment as Lead Plaintiff and Approval of Counsel ("Lieberman Decl."), Ex. A.

Wiley has filed the instant motion pursuant to the Notice, and has attached a signed Certification attesting that he is willing to serve as a representative for the Class, and provide testimony at deposition and trial, if necessary. *See* Lieberman Decl., Ex. B.  Accordingly, Wiley satisfies the first requirement to serve as Lead Plaintiff of the Class.

10

B.      **Wiley Has the "Largest Financial Interest"**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).

As of the time of the filing of this motion, Wiley believes that he has the largest financial interest of any of the Lead Plaintiff movants based on the factors articulated in the seminal case *Lax v. First Merch. Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, at *7-*8 (N.D. Ill. Aug. 6, 1997) (unpublished).[2]  Courts in this Judicial District and the Tenth Circuit have recognized that the most critical among the Lax-Olsten Factors is the approximate loss suffered.  *See, e.g.*, *Darwin v. Taylor*, No. 12-cv-01038-CMA-CBS, 2012 U.S. Dist. LEXIS 152838, at *8 (D. Colo. Oct. 23, 2012) (unpublished) ("[C]ourts routinely look to the movant's financial loss as the most significant factor in assessing his financial interest in the action."); *Friedman v. Quest Energy Ptnrs. LP*, 261 F.R.D. 607, 614 (W.D. Okla. 2009) (equating financial interest with economic loss); *In re NPS Pharms., Inc.*, No. 2:06-cv-00570-PCG-PMW, 2006 U.S. Dist. LEXIS 87231, at *6-*7 (D. Utah. Nov. 17, 2006) (unpublished) (same).

During the Class Period, Wiley: (1) purchased 5,000 shares of Co-Diagnostics securities; (2) expended $82,869 on his purchases of Co-Diagnostics securities; (3) retained 700 of his Co-Diagnostics shares; and (4) as a result of the disclosures of the fraud, suffered a loss of $38,461 in connection with his purchases of Co-Diagnostics securities.  See Lieberman Decl., Ex. C.  Because Wiley possesses the largest financial interest in the outcome of this litigation, he may be presumed to be the "most adequate" plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

---

[2] *See also In re Olsten Corp. Sec. Litig.,* 3 F. Supp.2d 286, 296 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc., Sec. Litig.*, No. 06-CV-1825, 2007 U.S. Dist. LEXIS 14878, at *22-*25 (E.D.N.Y. Mar. 2, 2007) (collectively, the "Lax-Olsten" factors).

### C.   Wiley Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *See Lane v. Page*, 250 F.R.D. 634, 640 (D.N.M. 2007). Moreover, "only subsection (3) ('typicality') and subsection (4) ('adequacy') are relevant to the consideration of motions for appointment as lead plaintiff." *In re NPS Pharms., Inc.*, 2006 U.S. Dist. LEXIS 87231, at *8 (D. Utah. Nov. 17, 2006) (unpublished) (citing *Meyer v. Paradigm Med. Indus.*, 225 F.R.D. 678, 680 (D. Utah 2004) ("For the purposes of a motion for appointment of lead plaintiff under Rule 23, it is proper to limit a court's inquiry into the final two prongs of Rule 23(a), typicality and adequacy.")).

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied when "the 'injury and the conduct are sufficiently similar.'" *Meyer*, 225 F.R.D. at 680 (quoting *Adamson v. Bowen*, 855 F.2d 668, 767 (10th Cir. 1988)). In other words, "the named plaintiffs' claims [must be] typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned

12

with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994)).  In addition, "a difference in the factual situations of class members *per se*, does not defeat typicality under Rule 23(a)(3) . . . as long as the claims of class representatives and other class members are based on the same legal or remedial theory." *Meyer*, 225 F.R.D. at 680.

The claims of Wiley are typical of those of the Class.  Wiley alleges, as do all class members, that Defendants violated federal securities laws by making what they knew or should have known were false or misleading statements of material facts concerning the Company, or omitted to state material facts necessary to make the statements they did make not misleading. Wiley, as did all members of the Class, purchased or otherwise acquired Co-Diagnostics securities during the Class Period at prices artificially inflated by Defendants' misrepresentations or omissions and was damaged upon the disclosure of those misrepresentations and/or omissions. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied "by fulfilling two requirements.  First, there must be an absence of potential conflict between the named plaintiffs and other class members.  Second, the counsel chosen by the representative party must be 'qualified, experienced and able to vigorously conduct the proposed litigation.'"  *Meyer*, 225 F.R.D. at 681 (quoting *In re Ribozyme Pharm. Sec. Litig.*, 192 F.R.D. 656, 659 (D. Colo. 2000)).

Wiley is an adequate representative for the Class.  There is no conflict between the interests of Wiley and those of the Class, and his losses demonstrate that he has a sufficient interest in the outcome of this litigation.  Finally, Wiley has retained counsel highly experienced in vigorously

13

and efficiently prosecuting securities class actions such as this Action, and submits his choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

### D.  Wiley Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption in favor of appointing Wiley as Lead Plaintiff may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

> (aa)   will not fairly and adequately protect the interest of the class; or
>
> (bb)   is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The ability and desire of Wiley to fairly and adequately represent the Class has been discussed above.  Wiley is not aware of any unique defenses Defendants could raise that would render him inadequate to represent the Class.  Accordingly, Wiley should be appointed Lead Plaintiff for the Class.

### III.   LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Lane*, 250 F.R.D. at 647 ("[T]he PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'") (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001)).  The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, Wiley has selected Pomerantz as Lead Counsel and Peters | Scofield as Liaison Counsel for the Class.  These firms are highly experienced in the area of securities litigation and

14

class actions, and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firms' resumes.  Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer.  *See* Lieberman Decl., Ex. D.  Wiley's selection of Liaison Counsel, Peters | Scofield, has experience in achieving substantial recoveries in class actions, and its attorneys have extensive familiarity with the Local Civil Rules of this Judicial District.  *See* Lieberman Decl., Ex. E.

As a result of the firms' extensive experience in litigation involving issues similar to those raised in the Action, Wiley's counsel have the skill and knowledge which will enable them to prosecute the Action effectively and expeditiously.  Thus, the Court may be assured that by approving the selection of Lead Counsel and Liaison Counsel by Wiley, the members of the class will receive the best legal representation available.

<u>**CONCLUSION**</u>

For the foregoing reasons, Wiley respectfully requests that the Court issue an Order: (1) appointing Wiley as Lead Plaintiff for the Class; and (2) approving Pomerantz as Lead Counsel and Peters | Scofield as Liaison Counsel for the Class.

Dated:   August 17, 2020                                  Respectfully submitted,

**PETERS | SCOFIELD**

*/s/ David W. Scofield*
David W. Scofield
*Counsel for Movant and Proposed Liaison
Counsel for the Class*

15

**POMERANTZ LLP**
Jeremy A. Lieberman (*pro hac vice forthcoming*)
J. Alexander Hood II (*pro hac vice forthcoming*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom (*pro hac vice forthcoming*)
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Counsel for Movant and*
*Proposed Lead Counsel for the Class*

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of August 2020, a true and correct copy of the foregoing document was served electronically by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ David W. Scofield*
David W. Scofield
