Melissa A. Fortunato
Marion Passmore
**BRAGAR EAGEL & SQUIRE, P.C.**
580 California Street, Suite 1200
San Francisco, California 94104
Telephone: (415) 568-2124
Email: fortunato@bespc.com
      passmore@bespc.com

Phillip Kim
**THE ROSEN LAW FIRM, P.A.**
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Email: pkim@rosenlegal.com

*Counsel for the Co-Diagnostics Investor Group
and Proposed Co-Lead Counsel for the Class*

Mark F. James (5295)
Mitchell A. Stephens (11775)
**JAMES DODGE RUSSELL & STEPHENS, P.C.**
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Email: mjames@jdrslaw.com
      mstephens@jdrslaw.com

*Liaison Counsel for the Co-Diagnostics
Investor Group and Proposed Liaison
Counsel for the Class*

## IN THE UNITED STATES COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| GELT TRADING, LTD., a Cayman Islands limited company,<br><br>    *Plaintiff,*<br><br>vs.<br><br>CO-DIAGNOSTICS, INC., a Utah Corporation, DWIGHT EGAN, JAMES NELSON, EUGENE DURENARD, EDWARD MURPHY, RICHARD SERBIN, REED BENSEN, BRENT SATTERFIELD,<br><br>    *Defendants.*<br><br>[Caption Continued on Next Page] | **MEMORANDUM OF LAW IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS AND IN FURTHER SUPPORT OF MOTION OF THE CO-DIAGNOSTICS INVESTOR GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**<br><br>Case No. 2:20-CV-00368-JNP-DBP<br><br>Judge Jill N. Parrish |

| | |
|---|---|
| FERNANDO HERNANDEZ, Individually and on Behalf of All Others Similarly Situated, <br><br> *Plaintiff,* <br><br> vs. <br><br> CO-DIAGNOSTICS, INC., DWIGHT EGAN, JAMES NELSON, EUGENE DURENARD, EDWARD MURPHY, RICHARD SERBIN, REED BENSON, and BRENT SATTERFIELD, <br><br> *Defendants.* | Case No. 2:20-cv-00481-JNP-JCB <br><br> Judge Jill N. Parrish |

Movants Tamara Shafer, Hal Ulucan, and Robert Volski (collectively, the "Co-Diagnostics Investor Group" or "Group") respectfully submit this memorandum of law in further support of their motion for appointment as lead plaintiffs and approval of counsel (ECF No. 31); and in opposition to the competing motions of Gelt Trading, Ltd. (ECF No. 27), Wei Jia (ECF No. 28), Brian T. Petros (ECF No. 29), Tejeswar Tadi (ECF No. 32), and Stephen Wiley (ECF No. 34) (collectively, "Competing Movants" or "Competing Motions").

**INTRODUCTION**

Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), courts are to appoint as lead plaintiff the person or group of persons with "the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002); *In re Cendant Corp. Litig.*, 264 F.3d 201, 268-69 (3d Cir. 2001); 15 U.S.C. §78u-4(a)(3)(B).

The Co-Diagnostics Investor Group has triggered the PSLRA's "most adequate plaintiff" presumption. *First*, the Co-Diagnostics Investor Group has the largest financial interest in this litigation collectively and individually. Co-Diagnostics Investor Group member Robert Volski ("Volski") has greater losses than any other Competing Movant as set forth below.

| Movant | Losses |
|---|---|
| 1. Co-Diagnostics Investor Group | 1. $289,859.65 |
| 1a. Robert Volski | 1a. $168,394.32 |
| 1b. Tamara Shafer | 1b. $64,737.08 |
| 1c. Hal Ulucan | 1c. $56,728.25 |
| 2. Tejeswar Tadi | 2. $152,800.00 |
| 3. Gelt Trading, Ltd. | 3. $125,017.77 |
| 4. Brian T. Petros | 4. $75,400.85 |
| 5. Wei Jia | 5. $40,999.40 |
| 6. Stephen Wiley | 6. $38,461.00 |

*Second*, as set forth in their opening papers (ECF No. 31), the Co-Diagnostics Investor Group has made a *prima facie* showing of adequacy and typicality under Rule 23. *See Cendant*, 264 F.3d at 264 (investors "with large losses will, more often than not, satisfy the typicality and adequacy requirements").

