Brent R. Baker # 05247
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Email: bbaker@parsonsbehle.com
Email: ecf@parsonsbehle.com
Ph: (801) 532-1234
Fax: (801) 536-6111

Richard W. Gonnello (*pro hac vice*)
Katherine Lenahan (*pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Email: rgonnello@faruqilaw.com
Email: klenahan@faruqilaw.com
Ph: (212) 983-9330
Fax: (212) 983-9331

*Attorneys for [Proposed] Lead Plaintiff Tejeswar Tadi*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GELT TRADING, LTD., a Cayman Islands limited company, <br><br>      Plaintiff, <br><br> v. <br><br> CO-DIAGNOSTICS, INC., a Utah Corporation, DWIGHT EGAN, JAMES NELSON, EUGENE DURENARD, EDWARD MURPHY, RICHARD SERBIN, REED BENSEN, BRENT SATTERFIELD, <br><br>      Defendants. | Case No. 2:20-cv-00368-CMR <br><br> <u>CLASS ACTION</u> <br><br> District Judge Jill N. Parrish <br> Magistrate Judge Dustin P. Pead |

*[Caption continues on next page]*

| | |
|---|---|
| FERNANDO HERNANDEZ, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>            v.<br><br>CO-DIAGNOSTICS, INC., DWIGHT EGAN, JAMES NELSON, EUGENE DURENARD, EDWARD MURPHY, RICHARD SERBIN, REED BENSON, and BRENT SATTERFIELD, | Case No. 2:20-cv-00481-JNP-JCB<br><br><br>District Judge Jill N. Parrish<br>Magistrate Judge Jared C. Bennett |

**TEJESWAR TADI'S OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

I.     THE CO-DIAGNOSTICS INVESTOR GROUP DOES NOT POSSESS THE
       LARGEST FINANCIAL INTEREST IN THE LITIGATION ........................................... 3

       A.     Lawyer Driven Amalgamations Of Unrelated Investors Are Disfavored For The
              Purposes Of The PSLRA's Largest Financial Interest Test...................................... 3

       B.     Volski's Losses Occurred Prior To The May 14, 2020 Corrective Disclosures........ 5

       C.     Ulucan Failed To Proffer Sufficient Evidence To Establish His Losses ................... 7

II.    TADI IS THE PRESUMPTIVE LEAD PLAINTIFF........................................................... 9

       A.     Tadi Possess the Largest Financial Interest in the Litigation ................................... 9

       B.     Tadi Satisfies the Relevant Requirements For A Lead Plaintiff Under Rule 23 ....... 9

       C.     The Remaining Movants Have Smaller Financial Interests Than Tadi................... 10

CONCLUSION............................................................................................................................. 10

i

## TABLE OF AUTHORITIES

**Cases**                                                                                                                  **Page(s)**

*Boyd v. NovaStar Fin., Inc.*,
   No. 07-0139-CV-W-ODS, 2007 WL 2026130 (W.D. Mo. July 9, 2007) (unpublished)..........6

*Bricklayers of W. Pennsylvania Pension Plan v. Hecla Min. Co.*,
   No. 2:12-CV-00042-BLW, 2012 WL 2872787 (D. Idaho July 12, 2012)...........................6, 7

*In re Cavanaugh*,
   306 F.3d 732 (9th Cir. 2002) ..................................................................................................10

*In re Comverse Tech., Inc. Sec. Litig.*,
   No. 06-CV-1825 NGG RER, 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ..............................6

*In re Crocs, Inc. Sec. Litig.*,
   No. 07-CV-02351-REB- KLM,
   2008 WL 4298316 (D. Colo. Sept. 17, 2008) (unpublished).................................................2, 3

*Delashmet v. Custom Designed Compressor Sys., Inc.*,
   No. CIV 05-0848 MCA/WPL, 2006 WL 2016080 (D.N.M. Mar. 9, 2006) (unpublished).......7

