D. Loren Washburn (#10993)
   lwashburn@smithwashburn.com
**SMITH WASHBURN, LLP**
8 East Broadway, Suite 320
Salt Lake City, UT 84111
Telephone: (801) 584-1800
Facsimile:   (801) 584-1820

Michael A. Pineiro (*admitted pro hac vice*)
MARCUS NEIMAN RASHBAUM &
PINEIRO LLP
2 South Biscayne Blvd., Suite 1750
Miami, FL 33131
Telephone: (305) 400-4268
mpineiro@mnrlawfirm.com

Michael C. Fasano (*admitted pro hac vice*)
FASANO LAW FIRM, PLLC
2 S. Biscayne Blvd., Suite 1750
Miami, FL 33131
Telephone: (786) 530-5239
mfasano@fasanolaw.com

*Attorneys for Gelt Trading, Ltd. and Proposed Class*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GELT TRADING, LTD., a Cayman Islands limited company, <br><br> Plaintiff, <br><br> v. <br><br> CO-DIAGNOSTICS, INC., a Utah Corporation, *et al*., <br><br> Defendants. | Case No. 2:20-cv-00368-JNP-DBP <br><br> **GELT TRADING, LTD.'S OMNIBUS RESPONSE TO MOTIONS TO APPOINT LEAD PLAINTIFF** <br><br> Judge Jill N. Parrish <br> Magistrate Dustin B. Pead |

Gelt Trading, Ltd. ("Gelt"), by and through its undersigned counsel, hereby presents its consolidated response to the various motions for appointment of lead plaintiff submitted in the above-styled action and the factually identical subsequently filed case *Hernandez v. Co-Diagnostics, Inc.*, D. Utah Case No. 20-cv-00481-JNP-JCC.[1] In support of its own application and in response to all other applications for lead plaintiff timely submitted, Gelt Trading states as follows:

---

[1] The parties in both cases have sought consolidation of the matters, and consolidation does not appear to be opposed by any party or potential lead plaintiff in this action.

## I.    INTRODUCTION

Gelt, an investment company managed by a professional fiduciary, first brought this securities fraud to light to the investing public by filing this complaint on June 15, 2020.

Gelt should be appointed lead plaintiff in this case: it is the most typical, straightforward, and motivated plaintiff. Gelt is the presumptive lead plaintiff because it has the singular largest financial loss due to the fraud, when—as the Court should—one sets aside losses that predate the misrepresentation and that are cobbled together through aggregating groups of random, unrelated investors. Gelt also has chosen well-qualified counsel to prosecute the putative class claims, including Loren Washburn of Smith Washburn, LLP in Salt Lake City, Utah, which has significant experience in securities fraud matters, and additional co-counsel who have handled substantial securities matters.

The other prospective lead plaintiffs will *not* adequately represent the putative class. One is a group aggregated by two law firms at the final hour, comprised of three unrelated individuals who were in and out traders making over 200 trades with most of their losses outside the appropriate class period. The second apparently owned only options and likely suffered losses of less than $2,000, the cost of purchasing his options.

Gelt, on the other hand, is the exact type of plaintiff that the PSLRA has sought to attract in securities class litigation, and Gelt has chosen to work with a group of experienced trial lawyers who it has not only worked with in the past, but who have strong securities-related experience in this District. The Court should appoint Gelt as lead plaintiff in this action. It is in the best interests of the putative class.

## II.    ANALYSIS

(a)    **GELT TRADING IS THE MOVANT WITH THE LARGEST FINANCIAL INTEREST THAT OTHERWISE SATISFIES THE REQUIREMENTS OF RULE 23**

(1)    **Gelt is an Ideal Sophisticated Market Investor Envisioned by the Public Securities Litigation Reform Act ("PSLRA")**

In the context of determining who is a proper securities class action lead plaintiff, Courts

have stated, "[i]t is axiomatic . . .the lead plaintiff provisions of the PSLRA were intended to curtail the vice of 'lawyer-driven' litigation, *i.e.,* lawsuits that, because of the huge potential fees available in contingent securities fraud class actions, were initiated and controlled by the lawyers and appeared to be litigated more for their benefit than for the benefit of the shareholders they ostensibly represented."[2]

> "To help combat this problem, the lead plaintiff provisions of the PSLRA required that a court appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members. The theory of these provisions was that if an investor with a large financial stake in the litigation was made lead plaintiff, such a plaintiff—frequently a large institution or otherwise sophisticated investor— would be motivated to act like a 'real' client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation was delivered at a reasonable price."[3]

