HARPER LAW, PLC
JON V. HARPER (#1378)
P.O. Box 581468
Salt Lake City, UT 84158
Telephone:  801/910-4357
jharper@jonharperlaw.com

Local Counsel for [Proposed] Lead Plaintiff

[Additional counsel appear on signature page.]

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| GELT TRADING, LTD., a Cayman Islands limited company, | ) ) ) | No. 2:20-cv-00368-JNP-DBP |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| CO-DIAGNOSTICS, INC., a Utah Corporation, et al., | ) ) ) ) | |
| Defendants. | ) ) ) | |
| FERNANDO HERNANDEZ, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | No. 2:20-cv-00481-JNP-JCB |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| CO-DIAGNOSTICS, INC., et al., | ) ) | |
| Defendants. | ) ) ) | |

BRIAN T. PETROS'S OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS

4825-9400-4937.v2

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   THE COMPETING MOVANTS DO NOT MEET RULE 23'S
      REQUIREMENTS...............................................................................................2

     A.    The CDIG's Motion Should Be Denied..................................................3

          1.    Volski Is Subject to a Unique Defense ........................................3

          2.    Ulucan's Atypical Trading Prevents His Appointment ...............4

          3.    Shafer Does Not Possess the Largest Financial Interest .............5

     B.    Tadi Purchased Only Option Contracts and Cannot Be Appointed.........5

     C.    Gelt's Motion Should Be Denied............................................................7

     D.    The Remaining Movants Do Not Possess the Largest Financial Interest................9

III.  CONCLUSION....................................................................................................10

4825-9400-4937.v2

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Andrada v. Atherogenics, Inc.*,
2005 WL 912359 (S.D.N.Y. Apr. 19. 2005) ..................................................................6, 7, 8

*Applestein v. Medivation Inc.*,
2010 WL 3749406 (N.D. Cal. Sept. 20, 2010) .....................................................................4, 7

*Bang v. Acura Pharm., Inc.*,
2011 WL 91099 (N.D. Ill. Jan. 11, 2011) ...........................................................................1, 5

*Bensley v. FalconStor Software, Inc.*,
277 F.R.D. 231 (E.D.N.Y. 2011) .........................................................................................1, 4

*Bricklayers of W. Pa. Pension Plan v. Hecla Mining Co.*,
2012 WL 2872787 (D. Idaho July 12, 2012) ........................................................................6, 7

*Deering v. Galena Biopharma, Inc.*,
2014 WL 4954398 (D. Or. Oct. 3, 2014) ..............................................................................9, 10

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005) .................................................................................................................4

*Eichenholtz v. Verifone Holdings, Inc.*,
2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ........................................................................9

*Galmi v. Teva Pharm. Indus. Ltd.*,
302 F. Supp. 3d 485 (D. Conn. 2017) .....................................................................................4

*Hedick v. Kraft Heinz Co.*,
2019 WL 4958238 (N.D. Ill. Oct. 8, 2019) .............................................................................2

*In re Bard Assocs., Inc.*
(10th Cir. Dec. 2, 2009) ...........................................................................................................3

*In re Boeing Co. Aircraft Sec. Litig.*,
2019 WL 6052399 (N.D. Ill. Nov. 15, 2019) .........................................................................8

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ...............................................................................................2, 10

*In re Century Bus. Servs. Sec. Litig.*,
202 F.R.D. 532 (N.D. Ohio 2001) ..........................................................................................10

- ii -

**Page**

*In re Elan Corp. Sec. Litig.*,
  2009 WL 1321167 (S.D.N.Y. May 11, 2009) ...................................................................2, 6

*In re Level 3 Commcn's., Inc. Sec. Litig.*,
  2009 WL 10684924 (D. Colo. May 4, 2009)...........................................................................4

*In re Safeguard Scis.*,
  216 F.R.D. 577 (E.D. Pa. 2003)..............................................................................................5

*In re Snap Inc. Sec. Litig.*,
  2019 WL 2223800 (C.D. Cal. Apr. 1, 2019) ...........................................................................1

*In re Stitch Fix, Inc. Sec. Litig.*,
  393 F. Supp. 3d 833 (N.D. Cal. 2019) ....................................................................................6

