**Ryan B. Hancey, Esq., rhancey@keslerrust.com, Utah State Bar Number 9101**
**Attorney for Defendants**
**Kesler & Rust**
**68 South Main Street, Suite 200**
**Salt Lake City, Utah 84101**
**(801) 532-8000 (TEL.)**

**Christopher P. Milazzo, Esq., cmilazzo@cmfllp.com, Pro Hac Vice (forthcoming)**
**Attorney for Defendants**
**Carmel, Milazzo & Feil LLP**
**55 West 39th Street, 18th Floor**
**New York, New York 10018**
**(212) 658-0458 (TEL.)**

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **GELT TRADING, LTD., a Cayman Islands limited company,**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**CO-DIAGNOSTICS, INC., a Utah Corporation, DWIGHT EGAN, JAMES NELSON, EUGENE DURENARD, EDWARD MURPHY, RICHARD SERBIN, REED BENSON and BRENT SATTERFIELD,**<br><br>      **Defendants.** | Case NO. 2:20-cv-00368-JNP-DBP<br><br>MOTION TO DISMISS<br><br>Judge Jill N. Parrish |

Defendants Co-Diagnostics, Inc. ("Co-Diagnostics"), Dwight Egan ("Egan"), James Nelson ("Nelson") Eugene Durenard ("Durenard"), Edward Murphy ("Murphy"), Richard Serbin ("Serbin"), Reed Benson ("Benson") and Brent Satterfield ("Satterfield") (collectively, the "Defendants")[1] move, pursuant to Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 9(b) and the Private Litigation Securities Reform Act (15 U.S.C. § 78u-4) ("PSLRA") to dismiss the Amended Complaint[2] filed herein by Plaintiff Gelt Trading Ltd. ("Plaintiff" or "Gelt").

<u>**Relief Sought and Grounds Therefor**</u>

This is a motion to dismiss the amended complaint of Plaintiff on the grounds that it has failed to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6).  As set forth in more detail below, the Plaintiff has failed to sufficiently plead a claim for relief for securities fraud under Rules 12(b)(6) and Rule 10b-5 of the Securities Exchange Act.  Specifically, Plaintiff failed to allege any precise purportedly false statement sued upon, in contradiction of the federal pleading standards – it is unclear exactly which statements actually made by any Defendant are alleged to be false and actionable.  Moreover, as best as can be gleaned from the Amended Complaint, the purportedly false statements alleged to have been made by Defendants are all true statements; therefore Plaintiff has failed to plead a misrepresentation of material fact.  Finally, as it pertains to the Individual Defendants in this case, Plaintiff has failed to ascribe any of the alleged misstatements to any of them except for Defendant Satterfield.

---

[1] Egan, Nelson, Durenard Murphy, Serrbin, Benson and Satterfield are referred to collectively herein as the "Individual Defendants".

[2] The Amended Complaint shall be cited herein as follows: "Am. Compl. ¶ _."

In addition, the pleadings fail to meet the PSLRA's standard to plead a claim for securities fraud because Plaintiff has plead scienter only generally and does not plead it with any specificity, nor does Plaintiff plead it with respect to any of the Individual Defendants.

Finally the claim under Section 20(a) of the Securities Exchange Act must be dismissed because there is no primary securities violation alleged.

## Statement of Facts

### The Parties

Plaintiff is a Cayman Island limited company and was a shareholder of Co-Diagnostics. (Am. Compl. ¶¶ 23, 32.)  Plaintiff purports to bring this action on behalf of a class consisting of those who purchased Co-Diagnostics stock between April 30, 2020 and May 15, 2020 and who were damaged thereby.  (*Id.* ¶ 31.)

Co-Diagnostics is a publicly traded company that was initially formed to monetize DNA-related testing technology for diagnostic purposes.  (*Id*. ¶¶ 39. 42-47.)  Co-Diagnostics' stock trades on the NASDAQ market.  (*Id*. ¶¶ 47-48.)  The Individual Defendants are senior officers and/or directors of Co-Diagnostic.  (*Id.* ¶ 26).

### Co-Diagnostics Develops a Test for COVID-19

In or about late 2019, a new virus, which became known as COVID-19, spread rapidly through the population of Wuhan, China, and then the world.  (*Id*. ¶ 49.)  COVID-19 is a virus that can be detected by DNA-based testing.  (*Id*. ¶ 49.)

According to the Amended Complaint, Co-Diagnostics, recognizing the need for testing for COVID-19, began developing a test for the virus using a technology called CoPrimer, which had been developed and patented by Satterfield before the outbreak of the virus.  (*Id*. ¶ 50.)  Co-Diagnostic quickly developed a test for COVID-19 and became the first company to obtain CE-

Certification for the test.  (*Id.* ¶ 51.)[3]  On February 24, 2020, Co-Diagnostics announced that it had obtained regulatory approval to export its COVID-19 test kits to the European Community.  (*Id.* ¶ 52.)  Plaintiff alleges that, as a result of the foregoing, the price of Co-Diagnostics stock began to rise.  (*Id.* ¶ 53.)

On April 6, 2020, Co-Diagnostics became the first company to receive the approval of the United States Food and Drug Administration (the "FDA") for its COVID-19 tests under the Emergency Use Authorization, which allowed Co-Diagnostics' test to be used by certified clinical laboratories in the United States for the diagnosis of COVID-19.  (*Id.* ¶ 54.)  According to the Amended Complaint, Co-Diagnostics' stock, which had settled at about $8 per share in early April 2020, began to climb again.  (*Id.* ¶ 55.)

