Melissa A. Fortunato
Marion Passmore
**BRAGAR EAGEL & SQUIRE, P.C.**
580 California Street, Suite 1200
San Francisco, California 94104
Telephone: (415) 568-2124
Email: fortunato@bespc.com
      passmore@bespc.com

Phillip Kim
**THE ROSEN LAW FIRM, P.A.**
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Email: pkim@rosenlegal.com

*Counsel for the Co-Diagnostics Investor
Group and Proposed Co-Lead Counsel for
the Class*

Mark F. James (5295)
Mitchell A. Stephens (11775)
**JAMES DODGE RUSSELL & STEPHENS**
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Email: mjames@jdrslaw.com
      mstephens@jdrslaw.com

*Liaison Counsel for the Co-Diagnostics
Investor Group and Proposed Liaison Counsel
for the Class*

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH**

| | |
|---|---|
| GELT TRADING, LTD., a Cayman Islands limited company,<br><br>*Plaintiff,*<br><br>v.<br><br>CO-DIAGNOSTICS, INC., a Utah Corporation, DWIGHT EGAN, JAMES NELSON, EUGENE DURENARD, EDWARD MURPHY, RICHARD SERBIN, REED BENSEN, and BRENT SATTERFIELD,<br><br>*Defendants.*<br><br>[Caption Continued on Next Page] | **THE CO-DIAGNOSTICS INVESTOR GROUP'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR CONSOLIDATION OF ACTIONS, APPOINTMENT <u>AS LEAD PLAINTIFF,</u> AND APPROVAL OF SELECTION OF COUNSEL**<br><br>Case No. 2:20-cv-00368-JNP-DBP<br><br>Judge Jill N. Parrish |

| | |
|---|---|
| FERNANDO HERNANDEZ, Individually and on Behalf of All Others Similarly Situated, <br><br>    *Plaintiff,* <br><br> v. <br><br> CO-DIAGNOSTICS, INC., DWIGHT EGAN, JAMES NELSON, EUGENE DURENARD, EDWARD MURPHY, RICHARD SERBIN, REED BENSON, and BRENT SATTERFIELD, <br><br>    *Defendants.* | Case No. 2:20-cv-00481-JNP-JCB <br><br> Judge Jill N. Parrish |

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    ARGUMENT....................................................................................................... 2

      A.    The Co-Diagnostics Investor Group is Presumptively the Most Adequate ............ 2

      B.    The Presumption that the Co-Diagnostics Investor Group is the Most Adequate
           Plaintiff Has Not Been Rebutted................................................................................ 3

           1.    The Co-Diagnostics Investor Group is an Appropriate PSLRA Group...... 3

           2.    The Co-Diagnostics Investor Group Properly Calculated Losses Using
               the Preferred LIFO Method ........................................................................ 6

           3.    The Co-Diagnostics Investor Group's Trading Patterns Do Not Render
               It Atypical or Inadequate ........................................................................... 8

      C.    The Co-Diagnostics Investor Group's Choice of Counsel Should Be Approved. 10

III.   CONCLUSION.................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*In re Avalanche Biotechnologies S'holder Litig.*,
   No. CIV536488, 2017 Cal. Super. LEXIS 7637 (Cal. Super. San Mateo, Sept. 7, 2017) .......... 5

*In re BearingPoint, Inc. Sec. Litig.*,
   232 F.R.D. 534 (E.D. Va. 2006) ................................................................................. 7

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ..................................................................................... 3

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ...................................................................................... 4

*China Agritech, Inc. v. Resh*,
   138 S. Ct. 1800 (2018) ............................................................................................. 4

*City of Birmingham Firemen's and Policemen's Supplemental Pension Sys. v. Pluralsight, Inc.*,
   No. 1:19-cv-128 JNP, 2020 U.S. Dist. LEXIS 52831 (D. Utah Mar. 25, 2020) ......................... 3

*In re CMED Sec. Litig.*,
   No. 11 Civ 9297 (KBF), 2012 U.S. Dist. LEXIS 47785 (S.D.N.Y. Apr. 2, 2012) .................... 7

*Cook v. Allergan PLC*,
   No. 18 Civ. 12089 (CM), 2019 U.S. Dist. LEXIS 51962 (S.D.N.Y. Mar. 21, 2019) ................ 7

*Delashmet v. Custom Designed Compressor Sys., Inc.*,
   No. CIV 05-0848 MCA/WPL, 2006 U.S. Dist. LEXIS 48538 (D.N.M. Mar. 9, 2006) ......... 3, 4

