HARPER LAW, PLC
JON V. HARPER (#1378)
P.O. Box 581468
Salt Lake City, UT 84158
Telephone: 801/910-4357
jharper@jonharperlaw.com

Local Counsel for [Proposed] Lead Plaintiff

[Additional counsel appear on signature page.]

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GELT TRADING, LTD., a Cayman Islands limited company, ) | No. 2:20-cv-00368-JNP-DBP |
| ) | |
| ) | CLASS ACTION |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| CO-DIAGNOSTICS, INC., a Utah Corporation, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| FERNANDO HERNANDEZ, Individually and on Behalf of All Others Similarly Situated, ) | No. 2:20-cv-00481-JNP-JCB |
| ) | |
| ) | CLASS ACTION |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| CO-DIAGNOSTICS, INC., et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

REPLY MEMORANDUM IN FURTHER SUPPORT OF BRIAN T. PETROS'S MOTION
FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF
LEAD COUNSEL

4817-7549-3066.v1

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...............................................................................................................1

II.  PETROS IS THE MOST ADEQUATE PLAINTIFF AND SHOULD BE
     APPOINTED LEAD PLAINTIFF.......................................................................................3

     A.   The 17-Year Old Settlement Which Petros Disclosed in His Moving
          Papers Fails to Rebut the Presumption that He is the Most Adequate
          Plaintiff ...................................................................................................................3

     B.   Petros's Purchases at the End of the Class Period Do Not Render Him
          Atypical....................................................................................................................8

III. CONCLUSION..................................................................................................................10

4817-7549-3066.v1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Andrade v. Am. Apparel, Inc.*,
   2011 WL 13130706 (C.D. Cal. Mar. 15, 2011) ........................................................................5

*Doral Bank P.R. v. Wamu Asset Acceptance Corp.*,
   2010 WL 1180359 (W.D. Wash. Mar. 24, 2010) ......................................................................5

*Dubin v. Miller*,
   132 F.R.D. 269 (D. Colo. 1990) ...............................................................................................7

*Holden v. Triangle Cap. Corp.*,
   2018 WL 1277735 (E.D.N.C. Mar. 12, 2018) ..........................................................................4

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*,
   2019 WL 5287980 (S.D.N.Y. Oct. 18, 2019) ...........................................................................6

*In re Groupon, Inc. Sec. Litig.*,
   2012 WL 3779311 (N.D. Ill. Aug. 28, 2012) ...........................................................................5

*In re Leapfrog Enters., Inc. Sec. Litig.*,
   2005 WL 3801587 (N.D. Cal. Nov. 23, 2005) ..........................................................................5

*In re Officemax, Inc., Sec. Litig.*,
   2001 U.S. Dist. LEXIS 27453 (N.D. Ohio Mar. 21, 2001) ......................................................8

*In re Surebeam Corp. Sec. Litig.*,
   2004 WL 5159061 (S.D. Cal. Jan. 5, 2004).............................................................................8

*In re Williams Sec. Litig.*,
   2006 WL 8439136 (W.D. Okla. June 12, 2006).......................................................................3

*KB Partners I, L.P. v. Barbier*,
   2013 WL 2443217 (W.D. Tex. June 4, 2013) .......................................................................5, 9

*Kline v. Wolf*,
   702 F.2d 400 (2d Cir. 1983)....................................................................................................6

*Lyons v. Scitex Corp.*,
   987 F. Supp. 271 (S.D.N.Y. 1997) ...........................................................................................9

*Meyer v. Paradigm Med. Indus.*,
   225 F.R.D. 678 (D. Utah 2004) ...........................................................................................3, 9

4817-7549-3066.v1

**Page**

*Newman v. Eagle Bldg. Techs.*,
   209 F.R.D. 499 (S.D. Fla. 2002) ...................................................................................8

*Niederklein v. PCS Edventures!.com, Inc.*,
   2011 WL 759553 (D. Id. Feb. 24, 2011) .....................................................................10

