IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| GELT TRADING, LTD., <br><br> Plaintiff, <br><br> v. <br><br> CO-DIAGNOSTICS, INC., ET AL., <br><br> Defendants. | MEMORANDUM DECISION AND ORDER ON MOTIONS TO CONSOLIDATE ACTIONS, APPOINT A LEAD PLAINTIFF, AND APPROVE SELECTION OF COUNSEL <br><br> Case No. 2:20-cv-00368-JNP-DBP <br><br> District Judge Jill N. Parrish |

Before the court are multiple motions to (1) consolidate *Hernandez v. Co-Diagnostics*, 2:20-cv-00481-JNP-JCB, with this action; (2) appoint a lead plaintiff in this proposed securities class action suit; and (3) approve the lead plaintiff's selection of counsel. The court GRANTS the motions to consolidate. The court also GRANTS Gelt Trading, Ltd.'s motion to be appointed as lead plaintiff and to approve its selection of counsel. The court DENIES the competing motions for appointment as lead plaintiff and for approval of counsel.

## BACKGROUND

Co-Diagnostics, Inc. sells diagnostic tests for several diseases. When the COVID-19 pandemic began to spread in early 2020, it developed a test to detect the disease. On February 24, 2020, Co-Diagnostics announced that it was the first company to receive approval to sell its COVID-19 diagnostic tests in the European Community. Its stock rose sharply on this news. On April 6, 2020, Co-Diagnostics received emergency use authorization for its tests form the U.S. Food and Drug Administration (FDA). The state governments of Iowa, Nebraska, and Utah purchased tests from Co-Diagnostics for their public testing campaigns.

On April 30, 2020, The Salt Lake Tribune published an article questioning the accuracy of the Co-Diagnostics tests. In the article, Brent Satterfield, Co-Diagnostics' Chief Science Officer, stated that studies had shown that the tests were between 99.52% and 100% accurate. On May 1, 2020, Co-Diagnostics issued a press release claiming that multiple independent evaluations had shown that its tests were 100% accurate.

On May 14, 2020, Co-Diagnostics notched its highest ever stock price. But later in the day, news reports were published that questioned its claims of 100% accuracy. The Salt Lake Tribune reported that the state of Utah had declined to join other major Utah labs in a joint experiment to confirm one another's quality. The Tribune article also stated that Co-Diagnostics tests required a higher concentration of the COVID-19 virus than other tests to register a positive result. The Governor of Iowa issued a public statement stating that the test was 95% accurate in determining positive results and 99.7% accurate in determining negative results. Later, the FDA issued a press release stating that no test would be 100% accurate. Co-Diagnostics' stock price declined throughout the day and fell even further when the market opened on May 15, 2020.

Gelt purchased shares of Co-Diagnostics and lost money when the stock price fell. On June 15, 2020, it filed a class action lawsuit against Co-Diagnostics and its officers and directors for violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Gelt alleged that the class included all individuals who purchased Co-Diagnostics stock between February 25, 2020 and May 15, 2020. But Gelt never served the complaint. On June 18, 2020, Gelt published a notification of the class action lawsuit via a national newswire. The notification listed the class period of February 25, 2020 to May 15, 2020 alleged in the complaint.

On July 2, 2020, Fernando Hernandez filed a separate class action securities fraud lawsuit against Co-Diagnostics and its officers and directors. The allegations of this complaint were substantially similar to the allegations of the Gelt complaint. Hernandez also alleged that the class period was February 25, 2020 to May 15, 2020.

On July 15, 2020, Gelt filed an amended complaint in this action. The amended complaint shortened the proposed class period to April 30, 2020 through May 14, 2020. Gelt attached to the amended complaint a sworn certification as required by 15 U.S.C. § 78u-4(a)(2). The sworn certification averred that the amended complaint specified all of Gelt's transactions in Co-Diagnostics securities during the amended class period. Gelt served the amended complaint on the defendants.

On or about August 17, 2020, five parties filed motions for appointment as lead plaintiff in the class action.[1] Two individuals, Tamara Shafer and Robert Volski, styled themselves as the "Co-Diagnostics Investor Group" and filed a joint motion to be appointed as co-lead plaintiffs. The Co-Diagnostics Investor Group alleged that Shafer lost $64,737.08 and that Volski lost $168,394.32 on stock trades during the initial class period of February 25, 2020 to May 15, 2020, for a total combined loss of $233,131.[2] Tejeswar Tadi moved for appointment as lead plaintiff,

---

[1] A sixth party, Wei Jai, also filed a motion to be appointed as lead plaintiff. But Jai acknowledged that he did not have the largest financial interest in the relief sought by the class and notified the court that he did not oppose another party serving as lead plaintiff.