Having the largest financial interest and making the requisite *prima facie* showing of adequacy and typicality within the meaning of the PSLRA, the Co-Diagnostics Investor Group is the presumptive "most adequate plaintiff" of the Class. This presumption in favor of the Group "may be rebutted only upon proof." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). Because the Competing Movants can offer no proof to rebut the presumption in favor of the Co-Diagnostics Investor Group, the Court should grant the Group's motion in its entirety and deny all competing Lead Plaintiff motions.

**ARGUMENT**

**I.    THE CO-DIAGNOSTICS INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF**

> **A.    The Group Is the Presumptive "Most Adequate Plaintiff" Within the Meaning Of the PSLRA**

Courts in this district have explained that "[t]he PSLRA provides a rebuttable presumption, that the most adequate plaintiff ... is the person or group of persons that [. . .] in the determination of the court, has the largest financial interest in the relief sought by the class . . . ." *City of Birmingham Firemen's and Policemen's Supplemental Pension Sys. v. Pluralsight, Inc.*, 2020 WL 1452136, at *1 (D. Utah, 2020); *In re PolarityTE, Inc. Secs. Litig.*, 2019 WL 220129, at *2 (D. Utah, 2020) (similar).

"'While the PSLRA does not specify how we should decide which plaintiff group has the "largest financial interest" in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses.'" *Duane & Virginia Lanier Tr. v. Sandridge Energy, Inc.*, 2016 WL 1056653, at *2 (W.D. Okla. Mar. 16, 2016) (citation omitted); *see also Peace Officers' Annuity & Ben. Fund of Fa. V. DaVita Inc.*, No. 1:17-cv00304-WJM-NYW, ECF No. 30 at 2 ("Plaintiffs also allege their combined losses from relevant transactions totaled over $400,000 . . . [N]o other shareholder(s) has shown that it has a larger financial interest in this litigation, and these Plaintiffs are therefore the presumptive choice to be lead plaintiffs."); *In re Nature's Sunshine Prods., Inc.*, 2006 WL 2380965, at *1 (D. Utah August 16, 2006) (similar).

The Co-Diagnostics Investor Group has the largest losses of any movants before the Court. Moreover, Group member Volski individually has larger losses than each of the Competing

Movants. Therefore, collectively or individually, the Group and its members have the largest financial interest.

Once the Court has determined the movant with the greatest financial interest, "[t]he court must then focus its attention on ***that*** plaintiff and determine whether that plaintiff meets Rule 23's requirements, particularly those of typicality and adequacy." *Delashmet v. Custom Designed Compressor Sys., Inc.*, 2006 WL 2016080, at *3 (D.N.M. Mar. 9, 2006) (emphasis in original). At this stage, the lead plaintiff movant must make only a *prima facie* showing that the adequacy and typicality requirements under Rule 23 have been met. *See Assad v. DigitalGlobe, Inc.*, 2017 WL 3575229, at *3 (D. Colo. Aug. 17, 2017) ("'As for the requirement that the lead plaintiff otherwise satisfy the requirements of Rule 23, only two of the four requirements of Rule 23(a) – typicality and adequacy – impact the analysis of the lead plaintiff issue.'") (citation omitted); *Kapur v. Usana Health Sciences, Inc.*, 2007 WL 3046664, at *3 (D. Utah Oct. 17, 2007) ("A party moving to become lead plaintiff must make showings of typicality and adequacy that are only preliminary in nature."); *Meyer v. Paradigm Med. Indus.*, 225 F.R.D. 678, 680 (D. Utah 2004). The Co-Diagnostics Investor Group has triggered the PSLRA's "most adequate plaintiff" presumption. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). The Group has made a *prima facie* showing of "typicality" and "adequacy" under Rule 23. *See* ECF No. 31 at 7-10. The Group's claims are "typical" of the claims of the proposed class because, *inter alia*, its claims arise from the same course of conduct by defendants that gives rise to the initial plaintiff and other class members' claims and are based on the same legal theories. *Id*. at 8. The Group is adequate because, *inter alia*, it has communicated with competent, experienced counsel, has a significant stake in the outcome of this case to ensure vigorous prosecution of the claims, has made a motion to be

appointed lead plaintiff, and is not aware of any conflicts between its own claims and those asserted on behalf of the Class. *See id*. at 8-10. Consequently, the Co-Diagnostics Investor Group satisfies the Rule 23 requirements at this stage. *See DaVita*, No. 1:17-cv-00304-WJM-NYW, ECF No. 30 at 3.