*Dura Pharmaceuticals v. Broudo*,
   544 U.S. 336 (2005)...........................................................................................................5, 6, 7

*Durgin v. Tousa, Inc.*,
   No. 06-61844-CIV, 2008 WL 2761301 (S.D. Fla. July 15, 2008) (unpublished) ....................6

*Eichenholtz v. Verifone Holdings, Inc.*,
   No. C 07-06140 MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008)....................................4

*Frias v. Dendreon Corp.*,
   835 F. Supp. 1067 (W.D. Wash. 2011)....................................................................................4

*In re Gentiva Sec. Litig.*,
   281 F.R.D. 108 (E.D.N.Y. 2012).............................................................................................3

*Johnson v. Dana Corp.*,
   236 F.R.D. 349 (N.D. Ohio), *on reconsideration sub nom.*
   *Frank v. Dana Corp.*, 237 F.R.D. 171 (N.D. Ohio 2006)........................................................8

*Kapur v. Usana Health Scis., Inc.*,
   No. 2:07CV177DAK, 2007 WL 3046664 (D. Utah Oct. 17, 2007) (unpublished)...................1

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
   136 F. Supp. 3d 1159 (C.D. Cal. 2015) ...................................................................................7

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
  No. 09-CV-00200-PAB-CBS, 2009 WL 10684924 (D. Colo. May 4, 2009)............................4

*In re Network Assocs. Sec. Litig.*,
  76 F. Supp. 2d 1017 (N.D. Cal. 1999) ......................................................................................4

*In re NPS Pharm., Inc. Sec. Litig.*,
  No. 2:06-CV-00570-PGCPMW,
  2006 WL 6627948 (D. Utah Nov. 17, 2006) (unpublished)................................................9, 10

*Pio v. Gen. Motors Co.*,
  No. CIV. 14-11191, 2014 WL 5421230 (E.D. Mich. Oct. 24, 2014) (unpublished).................6

*Ruland v. InfoSonics Corp.*,
  No. 06CV1231 BTMWMC, 2006 WL 3746716 (S.D. Cal. Oct. 23, 2006) ..............................8

*In re Safeguard Scis.*,
  216 F.R.D. 577 (E.D. Pa. 2003)................................................................................................7

*Weinstein v. McClendon*,
  No. CIV-12-465-M, 2012 WL 2994291 (W.D. Okla. July 20, 2012) (unpublished)................5

*Yellowdog Partners, LP v. CURO Grp. Holdings Corp.*,
  No. 18-2662-JWL, 2019 WL 1171695 (D. Kan. Mar. 13, 2019) (unpublished).......................8

**Statutes**

15 U.S.C. § 78u-4(a) .......................................................................................................... *passim*

Tejeswar Tadi ("Tadi") respectfully submits this memorandum of law pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 ( "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") in further support of his motion for the entry of an order (1) appointing Tadi as Lead Plaintiff, and (2) approving Tadi's selection of the Faruqi Firm as Lead Counsel and the Parsons Firm as Liaison Counsel.[1]

## PRELIMINARY STATEMENT

The PSLRA establishes a rebuttable presumption in favor of appointing as lead plaintiff the movant who demonstrates the "largest financial interest in the litigation" and who makes a *prima facie* showing that the movant satisfies Rule 23's typicality and adequacy requirements for class representatives. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). The statutory scheme "examine[s] potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical." *See Kapur v. Usana Health Scis., Inc.*, No. 2:07CV177DAK, 2007 WL 3046664, at *2 (D. Utah Oct. 17, 2007) (unpublished).

In determining which movant possesses the "largest financial interest," courts typically focus on four class period factors—(1) number of securities purchased; (2) number of net securities purchased; (3) total net funds expended; and (4) approximate losses suffered by the movant—with the most emphasis being placed on the approximate amount of "losses suffered"

---

[1] All terms not otherwise defined herein shall have the same meanings as those terms in the Memorandum of Law in Support of Tadi's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel and Liaison Counsel. *See Gelt Trading* Action, ECF No. 32; *Hernandez* Action, ECF No. 11. Unless stated otherwise, the following conventions apply: (1) all internal citations and quotations are omitted; (2) all emphases are added.