Gelt fits the criteria envisioned by the PSLRA. It is a company that has held diversified securities across asset classes, including in the pharmaceutical and medical technology sectors. Gelt's director is Florida-based attorney Steven Sciarretta, who has experience acting as a fiduciary for trusts and investment vehicles around the world.[4] Moreover, Mr. Sciarretta has actually served as plaintiff in a fiduciary capacity for others in federal litigation.[5] Mr. Sciarretta also represents an investor in Gelt, a trust, which gives Mr. Sciarretta a strong incentive to monitor and direct the litigation to obtain the best result possible for investors.

Additionally, Mr. Sciarretta, as director of Gelt, supervises a professional trader with approximately 40 years of Wall Street trading experience, including with Lehman Brothers AG Edwards, Raymond James, and Kidder Peabody. He has the kind of in-house securities expertise that will allow him to interact with counsel in a knowledgeable and sophisticated way. (*See* Exhibit A, attached hereto.)

---

[2] *Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*, 616 F. Supp. 2d 461, 463–64 (S.D.N.Y. 2009).
[3] *Id*. (internal citations omitted).
[4] *See Milbeck v. TrueCar, Inc.*, No. 218CV02612SVWAGR, 2019 WL 2353010, at *3 (C.D. Cal. May 24, 2019) (finding that lead plaintiff's fiduciary experience relevant at class certification stage).
[5] *See Sciarretta v. The Lincoln Nat'l Life Ins. Co.*, No. 9:11-CV-80427-DMM, 2011 WL 13116845, at *1 (S.D. Fla. Dec. 7, 2011).

### (2) Gelt Was First to File and Has Demonstrated the Most Proactivity in Prosecuting the Case

Gelt sought advice about its investing losses from Marcus Neiman, Rashbaum & Pineiro, LLP ("MNRP"), a firm that one of Mr. Sciarretta's beneficiaries had worked with in the past, and Fasano Law Firm, PLLC. MNRP contacted Loren Washburn of Smith Washburn, LLP in Salt Lake City, Utah, with whom one the firm partners had previously worked at the U.S. Department of Justice, and who knew Washburn had significant experience in securities fraud matters in Utah, including from his time as an Assistant U.S. Attorney in this District. Following the investigation, the firms, with Gelt's consent and review, filed the first securities fraud complaint against Co-Diagnostics in the United States. Gelt has been the single most proactive plaintiff in this case, is controlled by an experienced fiduciary with federal litigation experience as a plaintiff, and is the most sophisticated potential lead plaintiff.

Gelt's has also been proactive in amending the Complaint as additional evidence came to light. The class period was amended because the material misstatements regarding Co-Diagnostic's tests, at the core of the Complaint, were made on April 30, 2020, by a Co-Diagnostics officer and were then unequivocally adopted by the company in a press releases on June 1, 2020. To date, Gelt is unaware of, and the other proposed lead plaintiffs have yet to articulate, any misrepresentations made before April 30, 2020 or any substantive reason for a class period beginning before that date.

Gelt has demonstrated a strong interest in not only prosecuting the action, but also in monitoring the action and attempting to create the most likely path to recovery. Gelt has also already served the defendants and plans to prosecute its case as aggressively as possible.

### (3) Gelt Has the Highest Single Investor Loss During the Class Period

During the amended class period, Gelt has straightforward and easily ascertainable losses based on the purchase and sale of common stock. As stated in its Amended Complaint (D.E. 14), Gelt made the following trades relating to Co-Diagnostics:

- On May 13, 2020, Gelt purchased 7,000 shares of CODX stock at a price of $21.20 and sold those shares that same day for $22.12, and it also purchased 3,000 shares at a price of $23.42 and sold those shares that same day for $23.68. These trades

resulted in a net gain of $7,171.90.
- On May 14, 2020, Gelt purchased 22,000 shares of CODX at a price of $26.65 and sold those shares that same day for $20.97, in the afternoon, after negative news had caused the stock price to plummet, resulting in a loss of $125,017.77.
- Gelt's net losses equal $117,845.87, squarely during the class period.[6]

Notably, Gelt's losses occurred during an extremely active period of Co-Diagnostics' history—on May 13 and 14 on average every issued and outstanding share of stock traded hands three times, the most intense trading period of Co-Diagnostics stock after its initial announcement of its test. That Gelt had losses during this tumultuous time when the trading volume spiked and significant price decreases were experienced by investors in Co-Diagnostics makes Gelt's losses typical of the vast majority of class plaintiffs, who traded the stock between May 12 and May 15.