*In re Veeco Instruments, Inc. Sec. Litig.*,
  233 F.R.D. 330 (S.D.N.Y. 2005) ............................................................................................4

*Isaacs v. Musk*,
  2018 WL 6182753 (N.D. Cal. Nov. 27, 2018) ........................................................................8

*Kapur v. USANA Health Scis., Inc.*,
  2007 WL 3046664 (D. Utah Oct. 17, 2007) ...........................................................................3

*Kops v. NVE Corp.*,
  2006 WL 2035508 (D. Minn. July 19, 2006) ..........................................................................4

*Li Hong Cheng v. Canada Goose Holdings Inc.*,
  2019 WL 6617981 (S.D.N.Y. Dec. 5, 2019) ...........................................................................5

*Marcus v. J.C. Penney Co., Inc.*,
  2014 WL 11394911 ........................................................................................................5, 6, 8, 9

*Meyer v. Paradigm Med. Indus.*,
  225 F.R.D. 678 (D. Utah 2004) ..............................................................................................3

*Miami Police Relief & Pension Fund v. Fusion-io, Inc.*,
  2014 WL 2604991 (N.D. Cal. June 10, 2014)..........................................................................9

*Micholle v. Ophthotech Corp.*,
  2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) ......................................................................5, 6

*Miller v. Dyadic Int'l, Inc.*,
  2008 WL 2465286 (S.D. Fla. Apr. 18, 2008) ..........................................................................9

4825-9400-4937.v2

**Page**

*Plaut v. Goldman Sachs Grp., Inc.*,
2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019)..........................................................1

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
256 F.R.D. 620 (E.D. Wis. 2009) ............................................................................9

*Rauch v. Vale S.A.*,
378 F. Supp. 3d 198 (E.D.N.Y. 2019) ......................................................................9

*Reinschmidt v. Zillow, Inc.*,
2013 WL 1092129 (W.D. Wash. Mar. 14, 2013) ....................................................5

*Shaffer v. Digit. Generation, Inc.*,
2013 WL 12430537 (N.D. Tex. Sept. 19, 2013).......................................................5

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
95 F. Supp. 3d 607 (S.D.N.Y. 2015).........................................................................4

*Tsirekidze v. Syntax-Brillian Corp.*,
2008 Wl 942273 (D. Ariz. Apr. 7, 2008)..................................................................5

*Weikel v. Tower Semiconductor Ltd.*,
183 F.R.D 377 (D.N.J. 1998).....................................................................................6

*Williams v. Block.One*,
2020 WL 4505569 (S.D.N.Y. Aug. 4, 2020).............................................................8

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§ 78u–4(a)(3)(B)(iii)(II)...........................................................................................3
§78u-4(a)(2)(A)..........................................................................................................8

## I.    INTRODUCTION

Of the six movants seeking appointment as lead plaintiff, only Brian T. Petros ("Petros") satisfies *all* of the requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1]

Although the CDIG claims the largest loss, one of its members, Volski, sold *all* of his shares before any corrective disclosure, and therefore, "has failed to demonstrate that [he] will be an adequate lead plaintiff because [he] was a total in-and-out trader and may be unable to demonstrate loss causation." *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 241 (E.D.N.Y. 2011). "Such 'in-and-out' traders are inadequate or atypical because they are subject to the unique defense that they cannot prove loss causation." *In re Snap Inc. Sec. Litig.*, 2019 WL 2223800, at *3 (C.D. Cal. Apr. 1, 2019); *see also* §II.A.1., *infra*. Ulucan, another member of the CDIG, is an atypical, high volume trader who was in-and-out of Co-Diagnostics, Inc. ("Co-Diagnostics") stock approximately 26 times over the course of only 5 days and submitted unreliable trading data, disqualifying him from serving as lead plaintiff. *See Bang v. Acura Pharm., Inc.*, 2011 WL 91099, at *6 (N.D. Ill. Jan. 11, 2011) ("unusually high-volume and high-frequency trading can raise challenges to typicality and raise a unique defense"); *Plaut v. Goldman Sachs Grp., Inc.*, 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019) (certification errors "'militate against appointment'"); §II.A.2., *infra*. Shafer, the final member of the CDIG, cannot claim the largest financial interest having lost only $64,737. *See* §II.A.3., *infra*. The CDIG's motion should be denied in its entirety.