**Co-Diagnostics Begins Selling Its Tests**

After receiving CE Certification and the FDA approval, Co-Diagnostics entered into contracts to sell its tests to a number of countries and to a number of states in the United States. (Am. Comp. ¶¶ 57-58.)  Among such contracts was a contract to sell its tests to the state of Utah for a program called TestUtah, that was to run from March 31, 2020 through May 31, 2020 and a contract to provide tests for Iowa.  (*Id.* ¶ 58.)

**Public Statements Regarding Co-Diagnostics' Tests**

On April 30, 2020, The Salt Lake Tribune published an article entitled *This is a Potential Public Health Disaster: COVID-19 results from TestUtah.com are raising questions*.  (Am. Compl. ¶ 59.)  This article purportedly raised questions regarding the accuracy of the COVID-19

---

[3] CE Certification establishes that the product is evaluated under relevant directives and is compliant therewith.  CE Certification is required for most products before being offered to consumers in the European Union.

tests used in the TestUtah program. (*Id*. ¶ 59; Hancey Decl. Exh. A[4].)  According to the Complaint,

Satterfield was allegedly quoted in the article "reassuring the public that the alleged inaccuracies

were due to 'population differences.'"  (*Id*. ¶ 60.)   This quote, however, is taken out of context.

The article actually provides, in pertinent part as follows:

> As of this week, TestUtah had eight testing sites around the state and had conducted tests on more than 18,000 Utahns, more than half of whom did not have symptoms of the coronavirus – despite state guidelines that only symptomatic patients should be tested.
>
> This is likely to produce more negative results than the state's other test sites, said executives of the companies involved in TestUtah.  Mark Newman, whose health software company Nomi Health has a $5 million contract with the state to run the group's testing said comparing TestUtah's results with those of other sites is "not apples to apples."
>
> "We're talking about population differences," agreed Brent Satterfield, founder and chief science officer of Co-Diagnostics Inc., which produces the test kit used by TestUtah's sites.

(Hancey Decl. Exh. A.)

The Amended Complaint further asserts that Satterfield "reassured the market" in the Salt

Lake Tribune article by stating that Co-Diagnostics' tests were between 99.52% and 100%

accurate.   (Am. Compl. ¶ 61.)   This was not a quote from Satterfield, but was apparently

paraphrasing him.  This portion of the article provided that:

> Co-Diagnostics' COVID-19 tests scored between 99.52% and 100% in evaluations conducted by the FDA and in Europe.  He said those evaluations often put his kits side by side against other available kits to gain consensus results.  "We are in the same ballpark as other tests," Satterfield said.

(Hancey Decl. Exh. A.)

---

[4] See *MacArthur v. San Juan Cty.*, 309 F.3d 1216, 1221 (10th Cir. 2002) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.") (citation omitted).

**The May 1, 2020 Co-Diagnostics Press Release**

On May 1, 2020, Co-Diagnostics issued a press release entitled *Co-Diagnostics, Inc. Releases COVID-19 Test Performance Data: Consistently Demonstrates 100% Sensitivity and 100% Specificity Across Independent Evaluations* (the "Press Release"). (Am. Compl. ¶ 62.) Plaintiff overstates the contents of the press release – which is the primary ostensible misrepresentation complained of – alleging that the "press release unequivocally stated that Co-Diagnostics Covid-19 tests were 100% accurate based upon data gathered from across the world." (*Id.* ¶ 62.)   Rather, the Press Release announces that Co-Diagnostics released the results of evaluations performed by a number of institutions, and provides, in pertinent part:

> Co-Diagnostics, Inc. (Nasdaq:CODX) (the "Company") . . . today released COVID-19 test performance data demonstrating 100% sensitivity and 100% specificity, the metrics used to determine the accuracy in molecular diagnostic testing.
>
> The data being released comes from independent evaluations of the performance of the Company's COVID-19 test in the field.   These evaluations were conducted in Mexico by the Mexican Department of Epidemiology (InDRE"), India, and elsewhere in the US and abroad.  Each study concluded 100% concordance for both specificity and sensitivity.

* * *

(Hancey Decl. Exh. B.)  The Press Release issued on Co-Diagnostics' website contained a link with the results of each evaluation, each of which demonstrated 100% sensitivity and 100% specificity.  (Hancey Decl. Exh. B.)

The Amended Complaint also alleges that in the Press Release, Satterfield "did not mention that the tests might be less than 100% accurate – abandoning his recognition that the tests were between 99.52% and 100% accurate" and instead "insisted that the []tests were 100% accurate based upon experimental data".  (Am. Compl. ¶ 63.)  Again, this is an inaccurate characterization

based upon the language quoted in the Press Release.  Rather, Satterfield stated that "[i]n countries where [Co-Diagnostics has] been evaluated against other tests, we have consistently and repeatedly achieved 100% clinical sensitivity and specificity and you can't do better than that."  (Hancey Decl. Exh. B.)