*Duane & Virginia Lanier Tr. v. Sandridge Energy, Inc.*,
   No. CIV-15-634-M, 2016 U.S. Dist. LEXIS 33638 (W.D. Okla. Mar. 16, 2016) ..................... 5

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005) ................................................................................................. 7

*Eichenholtz v. Verifone Holdings, Inc.*,
   No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22, 2008) .................... 5

*Fialkov v. Celladon Corp.*,
   No. 15cv1458 AJB (DHB), 2015 U.S. Dist. LEXIS 192311 (S.D. Cal. Dec. 9, 2015) .............. 7

*In re Herley Indus.*,
   C.A. No. 06-2596, 2010 U.S. Dist. LEXIS 3463 (E.D. Pa. Jan. 15, 2010) ................................ 5

*In re Host Am. Corp. Sec. Litig.*,
   236 F.R.D. 102 (D. Conn. 2006) ............................................................................... 8

*In re Initial Pub. Offering Sec. Litig.*,
    227 F.R.D. 65 (S.D.N.Y. 2004) .......................................................................... 8

*Jayhawk Capital Mgmt., LLC v. LSB Indus., Inc.*,
    No. 08-2561-EFM, 2009 U.S. Dist. LEXIS 105109 (D. Kan. Nov. 10, 2009) .......................... 9

*Lan v. Ludrof*,
    No. 1:06cv114-SJM, 2008 U.S. Dist. LEXIS 22574 (W.D. Pa. Mar. 21, 2008) ........................ 7

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
    C.A. No. 09-cv-00200-PAB-CBS, 2009 U.S. Dist. LEXIS 44706 (D. Colo. May 4, 2009) ...... 4

*Marcus v. J.C. Penney Co.*,
    C.A. No. 6:13-CV-736, 2014 U.S. Dist. LEXIS 197529 (E.D. Tex. Feb. 28, 2014) .................. 9

*Mariconda v. Farmland Partners Inc.*,
    C.A. No. 18-cv-02104_DME-NYW, 2018 U.S. Dist. LEXIS 204411
    (D. Colo. Dec. 3, 2018) ...................................................................................... 8

*Meyer v. Paradigm Med. Indus.*,
    225 F.R.D. 678 (D. Utah 2004) ............................................................................ 4

*In re Milestone Scientific Sec. Litig.*,
    183 F.R.D. 404 (D.N.J. 1998) ............................................................................... 6

*In re Molycorp, Inc. Sec. Litig.*,
    C.A. No. 12-cv-0292-WJM-KMT, 2012 U.S. Dist. LEXIS 89191
    (D. Colo. May 29, 2012) ............................................................................. 4, 5, 6, 8

*In re Nature's Sunshine Prods., Inc.*,
    No. 2:06-CV-267 TS, 2006 U.S. Dist. LEXIS 57594 (D. Utah Aug. 16, 2006) ........................ 4

*In re PolarityTE, Inc. Sec. Litig.*,
    No. 2:18-cv-510-JNP, 2019 U.S. Dist. LEXIS 8620 (D. Utah Jan. 16,2019) ............................ 3

*Perlmutter v. Intuitive Surgical, Inc.*,
    No. 10-CV-03451-LHK, 2011 U.S. Dist. LEXIS 16813 (N.D. Cal. Feb. 15, 2011) .................. 7

*Prefontaine v. Research in Motion Ltd.*,
    No. 11-cv-4068, 2012 U.S. Dist. LEXIS 4238 (S.D.N.Y. Jan. 5, 2012) .................................. 8

*In re Ribozyme Pharm., Inc. Sec. Litig.*,
    192 F.R.D. 656 (D. Colo. 2000) ............................................................................ 4

*Rice v. Genworth Fin. Inc.*,
    C.A. No. 3:17cv59, 2017 U.S. Dist. LEXIS 137110 (E.D. Va. Aug. 25, 2017) ........................ 5

*In re Shop-Vac Mktg. & Sales Practices Litig.*,
  MDL No. 2380, 2013 U.S. Dist. LEXIS 7023 (M.D. Pa. Jan. 17, 2013) .................................... 5

*In re Watchguard Sec. Litig.*,
  No. C05-678JLR, 2005 U.S. Dist. LEXIS 40923 (W.D. Wash. July 13, 2005) ......................... 7