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., Inc.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) ...........................................................................3, 5, 6

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
   256 F.R.D. 620 (E.D. Wis. 2009) ..................................................................................2

*Scuderi v. Mammoth Energy Servs., Inc.*,
   2019 WL 4397340 (W.D. Okla. Sept. 13, 2019) .......................................................4, 7

*Silverberg v. DryShips Inc.*,
   2018 WL 10669653 (E.D.N.Y. Aug. 21, 2018) .............................................................5

*Tsirekidze v. Syntax-Brillian Corp.*,
   2008 WL 942273 (D. Ariz. Apr. 7, 2008) ......................................................................2

*Weisman v. Darneille*,
   78 F.R.D. 669 (S.D.N.Y. 1978) .....................................................................................8

*Woburn Ret. Sys. v. Salix Pharm., Ltd.*,
   2015 WL 1311073 (S.D.N.Y. Mar. 23, 2015) ...............................................................5

*Xianglin Shi v. SINA Corp.*,
   2005 WL 1561438 (S.D.N.Y. July 1, 2005) ..................................................................7

*Zemel Family Tr. v. Philips Int'l Realty Corp.*,
   205 F.R.D. 434 (S.D.N.Y. 2002) ...................................................................................8

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78u-4(a)(3)(B)(iii)(I)(aa)-(cc) ......................................................................................2
   §78u-4(a)(3)(B)(iii)(II) ...................................................................................................2

Federal Rules of Civil Procedure
   Rule 23 ......................................................................................................................2, 10

4817-7549-3066.v1

## I.   INTRODUCTION

The remaining four lead plaintiff candidates are: (1) Brian T. Petros; (2) a group of three unrelated individuals, Tamara Shafer, Hal Ulucan, and Robert Volski, who dubbed themselves the Co-Diagnostics Investor Group (the "CDIG"); (3) Gelt Trading, Ltd. ("Gelt"); and (4) Tejeswar Tadi.[1]  The various submissions by these movants confirm that although the CDIG, Gelt, and Tadi claim to have larger losses than Petros, only Petros meets all of the lead plaintiff requirements set out in the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and, thus, is the only movant that should be appointed lead plaintiff.

As set forth in Petros's opposition to the competing lead plaintiff motions, the CDIG's members suffer from myriad defects which prevent them from satisfying the typicality and adequacy requirements of the PSLRA.  *See* ECF No. 60 at 3-5.  Tadi also cannot be appointed lead plaintiff because he purchased only option contracts and, thus, is not typical of the class he seeks to represent. *Id.* at 5-7.  Gelt, *again* failed to certify *all* of its trades in the longest class period that *it initially filed* -- despite having another opportunity to do so in its opposition brief.  *Compare* ECF Nos. 59 at 4-5 *with* ECF No. 60 at 7-9.  Instead, Gelt doubled down on its decision to excise a majority of the class, further confirming *its* inadequacy to represent the entire class as lead plaintiff.  *See* ECF No. 59 at 4-5.[2]

---

[1]   Initially six movants sought appointment as lead plaintiff, but two of those movants either filed a notice that they do not oppose the competing motions (*see* ECF No. 56 (Wei Jia)), or failed to respond at all to the competing motions (Stephen Wiley).  Unless otherwise noted herein, all emphasis is added and citations are omitted.