[2] The Co-Diagnostics Investor Group initially had a third member, Hal Ulucan. But the Co-Diagnostics Investor Group represented in its reply brief that, after further due diligence, it had discovered that Ulucan had additional class period trades that had resulted in a gain. Accordingly, Ulucan withdrew from the Co-Diagnostics Investor Group.

alleging that he lost $152,800 on stock options he purchased on May 14, 2020. Gelt moved for appointment, alleging a net loss of $117,740. Brian Petros, alleging a loss of $75,400.85 on stock trades, also moved for appointment. Finally, Stephen Wiley asserted that he had lost $38,461 and moved to be appointed as lead plaintiff. All the movants also requested approval of their selections of counsel to represent the proposed class. The Co-Diagnostics Investor Group, Petros, and Wiley also moved to consolidate the related *Hernandez* action with this lawsuit.

## ANALYSIS

I.   **MOTIONS TO CONSOLIDATE**

Three of the movants have requested that the court consolidate this action with *Hernandez v. Co-Diagnostics*, 2:20-cv-00481-JNP-JCB. "If more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial," the court must resolve the consolidation motion before appointing a lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(ii). The court may consolidate actions if they "involve a common question of law or fact." FED. R. CIV. P. 42(a).

The *Hernandez* complaint alleges the same essential facts as the amended complaint in this action. Hernandez asserts that Co-Diagnostics and its officers and directors falsely claimed that its COVID-19 test was 100% accurate and that investors lost money when Co-Diagnostics' stock price fell after those claims were shown not to be true. Thus, the *Hernandez* action involves the same questions of law and fact presented in this action. Moreover, the Co-Diagnostics Investor Group and Wiley both notified Hernandez of their motions to consolidate by filing notices in the *Hernandez* action. *See* DUCivR 42-1(b) (requiring a motion to consolidate to be filed in the lower-numbered case and a notice of the motion to be filed in all higher-numbered cases).

4

Hernandez has not opposed the motions to consolidate, nor has he taken any action to prosecute his separate action. Because the requirements of Rule 42(a) are satisfied and because Hernandez apparently concedes to the consolidation of the two actions, the court grants the motions to consolidate the *Hernandez* action with this action. The amended complaint filed on July 15, 2020 in this action shall serve as the operative complaint for the consolidated action.

## II.     MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF

Five parties; the Co-Diagnostics Investor Group, Tadi, Gelt, Petros, and Wiley; have each moved for appointment as lead plaintiff in this action. The Private Securities Litigation Reform Act of 1995 (PSLRA) mandates that courts adopt a presumption that the most adequate lead plaintiff is the person or group of persons that (1) has either filed the complaint or made a motion for appointment as lead plaintiff, (2) "in the determination of the court, has the largest financial interest in the relief sought by the class," and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted only if another class member proves that the presumptive lead plaintiff either (1) "will not fairly and adequately protect the interests of the class" or (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II).

In selecting the lead plaintiff, therefore, the court applies the criteria mandated by the PLSRA to determine which party has established an unrebutted presumption of being the most adequate lead plaintiff.

5

    *A.*    *Co-Diagnostics Investor Group*

The party that claims to have the all-important "largest financial interest" in the litigation is the Co-Diagnostics Investor Group, which asserts that its members are entitled to $233,131 in damages. The other movants assert three principal arguments as to why the group should not be appointed as lead plaintiff. First, they argue that the court should appoint a single lead plaintiff rather than allow Shafer and Volski to pool their claimed losses. Second, the other movants argue that the Co-Diagnostics Investor Group would not be an appropriate lead plaintiff because Volski, who suffered the lion's share of the group's losses, is subject to a unique defense because he was a high-volume, in-and-out day trader. Third, other movants argue that Volski's losses should be disregarded because all his stock trades occurred before the class period defined in the amended complaint. The court agrees that the Co-Diagnostics Investor Group does not have the largest financial interest because Volski's trades fall outside of the only plausible class period presented to the court. Accordingly, the court need not address the first two arguments.