In sum, based on its financial interest in the litigation and satisfaction of the Rule 23 requirements at this stage, the Co-Diagnostics Investor Group has triggered the PSLRA's most adequate plaintiff presumption. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

**B.     Competing Movants Cannot Rebut the Statutory Presumption In Favor of the Group**

According to the PSLRA, the presumptive lead plaintiff, here the Co-Diagnostics Investor Group, "shall" be appointed unless the Competing Movants submit ***proof*** that the Group will not satisfy the typicality and adequacy requirements of Rule 23(a). *Cavanaugh*, 306 F.3d at 729 n.2; *see also Delashmet*, 2006 WL 2016080, at *4 ("'Once it determines which plaintiff has the biggest stake, the court must appoint that plaintiff as lead, unless it finds that he does not satisfy the typicality or adequacy requirements.'") (quoting *Cavanaugh*, 306 F.3d at 732). "That the presumption is rebuttable does not mean that it may be set aside for any reason that the court may deem sufficient. Rather, the statute provides that the presumption 'may be rebutted only upon proof . . . that the presumptively most adequate plaintiff' does not satisfy the adequacy or typicality requirements of Rule 23." *Cavanaugh*, 306 F. 3d at 729 n.2 (quoting 15 U.S.C. §78u4(a)(3)(B)(iii)(II)). "The burden of proof of inadequacy of the presumptive lead plaintiff rests with parties contesting its appointment." *In re SemGroup Energy Partners, L.P., Sec. Litig.*, 2008 WL 4826318, at *2 (N.D. Okla. Oct. 27, 2008).

**C.      The Co-Diagnostics Investor Group Is an Appropriate Group**

In an effort to rebut the presumption in favor of the Group, the Competing Movants may argue it is an inappropriate group of unrelated investors.  This argument is without merit.  "The PSLRA permits small groups of plaintiffs to aggregate their losses to show the largest financial interest."  *Delashmet*, 2006 WL 2016080, at *4; *Paradigm*, 225 F.R.D. at 681 (finding it appropriate to aggregate losses of a group containing some unrelated investors in determining lead plaintiff); *Nature's Sunshine*, 2006 WL 2380965, at *1 (appointing group of three unrelated investors as lead plaintiff); *In re Ribozyme Pharmaceuticals Inc. Secs. Litig.*, 192 F.R.D. 656, 659 (D. Colo. 2000) (noting that majority of courts have permitted plaintiffs to aggregate their losses for purposes of lead plaintiff status and that lead plaintiff group should be limited to three to five members); *see also*, *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 n.3 (2018) (finding that "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups").

Courts often approve groups of unrelated investors as lead plaintiff when the proposed groups submit a joint declaration evidencing their cohesiveness, functioning and cooperative intentions, such as the one submitted by the Group here.  (ECF No. 31-4, "Joint Declaration").  *See Duane & Virginia Lanier*, 2016 WL 1056653, at *5 (relying on joint declaration detailing plans for cooperation, coordination, and oversight of counsel to find proposed group "demonstrate[d] the cohesiveness of the members" and approving the group); *Nature's Sunshine*, 2006 WL 2380965, at *1 (in appointing a group of three unrelated movants as lead plaintiff, the court relied, *inter alia*, on the group members' affidavits which demonstrated the cooperative intentions and

efforts of the group); *In re Molycorp, Inc. Secs. Litig.*, 2012 WL 13013602, at *3 (D. Colo. May 29, 2012) (same).[1]

That a member of the Co-Diagnostics Investor Group also has the largest individual loss weighs heavily in favor of appointment. When a member of a proposed group has the largest individual loss, "potential lead plaintiffs are not being deprived of the PSLRA presumption by the aggregation of parties." *In re Sequans Commc'ns S.A. Sec. Litig.*, 289 F. Supp. 3d 416, 425 (E.D.N.Y. 2018). In that case, "the adequacy concern should be focused on whether the aggregation is otherwise problematic—if for example, the joinder is of members with competing or diverting interests." *Id.* at 425; *Petrie v. Elec. Game Card, Inc.*, 2010 WL 2292288, at *2 (C.D. Cal. June 4, 2010) ("Because Lee and Yu have the highest financial loss, we are faced with a situation like that in *In re Sunbeam Corp. Secs. Litig.*, No. 03 CV 1721JM (POR), 2004 WL 5159061 (S.D. Cal. Jan. 5, 2005), where the court allowed a group of unrelated investors to serve as Lead Plaintiff where an individual within that group had highest financial loss. The Court is not concerned by the addition of Lovell to the Lee Group, as he also had a large financial loss and