1

due to defendants' alleged fraud.  *See In re Crocs, Inc. Sec. Litig.,* No. 07-CV-02351-REB-KLM, 2008 WL 4298316, at *2 (D. Colo. Sept. 17, 2008) (unpublished).

Here, class members filed six motions to be appointed Lead Plaintiff in the Actions, respectively ***asserting*** the following purported financial interests:

| Movant | Total Shares | Net Shares | Net Funds Expended | Total Losses |
|---|---|---|---|---|
| 1)   "Co-Diagnostics Investor Group" | 251,112 | 4,059 | $368,606.45 | **$289,859.65** |
| A)  Hal Ulucan ("Ulucan") | 148,513 | 4,059 | $135,475.05 | $56,728.25 |
| B)  Tamara Shafer | 45,312 | 0 | $64,737.08 | $64,737.08 |
| C)  Robert Volski ("Volski") | 57,287 | 0 | $168,394.32 | $168,394.32 |
| 2)   Tejeswar Tadi ("Tadi") | 382 options (unexpired) | 382 options (expired) | $152,800.00 | **$152,800.00** |
| 3)   Gelt Trading, Ltd. | 32,000 | 0 | $117,740.00 | **$117,740.00** |
| 4)   Brian T. Petros | 8,300 | 0 | $75,419.00 | **$75,400.85** |
| 5)   Wei Jia | 4,380 | 4,380 | $118,394.00 | **$40,999.40** |
| 6)   Stephen Wiley | 5000 | 700 | $40,392.91 | **$38,461** |

The Co-Diagnostics Investor Group, however, is not the presumptive lead plaintiff because the group does not in fact possess the largest financial interest in the Actions.  Rather, the self-styled Co-Diagnostics Investor Group is a lawyer-driven aggregation of three unrelated investors, cobbled together by three different law firms, in an improper effort to aggregate each group member's financial interest in order to win the PSRLA's biggest loser test.  When each group member's losses are examined individually, it is readily apparent that Tadi possesses the largest financial interest.  Additionally, in the case of two of the group's members, Volski and Ulucan, they have failed to establish that they have ***any*** financial interest in the case, as detailed below.  When Volski and Ulucan's losses are excluded from the Group, the Co-Diagnostics Investor Group is further reduced to $64,737.08 in purported losses.  By contrast, Tadi—with losses of $152,800.00—possesses the largest financial interest in the litigation of any qualified

2

movant.[2]  Accordingly, Tadi respectfully requests that the Court grant his motion for appointment as Lead Plaintiff in the consolidated Actions[3] and approve his selection of Counsel.

## ARGUMENT

### I.   THE CO-DIAGNOSTICS INVESTOR GROUP DOES NOT POSSESS THE LARGEST FINANCIAL INTEREST IN THE LITIGATION

The Co-Diagnostics Investor Group does not possess the largest financial interest for the following reasons: (A) it is a group of unrelated investors improperly aggregating their respective losses; (B) Volski's losses occurred prior to the May 14, 2020 corrective disclosure and therefore Volski does not possess losses attributable to defendants' fraud; and (C) Ulucan has failed to proffer adequate evidence of his losses.

#### A.   Lawyer Driven Amalgamations Of Unrelated Investors Are Disfavored For The Purposes Of The PSLRA's Largest Financial Interest Test

The Co-Diagnostics Investor Group should not be permitted to aggregate its group members' losses.  Although the PSLRA permits the appointment of a group as lead plaintiff, *see* 15 U.S.C. § 78u-4(a)(3)(B)(i), courts are divided over when to allow the aggregation of unrelated investors as a group when appointing a lead plaintiff.  *Cf. In re Crocs, Inc. Sec. Litig.*, 2008 WL 4298316, at *3 n.5 (noting that the PSLRA's group provision "allows a small group of ***related investors*** to consolidate their individual losses in seeking designation as lead plaintiff[]").