      **(b)**    **THE ULUCAN-SHAFER-VOLSKI GROUP (THE "AGGREGATED GROUP") IS AN INADEQUATE PLAINTIFFS' GROUP COMPRISED OF UNRELATED INVESTORS WHO PURCHASED OUTSIDE THE REASONABLE CLASS PERIOD AND WERE AGGREGATED BY TWO LAW FIRMS TO ATTEMPT TO SECURE APPOINTMENT AS LEAD COUNSEL**

        **(1)**    **Taking Into Account Each Investors Trading Activity After the Actual False Representations Were Made in this Matter, the Aggregated Group's Losses Are No More than $84,211.67**

Immediately before the deadline for lead plaintiff applications, two law firms, The Rosen Law Firm and Bragar, Eagel, and Squire P.C., aggregated three plaintiffs (Ulucan, Shafer, and Volski) to form an investor group they claim lost a total of $289,859.65, which would be the largest investor loss of all potential lead plaintiffs.[7] However, looking closely at the dates of each investor's losses, the group's actual losses in the class period are no more than $84,211.67.

*First*, all of Volski's trading activity occurred from February 25, 2020 through March 30, 2020. His last trade was made a full month before Co-Diagnostics indicated that its tests were 100% accurate, which is the key misrepresentation in the case. (*See* D.E. 31-4, p. 10.) Moreover, none of Volski's trades were affected by the sudden release of news on May 14, 2020, contradicting Co-Diagnostics' prior statements about its Covid-19 tests. Thus, Volski is not a typical or adequate class representative and his losses during the true class period are $0.

---

[6] After Gelt's lead plaintiff motion was filed, counsel realized that certain gains had not been calculated to offset the losses. Accordingly, the proper amount of Gelt's losses is $117,845.87.
[7] The investor group did not file its own complaint in this action.

The Aggregated Group asserts in a footnote that the longer class period identified in the *Hernandez* complaint should apply, without raising a single allegation or argument to support that period. (D.E. 31, p. 2.) Courts have recognized a risk in "blindly accepting the longest class period without further inquiry as potential lead plaintiffs would be encouraged to manipulate the class period so they had the largest financial interest."[8] But, even if this Court applied the longer class period, Volski's claims are atypical of the class for the reasons addressed above.[9]

*Second*, similar to Volski, Shafer has some trading losses between April 30, 2020 and May 15, 2020; however, Shafer includes numerous trades between February 28, 2020 and April 21, 2020 that are unaffected by the fraudulent statements and subsequent contrary public data released on May 14, 2020. Removing those trades, Shafer's losses during the true class period were $27,483.42.

*Third*, Ulucan's trades all occurred within the class period, but they resulted in $56,728.25 in losses. This leaves the Aggregated Group's losses to $84,211.77 after material misrepresentations were made to the market by Co-Diagnostics. This amount is significantly less than the $117,845.87 lost by Gelt as a single plaintiff. Accordingly, Gelt has a greater class period loss than Aggregated Group combined.

### (2) The Aggregated Group is Composed of High Frequency "In and Out" Traders That May Be Subject to Unique Defenses

In addition to including trades that occurred long before the material misrepresentations in this case were made, the Aggregated Group consists of traders who made ***203 total trades*** (Ulucan—99, Shafer—55, Volski—49) of Co-Diagnostics stock, often buying and selling the stock multiple times on the same day. This type of trading activity is highly disfavored by Courts

---

[8] *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 434 (S.D. Tex. 2010); *see also Union Asset Mgmt. Holding AG v. Sandisk Corp.*, No. 15-CV-01455-VC, 2016 WL 406283, at *5 (N.D. Cal. Jan. 22, 2016).

[9] *In re BP,* at 439 (finding a proposed lead plaintiff with the largest financial interest was not the most adequate plaintiff because, under its longer proposed class period, its claims were not typical of the class)

when choosing the most adequate class representative under the PSLRA.[10] Courts have routinely found in-and-out traders to be improper lead plaintiff candidates due to the likelihood that they will fail to adequately plead loss causation.[11] In-and-out trader may also lack standing because they are not damaged by the alleged fraud and appointing them as lead plaintiff could result in the unnecessary dismissal of the entire action.[12]

Accordingly, the in-and-out nature of the Aggregated Group's trading precludes each of them and the group together from being the best lead plaintiff in this action.