Tadi did not purchase *any* common stock or other securities issued by Co-Diagnostics, but traded *only* private contracts to purchase Co-Diagnostics stock (call options) during the class

---

[1]    The six movants are: (1) Robert Volski ("Volski"), Hal Ulucan ("Ulucan"), and Tamara Shafer ("Shafer"), together, the Co-Diagnostics Investor Group (the "CDIG"); (2) Gelt Trading, Ltd. ("Gelt"); (3) Tejeswar Tadi ("Tadi"); (4) Petros; (5) Wei Jia ("Jia"); and (6) Stephen Wiley ("Wiley"). Unless otherwise noted herein, all emphasis is added and citations are omitted.

- 1 -

4825-9400-4937.v2

period.  *See* ECF No. 32-3. [2]  Thus, he is an "atypical and inadequate plaintiff" as his appointment "would introduce factual issues irrelevant to stockholder class members."  *In re Elan Corp. Sec. Litig.*, 2009 WL 1321167, at *2 (S.D.N.Y. May 11, 2009); §II.B., *infra*.

Gelt should not be appointed as lead plaintiff because it appears to have manipulated the class period and failed to certify to *all* its transactions for the *full* class period, despite having filed two complaints (the first alleging the longest class period) and a lead plaintiff motion.  *See* §II.C., *infra*.  It is axiomatic that "[f]or the purpose of calculating losses in determining the proper lead plaintiff in securities class actions, courts use the most inclusive class period."  *Hedick v. Kraft Heinz Co.*, 2019 WL 4958238, at *5 (N.D. Ill. Oct. 8, 2019).  And, Gelt's abandonment of a majority of the class by severely shortening the class period reflects its inability and unwillingness to adequately represent the entire class.  *See* §II.C., *infra*.  Gelt's motion should be denied.

Petros, the movant with the next largest loss, satisfies each of the PSLRA's requirements, and has submitted a declaration with his motion setting forth his background and further demonstrating his willingness and ability to represent the class.  *See* ECF Nos. 29, 30-4.  Petros should be appointed Lead Plaintiff.  Movants Jia and Wiley each suffered smaller losses than Petros, and failed to submit any information about themselves or otherwise evidence their ability to represent the class, and their motions should be denied.  *In re Cavanaugh*, 306 F.3d 726, 730-31 (9th Cir. 2002) (motions of movants with smaller financial interests considered only if movant with larger losses fails to meet PSLRA requirements).

## II.    THE COMPETING MOVANTS DO NOT MEET RULE 23's REQUIREMENTS

"The PSLRA instructs district courts to appoint as lead plaintiff the class member that 'it determines to be *most capable* of adequately representing the interests of class members,'" presumptively the movant "who has the greatest financial stake in the outcome of the case, *so long*

---

[2]    Tadi also did not state whether he disclosed all his trades in the longest class period, raising concerns that he may have a net *gain* in the longer period.  *See* ECF Nos. 32, 32-3.

4825-9400-4937.v2

*as he meets the requirements of Rule 23*." *In re Bard Assocs., Inc.*, , at \*2 (10th Cir. Dec. 2, 2009) (emphasis added and in original). This presumption can be rebutted by "'proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff'" either "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" *Meyer v. Paradigm Med. Indus.*, 225 F.R.D. 678, 683 (D. Utah 2004) (quoting 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)).

"[A] district court should 'examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order'" if the presumptively most capable plaintiff is inadequate or atypical. *Kapur v. USANA Health Scis., Inc.*, 2007 WL 3046664, at \*2 (D. Utah Oct. 17, 2007). Although the CDIG, Mr. Tadi, and Gelt each claim to have suffered a larger loss than Petros, all three are disqualified as inadequate or atypical.

### A.      The CDIG's Motion Should Be Denied

The CDIG aggregates the losses of Volski ($168,394), Ulucan ($56,728), and Shafer ($64,737) to claim the largest loss ($268,859). ECF No. 31-3. The CDIG members, however, are subject to unique defenses that render them atypical, and their motion should be denied.