**Co-Diagnostics' Stock Price Rises**

Plaintiff alleges that Co-Diagnostics issued the Press Release to repress the negative press contained in the April 30, 2020 Salt Lak City Tribune Article.  (Am. Compl. ¶ 62.)  Plaintiff further alleges, citing to a number of purported quotes (without identifying the dates and/or sources), that the market accepted Co-Diagnostics' "false claims of 100% accuracy", resulting in a "boon" to Co-Diagnostics' share price.  (*Id*. ¶ 67.)   The Complaint alleges that Co-Diagnostics' "plan to repress negative reports about its tests seemed to work" and its stock price continued to rise in May 2020, and on anticipation of its first quarter 2020 earnings report, reached an all-time high of $29.72 on May 14, 2020. (*Id*. ¶¶ 69-70.)

**Decline in Stock Price**

The Amended Complaint alleges that on May 14, 2020, the Salt Lake City Tribune reported that TestUtah, which used Co-Diagnostics' tests, declined to join other Utah labs in a joint experiment to confirm the quality of one another's tests.  (Am. Compl. ¶ 73.)  Additionally, this article stated that Co-Diagnostics' tests "have a higher 'limit of detection' – that is, they require more of the virus to trigger a positive result – than most other coronavirus tests approved in the U.S., according to an analysis by the life sciences publication BioCentury."  (*Id*. ¶ 72.)  Further, on the same day, Iowa Governor Kim Reynolds announced that "the State Hygienic Lab completed the Test Iowa validation process yesterday, achieving ratings of 95 percent accuracy for determining positives and 99.7 percent accurate in determining negatives."  (*Id*. ¶ 75.)

Plaintiff alleges that, based upon the foregoing reports, the price of Co-Diagnostics' stock began to sharply decline, falling to just over $15 per share when the markets opened on May 15, 2020. (*Id*. ¶¶ 77, 82.)   Plaintiff further alleges that additional articles were published that questioned the accuracy Co-Diagnostics' tests and the evaluations by third-parties of its tests.  (*See id.* ¶¶ 82, 83.)

Based upon the foregoing, Plaintiff alleges that Co-Diagnostics knew that its tests were not 100% accurate and intentionally issued statements to the public "to fend off truthful analysis and scientific skepticism about its supposed miracle test."  (*Id*. ¶ 84.) With respect to the Individual Defendants, Plaintiff alleges that they are liable because, as senior executives and/or directors, they controlled or had the authority to control the contents of reports and press releases, and that they knew the same to be false.  (*See id*. ¶¶ 85-86.)   As a result, Plaintiff alleges that it (and the putative class) suffered losses when they sold Co-Diagnostics stock

### **Relevant Procedural History**

Plaintiff commenced this proposed class action on June 15, 2020 by the filing of a complaint.  On July 15, 2020, Plaintiff filed an Amended Complaint which is the subject of the instant motion.  (Dkt # 14.)  In the Amended Complaint, Plaintiff asserts the following two causes of action: (1) Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder against all Defendants (Am. Compl. ¶¶ 95-99); and (2) Violation of Section 20(a) of the Exchange Act against the Individual Defendants (*id*. ¶¶ 100-01).

## Argument

### POINT I

### STANDARDS ON A MOTION TO DISMISS
### UNDER RULE 12(b)(6)

The Court's function on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is not to weigh the potential evidence the parties might present at trial, "but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief can be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir.2003). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 570 (2007). In the context of a motion to dismiss, plausibility means facts which allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

While the Court is required to accept all factual allegations contained in the complaint as true, the Court should not accept as true conclusory allegations without sufficient factual support. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As explained by the Supreme Court in *Iqbal*:

> [T][he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice.

556 U.S. at 678.

Further, where a complaint pleads facts that are merely consistent with a defendant's liability, it falls short of the line between possibility and probability. *See Iqbal*, 556 U.S. at 678. The factual allegations must be enough to raise a right to relief above a speculative level. *Twombley*, 550 U.S. at 555.

## POINT II

### THE AMENDED COMPLAINT FAILS TO SUFFICENTLY PLEAD
### A CLAIM FOR SECURITIES FRAUD UNDER SECTION 10(b) AND RULE 10b-5

Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder prohibit fraudulent acts in connection with the purchase or sale of securities. *See* 15 U.S.C. § 78j(b); 27 C.F.R. § 240.10b-5. Section 10(b) prohibits "any person, directly or indirectly . . . [t]to use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j. Rule 10b-5 provides that "[i]t shall be unlawful for any person . . . [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 27 C.F.R. § 240.10b-5. To state a claim for securities fraud under Section 10(b) and Rule 10b-5 promulgated thereunder, a plaintiff must allege the following:

> (1) The defendant made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make statements not misleading; (2) the statement complained of was made in connection with the purchase or sale of securities; (3) the defendant acted with scienter, that is with intent to defraud or recklessness; (4) the plaintiff relied on the misleading statements; and (5) the plaintiff suffered damages as a result of his reliance.

*Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1094-95 (10th Cir. 2003).

In addition to meeting the pleading standards under Rule 12(b)(6) as set forth in *Twombley* and *Iqbal*, a complaint alleging securities fraud must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b) and the PSLRA. *See Gibson v. Vanisi*, 2005 WL 165382, at *2-3 (D. Utah, Jan. 25, 2005). Rule 9(b) requires that "the circumstances constituting the fraud . . . be stated with particularity." Fed. R. Civ. P. 9(b). In order to satisfy Rule 9(b), the complaint must "set forth the

time, place and contents of the false representation, the identity of the party making the false statements, and the consequences thereof." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000). However, under Rule 9(b), malice, knowledge, intent, and other condition of mind may be averred generally. *Id.*

In passing the PSLRA, Congress further heightened the pleading standards for securities fraud claims. *See Gibson*, 2005 WL 165382, at 3. The PSLRA does not add to the above five elements for stating a securities fraud claim, but rather heightens the pleading requirements to the first and third elements. *Id.*

With respect to the first element (*i.e.,* material misrepresentation), to meet the heightened pleading requirements of the PSLRA the complaint must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading . . ." 15 U.S.C. 78u-4(b)(1). *See also Rumbaugh v. USANA Health Sciences, Inc.*, 2018 WL 5044240, at *3 (D. Utah, Oct. 17, 2018). Further, the PSLRA increased the standard for pleading the third element (*i.e.*, scienter). *See Adams*, 340 F.3d at 1095-96. While under Rule 9(b), malice, intent, knowledge or other mental state could be averred generally, the PSLRA requires that:

> In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. 78u-4(b).