*Yellowdog Partners, LP v. Curo Grp. Holdings Corp.*,
  No. 18-2662-JWL, 2019 U.S. Dist. LEXIS 40482 (D. Kan. Mar. 13, 2019) ............................. 8

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B) ............................................................................................... 1, 2, 3, 4

**Rules**

Fed. R. Civ. P. 23 .............................................................................................................. 1, 3

iv

## I.   **INTRODUCTION**

Movants Tamara Shafer ("Shafer") and Robert Volski ("Volski") (together, the "Co-Diagnostics Investor Group" or "Movant")[1] respectfully submit this reply memorandum of law in response to the oppositions filed by competing movants Gelt Trading, Ltd. ("Gelt") (ECF No. 59), Brian T. Petros ("Petros") (ECF No. 60), and Tejeswar Tadi ("Tadi") (ECF No. 57) (collectively, the "Competing Movants" or "Competing Motions") and in further support of their Motion for Consolidation of Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel.

Four competing motions for appointment as lead plaintiff remain before the Court. As demonstrated in the Co-Diagnostics Investor Group's lead plaintiff motion and opposition to competing lead plaintiff motions (ECF Nos. 31, 55), the Co-Diagnostics Investor Group is the "presumptively most adequate plaintiff" to serve as lead plaintiff under the Private Securities Litigation Reform Act of 1995 ("PSLRA") because its members, *inter alia*, have the largest financial interest in the relief sought by the class and otherwise satisfy the requirements of Rule 23 of the federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B). Moreover, since the presumption has not been – and cannot be – rebutted, the Co-Diagnostics Investor Group should be appointed lead plaintiff, and its selection of counsel should be approved. *See id.*

While the Competing Movants attempt to rebut the presumption that the Co-Diagnostics Investor Group is the most adequate plaintiff, they fall short of presenting the "proof" necessary under the PSLRA to demonstrate that the Co-Diagnostics Investor Group "will not fairly and adequately protect the interests of the class" or is "subject to unique defenses." 15 U.S.C. § 78u-

---

[1] Hal Ulucan ("Ulucan") moved as a member of the Co-Diagnostics Investor Group in the opening motion (ECF No. 31) and opposition (ECF No. 55). In performing additional due diligence, it was discovered that Ulucan had additional Class Period trades resulting in a gain. Therefore, Ulucan is hereby withdrawn from the Co-Diagnostics Investor Group. Shafer and Volksi are aware of Ulucan's withdrawal and reaffirm their intention to pursue the Action in a collaborative and cohesive manner. *See*, Exhibit 1 to the Declaration of Mitchell A. Stephens ("Stephens Decl."), dated September 14, 2020.

4(a)(3)(B)(iii)(II).  The Competing Movants argue that: (1) the Co-Diagnostics Investor Group is an improper group (ECF No. 57 at 3-5; ECF No. 59 at 6-8); (2) Volski and Shafer's losses have been improperly calculated (ECF No. 57 at 5-7; ECF No. 60 at 3-4; ECF No. 59 at 4-5); and, (3) the Co-Diagnostics Investor Group members' trading patterns render them atypical (ECF No. 60 at 4-5; ECF No. 59 at 5-6).

Each of these attacks fail.  The Co-Diagnostics Investor Group is a proper group under the PSLRA as evidenced by the joint declaration submitted with its lead plaintiff application and the additional joint declaration submitted herewith.  *See* ECF No. 31-3 and Stephens Decl., Ex. 1; 15 U.S.C. § 78u-4(a)(3)(B)(iii) (permitting a "group of persons" to serve as lead plaintiff).  The Competing Movants' quibbles with the Co-Diagnostics Investor Group's loss calculation methodology and trading patterns do not render the Co-Diagnostics Investor Group inadequate to represent the Class.  In fact, the Co-Diagnostics Investor Group is the ***only*** movant with trading throughout the entirety of the Class Period, making it more typical than the Competing Movants who only traded on the last two to three days of the Class Period.  *See* ECF Nos. 30-2, 31-2, 32-3, 59 at 3-4.