[2]   Contrary to Gelt's assertion that there are no allegations that support misstatements before April 30, 2020 (*see* ECF No. 59 at 4-5), the amended complaint *it filed* alleges that defendants made statements on February 24, 2020, and April 6, 2020, which caused the price of Co-Diagnostics stock to rise.  *See* ECF No. 14 at ¶¶6, 52-55.  Gelt's amended complaint goes on to explain that

4817-7549-3066.v1

Because the CDIG, Tadi, and Gelt are all disqualified from serving as lead plaintiff, the movant with the next largest financial interest is Petros. Petros has also demonstrated that he satisfies Rule 23's typicality and adequacy requirements, making him the presumptively most adequate plaintiff. *See* ECF Nos. 29, 30-2, 30-3, 30-4; 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa)-(cc). In order to rebut this presumption, the competing movants had the burden of submitting ***proof*** that Petros is either subject to a unique defense or will not adequately represent the class. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

Tadi and Gelt concede that Petros meets the requirements of Rule 23 by making "no argument against [Petros] other than pointing out [his] relatively low financial stake in the litigation." *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *5 (D. Ariz. Apr. 7, 2008); *see also* ECF Nos. 57, 59. The CDIG attempts to meet its burden by speculating that a 17-year old settlement (based upon unproven allegations) in which Petros admitted to no wrongdoing raises questions as to Petros's adequacy. *See* ECF No. 55 at 11-12. While "honesty and trustworthiness are relevant factors in assessing a candidate's ability to serve as an adequate fiduciary for a class," because the CDIG "does not demonstrate that any of the underlying wrongdoing was actually proven or otherwise established on the record . . . it is not appropriate to reject [Petros's] candidacy on this

---

"[t]hroughout this time and thereafter, Co-Diagnostics, its Chief Technology Officeer, and its other officers and directors made unequivocal statements to the market that its Covid-19 tests were 100% accurate . . . this was not true." ECF No. 14 at ¶7. Thus, Gelt's insistence upon excluding the members of the class that purchased during the longest class period render it incapable of being appointed lead plaintiff. *See Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 624-25 (E.D. Wis. 2009) ("[A]ll courts agree that they should not make any binding determinations regarding the proper class period as part of the lead-plaintiff analysis. . . . [N]othing in the [PSLRA] suggests that the Court should make any effort to define the class before it has selected a lead plaintiff. Thus, rather than ruling on the proper class period, courts usually . . . use the most inclusive class period . . . .").

4817-7549-3066.v1

basis." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 417 (S.D.N.Y. 2004); *In re Williams Sec. Litig.*, 2006 WL 8439136, at \*9 (W.D. Okla. June 12, 2006) (a credibility attack disqualifies a class representative only where it is "'so sharp as to jeopardize the interests of absent class members'") .

The CDIG also insinuates, without argument or citation to any authority, that Petros's purchase of shares close to the end of the class period is somehow suspect. ECF No. 55 at 9 (comparing its members' purchases throughout the class period to Petros's purchases "a day before the end of the class period"). A lead plaintiff movant, however, is not required to purchase on any particular day during the class period, but is only required to demonstrate that the movant: "(1) purchased [the company's] stock during the relevant period; (2) at prices they allege were inflated due to [defendants'] misrepresentations; and (3) [] suffered damages"). *Meyer v. Paradigm Med. Indus.*, 225 F.R.D. 678, 681 (D. Utah 2004). Petros's lead plaintiff application fulfills this requirement and his claims are typical of the claims of the class. In short, neither of the CDIG's contentions meet the standard of ***proof*** required to rebut the presumption that Petros is the most adequate plaintiff. Petros should be appointed Lead Plaintiff.

## II.   PETROS IS THE MOST ADEQUATE PLAINTIFF AND SHOULD BE APPOINTED LEAD PLAINTIFF

### A.   The 17-Year Old Settlement Which Petros Disclosed in His Moving Papers Fails to Rebut the Presumption that He is the Most Adequate Plaintiff

With his opening motion for appointment as lead plaintiff, filed on August 17, 2020, Petros filed a Declaration which set forth his educational and business background as both a broker and financial advisor for more than 25 years. *See* ECF No. 30-4 at ¶5. Petros also explained in the Declaration that in 2003, ***17 years ago***, while working as a Vice President of Investments at Merrill