In its initial complaint, Gelt proposed a class period of February 25, 2020 through May 15, 2020. But in its amended complaint, Gelt prosed a shorter class period of April 30, 2020 to May 14, 2020. There is a dispute among some of the potential lead plaintiffs as to which of these two class periods should be used to determine the plaintiff with the largest financial interest in the litigation. For the purpose of selecting a lead plaintiff, courts strongly favor using the most inclusive class period. *Deering v. Galena Biopharma, Inc.*, No. 3:14-CV-00367-SI, 2014 WL 4954398, at *10 (D. Or. Oct. 3, 2014) (collecting cases). "There is a risk, however, to blindly accepting the longest class period without further inquiry, as potential lead plaintiffs would be encouraged to manipulate the class period so they had the largest financial interest." *In re BP, PLC*

6

*Sec. Litig.*, 758 F. Supp. 2d 428, 434 (S.D. Tex. 2010). As a result, courts have developed two different standards for deciding whether to accept a shorter proposed class period at the lead plaintiff selection stage of the litigation. Some courts have ruled that the most inclusive class period should not be rejected unless the factual allegations supporting the longest class period are "*obviously frivolous*." *Id.* (citation omitted). Other courts have reasoned that the plausibility standard for evaluating a motion to dismiss should be used to determine whether to reject a proposed class period. *Id.* The court need not decide which of these two tests to employ. Under either standard, the Co-Diagnostics Investor Group has failed to support its proposed class period with *any* sufficient allegations of fact.

A plaintiff in a securities fraud suit must prove that a defendant's material misrepresentation or omission caused the plaintiff to suffer an economic loss. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005). Generally, the plaintiff must show that he or she lost money by buying on the defendant's lie and selling after the truth came out. Both the original complaint and the amended complaint allege that Co-Diagnostics made material misrepresentations on April 30, 2020 in the Salt Lake Tribune article and in the May 1, 2020 press release. Gelt also alleges that corrective disclosures made on May 14, 2020 caused Co-Diagnostics' stock price to tumble.

In support of its proposed class period of February 25, 2020 through May 15, 2020, the Co-Diagnostics Investor Group points to articles published on March 17, 2020 and March 23, 2020 that were critical of Co-Diagnostics' COVID-19 test. It argues that these articles could have served as "partial corrective disclosures." But neither the Co-Diagnostics Investor Group nor any other movant has identified any material misstatements made by Co-Diagnostics before April 30, 2020.

7

Without a fraudulent statement or omission, there can be no securities fraud claim. Thus, no movant has alleged any facts that would support a colorable theory of liability for a class period starting before April 30, 2020.

The court, therefore, may not consider the longer proposed class period of February 25, 2020 to May 15, 2020 in determining which proposed lead plaintiff has the largest financial interest in the litigation. Because all of Volski's transactions occurred before the alleged misrepresentations on April 30, 2020, none of his $168,394.32 in losses is relevant to the largest financial interest analysis. The losses of the Co-Diagnostics Investor Group's other member, Shafer, amount to $64,737.08, which is less than the alleged losses incurred by other movants.[3] Because the relevant loss incurred by the group is smaller than that of other movants, the Co-Diagnostics Investor Group is not the presumptive lead plaintiff.

  B.  *Tadi*

Tadi is next in line for the largest financial interest in the litigation. On May 14, 2020, he purchased call options for Co-Diagnostics' stock for $152,800. The options contracts had a strike price of $32 and expired the next day. Because Co-Diagnostics' stock traded at a high of $29.72 on May 14, Tadi bet that the stock's value would increase by over 7% by the time that the market closed the following day. Instead, the stock fell precipitously and never reached the strike price. Thus, Tadi's options expired as worthless on May 15, 2020.

---

[3] Shafer also performed many of her stock transactions before April 30, 2020. But because her total claimed losses amount to less than the losses claimed by other movants, the court need not parse Shafer's losses between pre-April 30 transactions and transactions occurring on April 30 or later.

8

Gelt and Petros argue that the court should not appoint Tadi as lead plaintiff because his losses were based entirely upon the purchase of call options. They argue that Tadi is not the presumed lead plaintiff because he cannot satisfy the typicality element of Rule 23. *See* FED. R. CIV. P. 23(a) ("One or more members of a class may sue or be sued as representative parties on behalf of all members only if: . . . the claims or defenses of the representative parties are typical of the claims or defenses of the class . . . ."). Gelt also argues that any presumption that Tadi should be the lead plaintiff is rebutted because Tadi is subject to unique defenses.