---

[1] Other courts follow this rule. *E.g., Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 356 (S.D.N.Y. 2011) (appointing unrelated group of three investors who submitted a similar joint declaration); *In re Blue Apron Holdings, Inc. Sec. Litig.*, 2017 WL 6403513, at *4 (E.D.N.Y. Dec. 15, 2017) (appointing group of four unrelated investors with similar joint declaration); *Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, 2014 WL 2604991, at *5 (N.D. Cal. June 10, 2014) ("Courts have found [. . .] joint declarations are demonstrative of a movant group's adequacy as lead plaintiff."); *McCracken v. Edwards Lifesciences Corp.*, 2014 WL 12694135, at *4 (C.D. Cal. Jan. 8, 2014) ("Finally, the Investor Group has submitted a Joint Declaration, signed by an authorized representative of each member of the Investor Group, describing the Investor Group's procedures for overseeing this litigation, including regular joint conference calls with counsel, short-notice phone and email communication, and the designation of representatives to attend proceedings, depositions, settlement mediations, and hearings. Based on the foregoing, the Court concludes that the Investor Group has been constituted in a manner that will allow it to adequately represent absent class members and supervise class counsel." (cleaned up)).

the group is small enough-only three people, two of whom are married to each other-that coordinated decision making is not a concern.); *Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 533 (N.D. Cal. 2009) ("Furthermore, as an individual, Hodges has the greatest financial stake in the litigation of any movant, so it is not necessary for the members of the Akeena Investor Group to aggregate themselves in order to overcome the largest stake requirement—one of its members could meet that requirement by herself. Accordingly, the Court finds that the members of the Akeena Investor Group are presumptively the most adequate Co–Lead Plaintiffs."). Members of the Co-Diagnostics Investor Group plainly do not have competing or diverging interests. They are like-minded investors who incurred significant losses in connection with their purchases of Co-Diagnostics securities and are motivated to prosecute this action efficiently.

Lastly, the appointment of the Co-Diagnostics Investor Group confers numerous benefits to the class, including, *inter alia*, shared resources, experience and expertise, as well as continuity and stability if a single lead plaintiff is found to lack standing or otherwise found inadequate. For example, members of the Co-Diagnostics Investor Group have purchases and sales that cover most of the class period of February 25, 2020 to May 15, 2020, inclusive, whereas competing movant Brian T. Petros ("Petros") bought a day before the end of the class period and sold.

In short, the Co-Diagnostics Investor Group is a cohesive group that will effectively and vigorously advocate to maximize recovery for all members of the Class.

## II.     The Co-Diagnostics Investor Group's Selection of Counsel Should Be Approved

The PSLRA vests authority in the lead plaintiff to select lead counsel, subject to approval by the Court. 15 U.S.C. §78u-4(a)(3)(B)(v); *Cavanaugh*, 306 F.3d at 734 ("While the

appointment of counsel is made subject to the approval of the court, the Reform Act clearly leaves the choice of class counsel in the hands of lead plaintiff.").

Here, the Group selected The Rosen Law Firm, P.A. and Bragar Eagel & Squire, P.C. as Co-Lead Counsel and James Dodge Russell & Stephens, P.C. as liaison counsel. As demonstrated in its moving papers (*see* ECF No. 31, at 10), the firms have the resources and expertise to litigate this action efficiently and aggressively.

## III.     Competing Motions Should Be Denied

The competing motions should be denied because the Co-Diagnostics Investor Group has the greatest financial interest in the litigation and should therefore be appointed lead plaintiff without further analysis. That said, some facts bear noting about the Competing Movants.