The position most consistent with the policy goals of the PSLRA, however, is a bright line rule that prevents a group of unrelated individuals from being appointed lead plaintiff.  *See*

---

[2]     For purposes of this motion, Tadi's loss calculations use the longer, more inclusive class period from February 25, 2020 through May 15, 2020 as alleged in the *Hernandez* complaint and initially alleged in the *Gelt Trading* Action.  *See* Hernandez Action, ECF No. 2; *Gelt Trading* Action, ECF No. 2.  Except for Gelt Trading, Ltd., all movants appear to have properly adopted the longer class period.  *See In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012) (finding the most inclusive class period proper in analyzing lead plaintiff motion).

[3]     No movant opposed consolidation of the *Gelt Trading* and *Hernandez* Actions.

*In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1024 (N.D. Cal. 1999) ("[t]he whole point of the reform [act] was to install a lead plaintiff with substantive decision making ability and authority" to control the course of litigation and "[a] mass of unrelated investors could not" act as "a unified decision maker" with "internal coherency").  Indeed, "courts in [the D. Colo.] have cautioned, as have many courts throughout the country, that groups comprised of individuals and entities having no pre-litigation relationship or identifiable cohesiveness aside from their alleged losses and shared counsel should not be appointed lead plaintiff under the Reform Act."  *See In re Level 3 Commc'ns, Inc. Sec. Litig.*, No. 09-CV-00200-PAB-CBS, 2009 WL 10684924, at *3 (D. Colo. May 4, 2009) (collecting cases).

The Co-Diagnostics Investor Group is composed of three unrelated individuals cobbled together by three different law firms—The Rosen Law Firm, P.A., Bragar Eagel Squire, PC, and James Dodge Russell & Stephens, P.C.—and therefore should not be permitted to aggregate their respective clients' financial losses, as one of the principal purposes of the PSLRA "was to prevent lawyer-driven litigation." *Id.* at *3.  "[A]side from the obvious motive to aggregate the greatest financial interest among any movant," *id.* at *4, it is not apparent what relationship the members of the Group possess.  *See Frias v. Dendreon Corp.*, 835 F. Supp. 1067, 1075 (W.D. Wash. 2011) (group's "request to appoint multiple law firms as lead counsel raises the potential that their handling of the litigation could strip the lead plaintiff of control over the litigation, which is an occurrence the PSLRA intended to foreclose[]").  Although the Co-Diagnostics Investor Group provided a cursory declaration purporting to demonstrate their ability to work together, *see Gelt Trading* Action, ECF No. 31-4, courts frequently reject similar declarations. *See, e.g., Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 WL 3925289, at *9 (N.D. Cal. Aug. 22, 2008) (declining to appoint unrelated group and finding the "conclusory

4

declaration" that the group submitted "has little or no substance," where it, *inter alia*, failed to "clarify how the group will tackle the massive coordination and strategic issues that are certain to arise in this litigation").

Moreover, it is too late to consider any of the unrelated members of the Co-Diagnostics Group individually because, under the plain text of the PSLRA, a proposed lead plaintiff must move **"not later than 60 days after the date on which notice is published[,]"** 15 U.S.C. §78u-4(a)(3)(A)(i)(II), and this time period expired on August 17, 2020. *See Weinstein v. McClendon,* No. CIV-12-465-M, 2012 WL 2994291, at *1 (W.D. Okla. July 20, 2012) (unpublished).

Accordingly, the Court should reject the motion of the Co-Diagnostics Investor Group, as it is a lawyer-driven attempt to wrest control of this litigation while depriving Class members of the direct and efficient representation they deserve.