> **(3)    The Aggregated Group Is Inadequate Because It Seems To Have Been Cobbled Together Solely For Purposes Of Being Appointed Lead Plaintiff**

Courts in this judicial district, within the Tenth Circuit, and nationally have rejected investor "groups" aggregating their losses to become co-lead plaintiffs when the group is made up of unrelated individuals cobbled together by counsel.[13] "This skepticism is consistent with core aims of the PSLRA: shifting control of the litigation from the lawyers to the investors and preventing 'the manipulation by class action lawyers of the clients whom they purportedly represent.'"[14] In this very District, the Court rejected a potential lead plaintiff group, when "the formation of [the] group was an eleventh-hour attempt by unrelated parties to aggregate solely for

---

[10] *See IBEW Local 90 Pension Fund v. Deutsche Bank AG*, 2013 WL 5815472, at *19 (S.D.N.Y. Oct. 29, 2013) (recognizing that proposed class representatives can fail to meet "the typicality requirement for Rule 23" if "they [are] subject to unique defenses as a result of having been 'in and out' purchasers") (collecting cases); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 40 (2d Cir. 2009) ("[I]n-and-out traders will [not] even 'conceivably' be able to prove loss causation as a matter of law . . . therefore [they] should not have been included in the certified class.")

[11] *See, e.g., Bensley v. FalconStor Software*, Inc., 277 F.R.D. 231, 241 (E.D.N.Y. 2011) (holding that "the Fund has failed to demonstrate that it will be an adequate lead plaintiff because it was a total in-and-out trader and may be unable to demonstrate loss causation" and that therefore, "the Fund is subject to unique adequacy and typicality defenses that render it an inadequate Class representative").

[12] *See FalconStor*, 277 F.R.D. at 240 ("[T]he Court is concerned that if the Fund, as lead plaintiff, is unable to prove loss causation and is found to lack standing, the entire case could be dismissed.").

[13] *Meyer v. Paradigm Med. Indus.*, 225 F.R.D. 678, 682 (D. Utah 2004) (courts find that aggregating losses runs the risk of violating the intent of the PSLRA by permitting lawyer-driven litigation.)

[14] *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 393 (S.D.N.Y. 2008) (collecting cases).

the purpose of creating a group that would have the largest financial interest in the litigation."[15] In the same opinion, the court held that one group with *some* unrelated parties was the most adequate plaintiff, noting that the unrelated parties worked together to pursue the litigation.[16]

Here, the PSLRA certifications of the Aggregated Group (D.E. 31-2) demonstrate that the "group" is a cobbled together collection of investors obtained separately by two law firms who then combined forces. Indeed, given that both the Rosen Law Firm[17] and Bragar, Eagel & Squire[18] have been actively advertising the litigation and the August 17 deadline, and that neither firm's press releases list that they are cooperating with the other firm, it is almost certain that the lawyers, and not the clients, joined together on the deadline with the express purpose of manufacturing a plaintiff group so they could take over as lead plaintiff. The clients' declarations each mention only one firm and do not note the other firm's role. None of the group members filed an action in this case, and their collective motion for lead plaintiff literally appeared at the "eleventh hour," which is exactly the kind of lawyer-driven conduct the PSLRA and this Judicial District rejects.[19]

The Aggregated Group attempts to cure the deficiency of not being a true group by submitting a boilerplate declaration that each of the group members understands their obligations under the PSLRA and will work together cohesively. (*See* D.E. 31-4.) It is not clear how they will do so: Ulucan lives in South Carolina and has little trading experience; Shafer is from Utah and Volski is a physical therapist from Florida. (*Id.* ¶¶ 3–5.) The declaration does not indicate how these individuals found counsel, when they decided to join together, and how they plan to work together

Courts in the Tenth Circuit have flatly rejected similar declarations as evidence of an

---

[15] *Meyer*, 225 F.R.D. 678, 682 (D. Utah 2004).

[16] *Id.* at 683.