#### 1.      Volski Is Subject to a Unique Defense

The United States Supreme Court recognizes that when a "purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). The CDIG concedes, and all three complaints in these related actions allege, that the first disclosure that caused the price of Co-Diagnostics stock to decline, occurred on May 14, 2020. ECF No. 31 at 2-3; ECF No. 2, ¶¶70-80; ECF No. 14, ¶¶72-82; *Hernandez* ECF No. 2, ¶¶61-71. Thus, "[i]t would be difficult at best . . . to prove loss causation with respect to shares [] sold" before this date. *In re Level 3 Commcn's., Inc. Sec. Litig.*, 2009 WL 10684924, at \*2 (D. Colo. May 4, 2009).

- 3 -

Volski sold *all* of the Co-Diagnostics shares he purchased during the class period by March 30, 2020, six weeks *before* the May 14, 2020 disclosure. *See* ECF No. 31-3. *See also Galmi v. Teva Pharm. Indus. Ltd.*, 302 F. Supp. 3d 485, 499 (D. Conn. 2017) ("A plaintiff that fails to allege the existence of a partial disclosure causally related to its losses cannot recover damages for its in-and-out trading losses."). As a result, Volski, will "be unable to demonstrate loss causation, having sold all of [his Co-Diagnostics] shares prior to any corrective disclosure," and his "status as an in-and-out trader [] render[s] [him] an inappropriate lead plaintiff." *Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,95 F. Supp. 3d 607, 622 & n.16 (S.D.N.Y. 2015).[3]

### 2.    Ulucan's Atypical Trading Prevents His Appointment

During the class period, Ulucan purchased 144,513 shares and sold 139,538 shares in 99 separate transactions and was "in-and-out" of Co-Diagnostics stock approximately 26 different times over the course of just *5 days*. *See* ECF No. 31-2; Exhibit 1 to the Declaration of Jon Harper in Support of Brian Petros's Opposition to Competing Lead Plaintiff  Motions ("Harper Opp. Decl."). This atypical trading renders him subject to unique defenses. *Applestein v. Medivation Inc.*, 2010 WL 3749406, at *3 (N.D. Cal. Sept. 20, 2010); *Bang*, 2011 WL 91099, at *6 (disqualifying high volume trader from serving as lead plaintiff); *Marcus v. J.C. Penney Co., Inc.*, 2014 WL 11394911, at *7 (movant who was "in-and-out" ten times during the class period "would not be typical of the class").[4]

---

[3]    *See also Bensley*, 277 F.R.D. at 241 (declining to appoint in-and-out trader as lead plaintiff); *In re Veeco Instruments, Inc. Sec. Litig.*, 233 F.R.D. 330, 333 (S.D.N.Y. 2005) (same); *Kops v. NVE Corp.*, 2006 WL 2035508, at *6 (D. Minn. July 19, 2006) (same).

[4]    *See also Reinschmidt v. Zillow, Inc.*, 2013 WL 1092129, at *4 (W.D. Wash. Mar. 14, 2013) (typicality of  movant in question where "in-and-out" numerous times during class period); *Tsirekidze v. Syntax-Brillian Corp.*, 2008 Wl 942273, at *4 (D. Ariz. Apr. 7, 2008) ("unique trading pattern" disqualified movant); *Shaffer v. Digit. Generation, Inc.*, 2013 WL 12430537, at *3 (N.D. Tex. Sept. 19, 2013) ( "high volume trading activity, including buying and selling [the company's] stock on the same day" renders movant atypical); *In re Safeguard Scis.*, 216 F.R.D.

- 4 -

While high volume trading *alone* may not render a lead plaintiff movant inadequate, Ulucan's unreliable trading data further "militate[s] against appointment and render[s] him inadequate to serve as lead plaintiff." *Micholle v. Ophthotech Corp.*, 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018); *Li Hong Cheng v. Canada Goose Holdings Inc.*, 2019 WL 6617981, at *6 (S.D.N.Y. Dec. 5, 2019) (same).  For instance, on five different occasions, Ulucan's data claims he sold more shares than he owned,[5] and at least nine of his trades fall outside the prices at which Co-Diagnostics stock traded.[6]  *See* ECF No. 31-2 at 3-5; Harper Opp. Decl., Exs. 1-2.  The totality of Ulucan's trading renders him atypical and prohibits his appointment.