Based upon the exacting requirements of the PSLRA, the Tenth Circuit has recognized that a plaintiff asserting a securities fraud claim "bears a heavy burden at the pleading stage." *In re Zagg, Inc. Sec. Litig.*, 797 F.3d 1194, 1201 (10th Cir. 2015) (citation omitted). As discussed below, Plaintiff woefully fails to meet its heavy burden. Plaintiff has failed to plead with the specificity

- 11 -

required under Rule 9(b) and the PSLRA.  In particular, Plaintiff has failed to sufficiently plead a material misstatement of fact and scienter with the specificity required by Rule 9(b) and the PSLRA.  Accordingly, the Court should dismiss the First Cause of Action for a violation of Section 10(b) and Rule 10b-5.

### A.  Plaintiff Has Failed to Sufficiently Allege a Material Misstatement of Fact

Plaintiff fails to clearly identify in the Amended Complaint the purported misstatements upon which its security fraud claim is based.  As Defendants can best discern, Plaintiff apparently asserts that three misstatements are attributable to Co-Diagnostics.  The first alleged misstatement alleged by Plaintiff is an alleged statement of Satterfield contained in the April 30, 2020 Salt Lake City Tribune article (which did not quote Satterfield).  The article provided that Satterfield "added that Co-Diagnostics' COVID-19 tests scored between 99.52% and 100% in evaluations conducted by the FDA and in Europe."  (*See* Am. Compl. ¶ 61; Hancey Decl. Exh. A.)  The second alleged statement, while never specifically identified, apparently is that Co-Diagnostic in the Press Release "unequivocally stated that Co-Diagnostics' Covid-19 tests were 100% accurate based on data gathered around the world".  (Am. Compl. ¶ 62.)  The third alleged misstatement is an alleged statement of Satterfield also in the Press Release that Co-Diagnostics released data demonstrating that its tests demonstrated 100% sensitivity and 100% specificity in independent evaluations and that Satterfield stated that Co-Diagnostics "consistently and repeatedly achieved 100% clinical sensitivity and specificity and you can't do better than that."  (*Id*. ¶¶ 62-63; Hancey Decl. Exh. B.)

As discussed above, to adequately allege the first element of its security fraud claim, Plaintiff must specify each statement alleged to have been false and/or misleading and the reason or reasons why the statement is false or misleading.  *See Kessman v. Myriad Genetics, Inc.*, 2019 WL 1330363, at 4 (D. Utah, Mar. 25, 2019).  As discussed below, Plaintiff's allegations fail to set

forth the alleged misstatements with the requisite specificity, and how the alleged misstatements were false as required under Rule 9(b) and the PSLRA.

### 1.   Plaintiff Fails to Sufficiently Allege a Purported False Statement

"To state the obvious, the falsity of a statement depends on whether a statement is false, in error or wrong." *Altayyar v. Etsy, Inc*., 242 F. Supp.3d 161, 172 (E.D.N.Y. 2017).  Initially, the Amended Complaint fails to specify actual statements of Co-Diagnostics and/or the Individual Defendants which were actually false when made and therefore upon which it may base its claim. Rather, it apparently hinges its securities fraud claim on purported representations that Co-Diagnostics and/or Satterfield made that its COVID-19 tests were "100% accurate" – a statement that never actually appears in the Press Releases or the article.  (*See* Am. Compl. ¶¶ 63, 67, 83, 84.)  However, as discussed below, an examination of the sources of these purported statements demonstrates that was not what was stated, but is Plaintiff's characterization of the statements.

*In re FX Energy, Inc. Sec. Litig.,* 2009 WL 1812828 (D. Utah, Jun. 25, 2009), is instructive. In *FX Energy*, the plaintiffs alleged a securities fraud claim based upon an alleged misrepresentation contained in a press release that the defendant used the latest 3D technology to drill for oil at two sites.  *Id.* at *7.  The plaintiffs alleged that the statement was false because the defendant actually used older 2D technology to drill the wells.  *Id.*  In analyzing the contents of the press release and documents that the plaintiff alleged contained the misrepresentations, the Court found that the press release and documents did not contain the statement that the plaintiff alleged.  The Court found that:

> Nowhere in any of the documents cited by plaintiffs do the defendants expressly assert that [defendant] was using the latest 3D technology at [the wells] or that 2D technology was not being used at those wells. Accordingly, the actual documents contradict the plaintiffs' characterizations of them in the complaint, so the court is not obliged to credit them as true.

- 13 -

*Id.* Therefore, the Court held that the plaintiffs failed to sufficiently allege a misrepresentation upon which it could base a claim for securities fraud. *Id.* at *8.