Since the Co-Diagnostics Investor Group is presumptively the most adequate plaintiff, and the presumption has not been rebutted, the Co-Diagnostics Investor Group should be appointed lead plaintiff, and its selection of counsel should be approved.[2]

## II.    ARGUMENT

### A.    The Co-Diagnostics Investor Group is Presumptively the Most Adequate

The PSLRA mandates that the Court appoint "the most adequate plaintiff" to be lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  The PSLRA further provides a rebuttable presumption

---

[2] "The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v).

that the "most adequate plaintiff" is the movant or group that, *inter alia*, has the largest financial interest in the relief sought by the class and otherwise satisfies the requirements of Rule 23.[3] Here, the Co-Diagnostics Investor Group demonstrated in its lead plaintiff motion and opposition that it has the largest financial interest and satisfies Rule 23.[4] *See* ECF Nos. 31, 55. In fact, Volski alone has a larger financial interest in the litigation than any other Competing Movant. *See* ECF No. 55 at 3. As such, the Co-Diagnostics Investor Group is the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

**B.     The Presumption that the Co-Diagnostics Investor Group is the Most Adequate Plaintiff Has Not Been Rebutted**

The presumption that the Co-Diagnostics Investor Group is the presumptively most adequate plaintiff may be rebutted only "upon proof" that it (1) "will not fairly and adequately protect the interests of the class," or (2) is "subject to unique defenses" that render it "incapable of adequately representing the class."[5] The Competing Movants attempt to rebut the presumption that the Co-Diagnostics Investor Group is the most adequate plaintiff on a variety of bases. *See* ECF No. 57 at 3-9; ECF No. 59 at 4-8; ECF No. 60 at 3-5. Each attack fails for the reasons provided below.

**1.     The Co-Diagnostics Investor Group is an Appropriate PSLRA Group**

The Co-Diagnostics Investor Group is a properly constituted group that can well serve the putative class as a lead plaintiff. Contrary to the Competing Movants' argument, the weight of authority, including this Circuit's precedent, holds that unrelated investors may serve together as

---

[3] 15 U.S.C. § 78u-4(a)(3)(B)(iii); *City of Birmingham Firemen's and Policemen's Supplemental Pension Sys. v. Pluralsight, Inc.*, No. 1:19-cv-128 JNP, 2020 U.S. Dist. LEXIS 52831, at *3 (D. Utah Mar. 25, 2020); *In re PolarityTE, Inc. Sec. Litig.*, No. 2:18-cv-510-JNP, 2019 U.S. Dist. LEXIS 8620, at *4-5 (D. Utah Jan. 16, 2019) (similar).

[4] With Ulucan's withdrawal, the Co-Diagnostics Investor Group's losses total $233,131.40.

[5] 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *In re Cavanaugh*, 306 F.3d 726, 729 n.2 (9th Cir. 2002); *see also Delashmet v. Custom Designed Compressor Sys., Inc.*, No. CIV 05-0848 MCA/WPL, 2006 U.S. Dist. LEXIS 48538, at *4 (D.N.M. Mar. 9, 2006).

3

lead plaintiff.6  The PSLRA expressly allows a "group of persons" to serve as lead plaintiff, 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), and the majority of courts hold that unrelated investors may work together to serve as a lead plaintiff movant.7  Proposed lead plaintiff groups have been found to be proper so long as they demonstrate their ability to function as a cohesive unit and a chosen mechanism by which the group members and counsel would communicate with one another about the litigation.  *See In re Level 3 Commc'ns, Inc. Sec. Litig.*, C.A. No. 09-cv-00200-PAB-CBS, 2009 U.S. Dist. LEXIS 44706, at \*15 (D. Colo. May 4, 2009);8 *Molycorp*, 2012 U.S. Dist. LEXIS 89191, at \*8 (finding a group's joint declaration sufficient to show cohesiveness).

The Co-Diagnostics Investor Group is precisely the type of group that courts deem to be cohesive and capable of serving as lead plaintiff.  First, the Co-Diagnostics Investor Group is a small group of only two individuals, each with substantial losses.  *See* ECF No. 31-3 and Stephens

---

6 Gelt cites *Meyer v. Paradigm Med. Indus.*, 225 F.R.D. 678, 682 (D. Utah 2004), to argue that the Co-Diagnostics Investor Group is an "eleventh-hour attempt by unrelated parties to aggregate" losses.  ECF No. 6 n.13.  In *Meyer*, two lead plaintiff movant groups attempted to join together after the lead plaintiff deadline as co-plaintiffs in order to beat the movant with the highest losses.  Here, the Co-Diagnostics Investor Group members moved for lead plaintiff together and submitted a comprehensive joint declaration with their application for lead plaintiff detailing how the group would effectively manage the litigation. 225 F.R.D. at 682-83.