- 3 -

Lynch, Pierce, Fenner & Smith Inc., one of their "clients filed a complaint with the Financial Industry Regulatory Authority ('FINRA') Dispute Resolution against Merrill Lynch" and Petros "alleging various claims stemming from a purportedly unsuitable investment recommendation." *Id*. Petros and Merrill Lynch "denied all allegations of wrongdoing and the complaint was ultimately dismissed with prejudice after the parties entered into an agreement to settle the matter – a resolution that involved no admission of guilt by any party." *Id*.  In addition, FINRA "recommended that all references to the matter be expunged from registration records maintained by the NASD Central Registration Depository." *Id.*

Despite the fact that Petros, an experienced financial advisor for 25 years, was candid and upfront with the Court by disclosing this ***one***, nearly two-decades old, unproven complaint by one customer, the CDIG argues that the allegation renders Petros unable to serve as an adequate lead plaintiff. *See* ECF No. 55 at 11-12.  Courts across the country that have addressed the issue of a lead plaintiff's credibility, including the cases relied upon by the CDIG, overwhelmingly disagree with the CDIG's argument because unproven allegations from "roughly two decades ago" are insufficient to rebut the presumption in favor of the most adequate plaintiff. *Holden v. Triangle Cap. Corp*., 2018 WL 1277735, at * 3 (E.D.N.C. Mar. 12, 2018) (finding evidence from "roughly two decades ago" that the principals of a proposed lead plaintiff had been found in violation of the same securities fraud provisions at issue in the action before the court was insufficient to rebut the presumption in favor of that entity serving as lead plaintiff); S*cuderi v. Mammoth Energy Servs., Inc.*, 2019 WL 4397340, at *5 (W.D. Okla. Sept. 13, 2019) (lead plaintiff movant who pled guilty to misdemeanor

- 4 -

criminal charges "nearly ten years ago, are insufficient to attack his credibility to such a degree as to render him inadequate as a class representative"); *Pirelli*, 229 F.R.D. at 417.[3]

The *Pirelli* opinion is particularly on point. There, a competing movant argued that an entity's adequacy to serve as lead plaintiff was questionable based on a 12-year old fine that was assessed against its principal "'pursuant to a . . . settlement'" in which the person "'neither admitted nor denied'" the allegation. 229 F.R.D. at 416. Ultimately, the court held that although "honesty and trustworthiness are relevant factors in assessing a candidate's ability to serve as an adequate fiduciary for a class," it was "not appropriate" to find the presumption of most adequate plaintiff rebutted on the basis of alleged wrongdoing that was not "actually proven or otherwise established on the record." *Id*. *See also Woburn Ret. Sys. v. Salix Pharm., Ltd*., 2015 WL 1311073, at * 9 (S.D.N.Y. Mar. 23, 2015) ("[M]ere allegations of wrongdoing, without a finding established on the record, are insufficient to rebut [the] presumption of adequacy."). Moreover, the court further held that "even if the violations in question had been proven, they do not appear to represent the degree of

---

[3]     *See also In re Groupon, Inc. Sec. Litig*., 2012 WL 3779311, at *4 (N.D. Ill. Aug. 28, 2012) (DUI convictions and bankruptcy did not render movant inadequate); *Andrade v. Am. Apparel, Inc*., 2011 WL 13130706, at *10 (C.D. Cal. Mar. 15, 2011) (finding "vague" and unproven allegations "inconclusive evidence of misconduct" that was "insufficient to rebut the statutory presumption"); *Doral Bank P.R. v. Wamu Asset Acceptance Corp*., 2010 WL 1180359, at *3 (W.D. Wash. Mar. 24, 2010) (allegations fail to rebut the presumption of most adequate plaintiff where competing movant "cannot point to any current investigation or concern that would give rise to any unique defense"); *Silverberg v. DryShips Inc*., 2018 WL 10669653, at *10 (E.D.N.Y. Aug. 21, 2018) ("purported arrest for a misdemeanor in 1996, approximately twenty-two (22) years ago, is 'not germane to this action and do[es] not call into question [the movants'] adequacy to serve as lead plaintiff'"); *In re Leapfrog Enters., Inc. Sec. Litig*., 2005 WL 3801587, at *4 (N.D. Cal. Nov. 23, 2005) (allegations "about a decade ago" that included an order from the Securities and Exchange Commission "to cease and desist violating the securities laws" did not preclude movant from being appointed lead plaintiff); *KB Partners I, L.P. v. Barbier*, 2013 WL 2443217, at *13 (W.D. Tex. June 4, 2013) ("the Court is unconvinced KB Partners is an inadequate class representative solely because one of its principals was reprimanded by an administrative agency in a foreign country nearly twenty years ago").