There is a split of authority as to whether options traders satisfy the Rule 23 typicality requirement to serve as a class representative. Some courts have ruled that options traders can satisfy the typicality requirement and serve as a lead plaintiff. *Hall v. Medicis Pharm. Corp.*, No. CV08-1821PHX-GMS, 2009 WL 648626, at *4 (D. Ariz. Mar. 11, 2009) (collecting cases); *cf. In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("That the district court believes another plaintiff may be 'more typical' or 'more adequate' is of no consequence. So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status . . . ."). Other courts have concluded that the claims of option purchasers are not typical of claims made by stock purchasers and have rejected option purchasers as lead plaintiffs. *See In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019); *Micholle v. Ophthotech Corp.*, No. 17-CV-1758 (VSB), 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018); *In re Elan Corp. Sec. Litig.*, No. 1:08-CV-08761-AKH, 2009 WL 1321167, at *2 (S.D.N.Y. May 11, 2009).

The court, however, need not decide whether Tadi has made a preliminary showing that he can satisfy the typicality requirement of Rule 23. *See In re Elan*, 2009 WL 1321167, at *2 ("[A]t this stage of the litigation, the moving plaintiff is only required to make a preliminary showing

9

that the adequacy and typicality requirements have been met." (citation omitted)). Even if Tadi could satisfy the requirements of Rule 23 and claim the mantle of presumptive lead plaintiff, the court finds that the presumption would be rebutted because Tadi is "subject to unique defenses that render [him] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb).

As the only movant who purchased options rather than stock, Tadi is subject to unique defenses regarding damages. Courts have recognized that comparing damage calculations for purchasers of stock and purchasers of options is like "comparing apples to oranges." *Bricklayers of W. Penn. Pension Plan v. Hecla Min. Co.*, No. 2:12-CV-00042-BLW, 2012 WL 2872787, at *4 (D. Idaho July 12, 2012). "[T]he price and value of a single share of common stock is very different from the price and value of a single call option. The options' valuable lives are limited, their value is conditional, and there is a large disparity between their price and their potential value." *Id.* Thus, if Tadi, who traded solely in options, were chosen as lead plaintiff, "he would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and he could subject the class to unique defenses, causing unnecessary conflict." *See In re Elan*, 2009 WL 1321167, at *2.

Additionally, Tadi may be subject to unique defenses regarding loss causation. The stock purchaser class members would be required to prove that corrective disclosures made on May 14, 2020 caused the stock price to decline. But Tadi, as a short-term options trader, could be required to show that, but for the corrective disclosures, the stock price would have appreciated by more than 7% by the following day in order to attain the strike price set by the options contracts. If the stock would not have reached the strike price, Tadi's result would have been the same: the options

10

contracts would be worthless and expire on May 15. This would require specialized expert testimony that would not be relevant to the other class members.

Accordingly, the court finds that other movants have proven that Tadi is subject to unique defenses that render him incapable of adequately representing the proposed class. *See Andrada v. Atherogenics, Inc.*, No. 05 CIV. 00061 (RJH), 2005 WL 912359, at *5 (S.D.N.Y. Apr. 19, 2005) ("As an options holder, [the proposed lead plaintiff] is potentially subject to unique defenses irrelevant to regular stock purchasers in the class . . . ."). If the court were to appoint Tadi as lead plaintiff, issues unique to Tadi "would likely 'threaten to become the focus of the litigation.'" *See id.* (citation omitted); *see also In re Enzymotec Ltd. Sec. Litig.*, No. CIV.A. 14-5556, 2015 WL 918535, at *2 (D.N.J. Mar. 3, 2015) (a competing plaintiff can rebut the lead plaintiff presumption by showing "that there is some degree of probability that the [unique] defense might 'become a major focus' in the case" (citation omitted)). Thus, even if Tadi could satisfy the Rule 23 requirements and claim the statutory lead plaintiff presumption, that presumption would be rebutted.

    C.    Gelt

The proposed lead plaintiff with the next highest stake in the litigation is Gelt, which claims a net loss of $117,740. Gelt also filed the complaint in this action, and no movant has challenged Gelt's ability to satisfy Rule 23. Thus, Gelt has met all the requirements for the statutory presumption that it would be the most adequate lead plaintiff. But other movants argue that they have proof rebutting this presumption.