### A.      Gelt Trading Is Not Properly Before the Court

Gelt Trading, Ltd. ("Gelt") has made a number of miscues that seriously call into question its adequacy and fitness to serve as Lead Plaintiff. Gelt failed to file a PSLRA certification when it commenced this action with the filing of its complaint as required by the PSLRA. *See* 15 U.S.C §78u–4(a)(2). The failure to file a PSLRA certification is fatal. *See In re Cent. European Distrib. Corp. Secs. Litig.*, 2012 WL 5511711, at \*1 (D.N.J. Nov. 8, 2012) (disqualifying a lead plaintiff movant because movant was subject to unique defenses due to its failure to file the certification required by the PSLRA); *Nasin v. Hongli Clean Energy Techs. Corp.*, 2017 WL 5598214, at \*3 (D.N.J. Nov. 17, 2017) (rejecting lead plaintiff movant who filed defective certification); *In re Enzymotec Ltd. Secs. Litig.*, 2015 WL 918535, at \*2 (D.N.J. Mar. 3, 2015) (disqualifying a lead plaintiff movant because movant's deficient certification subjected the movant to a unique defense, rendering movant "incapable of adequately representing the class"). Additionally, Gelt's

true financial interest is unknown. Because Gelt failed to file a PSLRA certification with its complaint, Gelt's transactions in Co-Diagnostics securities are unknown for the noticed class period of February 25, 2020 to May 15, 2020—the class period Gelt alleged and which is alleged in the related case styled *Hernandez v. Co-Diagnostics, Inc., et al.*, Case No. 2:20-cv-00481-JNP-JCB. Gelt only filed a certification after it amended its complaint to shorten the class period to April 30, 2020 to May 15, 2020. However, in situations where cases have competing class periods, courts look to the most inclusive class period—here February 25, 2020 to May 15, 2020.[2] Thus, Gelt has failed to demonstrate its financial interest and should be rejected.

### B. Brian T. Petros is Inadequate

Movant Petros is inadequate and subject to unique defenses. Petros is an Accredited Investment Fiduciary. Per the Financial Industry Regulatory Authority ("FINRA"), Petros became involved in a customer dispute in 2003 concerning "unsuitable investment recommendations; intentional and fraudulent misrepresentations; omission of material facts; churning; breach of fiduciary duty; fraud; gross negligence; and breach of contract."[3] The case was eventually settled with a confidential agreement.

This calls into question movant Petros' suitability to serve as lead plaintiff. *See Kline v. Wolf*, 702 F.2d 400, 403 (2d. Cir. 1983) ("Since plaintiffs' testimony on an issue critical to one of their two causes of action was subject to sharp attack, the district court reasonably concluded

---

[2] A more inclusive class period is favored at the lead plaintiff stage. *Deering v. Galena Biopharma, Inc.*, 2014 WL 4954398, at *10 (D. Or. Oct. 3, 2014) (recognizing that courts commonly select "most inclusive class period" at lead plaintiff stage); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113- 114 (E.D.N.Y. 2012) (court favoring a broader class which "encompasses more potential class members" early in the litigation at the lead plaintiff stage).
[3] Brian Thomas Petros, BrokerCheck by FINRA (https://brokercheck.finra.org/individual/summary/2526543)

11

that their credibility in general was sufficiently in doubt to justify denying them a fiduciary role as class representatives with respect to both claims."); *In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2019 WL 5287980, at \*5 (S.D.N.Y. Oct. 16, 2019) ("[C]lass representation status may be denied where there are serious concerns about a plaintiff's credibility, diligence, and/or integrity.") (citing *Wolf*, 702 F.2d at 402-03); *Dubin v. Miller*, 132 F.R.D. 269, 272 (D. Colo. 1990) ("A plaintiff's lack of credibility and the impurity of his motives can render him an "inadequate" class representative.")

## IV.    CONCLUSION

For the foregoing reasons, the Co-Diagnostics Investor Group respectfully requests that the Court issue an Order: (1) appointing the Co-Diagnostics Investor Group as Lead Plaintiff of the class; (2) approving The Rosen Law Firm, P.A. and Bragar Eagel & Squire, P.C. as Co-Lead Counsel and James Dodge Russell & Stephens, P.C. as liaison counsel; and (3) denying the Lead Plaintiff Motions of Competing Movants.

DATED this 31st day of August, 2020.

Respectfully submitted,

**JAMES DODGE RUSSELL & STEPHENS, P.C.**
*/s/ Mitchell A. Stephens*
Mitchell A. Stephens
Mark F. James
*Liaison Counsel for the Co-Diagnostic Investor Group and Proposed Liaison Counsel for the Class*

**BRAGAR EAGEL & SQUIRE, P.C.**
Melissa A. Fortunato
Marion Passmore
**THE ROSEN LAW FIRM, P.A.**
Phillip Kim
*Counsel for the Co-Diagnostic Investor Group and Proposed Co-Lead Counsel for the Class*