## B.      Volski's Losses Occurred Prior To The May 14, 2020 Corrective Disclosures

According to Volski's own records, Volski **bought and sold** all of his Co-Diagnostics shares **between Feb. 25, 2020 and Mar. 30, 2020**. *See Gelt Trading* Action, ECF No. 31-2 at 10. The Co-Diagnostics Investor Group inflates its losses by including losses Volski incurred on sales made **prior to** the relevant corrective disclosure on May 14, 2020—losses that are therefore not attributable to Defendants' fraud.

In *Dura Pharmaceuticals v. Broudo*, 544 U.S. 336, 346 (2005), the Supreme Court reversed the Ninth Circuit's holding that a plaintiff can plead loss causation, an element of the Class's Section 10(b) claim, solely by alleging that a misrepresentation inflated the price of the security. 544 U.S. at 338. In reversing, the Supreme Court made clear that a plaintiff must allege more than an inflated purchase price to show that a defendant's fraud "proximately caused the plaintiff's economic loss." *Id.* at 346-47. The Supreme Court explained, "as a matter of pure

5

logic, at the moment the transaction takes place, the plaintiff has suffered no loss" since "the inflated purchase payment is offset by ownership of a share that **at that instant** possesses equivalent value." *Id.* at 342 (emphasis in original). If the purchaser then sells a share bought at an artificially inflated price "before the relevant truth . . . makes its way into the marketplace," the defendant's "misrepresentation will not have led to any loss." *Id.* Accordingly, a plaintiff must allege a causal connection between a defendant's alleged misrepresentations and his subsequent loss to plead loss causation. *Id.* at 347. The Supreme Court found that "the complaint's failure to claim that Dura['s] share price fell significantly after the truth became known" was fatal to the plaintiff's claims. *Id.*

Since *Dura*, "courts routinely analyze the loss calculation in lead plaintiff applications in terms of trading and removed losses suffered prior to a corrected disclosure." *See Durgin v. Tousa, Inc.*, No. 06-61844-CIV, 2008 WL 2761301, at *2 (S.D. Fla. July 15, 2008) (unpublished); *Pio v. Gen. Motors Co.*, No. CIV. 14-11191, 2014 WL 5421230, at *3 (E.D. Mich. Oct. 24, 2014) (unpublished) (similar); *Boyd v. NovaStar Fin., Inc.*, No. 07-0139-CV-W-ODS, 2007 WL 2026130, at *3 (W.D. Mo. July 9, 2007) (unpublished) (similar). As stated by one court, "the loss calculation adopted by the Court should reflect the relief reasonably recoverable by the movant." *Bricklayers of W. Pennsylvania Pension Plan v. Hecla Min. Co.*, No. 2:12-CV-00042-BLW, 2012 WL 2872787, at *4 (D. Idaho July 12, 2012). Where "it is clear from the face of the pleadings that most of [a lead plaintiff movant]'s losses were suffered before any alleged corrective disclosure, the court would be abdicating its responsibility under the PSLRA if it were to ignore that issue at this stage." *See In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 NGG RER, 2007 WL 680779, at *5 (E.D.N.Y. Mar. 2, 2007).

By considering only post-corrective disclosure losses, courts eliminate inflated claims of

losses that were not caused by "the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price." *Dura*, 544 U.S. at 342-43; *see Bricklayers*, 2012 WL 2872787, at *4 ("[T]he Court finds that Cambria and Quist's loss approximation is too high because it is not realistically related to what the movant is likely to be able to recover."). Therefore, excluding losses that occurred prior to the corrective disclosure is a "rational and consistently applied" method. *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1164 (C.D. Cal. 2015).