[17] https://www.globenewswire.com/news-release/2020/08/12/2077475/0/en/ROSEN-TOP-RANKED-INVESTOR-COUNSEL-Reminds-Co-Diagnostics-Inc-Investors-of-the-Important-August-17-Deadline-in-Securities-Class-Action-Encourages-Investors-with-Losses-in-Excess-of-.html

[18] https://www.globenewswire.com/news-release/2020/08/05/2073543/0/en/Bragar-Eagel-Squire-P-C-Reminds-Investors-That-Class-Action-Lawsuits-Have-Been-Filed-Against-Co-Diagnostics-ProAssurance-Enphase-and-Chembio-and-Encourages-Investors-to-Contact-the.html

[19] *See Meyer*, 225 F.R.D. at 682.

investor group's adequacy as lead plaintiff.[20] In *Level 3*, the Court faced a nearly identical situation as here, where a group of unrelated individual investors aggregated their claims to compete for lead plaintiff. The Court held the following:

> Reviewing the joint declaration, the Court is left with little additional understanding of, for example, how the group was formed; how its members would function collectively; how potential disputes among the members or counsel would be resolved; and the mechanism by which the group members and counsel would communicate with one another about the litigation. *See In re Baan*, 186 F.R.D. at 225 (**memorandum submitted by amicus curiae Securities and Exchange Commission discussing information that should be provided by group seeking lead plaintiff designation to facilitate court's analysis**). The joint declaration states that the members of the Level 3 Plaintiffs Group have conferred with one another about this litigation, including discovery issues that may arise, and have "established procedures should disagreements arise between us." Joint Decl. ¶ 9. The Level 3 Plaintiffs Group declares that it has "substantial financial interests in the litigation," and "opted to work together to prosecute this action" believing that its "collective resources, investment experience, and diversity" will benefit the proposed class. *Id.* ¶¶ 7–8. However, the joint declaration does not articulate any actual mechanisms for cooperation, dispute resolution, or communication among the group members and counsel.[21]

The same is true of the aggregated group here.[22]

### (c) PLAINTIFF TADI IS INADEQUATE TO SERVE AS LEAD COUNSEL BECAUSE HIS CLAIM IS BASED ENTIRELY ON THE PURCHASE OF STOCK OPTIONS THAT BECAME WORTHLESS AFTER CO-DIAGNOSTICS' STOCK PLUMMETED ON MAY 14, 2020

Plaintiff Tadi also filed a motion to be appointed lead plaintiff in the matter claiming $152,800 in "losses" based on the purchase of Co-Diagnostics' stock options on May 14, 2020. As a threshold matter, Tadi's loss chart submitted with his motion (D.E. 32) indicates that he purchased 382 call options for $4 each to buy Co-Diagnostics stock at some undisclosed strike price in the future. (*See* D.E. 32-3.) Based on Tadi's loss chart, he spent $1,582 to speculate that Co-Diagnostics' stock would surpass a certain price on or before May 15, 2020. Tadi does not

---

[20] *See In re Level 3 Commc'ns, Inc. Sec. Litig.*, No. 09-CV-00200-PAB-CBS, 2009 WL 10684924, at *5 (D. Colo. May 4, 2009).

[21] *Id*. at 4–5 (emphasis added).

[22] Moreover, since the Aggregated Group decided to forego individually moving for lead plaintiff, they should be prohibited at this stage from disbanding and seeking individual appointment. *See Level 3,* WL 10684924, at *5 ("because the *Level 3* Plaintiffs Group did not, at the time of the filing of the Lead Plaintiff motion, request that any of its constituents be appointed as lead plaintiff individually in the event the Court declined to appoint the group, the court declined to consider the plaintiffs individually"). *Id*. at 5.

explain how he arrives at his loss figure, but it appears facially impossible for him to have lost more than he pay for his options. At this point, Tadi's actual damages are not ascertainable with any certainty and appear speculative beyond the $1,582 options purchase price.[23]

Moreover, call options purchasers who do not also purchase common stock within the class period are typically rejected as lead class plaintiffs because option holders are subject to unique defenses, especially those relating to reliance, that are not typical of a class of common stockholders.[24]

The Court has discretion to weigh other factors when determining the best lead plaintiff.[25] These other factors weight against Tadi. *First*, as stated above, many courts have acknowledged that purely call options holders are not adequate lead plaintiffs not only because they are not typical of the rest of the class. *Second*, basic internet searches reveal that Tadi is a 23-year-old who recently graduated from Rutgers University. In contrast, Gelt's director is an attorney and professional fiduciary with 33 years of experience who is not only highly motivated, but duty-bound to take all measures to maximize returns for Gelt and, by extension, the class. Finally, Gelt's losses, assuming Tadi can show $158,200 in actual out-of-pocket losses, are not significantly less than Tadi's.[26] Accordingly, the Court has the discretion under the PSLRA to appoint Gelt lead plaintiff over Tadi, *even if he has a higher financial loss*, because Gelt will most fairly and adequately protect the class, and because as a pure call options holder, Tadi is subject to unique

---

[23] Tadi appears to be a young computer programmer or engineer involved in using artificial intelligence and machine learning relating to finance. If Mr. Tadi executed trades using artificial intelligence or trading algorithms, his claims may not be typical of the class.