### 3.    Shafer Does Not Possess the Largest Financial Interest

Shafer, the remaining member of the CDIG, like Ulucan, was also "in-and-out" of Co-Diagnostics stock over ten times throughout the class period, raising typicality questions.  *See* ECF No. 31-3; *Marcus*, 2014 WL 11394911, at *7; §II.A.1-2, *supra*.  Regardless, Shafer alone cannot claim the largest financial interest, having lost $64,737.  The CDIG's motion should be denied.

### B.    Tadi Purchased Only Option Contracts and Cannot Be Appointed

Tadi, who claims the next largest financial interest ($152,800), traded *only* in Co-Diagnostics *call option contracts* during the class period, and thus is atypical and not adequate to represent the interests of the entire class.  *See* ECF No. 32-3; *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019) (declining to appoint movant who traded only options);

---

577, 582 (E.D. Pa. 2003) (atypical trading prevented plaintiff's certification as class representative).

[5]    The only way a movant could sell more shares than purchased during the class period is if the movant held shares purchased *before* the class period, but Ulucan claims zero pre-class period holdings.  *See* ECF No. 31-2 at 3.  Common sense confirms, then, that Ulucan's data must be incorrect since an investor cannot own a negative number of shares.

[6]    For example, Ulucan claims he purchased 5,000 shares on May 14, 2020 at $30.35, but the highest price at which Co-Diagnostics shares traded that day (or at all during the class period) was $29.72.  *See id.*

4825-9400-4937.v2

*Micholle*, 2018 WL 1307285, at *9 (same); *Andrada v. Atherogenics, Inc.*, 2005 WL 912359, at *5 (S.D.N.Y. Apr. 19. 2005) (noting absence of cases "in which an option holder was deemed to be an appropriate lead plaintiff for an entire securities fraud class action"); *Weikel v. Tower Semiconductor Ltd.*, 183 F.R.D 377, 391-92 (D.N.J. 1998) (option contract purchaser "is neither a typical nor an adequate class representative").

Were Tadi "appointed lead plaintiff for the entire class, factual issues specific to [him] in determining the precise value of the options . . . would likely 'threaten to become the focus of the litigation.'" *Andrada*, 2005 WL 912359, at *5; *see also Micholle*, 2018 WL 1307285, at *9; *Bricklayers of W. Pa. Pension Plan v. Hecla Mining Co.*, 2012 WL 2872787, at *4 (D. Idaho July 12, 2012) (options losses not equal to stock losses because "options' valuable lives are limited, their value is conditional, and there is a large disparity between their price and their potential value"); *Weikel*, 183 F.R.D. at 391 (options only holder was atypical); *Elan*, 2009 WL 1321167, at *2. The nature of "options trading and the information [] used to make investment decisions [in connection therewith] could become the focus of the litigation, distracting from the central issue: did [Co-Diagnostics] commit a fraud on the market?" *Applestein*, 2010 WL 3749406, at *4. Simply put, investors who trade **only** in options "should not be appointed lead." *Id.*; *see also Andrada*, 2005 WL 912359, at *5.[7]

The court in *Hecla Mining* struggled with the unique issues surrounding option contract valuations, finding the comparison of stock losses to option contract losses "like comparing apples to oranges." 2012 WL 2872787, at *3-*4. Significantly, the court found that in determining lead plaintiff movants' financial interests, a loss from call option contracts is not equal to the **entire** cost of purchasing the option contracts, but should be valued at approximately one-third of the purchase price. *See id.* at *4. Here, Tadi claims his loss is equal to the **entire** purchase price of

---

[7]  Conversely, a movant that purchased **both** option contracts **and** common stock could be appointed as lead plaintiff. *See, e.g., Applestein*, 2010 WL 3749406, at *4.

- 6 -

his call option contracts ($152,800). *See* ECF No. 32 at 6. That is wrong. *Hecla Mining* confirms that his option contract loss may be only one-third of that purchase price, or as low as $50,000.