Here, as in *FX Energy*, the purported misrepresentation as to "100% accuracy" is not contained in any of the documents cited by Plaintiff, and is in fact contradicted by the actual content of the statements contained therein. For example, Plaintiff alleges that in the Press Release, Co-Diagnostics unequivocally stated that, "Co-Diagnostics' tests were 100% accurate based on data gathered from around the world". (Am. Compl. ¶ 62.) That is simply not what was stated in the Press Release. Instead, the Press Release states that Co-Diagnostics "released COVID-19 test performance data demonstrating 100% sensitivity and 100% specificity, the metrics used to determine the accuracy in molecular diagnostic testing." (Hancey Decl. Exh. B.) The Press Release that was published on Co-Diagnostics' website included a link to the results of the tests and the data upon which this statement was made. (*Id*. Exh. B.). This data demonstrates this statement in the Press Release was true. However, Plaintiff does not allege those tests and data were falsified or otherwise did not support the Press Release statement. In fact, Plaintiff acknowledges the referenced tests and data came from independent sources and did not originate from Co-Diagnostics. (*Id*.).

Similarly, in the April 30, 2020 Salt Lake Tribune article, while Plaintiff claims that Satterfield "reassured the market" of the accuracy of Co-Diagnostics' tests the by stating that Co-Diagnostics' tests were between 99.52% and 100% accurate, this was not a quote from Satterfield, but was apparently paraphrasing him.[5] This portion of the article provided that:

---

[5] In *In Re Splash Technology Holdings Inc. Sec. Litig.*, No. C 99-00109, Fed. Sec. L. Rep. ¶91, 250 at *18 WL 1727377 (N.D. Cal. Sept. 29, 2000), the Court found that paraphrasing the alleged misstatement upon which the securities fraud claim was based was insufficient under the

> Co-Diagnostics' COVID-19 tests scored between 99.52% and 100% in evaluations conducted by the FDA and in Europe.  He said those evaluations often put his kits side by side against other available kits to gain consensus results.  "We are in the same ballpark as other tests," Satterfield said.

(Hancey Decl. Exh. A.)

No statement in this article actually attributable to Satterfield is alleged to be untrue.  Like the Press Release, Satterfield is merely stating the results of evaluations of the tests, and truthfully and accurately so.

Based upon the foregoing, Plaintiff has failed to sufficiently identify the actual purported misrepresentation upon which its securities fraud claim is based.  Accordingly, the Court should dismiss Plaintiff's securities fraud claim.

### 2.  Plaintiff Fails to Sufficiently Plead a Misrepresentation of Material Fact

As discussed above, to meet the heightened pleading requirements of the PSLRA as to the first element, a plaintiff must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading . . ."  15 U.S.C. 78u-4(b)(1); *see also Rumbaugh*, 2018 WL 5044240, at *3; *Kessman*, 2019 WL 1330363, at *4.

Where, as here, a complaint fails to specifically allege each alleged misstatement and leaves it to the Court to sort out the statements and match them with the corresponding adverse facts, the complaint fails to meet the heightened pleading requirements of Rule 9(b) and the PSLRA.  *See Rumbaugh*, 2018 WL 5044240, at * *3-4.  *See also Primo v. Pacific Biosciences of Cal., Inc*., 940 F. Supp.2d 1105, 1111-13 (N.D. Cal. 2013).  Such practice is referred to as "puzzle pleading".  As the Northern District of California explained, in a "puzzle pleading", the plaintiff

---

PSLRA to allege a misrepresentation. *See*, *also*, *In re Securities Litigation BMC Software, Inc.*,18 F.Supp.2d 860, 914 (S.D. Texas 2001).

has "left it up to the defendants and the court to try to figure out exactly what the misleading statements are, and to match the statements up with the reasons why they are false or misleading." *Primo*, 940 F. Supp.2d at 1111.

In *Rumbaugh*, this Court rejected such an approach in the securities class action context. The Court recognized that:

> In the context of securities class complaints, courts have repeatedly lamented plaintiffs' counsels' tendency to place the burden on the reader to sort out the statements and match them with the corresponding adverse facts to solve the "puzzle" of interpreting plaintiffs' claims. . . .  Courts have routinely recognized that "puzzle style" complaints are not only an improper means of pleadings, but also an unwelcome and wholly unnecessary strain on the defendants and the courts system. . . .

2018 WL 504240, at *4 (internal citations and quotations omitted). *See also North Port Firefighters/ Pension—Local Option Plan v. Temple-Inland, Inc.*,936 F. Supp.2d 722, 737 (N.D. Texas 2013) (Court recognized that "complaints must not engage in 'puzzle pleading' by isolating allegations and elements while leaving it to the court to infer a connection as it is the parties' burden to present succinct pleadings which clearly lay out the required elements . . .") (internal quotations and citation omitted);

Here, Plaintiff impermissibly engages in puzzle pleading.  As stated above, Plaintiff quotes statements in a news article and the Press Release, and Plaintiff's characterizations of the statements contained therein.  Plaintiff never specifically identifies what actual statements in the article and Press Release are allegedly false.  This is improper as it cannot be determined which actual statements are allegedly false.