7 *See In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001) ("The [PSLRA] contains no requirement mandating that the members of a proper group be 'related' in some manner; it requires only that any such group 'fairly and adequately protect the interests of the class.'"); *Delashmet*, 2006 U.S. Dist. LEXIS 48538, at \*4 (appointing a group of five investors, including some unrelated investors, as lead plaintiff); *Meyer*, 225 F.R.D.  at 681 (finding it appropriate to aggregate losses of a group containing some unrelated investors in determining lead plaintiff); *In re Nature's Sunshine Prods., Inc.*, No. 2:06-CV-267 TS, 2006 U.S. Dist. LEXIS 57594, at \*5-6 (D. Utah Aug. 16, 2006) (appointing group of three unrelated investors as lead plaintiff); *In re Ribozyme Pharm., Inc. Sec. Litig.*, 192 F.R.D. 656, 659 (D. Colo. 2000) (noting that majority of courts have permitted plaintiffs to aggregate their losses for purposes of lead plaintiff status and that lead plaintiff group should be limited to three to five members); *see also China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 n.3 (2018) ("District courts often permit aggregation of plaintiffs into plaintiff groups"); *In re Molycorp, Inc. Sec. Litig.*, C.A. No. 12-cv-0292-WJM-KMT, 2012 U.S. Dist. LEXIS 89191, at \*8 (D. Colo. May 29, 2012) (preferring a small group as lead plaintiff over an individual because the class will continue to be represented even if a member withdraws or defendants successfully challenge a member during litigation and because a group is more likely to diligently monitor counsel and make consensus decisions that protect the best interests of the class rather than a single individual).

8 Tadi cites to *Level 3* to argue that the Co-Diagnostics Investor Group is not an appropriate group under the PSLRA.  ECF No. 57 at 4.  However, in *Level 3*, unlike here, the movant group provided no joint declaration until the final briefing which, when finally submitted, provided no outline of the group's cohesiveness or even how they would communicate with each other throughout the course of the litigation.  2009 U.S. Dist. LEXIS 44706, at \*15.

4

Decl., Ex. 1.  Second, the Co-Diagnostics Investor Group has evidenced their cohesion and ability to prosecute this Action through two joint declarations regarding their shared commitment to litigating this case together effectively.  *See id.*[9]  Similar declarations have been found to sufficiently evidence cohesiveness in this District and Circuit.  *See, e.g.*, *Duane & Virginia Lanier Tr. v. Sandridge Energy, Inc.*, No. CIV-15-634-M, 2016 U.S. Dist. LEXIS 33638, at *14 (W.D. Okla. Mar. 16, 2016) (finding that a joint declaration demonstrating "the members' willingness and agreement to act as a cohesive group, their intention to regularly consult with each other regarding the conduct of this lawsuit, their process for sharing information and decision-making, and how their counsel will be overseen" was sufficient to adequately demonstrate cohesiveness); *Molycorp*, 2012 U.S. Dist. LEXIS 89191, at *8 (similar).[10]

Aggregation is particularly innocuous here because it does not affect the PSLRA largest loss calculation.  Volski's individual loss of $168,394.32 is still the largest loss asserted by any movant, so even if aggregation were not allowed, Volski would be the presumptive lead plaintiff.[11]

---

[9]  Unlike in *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22, 2008), cited by Tadi, the Co-Diagnostics Investor Group's joint declaration outlines the group's plans to participate in the ongoing litigation, hold conference calls, stay abreast of updates via email and phone calls, and use consensus decision-making.

[10]  Tadi and Gelt criticize the Co-Diagnostics Investor Group for having more than one firm representing it as proposed lead counsel.  ECF No. 57 at 3-5; ECF No. 59 at 6-8.  However, there is nothing unusual about such an arrangement.  In fact, Gelt has three firms acting as co-lead counsel in the present Action.  Additionally, Faruqi & Faruqi, LLP ("Faruqi") has frequently served as co-lead counsel in federal securities actions.  *See, e.g.*, *Rice v. Genworth Fin. Inc.*, C.A. No. 3:17cv59, 2017 U.S. Dist. LEXIS 137110, at *34-35 (E.D. Va. Aug. 25, 2017) (appointing Faruqi and Kahn Swick & Foti, LLC to serve as Co-Lead Counsel with MeyerGoergen PC serving as liaison counsel); *In re Avalanche Biotechnologies S'holder Litig.*, No. CIV536488, 2017 Cal. Super. LEXIS 7637, at *3 (Cal. Super. San Mateo, Sept. 7, 2017) (appointing Faruqi and Robbins Geller Rudman & Dowd LLP as Co-Counsel for the Class for purposes of the Settlement); *In re Shop-Vac Mktg. & Sales Practices Litig.*, MDL No. 2380, 2013 U.S. Dist. LEXIS 7023, at *12 (M.D. Pa. Jan. 17, 2013) (appointing Faruqi, Milberg LLP, and Lax LLP as interim Co-Counsel and Dilworth Paxson LLP as liaison counsel).