4817-7549-3066.v1

serious misconduct that would require" denial of appointment as lead plaintiff.  *Pirelli*, 229 F.R.D. at 417.

Similarly, here, the unproven allegation against Petros does not rise to the level of misconduct required to disqualify him.  The cases cited by the CDIG do not compel a contrary finding.  *See* ECF No. 55 at 11-12.  The first case relied upon by the CDIG, *Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir. 1983), decided nearly 40 years ago, involved proposed class representatives who demonstrated their severe lack of credibility ***in the very action in which they were seeking appointment as class representatives***.  For example, the court relied upon the fact that one plaintiff's false testimony in the case subjected his "credibility to serious question."  *Id*.  Another plaintiff also testified falsely, while the third refused "to answer proper discovery questions," and thus, "there was an adequate basis for the district court to conclude that her representation of the class would be less than adequate."  *Id*.  Unlike the allegations against the plaintiffs in the *Kline* case, the ***unproven*** allegations against Petros were made in a complaint nearly two decades ago, and represent the only allegations against him in  his 25-year financial advisor career.  *Kline* is clearly distinguishable.

Likewise, *In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2019 WL 5287980, at *9 (S.D.N.Y. Oct. 18, 2019), rather than supporting the CDIG's argument, supports Petros's appointment here.  At the more stringent class certification stage, the court could "see no reason why the filing of unrelated and unresolved lawsuits, which have found no wrongdoing on his part, disqualifies [the plaintiff] from serving as lead plaintiff."  *Id*.  Similarly, here, the unrelated and unresolved complaint from 17 years ago against Petros found no wrongdoing on his part and does not disqualify him from serving as lead plaintiff.

- 6 -

Finally, the CDIG's citation to *Dubin v. Miller*, 132 F.R.D. 269, 272 (D. Colo. 1990), confirms that the CDIG's speculation falls far short of the proof necessary to rebut the presumption which lies in favor of Petros.  The court in *Dubin* set a high standard for an attack on a class representative's credibility: "For an assault on the class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims." *Id.  See also Scuderi*, 2019 WL 4397340, at *5 ("'Most courts have rejected the contention that a proposed representative is inadequate because of prior unrelated unsavory, unethical, or even illegal conduct.'").  The court in *Dubin* ultimately found such evidence existed in the case before it where the proposed class representative had specific personal reasons to be motivated by "*animus* toward the company" defendant that would "impair the interests of the class," and also had a personal relationship with a former director of the company which led to the plaintiff failing to name the director as a defendant, thus directly prejudicing the class.  132 F.R.D. at 272.