11

        1)       § 78u-4(a)(2) Certification

First, Petros and the Co-Diagnostics Investor Group argue that Gelt's failure to file a sworn certification with the initial, unserved complaint is fatal to its bid to be appointed as lead plaintiff. Section 78u-4(a)(2) provides: "Each plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, which shall be personally signed by such plaintiff and filed with the complaint, that[, among other things,] . . . sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint . . . ." Here, Gelt filed its initial complaint on June 15, 2020 but did not attach a sworn certification. Gelt did not serve this complaint. On June 18, 2020, Gelt published a notification of the purported class action, initiating the 60-day deadline to file a motion for appointment as lead plaintiff for the purported class.

On July 15, 2020, Gelt filed an amended complaint. The amended complaint shortened the proposed class period to April 30, 2020 through May 14, 2020. Gelt attached to the amended complaint the sworn certification required by § 78u-4(a)(2). The certification specified all of Gelt's transactions in Co-Diagnostics securities during the amended class period. Gelt then served the amended complaint on the defendants. On August 17, 2020, prior to the expiration of the 60-day deadline, multiple parties filed motions to be appointed as lead plaintiff.

Petros and the Co-Diagnostics Investor Group assert that Gelt's failure to file the certification with the initial, unserved complaint rebuts the presumption that Gelt is the most adequate plaintiff. Petros and the Co-Diagnostics Investor Group appear to argue both that Gelt "will not fairly and adequately protect the interests of the class" and that Gelt "is subject to unique defenses."

The court disagrees. The cases cited by Petros and the Co-Diagnostics Investor Group do not support the proposition that filing the certification with the amended complaint is fatal to Gelt's motion to be appointed as lead plaintiff. In all the cases cited by the Co-Diagnostics Investor Group, the district court rejected a proposed lead plaintiff because he or she either failed to provide an adequate sworn certification before the 60-day deadline to move for appointment as lead plaintiff, *Williams v. Block.One*, No. 20-CV-2809 (LAK), 2020 WL 4505569, at *2 (S.D.N.Y. Aug. 4, 2020); *Nasin v. Hongli Clean Energy Techs. Corp.*, No. CV 2:17-3244 (WJM), 2017 WL 5598214, at *3 (D.N.J. Nov. 21, 2017); *In re Enzymotec Ltd. Sec. Litig.*, No. CIV.A. 14-5556, 2015 WL 918535, at *2 (D.N.J. Mar. 3, 2015), or because the proposed lead plaintiff filed a motion for appointment as lead plaintiff and the attendant certification after the 60-day deadline had already passed, *In re Cent. European Distribution Corp. Sec. Litig.*, No. CIV.A. 11-6247 JBS, 2012 WL 5511711, at *1 (D.N.J. Nov. 14, 2012). These cases are inapposite because Gelt filed its certification a month before the deadline to move for appointment as lead plaintiff.

Petros also cited *In re Boeing Co. Aircraft Sec. Litig.*, No. 19 CV 2394, 2019 WL 6052399, at *5 n.6 (N.D. Ill. Nov. 15, 2019). But in that case, the district court denied a motion to serve as lead plaintiff for a number of reasons unrelated to the certification. *Id.* at *4–*8. The court merely noted in a footnote that technical deficiencies in the certification constituted "one more question mark in considering the [movant's] adequacy to serve as lead plaintiff." *Id.* at *5 n.6. *In re Boeing* does not suggest that technical deficiencies in the certification alone are grounds for denying a motion for appointment as lead plaintiff. *Id.* (noting that the technical deficiency in the certification might have been "easily cured"). And here, Petros has not identified any technical deficiencies in Gelt's certification.

In sum, the court determines that Gelt's decision to file the certification with the amended complaint rather than with the initial, unserved complaint was not an error, much less a mistake that would call into question Gelt's ability to "fairly and adequately protect the interests of the class." Moreover, Petros and the Co-Diagnostics Investor Group have not proven that a failure to file a certification with an unserved complaint is a unique defense that Co-Diagnostics could potentially leverage to avoid liability. Accordingly, these competing movants have not shown that the certification issue warrants rebuttal of Gelt's lead plaintiff presumption.