Applying these principles drastically reduces Volski's losses to ***$0.00.*** Indeed, Volski—an apparent day trader relying on the momentum of technical price movements, market volatility, and momentum rather than the defendants' statements—sold all his Co-Diagnostics holdings prior to the May 14, 2020 reports which revealed the truth to the market. *Compare* Volski's Transactions in Co-Diagnostics, Gelt Trading Action, ECF No. 31-2 at 10; *Gelt Trading* Compl. at ¶¶70, 81-82 & *Hernandez* Complaint at ¶¶12, 70-71; *see also In re Safeguard Scis.*, 216 F.R.D. 577, 582 (E.D. Pa. 2003) (noting that day trading raises a suspicion of inadequacy because it subjects lead plaintiff to unique defenses). After excluding losses incurred on sales made prior to the May 14, 2020 corrective disclosure, Volski has suffered $0.00 in losses. This reduces the Co-Diagnostics Investor Group's purported losses to (at most) $121,465.33 even when aggregated, which is well behind Tadi's losses of $152,800.00. Thus, the Co-Diagnostics Investor Group does not possess the largest financial interest, as they have less ***"to gain from the lawsuit"*** than Tadi. *See Delashmet v. Custom Designed Compressor Sys., Inc.*, No. CIV 05-0848 MCA/WPL, 2006 WL 2016080, at *3 (D.N.M. Mar. 9, 2006) (unpublished).

**C.       Ulucan Failed To Proffer Sufficient Evidence To Establish His Losses**

The Co-Diagnostics Investor Group additionally fails to establish that it has the largest financial interest because it does not provide sufficient evidence to establish Ulucan's last-in-first-out ("LIFO") losses.  The LIFO matching methodology, which is "the overwhelming majority position and the trend among courts[,]" *see Yellowdog Partners, LP v. CURO Grp. Holdings Corp.*, No. 18-2662-JWL, 2019 WL 1171695, at *3 (D. Kan. Mar. 13, 2019) (unpublished), assumes that the most recently acquired shares are the first shares sold.  *See Johnson v. Dana Corp.*, 236 F.R.D. 349, 352 (N.D. Ohio), *on reconsideration sub nom. Frank v. Dana Corp.*, 237 F.R.D. 171 (N.D. Ohio 2006).  Significantly, gains attributable to a class period sale of shares which match to shares purchased before the class period are "deducted from [a movant's] losses."  *See Ruland v. InfoSonics Corp.*, No. 06CV1231 BTMWMC, 2006 WL 3746716, at *5 n.1 (S.D. Cal. Oct. 23, 2006) (unpublished).

Ulucan's records prove that he had an undisclosed opening balance of 10,000 Co-Diagnostics shares that he purchased ***before*** the class period, as he purchased only 39,766 Co-Diagnostics shares on May 11, 2020—the first day he purchased shares during the Class Period—yet sold 49,766 Co-Diagnostics shares on that same day.  *See* Ulucan's Transactions in Co-Diagnostics, Gelt Trading Action, ECF No. 31-2 at 3 (stating that Ulucan's first class period transactions in Co-Diagnostics securities occurred on May 11, 2020).  The Co-Diagnostics Group, however, fails to provide a cost basis for these 10,000 shares—presumably to conceal gains from class period sales of Co-Diagnostics securities.  As such, it is not possible to use the LIFO methodology to match Ulucan's sale of his 10,000 shares against his most recent purchase of Co-Diagnostics shares.  The Co-Diagnostics Investor Group has therefore failed to proffer sufficient evidence of Ulucan's financial interest and his asserted financial interest should not be

8

considered.  This further reduces the Co-Diagnostics Investor Group's purported losses to (at most) $64,737.08, even when aggregated, which is well behind Tadi's losses of $152,800.00.

## II.  TADI IS THE PRESUMPTIVE LEAD PLAINTIFF

### A.  Tadi Possess the Largest Financial Interest in the Litigation

In his initial papers, Tadi provided the requisite sworn certifications listing his transactions in Co-Diagnostics securities.  *See Gelt Trading* Action, ECF No. 32-3; *Hernandez* Action, ECF No. 11-3; *see also* 15 U.S.C. § 78u-4(a)(2).  Using the information provided, Tadi suffered losses of $152,800.00.  Since the Co-Diagnostics Investor Group overstated Volski's losses, Tadi suffered the largest losses of any qualified movant seeking appointment as Lead Plaintiff.  Consequently, Tadi is the presumptive Lead Plaintiff.