[24] *See In re Elan Corp. Sec. Litig.*, 2009 WL 1321167, at *2 (S.D.N.Y. May 11, 2009); *Andrada v. Atherogenics, Inc.*, 2005 WL 912359, at *5 (S.D.N.Y. Apr. 19, 2005); *Weikel v. Tower Semiconducter Ltd.*, 183 F.R.D. 377, 391 (D.N.J.1998) (rejecting certification of class representative who only purchased Euro options).

[25] *See Meyer*, 225 F.R.D. at 680 (D. Utah 2004).

[26] *See Police & Fire Ret. Sys. v. SafeNet, Inc.*, No. 06 Civ. 5797 (PAC), 2007 U.S. Dist. LEXIS 97959, at *6 (S.D.N.Y. Feb. 21, 2007) (finding $40,000 difference a "very slight difference" that "cannot dictate such an important result"); *Juliar v. Sunopta Inc.*, 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009) (appointing institutional investor as lead plaintiff even though it had $30,000 less than an investor group's aggregated losses because "[t]his difference is minimal and, in this case, does not overcome a presumption inherent in Congress' enactment of the PSLRA that institutional investors serve as better lead plaintiffs.").

defenses.[27]

## III.    CONCLUSION

For the foregoing reasons, Gelt Trading Ltd. should be appointed as the sole lead plaintiff in this action, and its co-counsel of choice should be named counsel for the putative class.

DATED: August 31, 2020

SMITH WASHBURN, LLP

_____/s/ D. Loren Washburn_____
D. Loren Washburn

Michael A. Pineiro (*admitted pro hac vice*)
MARCUS NEIMAN RASHBAUM & PINEIRO LLP
2 South Biscayne Blvd., Suite 1750
Miami, FL 33131

Michael C. Fasano (*admitted pro hac vice*)
FASANO LAW FIRM, PLLC
2 S. Biscayne Blvd., Suite 1750
Miami, FL 33131

*Attorneys for Gelt Trading, Ltd. and Proposed Class*

---

[27] *See Meyer*, 225 F.R.D. at 680 (Th[e largest financial interest] presumption 'may be rebutted only upon proof ... that the presumptively most adequate plaintiff—(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.' [15 U.S.C.] §78u–4(a)(3)(B)(iii)(II).").

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 31, 2020, the foregoing **GELT TRADING, LTD.'S**

**OMNIBUS RESPONSE TO MOTIONS TO APPOINT LEAD PLAINTIFF** was served on

the person(s) named below via the Court's electronic filing system:

David W. Scofield
PETERS SCOFIELD
7430 CREEK RD STE 303
SALT LAKE CITY, UT 84093-6160
Email: dws@psplawyers.com

*Attorneys for Stephen Wiley*


Zachary J. Weyher
TRUE WEST
1716 S 900 E STE A
SALT LAKE CITY, UT 84105
Email: zachweyher@gmail.com

*Attorneys for Wei Jia*


Jon V. Harper
HARPER LAW PLC
PO BOX 581468
SALT LAKE CITY, UT 84158
Email: jharper@jonharperlaw.com

*Attorneys for Brian T. Petros*


Mark F. James
Mitchell A. Stephens
JAMES DODGE RUSSELL & STEPHENS PC
10 W BROADWAY STE 400
SALT LAKE CITY, UT 84101
Email: mjames@jdrslaw.com
Email: mstephens@jdrslaw.com

*Attorneys for Co-Diagnostic Investor Group*

Brent R. Baker
PARSONS BEHLE & LATIMER
201 S MAIN ST STE 1800
PO BOX 45898
SALT LAKE CITY, UT 84145-0898
Email: bbaker@parsonsbehle.com

Katherine M. Lenahan
Richard W. Gonnello
FARQUI & FARUQI LLP
685 THIRD AVE. 26TH FLR
NEW YORK, NY 10017
Email: klenahan@faruqilaw.com
Email: rgonnello@faruqilaw.com

*Attorneys for Tejeswar Tadi*


_____/s/ Melina Hernandez_____