In addition, Tadi's only purchase during the class period was allegedly 382 option contracts at $4.00 for a total expenditure of $152,800 on May 14, 2020. *See* ECF Nos. 32-3; 32 at 6. The option contracts allegedly had a strike price of $32 (a price at which the stock had never traded) and an expiration date of May 15, 2020 – only *one day* after Tadi purchased the contracts. *Id*. Thus, by purchasing these option contracts, Tadi placed a bet that Co-Diagnostics stock would rise from a trading high of $29.72 on May 14, 2020 to *at least* $32 *the next day*, nearly an 8% increase. A highly risky bet like this "relies more on speculation rather than investing," and is not "typical of the class." *Marcus*, 2014 WL 11394911, at *7. Tadi's questionable option contracts loss figure, combined with his risky speculation and the fact that he traded *only* option contracts leads to the inexorable conclusion that his "motion to be appointed lead plaintiff fails because [he is] both atypical and inadequate to support the entire class." *Andrada*, 2005 WL 912359, at *5; *see also Isaacs v. Musk*, 2018 WL 6182753, at *3-*4 (N.D. Cal. Nov. 27, 2018) (movants' speculative options trading rendered "a substantial portion of its loss assertion uncertain" and disqualified the movant from lead plaintiff appointment).

### C.     Gelt's Motion Should Be Denied

While Gelt claims the next largest loss ($117,845), it is neither willing nor able to adequately represent the interests of the *entire* class. Gelt filed the first complaint in these related actions on June 15, 2020, on behalf of purchasers of Co-Diagnostics stock between February 25, 2020 and May 15, 2020, and published notice alerting those class members of their right to move for appointment as lead plaintiff. *See* ECF No. 2, ECF No. 30-1. Gelt, however, completely ignored the PSLRA's requirement that it *must* "provide a sworn certification," which, among other things, "sets forth *all of the transactions* of the plaintiff in the security that is the subject of the complaint *during the class period specified in the complaint*." 15 U.S.C. §78u-4(a)(2)(A). In

fact, Gelt provided *no* trading data at all setting forth its transactions in Co-Diagnostics securities during its alleged class period.  This alone is disqualifying.  *See also In re Boeing Co. Aircraft Sec. Litig.*, 2019 WL 6052399, at \*5 n.6 (N.D. Ill. Nov. 15, 2019) (failure to certify to all transactions is "one more question mark" in finding movant inadequate); *Williams v. Block.One*, 2020 WL 4505569, at \*2 (S.D.N.Y. Aug. 4, 2020) (movants who failed to disclose *all* of their transactions found inadequate).  On July 2, 2020, the second related action was filed also alleging the February 25, 2020 through May 15, 2020 class period.  *Hernandez* ECF No. 2.

On July 15, 2020, Gelt filed an "amended complaint" (*see* ECF No. 14) that is *identical* to its original complaint with three exceptions, Gelt: (1) shortened the class period to April 30, 2020 through May 15, 2020, *excising four-fifths of the class* (¶31); (2) included its stock transactions for this new shorter period (¶32); and (3) asserted a net loss of approximately $117,845 (¶33).  "[I]t is a reasonable inference that [Gelt] alleged a significantly shorter class period because [it] may have achieved substantial gains on [Co-Diagnostics] stock transactions during the [longer class period]."  *Deering v. Galena Biopharma, Inc.*, 2014 WL 4954398, at \*11 (D. Or. Oct. 3, 2014).  Indeed, "it is unclear why a plaintiff would argue for a shorter class period at th[e] [lead plaintiff] stage, which would have the effect of reducing the class size and limiting the potential amount of damages, unless it was in the best interest of that particular plaintiff only."  *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at \*2 (N.D. Cal. Aug. 22, 2008).  "This self-serving behavior is precisely the type of rebuttable evidence provided in the PSLRA that would prohibit this Court from appointing [Gelt] lead plaintiff."  *Marcus*, 2014 WL 11394911, at \*7.