Further, Plaintiff fails to clearly state why the alleged misstatements are allegedly false. Rather, Plaintiff quotes from several news articles and studies that apparently question the accuracy of Co-Diagnostics' COVID-19 tests.  Plaintiff never attempts to match the alleged actual

- 16 -

misstatements of Defendants (as opposed to Plaintiff's characterizations of such statements) to the purported evidence that would show such actual misstatements were false. Ultimately, the Press Release and other alleged statements simply describe the findings of evaluations of Co-Diagnostics' COVID-19 test. The articles quoted by Plaintiff do not substantiate any allegation that Defendants misrepresented the findings of the evaluations of their COVID-19 test, sufficient to meet their pleading burden, but at best the articles contest the accuracy of the evaluations themselves.

As a result, the Amended Complaint fails to set forth the alleged misrepresentations of misleading statements with the specificity required under Rule 9(b) and the PSLRA. Accordingly, the Court should dismiss Plaintiff's First Claim for Securities Fraud.

3. The Amended Complaint Does Not Ascribe Any Alleged Misstatement to Any Individual Defendant Other Than Satterfield

Plaintiff appears to rely upon the "group pleading" doctrine to impute the alleged misstatements contained in the April 30, 2020 Salt Lake Tribune Article and the Press Release to all of the Individual Defendants. Other than with respect to Satterfield, Plaintiff asserts that the alleged misstatement can be attributed to the Individual Defendants based simply on their positions "as senior officers and/or directors" with Co-Diagnostics. This is improper and fails to attribute the alleged false statements to the Individual Defendants.

The PSLRA requires a plaintiff to allege facts that support an inference that an alleged misstatement is attributable to individual defendants. *In re SemGroup Energy Partners LP*, 729 F. Supp.2d 1276, 1296 (N.D. Okl. 2010). Prior to the passage of the PSLRA, a plaintiff could satisfy this requirement by "group pleading" with respect to a company's officers and directors where, because of their positions, they would have had knowledge of such filings. The "group

- 17 -

pleading doctrine" establishes a presumption that statements in group filed documents, such as SEC filings, are the collective work of those individuals with knowledge of the day-to-day affairs of the company. *See In re New Century*, 588 S. Supp.2d 1206, 1223 (C.D. Ca. 2008). Although the Tenth Circuit has not yet weighed in on whether the group pleading doctrine survived the PSLRA's heightened pleading standard, district courts within the Tenth Circuit have done so. *TDC Lending LLC v. Private Capital Group, Inc.*, 340 F.Supp.3d 1218, 1226-1227 (D. Utah 2018) (holding a securities class action plaintiff must plead facts sufficiently demonstrating each defendant's state of mind regarding his or her alleged violations); *see also In re Thornburg Mortg., Inc. Sec. Litig.*, 695 F.Supp.2d 1165, 1199 (D.N.M. 2010).

Here, except for Satterfield, Plaintiff fails to show any alleged misrepresentation in the May 1, 2020 press release or the April 20, 2020 article is attributable to any Individual Defendant. Nor does Plaintiff allege that any of the Individual Defendants (other than perhaps Satterfield, by implication) played any part in preparing the press release or article. Indeed, Plaintiff merely states that the other Individual Defendants are "senior executives and/or directors" of Co-Diagnostics. Even if "group pleading" remains viable under the PSLRA, a complaint must still include allegations about each Individual Defendants' duties or obligations that would lead to a presumption that the company's statement was somehow caused by or is attributable to that Individual Defendant. *See id.* (citing *Johnson v. Tellabs, Inc*., 262 F. Supp2d 937, 946-47 (N.D. Ill 2003) ("Even if the group pleading doctrine survives the PSLRA in some form, however, it is apparent that the statute requires Plaintiffs to allege facts that support an inference that the

statement is attributable to individual defendants"). Simply alleging the individual's title with the company is not sufficient. *Johnson*, 262 F. Supp.2d at 917.[6]

Accordingly, to the extent that the Court determines that Plaintiff sufficiently alleged any misrepresentations, the Court should dismiss the First Claim against all Individual Defendants other than Satterfield.

### B.   Plaintiff Fails to Sufficiently Allege Scienter

Even if the Court finds that Plaintiff has adequately alleged material misrepresentations to support its securities fraud claim, Plaintiff failed to adequately plead that Defendants acted with scienter. Under the PSLRA, a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with . . . [scienter]." *Adams*, 340 F.3d at 1105. *See also City of Philadelphia v. Fleming Companies, Inc.*, 264 F.3d 1245, 1258 (10th Cir. 2001). Under the PSLRA, a complaint must allege sufficient fact giving rise to a strong inference of scienter with respect to each act or omission alleged to have violated Section 10(b) and Rule 10b-5. *See Wolfe v. Aspenbio Pharma, Inc.*, 587 Fed.Appx. 493, 497 (10th Cir. 2014).

In a securities fraud action, the level of scienter needed to establish a violation of Rule 10b-5 is "a mental state embracing an intent to deceive, manipulate or defraud, or recklessness." *See Fleming Companies*, 264 F.3d at 1258. In determining whether scienter is sufficiently alleged under the PSLRA, a court must examine the allegations in their entirety and determine whether

---

[6] At least one court has held that while the group pleading doctrine may still have viability in relation to documents filed with the SEC, it does not apply to impute a statement in a press release to an individual defendant based merely on his position with the company unless there are specific statements attributed to the individual defendant in the press release, or the press release is somehow attributable to the individual defendant. *See New Century,* 588 S. Supp.2d at 1223.

the plaintiff's allegations, taken as a whole, give rise to a strong inference of scienter. *Id.* To give rise to a strong inference of scienter,

> [i]t does not suffice that a reasonable factfinder plausibly could infer from the complaint the requisite state of mind. Rather, . . . a court . . . must engage in a comparative evaluation, it must consider, not only the inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged.

*Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 314 (2007). Thus, as the Supreme Court recognized, "[t]o qualify as 'strong' within the intendment of [the PSLRA] . . . an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent activity." *Id.*

Accordingly, although an inference of scienter need not be irrefutable, it must be more than merely plausible or reasonable. *See Smaller v. The Western Union Co*., drawn950 F.3d 1297, 1305 (10ᵗʰ Cir. 2020) (citing *Tellabs*, 551 U.S. at 314.)) A complaint will survive dismissal "only" if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inferences that could be drawn from the allegations of the complaint. *Id. See also In re Thornburg Mtg., Inc. Sec. Litig.,* 695 F. Supp.2d 1165, 1187 (D.N.M. 2010) (Court held that to allege the "strong inference" of scienter that the PSLRA requires, a plaintiff must allege specific facts giving rise to an inference of culpability that is at least as strong as any competing inference of good faith).

In the Amended Complaint, Plaintiff makes only the most general allegations as to scienter. Essentially, Plaintiff's allegations amount to nothing more than conclusory allegations that Defendants knew the purported statement of 100% accuracy was false. For example, the Amended Complaint contains the following generalized allegations regarding scienter:

- Co-Diagnostics knew that even a highly accurate test – such as 96%, 98% or even 99% -- was not the same, and not remotely as valuable, as a 100% accurate test. That is

- 20 -

because having a 100% accurate test would have significantly distinguished Co-Diagnostics from other larger, more reputable competitors introducing Covid-19 tests into the marketplace. And also because the widespread administration of a Covid-19 test that is even minimally inaccurate can have adverse public health consequences. Co-Diagnostics knew this – and so it intentionally issued statements to the public to fend off truthful analysis and scientific skepticism about its supposed miracle test. (Am. Compl. ¶ 84.)

• As alleged herein, Defendants acted with scienter in that Defendants: knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public, and knowingly participated in or acquiesced in the issuance or dissemination of such statements as primary violations of the federal securities laws. (Am. Compl. ¶ 85.)

• Each of the Individual Defendants directly benefited from the fraudulent overstatement of the Company's technological capabilities at least in the form of their own stock and stock options, which Co-Diagnostics insiders have been cashing in on since the onset of the pandemic. . (Am. Compl. ¶ 86.)

1. The Generalized Allegations of Scienter
   Fail to Satisfy the PSLRA

First, Plaintiff only makes generalized, conclusory allegations that Co-Diagnostics knew that the alleged misstatements were false. Such generalized, conclusory allegations are insufficient to meet the pleading requirements under the PSLRA with respect to scienter. *See Prissert v. EMCORE Corp.*, 894 F. Supp.2d 1361, 1371-72 (D. N.M. 2012) (Court held that general allegations of scienter were insufficient to allege scienter under the PSLRA); *Anderson v. First Sec. Corp.*, 249 F. Supp.2d 1256, 1269 (D. Utah 2002) (court dismissed securities fraud claim finding that the plaintiff failed to plead specific contemporaneous facts showing that the defendants knew their statements were false when made).

The allegations in the Amended Complaint with respect to scienter amount to nothing more than general, conclusory allegations that Defendants knew that the statements were false and that such information would be disseminated to the investing public. (Am. Compl. ¶¶ 85-86.) Such

- 21 -

general allegations, devoid of any specific facts, fail to meet the PSLRAs exacting requirements in pleading scienter.[7]

Accordingly, the Court should dismiss Plaintiff's securities fraud claim.

### 2. Plaintiff Fails to Sufficiently Allege Scienter With Respect to the Individual Defendants

Even if the Court finds the allegations of scienter are sufficient as to Co-Diagnostics, Plaintiff fails to make any specific, individualized allegations of scienter with respect to any of the Individual Defendants.  Rather, Plaintiff improperly engages in "group pleading" in an attempt to allege that all "Defendants" or "Individual Defendants" knew that the alleged statements issued by Co-Diagnostic regarding accuracy were false and that same would be disseminated to the public.  (Am. Compl. ¶¶ 85-86.)  As discussed below, Plaintiff's allegations in the Amended Complaint fail to sufficiently assert scienter as to each Individual Defendant.

Although the Tenth Circuit has not addressed the issue as to whether, following the enactment of the PSLRA, group pleading may be used to plead scienter, district courts within the Tenth Circuit have rejected the use of group pleading with respect to scienter.  *See Zhang v. LifeVantage Corp.*, 2017 WL 2599883, at *10 (D. Utah, Jun. 15, 2017); *TDC Lending LLC v.*

---

[7] In an effort to show motive and a benefit to support its scienter allegations, Plaintiff makes the bald allegation that the "Individual Defendants directly benefited from the overstatement of the Company's technological capabilities in the form of at least the false inflation of their own stock and stock options, which Co-Diagnostics insiders have been cashing in on since the onset of the pandemic." (Am. Comp. ¶ 86.) Plaintiff has failed to allege any specific evidence of sales of stock or exercise of options by any of the Individual Defendants.  Even assuming the truth of this allegation, the mere fact that insiders sold stock during the class period fails to sufficiently allege scienter; instead, the plaintiff must allege that such sales were "suspicious" or "unusual".  See *In re Hain Celestial Grp., Inc. Sec. Litig.*, 2020 WL 1676762, at * 16 (E.D.N.Y., Apr. 6, 2020). Plaintiff fails to do so.  Accordingly, this Court is not required to accept this entirely unsupported allegation as true.