[11]  Tadi and Gelt argue that since the Co-Diagnostics Investor Group moved for lead plaintiff together, the group members should not be considered for lead plaintiff individually.  ECF No. 57 at 5; ECF No. 59 at 8 n.22.  Courts have frequently allowed members of a lead plaintiff group to withdraw and have appointed the remaining group members or an individual from the group as the lead plaintiff.  *See In re Herley Indus.*, C.A. No. 06-2596, 2010 U.S. Dist. LEXIS 3463, at *10 (E.D. Pa. Jan. 15, 2010) (appointing lead plaintiff movant and class representative as lead plaintiff after appointed lead plaintiff withdrew, stating "if more than one party was appointed lead plaintiff courts have allowed the remaining lead plaintiff to continue in that capacity even if the other party withdraws"); *In re*

5

ECF No. 55 at 3.  As such, the Competing Movants have failed to demonstrate that the Co-Diagnostics Investor Group would be an inappropriate lead plaintiff group.

### 2.   The Co-Diagnostics Investor Group Properly Calculated Losses Using the Preferred LIFO Method

The Competing Movants next argue that Volski's losses should not count since he sold his shares prior to the May 14, 2020 corrective disclosure.[12]  ECF No. 57 at 5-7; ECF No. 59 at 4-5; ECF No. 60 at 3-4.  This argument is flawed for a number of reasons.  First, this is not a case that rests on one penultimate corrective disclosure on May 14, 2020.  While Volski bought and sold all his shares between February 25, 2020 through March 30, 2020, during that period the truth about the efficacy of the Company's tests began to leak into marketplace.  For example, on March 17, 2020, a research note was published that claimed that "New Strong Signs That Co-Diagnostics' Coronavirus Test Is Ineffective" and that "CODX created their coronavirus vaccine in only one week."  White Diamond Research, *There Doesn't Appear To Be Any Real Interest in Co-Diagnostics' Coronavirus Test – We Reiterate Our $1 Price Target*, SEEKING ALPHA (May 17, 2020).  Then, on March 23, 2020, an article was published speculating that the reason it took Co-Diagnostics so long to receive emergency use authorization from the FDA was because the "test likely has some problems with effectively diagnosing the coronavirus."  *Why Co-Diagnostics' Coronavirus Test Might Not Receive FDA Approval and More Unanswered Questions*, SEEKING ALPHA (Mar. 23, 2020).  These additional partial corrective disclosures are consistent with complaints in this case which allege that Defendants attempted to downplay negative news reports

---

*Milestone Scientific Sec. Litig.*, 183 F.R.D. 404, 406 n.1 (D.N.J. 1998) (appointing the remaining group members as lead plaintiff after one member withdrew); *Molycorp*, 2012 U.S. Dist. LEXIS 89191, at *9 (explaining that a lead plaintiff group is preferable to a single lead plaintiff because the class will continue to be represented if one member withdraws).

[12]  A similar argument is made against group member Shafer for certain of Shafer's losses (ECF No. 59 at 5) and, for the same reasons as discussed in relation to Volski above, should be disregarded.

6

about its coronavirus test.  ECF No. 2 ¶¶ 58-61.  Where, as here, there is leakage and additional partial corrective information entering the market during the Class Period, Courts that do consider *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 125 S. Ct. 1627 (2005) at the lead plaintiff stage do not disregard losses on shares sold before the last corrective disclosure.  *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 544 (E.D. Va. 2006) ("In cases where, as here, there are multiple disclosures, in-and-out traders may well be able to show a loss" and therefore these movants "are appropriately counted as members of the proposed class").