No such evidence exists here regarding Petros's credibility.  This conclusion that Petros is an adequate lead plaintiff is further demonstrated by juxtaposing the nearly two-decades old unproven allegations resulting in a settlement in which Petros admitted no wrongdoing with the dramatically different factual scenarios in which courts have found class representatives inadequate on the basis of their credibility:

- *Xianglin Shi v. SINA Corp.*, 2005 WL 1561438, at *4 (S.D.N.Y. July 1, 2005) found an individual who had been ***convicted on felony fraud charges*** unsuitable to serve as lead plaintiff;

- 7 -

- *In re Surebeam Corp. Sec. Litig.*, 2004 WL 5159061, at \*7 (S.D. Cal. Jan. 5, 2004) declined to appoint a lead plaintiff' movant whose representative was subject to ***over 60 complaints to securities regulators***;

- *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 504 (S.D. Fla. 2002) found a presumptive lead plaintiff's group member disqualified where the member was ***publicly cited*** as violating SEC rules ***twice***, six years earlier, ***losing supervisory license***;

- *Zemel Family Tr. v. Philips Int'l Realty Corp.*, 205 F.R.D. 434, 437 (S.D.N.Y. 2002) found the presumptive lead plaintiff's trustee inadequate where he ***lied*** about whether he was also a partner of entities that had been subject to ***SEC sanctions three years prior***; and

- *Weisman v. Darneille*, 78 F.R.D. 669, 670-71 (S.D.N.Y. 1978) declined to appoint a class representative who was a ***convicted felon*** and who ***lied and evaded*** during deposition as to previous litigation involvements, including SEC litigation.

In short, cases that conclude "that some personal impropriety by a putative lead plaintiff could act to disqualify that individual are cases in which the improprieties relate to the class claims ***at issue in that proceeding*** or are of a pervasive or egregious nature; neither of those circumstances exist here." *In re Officemax, Inc., Sec. Litig.*, 2001 U.S. Dist. LEXIS 27453, at \*15 (N.D. Ohio Mar. 21, 2001) (emphasis in original). The CDIG's attacks on Petros's credibility do not rebut the presumption that Petros is the most adequate plaintiff.

### B.   Petros's Purchases at the End of the Class Period Do Not Render Him Atypical

The CDIG makes reference to the fact that, unlike the CDIG members who purchased shares throughout the class period, Petros purchased his shares on one of the last days of the class period. *See* ECF No. 55 at 9. This statement also fails to meet the requirement that the CDIG submit ***proof*** that Petros is subject to a unique defense, and tellingly, the CDIG cites ***no authority*** for its implication that purchases at the end of the class period are somehow suspect. *See id.* The reason is simple -- there is none. Rather, "'it is true, of course, that a securities class action does not require a

- 8 -

named plaintiff who bought on each day of the class period.'" *Lyons v. Scitex Corp.*, 987 F. Supp. 271, 275 (S.D.N.Y. 1997).

And, while Petros purchased his shares "during the last [] days of the Class Period," and "[c]iting no authority, [the CDIG] claims this fact distinguishes his loss from the losses of other investors," the CDIG's argument necessarily fails because it "ignores one of the basic elements of the fraud-on-the-market theory, which requires the plaintiff to have 'traded the shares between the time the misrepresentations were made and the time the truth was revealed.'" *KB Partners*, 2013 WL 2443217, at \*13. Petros purchased his shares near the highest price at which Co-Diagnostics stock traded during the class period, when the stock was artificially inflated due to defendants' fraud, and then suffered a significant loss when those shares were damaged after the truth was revealed. Nothing more is required to demonstrate typicality. *See Meyer*, 225 F.R.D. at 681 (typicality is established where a movant: "(1) purchased [the company's] stock during the relevant period; (2) at prices they allege were inflated due to [defendants'] misrepresentations; and (3) [] suffered damages"). Petros's claims are typical of the claims of the class because his "shares were still purchased within the Class Period, and the losses were still caused by the stock price dropping." *KB Partners*, 2013 WL 2443217, at \*13.