        2)        Gelt's Decision to Shorten the Class Period

Petros argues that Gelt will not fairly represent the class because it shortened the class period in order to claim the largest financial interest in the litigation and be appointed the lead plaintiff. In other words, Petros accuses Gelt of "trying to shrink the kingdom until [it is] king." *See In re Century Bus. Servs. Sec. Litig.*, 202 F.R.D. 532, 536 (N.D. Ohio 2001).

If true, this would indeed call into question Gelt's commitment to putting the class's interests first. But the court finds that Petros has not proven that Gelt would not be an adequate lead plaintiff for two reasons. First, Gelt shortened the class period before the competing movants filed their motions for appointment as lead plaintiff. Thus, Gelt did not know how the amended class period would affect its bid to be named as lead plaintiff when the decision was made. Second, and more importantly, no other movant has made any allegations of fact that would support the longer class period. The only alleged misstatements were made on April 30, 2020 and May 1, 2020. Thus, there is no indication that Gelt is willfully ignoring theories of liability that could lead to a larger recovery for the class as a whole. Instead, it appears that Gelt was merely conforming its complaint to a theory that it reasonably believed it could prove. Litigants need not embrace

14

unreasonable litigation positions—leading to unnecessary motions to dismiss—in order to prove that they will adequately represent the interests of the class.

Accordingly, the court rejects Petros's argument that Gelt's decision to shorten the class period disqualifies it for consideration as lead plaintiff.

### 3) Conclusion

The court finds that Gelt is entitled to the statutory presumption of being the most appropriate lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). No other movant has rebutted this presumption. See *id.* § 78u-4(a)(3)(B)(iii)(II). The court, therefore, appoints Gelt as the lead plaintiff.

## III.   APPROVAL OF COUNSEL

The PSLRA states that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "While the appointment of counsel is made subject to the approval of the court, the [PSLRA] clearly leaves the choice of class counsel in the hands of the lead plaintiff." *In re Cavanaugh*, 306 F.3d 726, 734 (9th Cir. 2002). Courts will not lightly interfere with the lead plaintiff's choice of counsel. *See id.*

No movant has objected to Gelt's choice of counsel, and the court sees no reason to interfere with its selection. Accordingly, the court approves Smith Washburn, LLP; Marcus Neiman Rashbaum & Pineiro, LLP; and Fasano Law Firm, PLLC as co-counsel to represent the class.

## CONCLUSION

For the above-stated reasons, the court orders as follows:

1. The court GRANTS Gelt's motion for appointment as lead plaintiff and for approval of its selection of counsel. ECF No. 27.

2. The court GRANTS IN PART and DENIES AS MOOT IN PART Jai's motion for consolidation of related actions, appointment as lead plaintiff, and approval of its selection of counsel. ECF No. 28. The court grants the request to consolidate actions. The requests for appointment as lead plaintiff and for approval of its selection of counsel are denied as moot because Jai did not oppose competing motions for appointment as lead plaintiff.

3. The court GRANTS IN PART and DENIES IN PART Petros's motion for consolidation of related actions, appointment as lead plaintiff, and approval of its selection of counsel. ECF No. 29. The court grants the request to consolidate actions. The court denies the requests for appointment as lead plaintiff and for approval of its selection of counsel.

4. The court GRANTS IN PART and DENIES IN PART the Co-Diagnostics Investor Group's motion for consolidation of related actions, appointment as lead plaintiff, and approval of its selection of counsel. ECF No. 31. The court grants the request to consolidate actions. The court denies the requests for appointment as lead plaintiff and for approval of its selection of counsel.

5. The court DENIES Tadi's motion for appointment as lead plaintiff and for approval of its selection of counsel. ECF No. 32.

6. The court GRANTS IN PART and DENIES IN PART Wiley's motion for consolidation of related actions, appointment as lead plaintiff, and approval of its selection of counsel. ECF No. 34. The court grants the request to consolidate actions. The court denies the requests for appointment as lead plaintiff and for approval of its selection of counsel.

7. The court ORDERS the clerk of court to consolidate *Hernandez v. Co-Diagnostics*, 2:20-cv-00481-JNP-JCB with this action.

8. The court lifts the stay in this the action. *See* ECF No. 73. Gelt shall have until April 7, 2021 to respond to Co-Diagnostics' motion to dismiss. *See* ECF No. 66.

DATED March 10, 2021.

                        BY THE COURT

                        _____
                        Jill N. Parrish
                        United States District Court Judge