### B.  Tadi Satisfies the Relevant Requirements For A Lead Plaintiff Under Rule 23

Having established that Tadi possesses the largest financial interest, he is entitled to invoke the most adequate plaintiff presumption because he made a *prima facie* showing that he satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *In re NPS Pharm., Inc. Sec. Litig.,* No. 2:06-CV-00570-PGCPMW, 2006 WL 6627948, at *2 (D. Utah Nov. 17, 2006) (unpublished).

As evidenced by Tadi's certifications, his claims are typical of the Class' claims because he acquired Co-Diagnostics securities at prices that were artificially inflated by Defendants' misconduct and suffered losses when the truth was revealed.  *NPS*, 2006 WL 6627948, at *2 (explaining that typicality is present when "the claims of [the] class representatives and other class members are based upon the same legal or remedial theory" and that "a difference in the factual situations of class members per se[] does not defeat typicality under Rule 23(a)(3)[]").

Additionally, Tadi demonstrated that he satisfies Rule 23's adequacy requirement by

9

moving for Lead Plaintiff, filing the requisite certifications, *see Gelt Trading* Action, ECF No. 32-3; *Hernandez* Action, ECF No. 11-3, and selecting counsel—the Faruqi Firm and the Parsons Firm—with the requisite skills, experience, and competence to prosecute the Actions vigorously and efficiently in the best interest of the class. *See NPS,* 2006 WL 6627948, at *3 (movant's written submissions evidenced adequacy to serve as lead plaintiff); *see also Gelt Trading* Action, ECF No. 32-3 at ¶¶2-3; *Hernandez* Action, ECF No. 11-3 at ¶¶2-3.

As there is no "proof" that Tadi is either inadequate or atypical to serve as Lead Plaintiff, s*ee* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II), Tadi should be appointed Lead Plaintiff in the Actions.

**C.     The Remaining Movants Have Smaller Financial Interests Than Tadi**

As set forth in the chart above, *supra* at 2, the remaining movants—Gelt Trading, Ltd., Bryan T. Petros, Wei Jia and Stephen Wiley—have smaller financial interests than Tadi and therefore should not be appointed lead plaintiff.  Therefore, under the PSLRA, their motions for Lead Plaintiff should be denied.  *See In re Cavanaugh*, 306 F.3d 732 (9th Cir. 2002) ("The statutory process is sequential: The Court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical.").

**CONCLUSION**

Because Tadi possesses the largest financial interest of any qualified movant in the Actions, and he has made an evidentiary showing that he satisfies the typicality and adequacy requirements of Rule 23, Tadi respectfully requests that his Motion For Appointment As Lead Plaintiff And Approval Of His Selection Of Lead And Liaison Counsel be granted in its entirety.

Dated:  August 31, 2020                              Respectfully submitted,

By:     */s/ Richard W. Gonnello*

10

Richard W. Gonnello

Richard W. Gonnello (*pro hac vice*)
Katherine Lenahan (*pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Ph: (212) 983-9330
Fx: (212) 983-9331
E-mail: rgonnello@faruqilaw.com
        klenahan@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiff Tejeswar Tadi and [Proposed] Lead Counsel for the putative Class*

Brent R. Baker # 05247
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Ph.: (801) 532-1234
Fax: (801) 532-1234
E-mail: bbaker@parsonsbehle.com
E-mail: ecf@parsonsbehle.com

*Attorneys for [Proposed] Lead Plaintiff Tejeswar Tadi and [Proposed] Liaison Counsel for the putative Class*

11

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing was served through the Court's CM/ECF Notification System, this 31st day of August 2020, on all counsel of record.

*/s/ Richard W. Gonnello*
Richard W. Gonnello

1