Gelt's failure to provide its trading data in the longer class period is even more concerning given that "[c]ourts have almost universally held that the longest, most inclusive class period should be used to determine which lead plaintiff movant has the largest financial interest in the

4825-9400-4937.v2

relief sought by the class." *Deering*, 2014 WL 4954398, at *10 (citing cases).[8]  Gelt's decision to jettison four-fifths of the class evidences its unwillingness and inability to adequately represent the *entire* class.  *Deering*, 2014 WL 4954398, at *11 (movant's decision to "excise[] more than two thirds of the class period" to serve its own purposes rendered the movant unable to adequately represent the class).  In short, Gelt cannot "simply define the class [it] seek[s] to represent" in order to claim the largest financial interest, *i.e.*, "shrink the kingdom until [he is] king."  *In re Century Bus. Servs. Sec. Litig.*, 202 F.R.D. 532, 536 (N.D. Ohio 2001).  Gelt's motion should be denied.

**D.      The Remaining Movants Do Not Possess the Largest Financial Interest**

The remaining competing lead plaintiff movants claim fewer losses than Petros – Petros lost $75,000 compared to Jia's $40,999 and Wiley's $38,461.  Petros is not subject to unique defenses, and he has demonstrated that he will adequately represent the class as lead plaintiff.  *See* ECF Nos. 29, 30-4.  Petros should be appointed Lead Plaintiff, and Jia's and Wiley's motions should be denied.  *See Cavanaugh*, 306 F.3d at 730 ("the court must . . . consider[] the plaintiff with the next-largest financial stake, *until* it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23").

---

[8]      *See also Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 624-25 (E.D. Wis. 2009) ("courts usually . . . use the most inclusive class period"); *Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, 2014 WL 2604991, at *1 n.3 (N.D. Cal. June 10, 2014) ("the longest class period governs"); *Miller v. Dyadic Int'l, Inc.*, 2008 WL 2465286, at *4 (S.D. Fla. Apr. 18, 2008) ("the longest and most inclusive class period . . . is the appropriate class period for purposes of appointing a lead plaintiff"); *Rauch v. Vale S.A.*, 378 F. Supp. 3d 198, 208 n.11 (E.D.N.Y. 2019) ("courts use the longer class period").

4825-9400-4937.v2

## III.   CONCLUSION

Each of the competing lead plaintiff motions should be denied because the movants fail to meet Rule 23's requirements.  Petros, the only movant who meets all of the PSLRA's requirements, respectfully requests that his motion be granted.

DATED:  August 31, 2020

Respectfully submitted,

HARPER LAW, PLC
JON V. HARPER (#1378)

s/ Jon V. Harper
JON V. HARPER

P.O. Box 581468
Salt Lake City, UT 84158
Telephone:  801/910-4357
jharper@jonharperlaw.com

Local Counsel for [Proposed] Lead Plaintiff

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
TRICIA L. McCORMICK
JUAN CARLOS SANCHEZ
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
triciam@rgrdlaw.com
jsanchez@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed] Lead Plaintiff

- 10 -

4825-9400-4937.v2

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on August 31, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Jon V. Harper
JON V. HARPER (#1378)

HARPER LAW, PLC
JON V. HARPER (#1378)
P.O. Box 581468
Salt Lake City, UT 84158

E-mail:  jharper@jonharperlaw.com

4825-9400-4937.v2

**Mailing Information for a Case 2:20-cv-00368-JNP-DBP Gelt Trading v. Co-Diagnostics et al**

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Brent R. Baker**
  bbaker@parsonsbehle.com

- **Michael C. Fasano**
  mfasano@fasanolawfirm.com

- **Richard W. Gonnello**
  rgonnello@faruqilaw.com,ecf@faruqilaw.com

- **Jon V. Harper**
  jharper@jonharperlaw.com

- **Mark F James**
  mjames@jdrslaw.com,administrator@jdrslaw.com

- **Katherine M. Lenahan**
  klenahan@faruqilaw.com

- **Michael A. Pineiro**
  mpineiro@mnrlawfirm.com

- **David W. Scofield**
  dws@psplawyers.com,ch@psplawyers.com,reception@psplawyers.com,accounting@psplawyers.com

- **Mitchell A. Stephens**
  mstephens@jdrslaw.com,administrator@jdrslaw.com

- **D. Loren Washburn**
  lwashburn@smithwashburn.com,ldschmidt@smithwashburn.com,mhernandez@smithwashburn.com,pmartinez@smithwashburn.com,info@smithwashburn.com

- **Zachary J. Weyher**
  zachweyher@gmail.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)