*Private Cap. Grp., Inc*., 340 F. Supp.3d 1218, 1227 (D. Utah 2016) [8]; *In re Thornburg Mtg. Sec.*

*Litig.*, 695 F. Supp.2d 1165, 1200 (D.N.M. 2010). In *Thornburg Mortgage*, the court found that:

> [W]hile there may not be a wholesale statutory prohibition on group pleading, the group-pleading doctrine may no longer work well, or at all, in pleading the scienter requirement. While group pleading may still be permissible and useful when pleading conduct and omissions, the plaintiffs run a substantial risk when they rely on group pleading to show scienter. It may no longer be sufficient for plaintiffs to allege conduct or circumstances as to a group of individuals, and then to ask the Court to infer that the conduct evinces the necessary scienter as to all defendants in that group. In many situations, such allegations may no longer be appropriate. What is clear, however, and Congressional language indicates it, is that the ***PSLRA***

---

[8] In *TDC Lending*, this Court explained that

> The PSLRA requires a plaintiff to "state with particularity facts giving rise to a strong inference that *the defendant* acted with the required state of mind." The singular "defendant" seemingly requires a plaintiff to make individualized allegations. Otherwise, the liability of defendants would "depend on whether they were all sued in a single action or were each sued alone in several separate actions" — a conclusion the Fifth Circuit called "inconceivable." . . .
>
> The conclusion that the PSLRA precludes group pleading also comports with Congress' widely recognized intent in enacting the PSLRA. Congress enacted the PSLRA "to restrict abuses in securities class-action litigation, including ... the practice of filing lawsuits against issuers of securities in response to any significant change in stock price, regardless of defendants' culpability." The heightened scienter standard thus helps distinguish between those in a corporation who acted with scienter and those who did not. Group pleading, in contrast, allows a plaintiff to group defendants together without distinguishing the bases for each defendant's culpability. This is incompatible with the purpose of the PSLRA, which is "to eliminate complaints that do not clearly show scienter." This goal is accomplished by requiring that "a plaintiff, to proceed beyond the pleading stage, must allege facts sufficiently demonstrating each defendant's state of mind regarding his or her alleged violations." Thus, the court concludes group pleading is no longer sufficient to allege scienter for securities fraud.

340 F. Supp.3d at 1227 (internal citations omitted).

> ***demands that the facts giving rise to the necessary inference of scienter be pled with particularity as to each defendant.*** The Court will therefore only consider scienter allegations that are specific as to an actor or allegations as to which the Court can readily discern the actor.

695 F. Supp.2d at 1200 (emphasis added).

Here, the Amended Complaint fails to make any individualized allegations of scienter as to each of the Individual Defendants.  Rather, Plaintiff lumps all of the Individual Defendants (or all Defendants) together in its allegations of scienter.  Indeed, other than Satterfield, Plaintiff fails to even mention another Individual Defendant by name in its allegations of alleged wrongful conduct or scienter.

Based upon the foregoing, Plaintiff has failed to sufficiently allege scienter as to the Individual Defendants.  Accordingly, the Court should dismiss the First Count of the Amended Complaint as against the Individual Defendants.

## POINT III

### THE COURT SHOULD DISMISS
### PLAINTIFF'S CLAIM UNDER SECTION 20(a)

In Count II of the Amended Complaint, Plaintiff purports to assert a claim for control person liability against the Individual Defendants under Section 20(a) of the Exchange Act. Section 20(a) of the Exchange Act provides that:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person . . . . is liable . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).  To state a cause of action under Section 20(a), a plaintiff must establish: (1) a primary violation of the securities laws; and (2) "control" over the primary violator.  *See Rumbaugh*, 2018 WL 5044240, at \*10 (citing *City of Philadelphia*, 264 F.3d at 1270-71).

Accordingly, where, as here, a plaintiff fails to adequately allege a primary violation of the securities laws, a claim under Section 20(a) must be dismissed.  *See, e.g.*, *Rumbaugh*, 2018 WL 5044240, at \*10 (holding because the amended complaint failed to state a claim under Section 10(b) of the Exchange Act for securities fraud, the plaintiff's control person liability claim also failed); *Gibson v. Vanisi*, 2005 WL 165382, at \*5 (D. Utah, Jan. 25, 2005) ("Because the court concludes that Plaintiff failed to adequately plead primary claims that any of the defendants violated section 10(b) and Rule 10b-5, Plaintiff's section 20(a) claim is dismissed"); *TDC Lending LLC*, 340 F. Supp.3d at 1230-31 (dismissing Section 20(a) claim where the plaintiff failed to sufficiently allege a primary violation of the securities laws).

Because, as discussed above, Plaintiff has failed to adequately plead a primary violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, the Court must dismiss Count II for control person liability under Section 20(a).

## Conclusion

For all the foregoing reasons, the Court should grant Defendants' motion, and dismiss the Amended Complaint in its entirety.

Dated: Salt Lake City, Utah
September 14, 2020

> Kesler & Rust
> /s/ Ryan B. Hancey
> Ryan B. Hancey, Esq., Utah State Bar
> Number 9101
> Attorney for Defendants
> 68 South Main Street, Suite 200
> Salt Lake City, Utah 84101
> (801) 532-8000 (TEL.)