Second, numerous courts have found that *Dura* is not applicable at the lead plaintiff stage. In *Dura*, the Supreme Court recognized that "numerous factors may affect the price of a security," but "did not suggest that a court should guess about the effect of these as-yet-unknown factors in selecting a lead plaintiff, nor did it consider the issue." *In re Watchguard Sec. Litig.*, No. C05-678JLR, 2005 U.S. Dist. LEXIS 40923, at *14-16 & n.6 (W.D. Wash. July 13, 2005) (citing *Dura*, 544 U.S. at 341).  Calculating damages in a securities fraud case is "a highly technical task that usually involves a battle of experts." *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 U.S. Dist. LEXIS 16813, at *16 (N.D. Cal. Feb. 15, 2011) (citing *Lan v. Ludrof*, No. 1:06cv114-SJM, 2008 U.S. Dist. LEXIS 22574, at *42 (W.D. Pa. Mar. 21, 2008)).  Whether certain Class Period losses are compensable while others are not "is beyond the scope of a lead plaintiff appointment motion" and since "the impact of *Dura* on the proposed lead plaintiffs' loss calculations is at best uncertain," it "should be discounted." *Cook v. Allergan PLC*, No. 18 Civ. 12089 (CM), 2019 U.S. Dist. LEXIS 51962, at *8-9 (S.D.N.Y. Mar. 21, 2019).[13]

---

[13] *See also Fialkov v. Celladon Corp.*, No. 15cv1458 AJB (DHB), 2015 U.S. Dist. LEXIS 192311, at *16 (S.D. Cal. Dec. 9, 2015) (partial corrective disclosures rejecting use of *Dura* loss calculations: "At this stage in the proceedings, the Court is inclined to adopt the most expansive view of potential recovery in determining which party has the greatest financial interest for the appointment as lead plaintiff."); *In re CMED Sec. Litig.*, No. 11 Civ. 9297 (KBF), 2012 U.S. Dist. LEXIS 47785, at *15 n.8 (S.D.N.Y. Apr. 2, 2012) (declining to "consider the 'Dura LIFO losses'" because "[t]he Court is not aware of any case in this Circuit" that used that method to "calculate[] losses for purposes of appointing a lead plaintiff where the pleadings allege partial corrective disclosures"); *BearingPoint*, 232 F.R.D. at 544 (where

Given the dispute surrounding the application of *Dura* at the lead plaintiff stage, complete LIFO losses throughout the Class Period are the easiest and most widely accepted form of loss calculation at this point in the litigation.  Using the complete loss LIFO methodology, Volski has $168,394.32 in losses and the Co-Diagnostics Investor Group as a whole has $233,131.40 in losses, far surpassing the losses of any other movant.[14]

### 3.    The Co-Diagnostics Investor Group's Trading Patterns Do Not Render It Atypical or Inadequate

The Competing Movants argue that the Co-Diagnostics Investor Group members' trading activity renders them atypical and inadequate representatives of the Class.  *See* ECF No. 60 at 4-5; ECF No. 59 at 5-6.  This argument is without merit because even if the Co-Diagnostics Investor Group was comprised of "day traders," that would in no way make its members inadequate representatives.  In fact, "the prevailing view . . . is that day and momentum traders have the same incentives to prove defendants' liability as all other class members, and their presence in a securities class does not create intra-class conflicts."  *Molycorp*, 2012 U.S. Dist. LEXIS 89191, at *10 (internal quotations omitted) (quoting *Prefontaine v. Research in Motion Ltd.*, No. 11-cv-4068, 2012 U.S. Dist. LEXIS 4238, at *13 (S.D.N.Y. Jan. 5, 2012)); *In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65, 96 (S.D.N.Y. 2004) ("attacks on the proposed class representatives' reliance on the integrity of the market because of 'unique' investment strategies do not defeat typicality"); *In re Host Am. Corp. Sec. Litig.*, 236 F.R.D. 102, 108 (D. Conn. 2006) (finding that engaging in day-trading does not render a plaintiff atypical or inadequate to represent the class

"there are multiple disclosures, in-and-out traders may well be able to show a loss" and "the inflationary effect of a misrepresentation might well diminish over time, even without a corrective disclosure").

[14]  *Yellowdog Partners, LP v. Curo Grp. Holdings Corp.*, No. 18-2662-JWL, 2019 U.S. Dist. LEXIS 40482, at *17 (D. Kan. Mar. 13, 2019) (using the LIFO method of accounting "in accord with the majority of courts"); *Mariconda v. Farmland Partners Inc.*, C.A. No. 18-cv-02104_DME-NYW, 2018 U.S. Dist. LEXIS 204411, at *10 (D. Colo. Dec. 3, 2018) (stating that courts typically use either the LIFO or FIFO method to calculate losses, but LIFO "is greatly preferred").

because "where the public market of a quoted security is polluted by false information . . . all types of investors are injured") (citations omitted).[15]