Moreover, while the CDIG touts its members' purchases throughout the class period (*see* ECF No. 55 at 9), tellingly the CDIG fails to address the fact that its members sold those very same shares ***before any disclosure of the truth***. *See* ECF No. 31-3; ECF No. 60 at 3-5. As a result, the CDIG members' purchases (and sales before the disclosure of the truth) throughout the class period, rather than supporting its adequacy, are particularly why the CDIG is subject to unique defenses and cannot be appointed lead plaintiff. ECF No. 60 at 3-5. Significantly, the ***only*** shares any of the

CDIG members continued to hold at the end of the class period were those which, like the shares purchased by Petros, were purchased in the last days of the class period.  *See* ECF No. 31-3 at 4-5 (Ulucan's purchases were only in the last few days of the class period); 7 (the 2,534 shares Shafer held when the fraud was disclosed on May 14, 2020, were purchased during the last days of the class period); 8 (Volski held no shares at the time of the May 14, 2020 disclosure).  Thus, Petros's (and nearly every one of the lead plaintiff movants') purchases of shares in the last days of the class period are not unique, and do not subject him to a unique defense.  Rather, Petros "has shown that he suffers from the same injury as other class members, his claims are not unique to the class, and other class members have been injured by the same course of conduct."  *Niederklein v. PCS Edventures!.com, Inc.*, 2011 WL 759553, at *9 (D. Id. Feb. 24, 2011).

In short, none of the attacks the CDIG raised against Petros meet the standard of proof required to rebut the presumption that Petros is the most adequate plaintiff to represent the class as lead plaintiff in this case.

## III.     CONCLUSION

Petros is the only movant that possesses the largest financial interest in the relief sought by the class, and also meets the requirements of Rule 23.  As a result, Petros respectfully requests the Court appoint him lead plaintiff and approve his selection of counsel.

DATED:  September 14, 2020          Respectfully submitted,
                                   HARPER LAW, PLC
                                   JON V. HARPER (#1378)


                                   _____
                                        s/ Jon V. Harper
                                        JON V. HARPER

- 10 -

P.O. Box 581468
Salt Lake City, UT 84158
Telephone:  801/910-4357
jharper@jonharperlaw.com

Local Counsel for [Proposed] Lead Plaintiff

ROBBINS GELLER RUDMAN
   & DOWD LLP
DANIELLE S. MYERS
TRICIA L. McCORMICK
JUAN CARLOS SANCHEZ
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
triciam@rgrdlaw.com
jsanchez@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed] Lead
Plaintiff

- 11 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on September 14, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Jon V. Harper
JON V. HARPER (#1378)

HARPER LAW, PLC
JON V. HARPER (#1378)
P.O. Box 581468
Salt Lake City, UT 84158

E-mail:  jharper@jonharperlaw.com

4817-7549-3066.v1

# Mailing Information for a Case 2:20-cv-00368-JNP-DBP Gelt Trading v. Co-Diagnostics et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Brent R. Baker**
  bbaker@parsonsbehle.com

- **Michael C. Fasano**
  mfasano@fasanolawfirm.com

- **Melissa A. Fortunato**
  fortunato@bespc.com

- **Richard W. Gonnello**
  rgonnello@faruqilaw.com,ecf@faruqilaw.com

- **Ryan B. Hancey**
  rhancey@keslerrust.com,mckenzie@keslerrust.com

- **Jon V. Harper**
  jharper@jonharperlaw.com

- **Mark F James**
  mjames@jdrslaw.com,administrator@jdrslaw.com

- **Katherine M. Lenahan**
  klenahan@faruqilaw.com

- **Marion C. Passmore**
  passmore@bespc.com

- **Michael A. Pineiro**
  mpineiro@mnrlawfirm.com

- **David W. Scofield**
  dws@psplawyers.com,ch@psplawyers.com,reception@psplawyers.com,accounting@psplawyers.com

- **Mitchell A. Stephens**
  mstephens@jdrslaw.com,administrator@jdrslaw.com

- **D. Loren Washburn**
  lwashburn@smithwashburn.com,ldschmidt@smithwashburn.com,mhernandez@smithwashburn.com,pmartinez@smithwashburn.com,info@smithwashburn.com

- **Zachary J. Weyher**
  zachweyher@gmail.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)