In fact, the Co-Diagnostics Investor Group is the most typical movant, being the only movant suffering injury throughout the entire Class Period. The Class Period runs from February 25, 2020 through May 15, 2020. Initial doubts regarding the Company's public claims emerged throughout the Class Period and were solidified on May 14, 2020. *See* ECF Nos. 30-2, 32-3, 59 at 3-4. While Plaintiffs allege that Defendants benefited from stock sales while the Company's stock was artificially inflated, Volski is the only movant who purchased shares on February 27, 2020—when the Company sold 470,000 shares for proceeds of $4.23 million. Thus, Volski is the only movant who has standing to pursue insider trading claims against the Company. *Jayhawk Capital Mgmt., LLC v. LSB Indus., Inc.*, No. 08-2561-EFM, 2009 U.S. Dist. LEXIS 105109, at *20 (D. Kan. Nov. 10, 2009). Similarly, Shafer is the only movant to have held during the April 30, 2020 disclosure. ECF No. 31-2. The Competing Movants, however, each ***only held Co-Diagnostics securities for two consecutive days***. *Id.* Both Tadi and Petros purchased their shares (or options) on May 14, 2020, the day of the final corrective disclosure, and sold all shares on May 15, 2020, the last day of the Class Period. ECF Nos. 30-2, 32-3. Gelt purchased its shares on May 13, 2020 and May 14, 2020, and sold all shares on May 13, 2020 and May 14, 2020. ECF No. 59 at 3-4.

In comparison, the Co-Diagnostics Investor Group held Company stock for the vast majority of the almost three month-long Class Period, unlike Competing Movants who each held

---

[15] Petros cites to *J.C. Penny* as proof that frequent trades make a movant an inadequate lead plaintiff, however, in *J.C. Penney* the movant in question not only sold and repurchased his entire portfolio numerous times, but, more importantly, engaged in short-selling which put his own interests at odds with the majority of the class members since his profits accrued when the stock price declined. *Marcus v. J.C. Penney Co.*, C.A. No. 6:13-CV-736, 2014 U.S. Dist. LEXIS 197529, at *21 (E.D. Tex. Feb. 28, 2014).

for only two days at the very end.  Shafer purchased her first Co-Diagnostics securities on February 28, 2020, only three days into the Class Period, and continued trading Co-Diagnostics stock through the end of the Class Period.  ECF No. 31-2.  The Co-Diagnostics Investor Group therefore is the only movant who suffered losses due to disclosures throughout the Class Period and whose interests are therefore aligned with the entire Class.  This is in clear contrast to Gelt who seeks to shorten the Class Period thereby excluding a large portion of Class members to this Action.  *See* ECF No. 55 at 10-11.

The Competing Movants have thus failed to demonstrate that the Co-Diagnostics Investor Group would be an inappropriate lead plaintiff group.  Accordingly, the Competing Movants have failed to rebut the presumption that the Co-Diagnostics Investor Group is the most adequate lead plaintiff and Movant should therefore be appointed as such.

### C.   The Co-Diagnostics Investor Group's Choice of Counsel Should Be Approved

The Court should approve the Co-Diagnostics Investor Group's choice of counsel.  The Competing Movants do not dispute that BES and Rosen are qualified to represent the Class, nor could they.  As demonstrated in Movant's motion for lead plaintiff, BES and Rosen are highly experienced in securities and class action litigation and will prosecute the Action effectively and expeditiously.  *See* ECF Nos. 31-6, 31-7 (firm résumés).

### III.   CONCLUSION

For the foregoing reasons, the Co-Diagnostics Investor Group respectfully requests that the Court:  (1) consolidate the above-captioned actions; (2) appoint Movant as Lead Plaintiff; (3) approve Movant's selection of Counsel; and (4) grant such other and further relief as the Court may deem just and proper.

10

DATED: September 14, 2020        Respectfully submitted,

**JAMES DODGE RUSSELL & STEPHENS P.C.**

*/s/ Mitchell A. Stephens*
Mitchell A. Stephens
Mark F. James

*Liaison Counsel for the Co-Diagnostics Investor
Group and Proposed Liaison Counsel for the Class*

**BRAGAR EAGEL & SQUIRE, P.C.**
Melissa A. Fortunato
Marion Passmore

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim
275 Madison Avenue, 40th Floor

*Counsel for the Co-Diagnostics Investor Group
and Proposed Co-Lead Counsel for the Class*

11