Ryan B. Hancey, Esq., rhancey@keslerrust.com, Utah State Bar Number 9101
Attorney for Defendants
Kesler & Rust
68 South Main Street, Suite 200
Salt Lake City, Utah 84101
(801) 532-800 (TEL.)

Christopher P. Milazzo, Esq., cmilazzo@cmfllp.com, Pro Hac Vice
Attorney for Defendants
Carmel, Milazzo & Feil LLP
55 West 39th Street, 18th Floor
New York, New York 10018
(212) 658-0458 (TEL.)

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **GELT TRADING, LTD., a Cayman Islands limited company,** | Case NO. 2:20-cv-00368-JNP-DBP |
| **Plaintiff,** | MOTION TO DISMISS |
| **v.** | Judge Jill N. Parrish |
| **CO-DIAGNOSTICS, INC., a Utah Corporation, DWIGHT EGAN, JAMES NELSON, EUGENE DURENARD, EDWARD MURPHY, RICHARD SERBIN, REED BENSON and BRENT SATTERFIELD,** | |
| **Defendants.** | |

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ........................................................................................... iii

Relief Sought and Grounds Therefore ................................................................1

Statement of Facts ..............................................................................................2

    The Parties ..................................................................................................2

    Co-Diagnostics Develops a Test for COVID-19 ......................................2

    Co-Diagnostics Begins Selling Its Tests ..................................................3

    Public Statements Regarding Co-Diagnostics' Tests ...............................3

    The May 1, 2020 Co-Diagnostics Press Release ......................................4

    Co-Diagnostics' Stock Price Rises ...........................................................5

    Decline in Stock Price ...............................................................................6

Relevant Procedural History ...............................................................................7

Argument .............................................................................................................7

    POINT I
    STANDARDS ON A MOTION TO DISMISS
    UNDER RULE 12(b)(6) ...........................................................................7

    POINT II
    THE AMENDED COMPLAINT FAILS TO SUFFICENTLY PLEAD
    A CLAIM FOR SECURITIES FRAUD UNDER SECTION 10(b) AND
    RULE 10b-5 .............................................................................................10

    A. Reports Plaintiff Has Failed to Sufficiently Allege
       A Material Misstatement of Fact .....................................................11

       1. Plaintiff Fails to Sufficiently Allege a
          Purported False Statement .........................................................13

       2. Plaintiff Fails to Sufficiently
          Plead a Misrepresentation of Material Fact ..............................13

i

      3.   Facts Sufficient to Raise
          Any Duty to Issue a Corrective Statement.................................................16

      4.  Amended Complaint Does Not Sufficiently
         Plead any Obligation to Correct
         Statements of Third-Parties........................................................................17

B.  Plaintiff Has Failed to Sufficiently Allege
    a Material Misstatement of Fact ....................................................................19

      1.  The Generalized Allegations of Scienter
         Fail to Satisfy the PSLRA...........................................................................21

      2.  The Plaintiff Fails to Sufficiently Allege Scienter
         With Respect to the Individual Defendants .................................................21

POINT III
THE COURT SHOULD DISMISS
PLAINTIFF'S CLAIM UNDER SECTION 20(a) ................................................24

CONCLUSION.........................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Kinder-Morgan, Inc.*
340 F.3d 1083 (10th Cir. 2003). ........................................................................ 10, 20

*Altayyar v. Etsy, Inc.*
242 F. Supp.3d 161 (E.D.N.Y. 2017). ........................................................................ 12

*Anderson v. First Sec. Corp.*
249 F. Supp.2d 1256 (D. Utah 2002) ........................................................................ 22

*Anixter v. Home-Stake Production Co.*
77 F.3d 1215 (10th Cir 1996) ........................................................................ 19

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ........................................................................ 8

*Basic Inc. v. Levinson*
485 U.S. 224, 239 N. 17 (1988) ........................................................................ 17

*Bell Atlantic Corp. v. Twombley*
550 U.S. 544 (2007) ........................................................................ 8,9

*Caprin v. Simon Transp. Services*
112 F.Supp.2d 1251 (D. Utah 2000) ........................................................................ 23

*City of Philadelphia v. Fleming Companies, Inc.*
264 F.3d 1245 (10th Cir. 2001) ........................................................................ 20

*Dubbs v. Head Start, Inc.*
336 F.3d 1194 (10th Cir.2003) ........................................................................ 8

*Gibson v. Vanisi*
2005 WL 165382 (D. Utah, Jan. 25, 2005) ........................................................................ 10, 24

*Grossman v. Novell, Inc.*
120 F.3d 1112 (10th Cir. 1997) ........................................................................ 17

*In re FX Energy, Inc. Sec. Litig*
2009 WL 1812828 (D. Utah, Jun. 25, 2009) ........................................................................ 12

*In re Hain Celestial Grp., Inc. Sec. Litig.*
2020 WL 1676762 (E.D.N.Y., Apr. 6, 2020) ............................................................................ 23

*In re Overstock Securities Litigation*
2020 WL 5775845 (D. Utah 2020) ............................................................................................ 23

*In re Polaroid Corp. Securities Litigation*
134 F.Supp.2d 176 (D. Mass. 2001) ........................................................................................ 19

*In re Time Warner Inc. Sec. Litig.*
9 F.3d 259 (2d Cir.1993),
cert. denied, 511 U.S. 1017, 114 S.Ct. 1397, 128 L.Ed.2d 70 (1994) ........................................ 17

*In re Zagg, Inc. Sec. Litig.*
797 F.3d 1194 (10th Cir. 2015) ................................................................................................ 11

*Kessman v. Myriad Genetics, Inc.*
2019 WL 1330363 (D. Utah, Mar. 25, 2019) ...................................................................... 12, 14

*Koch v. Koch Indus., Inc*.
203 F.3d 1202 (10th Cir. 2000) ................................................................................................ 10

*Lattanzio v. Deloitte and Touche, LLP*
476 F.3d 147 (2nd Cir. 2007) .................................................................................................... 17

*MacArthur v. San Juan Cty.*
309 F.3d 1216 (10th Cir. 2002) .................................................................................................. 3

*North Port Firefighters/ Pension—Local Option Plan v. Temple-Inland, Inc.*
936 F. Supp.2d 722 (N.D. Texas 2013) .................................................................................... 15

*Oron v. Stafford*
226 F.3d 275 (3d Cir. 2000) ...................................................................................................... 17

*Primo v. Pacific Biosciences of Cal., Inc*.
940 F. Supp.2d 1105 (N.D. Cal. 2013) .................................................................................... 15

*Prissert v. EMCORE Corp*.
894 F. Supp.2d 1361 (D. N.M. 2012) ...................................................................................... 22

*Raab v. General Physics Corp*.
4 F.3d 286 (4th Cir. 1993) .................................................................................................. 17, 19

*Rumbaugh v. USANA Health Sciences, Inc*.
2018 WL 5044240 (D. Utah, Oct. 17, 2018) ........................................................... 10, 14, 15, 24,

*S.E.C. v. Tambone*
407 F. Supp.2d 127 (D. Mass. 2006) ........................................................................ 17

*Smaller v. The Western Union Co*.
950 F.3d 1297 (10th Cir. 2020) ................................................................................ 21

*TDC Lending LLC v. Private Capital Group, Inc*.
340 F. Supp.3d 1218 (D. Utah 2018) ....................................................................... 25

*Tellabs, Inc. v. Makor Issues & Rights, Ltd*.
551 U.S. 308 (2007) ................................................................................................. 21

*Thornburg Mtg., Inc. Sec. Litig*.
695 F. Supp.2d 1165 (D.N.M. 2010) ....................................................................... 21

*U.S. S.E.C. v. Tambone*
417 F.Supp.2d 127 (D. Mass. 2006) ........................................................................ 19

*Wolfe v. Aspenbio Pharma, Inc*.
587 Fed.Appx. 493 (10th Cir. 2014) ........................................................................ 20

**Statutes**
15 U.S.C. § 78j(b) .................................................................................................... 9

15 U.S.C. § 78t(a) .................................................................................................... 24

15 U.S.C. 78u-4(b) ................................................................................................... 11

15 U.S.C. § 78u-4(b)(1) ........................................................................................... 14

27 C.F.R. § 240.10b-5 .............................................................................................. 9

Fed. R. Civ. P. 9(b) .................................................................................................. 10

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 1, 8

Defendants Co-Diagnostics, Inc. ("Co-Diagnostics"), Dwight Egan ("Egan"), James Nelson ("Nelson") Eugene Durenard ("Durenard"), Edward Murphy ("Murphy"), Richard Serbin ("Serbin"), Reed Benson ("Benson") and Brent Satterfield ("Satterfield") (collectively, the "Defendants")[1] move, pursuant to Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 9(b) and the Private Litigation Securities Reform Act (15 U.S.C. § 78u-4) ("PSLRA") to dismiss the Second Amended Complaint (the "SAC")[2] filed herein by Lead Plaintiff Gelt Trading Ltd. ("Plaintiff" or "Gelt").

### Relief Sought and Grounds Therefore

This is a motion to dismiss the SAC, pursuant to Fed. R. Civ. P. 12(b)(6), on the grounds that it fails to state a claim upon which relief may be granted. As discussed more fully below, the Plaintiff has failed to sufficiently plead a claim for securities fraud under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchamge Act") and Rule 10b-5 promulgated thereunder. Specifically, Plaintiff failed to allege any precise purportedly false statement sued upon. Indeed, it is unclear exactly which statements actually made by any Defendant are alleged to be false and actionable. Moreover, as best as can be gleaned from the SAC, the purportedly false statements alleged to have been made by Defendants are all true statements; therefore Plaintiff has failed to plead a misrepresentation of material fact. Finally, as it pertains to the Individual Defendants in this case, Plaintiff has failed to ascribe any of the alleged misstatements to any of them except for Defendant Satterfield.

In addition, the pleadings fail to meet the PSLRA's standard to plead a claim for securities fraud because Plaintiff has mistakenly attempted to impute the facts ostensibly constituting scientir from the Individual Defendants to Co-Diagnostics.

---

[1] Egan, Nelson, Durenard Murphy, Serrbin, Benson and Satterfield are referred to collectively herein as the "Individual Defendants".

[2] The Second Amended Complaint shall be cited herein as follows: "Am. Compl. ¶ _."

Finally the claim under Section 20(a) of the Securities Exchange Act must be dismissed because there is no primary securities violation alleged.

**Statement of Facts**

**The Parties**

Plaintiff is a Cayman Island limited company and was a shareholder of Co-Diagnostics. (SAC. ¶¶ 23, 32.)  Plaintiff purports to bring this action on behalf of a class consisting of those who purchased Co-Diagnostics stock between April 30, 2020 and May 15, 2020 and who were damaged thereby.  (*Id.* ¶ 31.)

Co-Diagnostics is a publicly traded company that was initially formed to monetize DNA-related testing technology for diagnostic purposes.  (*Id.* ¶¶ 39. 42-47.)  Co-Diagnostics' stock trades on the NASDAQ market.  (*Id.* ¶¶ 47-48.)  The Individual Defendants are senior officers and/or directors of Co-Diagnostic.  (*Id.* ¶ 26).

**Co-Diagnostics Develops a Test for COVID-19**

In or about late 2019, a new virus, which became known as COVID-19, spread rapidly through the population of Wuhan, China, and then the world.  (*Id.* ¶ 49.)  COVID-19 is a virus that can be detected by DNA-based testing.  (*Id.* ¶ 49.)

According to the SAC, Co-Diagnostics, saw the need for testing for COVID-19, began developing a test for the virus using a technology called CoPrimer, which had been developed and patented by Satterfield before the outbreak of the virus.  (*Id.* ¶ 50.)  Co-Diagnostic quickly developed a test for COVID-19 and became the first company to obtain CE-Certification for the test.  (*Id.* ¶ 51.)[3]  On February 24, 2020, Co-Diagnostics announced that it obtained regulatory

---

[3] CE Certification establishes that the product is evaluated under relevant directives and is compliant therewith.  CE Certification is required for most products before being offered to consumers in the European Union.

approval to export its COVID-19 test kits to the European Community.  (*Id*. ¶ 52.)  Plaintiff alleges

that, as a result of the foregoing, the price of Co-Diagnostics stock began to rise.  (*Id*. ¶ 53.)

On April 6, 2020, Co-Diagnostics became the first company to receive the approval of the

United States Food and Drug Administration (the "FDA") for its COVID-19 tests under the

Emergency Use Authorization, which allowed Co-Diagnostics' test to be used by certified clinical

laboratories in the United States for the diagnosis of COVID-19.  (*Id*. ¶ 54.)  According to the

Amended Complaint, Co-Diagnostics' stock, which had settled at about $8 per share in early April

2020, began to climb again.  (*Id*. ¶ 55.)

**Co-Diagnostics Begins Selling Its Tests**

After receiving CE Certification and the FDA approval, Co-Diagnostics entered into

contracts to sell its tests to a number of countries and to a number of states in the United States.

(SAC ¶¶ 57-58.)  Among such contracts was a contract to sell its tests to the state of Utah for a

program called TestUtah, that was to run from March 31, 2020 through May 31, 2020 and a

contract to provide tests for Iowa.  (*Id*. ¶ 58.)

**Public Statements Regarding Co-Diagnostics' Tests**

On April 30, 2020, The Salt Lake Tribune published an article entitled *This is a Potential*

*Public Health Disaster: COVID-19 results from TestUtah.com are raising questions*.  (SAC ¶ 59.)

This article purportedly raised questions regarding the accuracy of the COVID-19 tests used in the

TestUtah program. (*Id*. ¶ 59; Milazzo Decl. Exh. A[4].)  According to the Complaint, Satterfield was

allegedly quoted in the article "reassuring the public that the alleged inaccuracies were due to

---

[4] See *MacArthur v. San Juan Cty.*, 309 F.3d 1216, 1221 (10th Cir. 2002) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.") (citation omitted).

'population differences.'" (*Id.* ¶ 60.)   This quote, however, is taken out of context.  The article

actually provides, in pertinent part as follows:

> As of this week, TestUtah had eight testing sites around the state and had conducted tests on more than 18,000 Utahns, more than half of whom did not have symptoms of the coronavirus – despite state guidelines that only symptomatic patients should be tested.
>
> This is likely to produce more negative results than the state's other test sites, said executives of the companies involved in TestUtah.  Mark Newman, whose health software company Nomi Health has a $5 million contract with the state to run the group's testing said comparing TestUtah's results with those of other sites is "not apples to apples."
>
> "We're talking about population differences," agreed Brent Satterfield, founder and chief science officer of Co-Diagnostics Inc., which produces the test kit used by TestUtah's sites.

(Milazzo Decl. Exh. A.)

       The Amended Complaint further asserts that Satterfield "reassured the market" in the Salt

Lake Tribune article by stating that Co-Diagnostics' tests were between 99.52% and 100%

accurate.  (SAC ¶ 60.)  This was not a quote from Satterfield;rather the Salt Lake Tribune was

paraphrasing .  This portion of the article provided that:

> Co-Diagnostics' COVID-19 tests scored between 99.52% and 100% in evaluations conducted by the FDA and in Europe.  He said those evaluations often put his kits side by side against other available kits to gain consensus results.  "We are in the same ballpark as other tests," Satterfield said.

(Milazzo Decl. Exh. A.)

       The Complaint further alleges that by this statement, Satterfield tried to downplay

questions raised in the article and put investors at ease that its test was close to perfect, and that

alleged inaccuracies were due to population differences. (SAC ¶60.) However the statement

allegedly made concerning population differences was describing positivity rates among

symptomatic vs non-symptomatic patients, and is not even contextualized in the article as an

attempt to defend Co-Diagnostics' tests. (Milazzo Decl. Exh. A)The SAC alleges that Satterfield

knew his statements to the Tribune were misleading, but does not allege how or when he ostensibly

gained such knowledge. (SAC ¶61.)

**The May 1, 2020 Co-Diagnostics Press Release**

On May 1, 2020, Co-Diagnostics issued a press release entitled *Co-Diagnostics, Inc.*

*Releases COVID-19 Test Performance Data: Consistently Demonstrates 100% Sensitivity and*

*100% Specificity Across Independent Evaluations* (the "Press Release"). (SAC ¶ 62.)  Plaintiff

overstates the contents of the press release – which is the primary ostensible misrepresentation

complained of – alleging that the "press release unequivocally stated that Co-Diagnostics Covid-

19 tests were 100% accurate based upon data gathered from across the world." (*Id*. ¶ 62.)  Rather,

the Press Release announces that Co-Diagnostics released the results of evaluations performed by

a number of institutions, and provides, in pertinent part:

> Co-Diagnostics, Inc. (Nasdaq:CODX) (the "Company") . . . today released
> COVID-19 test performance data demonstrating 100% sensitivity and
> 100% specificity, the metrics used to determine the accuracy in molecular
> diagnostic testing.
>
> The data being released comes from independent evaluations of the
> performance of the Company's COVID-19 test in the field.  These
> evaluations were conducted in Mexico by the Mexican Department of
> Epidemiology (InDRE"), India, and elsewhere in the US and abroad.  Each
> study concluded 100% concordance for both specificity and sensitivity.
>
> * * *

(Milazzo Decl. Exh. B.)  The Press Release issued on Co-Diagnostics' website contained a link

with the results of each evaluation, each of which demonstrated 100% sensitivity and 100%

specificity.  (Milazzo Decl. Exh. B.)

The SAC also alleges that in the Press Release, Satterfield "did not mention that the tests might be less than 100% accurate – abandoning his recognition that the tests were between 99.52% and 100% accurate" and instead "insisted that the []tests were 100% accurate based upon experimental data". (SAC ¶ 63.) Again, this is an inaccurate characterization based upon the language quoted in the Press Release. Rather, Satterfield stated that "[i]n countries where [Co-Diagnostics has] been evaluated against other tests, we have consistently and repeatedly achieved 100% clinical sensitivity and specificity and you can't do better than that." (Milazzo Decl. Exh. B.) It is alleged that Defendants were aware that the Press Release misstated the accuracy of the Covid test and omitted information that the company's tests have accuracy problems. (SAC ¶64) While the Press Release simply announced the test results, the SAC alleges that Co-Diagnostics could have released a "clarifying statement," without alleging what was might have been required clarification and without alleging that Defendants knew clarification was required. (SAC ¶88)

**Co-Diagnostics' Stock Price Rises**

Plaintiff alleges that Co-Diagnostics issued the Press Release to repress the negative press contained in the April 30, 2020 Salt Lak City Tribune Article. (SAC ¶ 62.) Plaintiff further alleges, citing to a number of purported quotes (without identifying the dates and/or sources), that the market accepted Co-Diagnostics' "false claims of 100% accuracy", resulting in a "boon" to Co-Diagnostics' share price. (*Id.* ¶ 69.) The Complaint alleges that Co-Diagnostics' "plan to repress negative reports about its tests seemed to work" and its stock price continued to rise in May 2020, and on anticipation of its first quarter 2020 earnings report, reached an all-time high of $29.72 on May 14, 2020. (*Id.* ¶¶ 71-72.)

**Decline in Stock Price**

The SAC alleges that on May 14, 2020, the Salt Lake City Tribune reported that TestUtah, which used Co-Diagnostics' tests, declined to join other Utah labs in a joint experiment to confirm the quality of one another's tests. (SAC ¶ 75.)  Additionally, this article stated that Co-Diagnostics' tests "have a higher 'limit of detection' – that is, they require more of the virus to trigger a positive result – than most other coronavirus tests approved in the U.S., according to an analysis by the life sciences publication BioCentury."  (*Id.*)  Further, on the same day, Iowa Governor Kim Reynolds announced that "the State Hygienic Lab completed the Test Iowa validation process yesterday, achieving ratings of 95 percent accuracy for determining positives and 99.7 percent accurate in determining negatives."  (*Id.* ¶ 77.) Plaintiff alleges that, based upon the foregoing reports, the price of Co-Diagnostics' stock began to sharply decline, falling to just over $15 per share when the markets opened on May 15, 2020. (*Id.* ¶¶ 79, 84.)  Plaintiff further alleges that additional articles were published that questioned the accuracy Co-Diagnostics' tests and the evaluations by third-parties of its tests.  (*See id.* ¶¶ 84, 85.)

Based upon the foregoing, Plaintiff alleges that Co-Diagnostics knew that its tests were not 100% accurate and intentionally issued statements to the public "to fend off truthful analysis and scientific skepticism about its supposed miracle test."  (*Id.* ¶ 86.) With respect to the Individual Defendants, Plaintiff alleges that they are liable because, as senior executives and/or directors, they controlled or had the authority to control the contents of reports and press releases, and that they knew the same to be false.  (*See id.* ¶¶ 89-90.)   As a result, Plaintiff alleges that it (and the putative class) suffered losses when they sold Co-Diagnostics stock.

## Relevant Procedural History

Plaintiff commenced this proposed class action on June 15, 2020 by the filing of a complaint.  On July 15, 2020, Plaintiff filed an Amended Complaint.  (Dkt # 14.)  On or about September 14, 2020, Defendants filed a motion to dismiss the Amended Complaint. (Dkt # 66).  Gelt was subsequently appointed lead plaintiff, and it filed the SAC which is the subject of this motion. (Dkt # 86) In the SAC, Plaintiff asserts the following two causes of action: (1) Violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder against all Defendants.  (SAC ¶¶ 106-110); and (2) Violation of Section 20(a) of the Exchange Act against the Individual Defendants (*id*. ¶¶ 111-112).

## Argument

### POINT I

### STANDARDS ON A MOTION TO DISMISS
### UNDER RULE 12(b)(6)

The Court's function on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is not to weigh the potential evidence the parties might present at trial, "but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief can be granted."  *Dubbs v. Head Start, Inc*., 336 F.3d 1194, 1201 (10th Cir.2003).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 570 (2007).  In the context of a motion to dismiss, plausibility means facts which allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*

While the Court is required to accept all factual allegations contained in the complaint as true, the Court should not accept as true conclusory allegations without sufficient factual support.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  As explained by the Supreme Court in *Iqbal*:

> [T][he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice.

556 U.S. at 678.

Further, where a complaint pleads facts that are merely consistent with a defendant's liability, it falls short of the line between possibility and probability.  *See Iqbal*, 556 U.S. at 678. The factual allegations must be enough to raise a right to relief above a speculative level. *Twombley*, 550 U.S. at 555.

## POINT II

### THE SAC FAILS TO SUFFICENTLY PLEAD
### A CLAIM FOR SECURITIES FRAUD UNDER SECTION 10(b) AND RULE 10b-5

Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder prohibit fraudulent acts in connection with the purchase or sale of securities.  *See* 15 U.S.C. § 78j(b); 27 C.F.R. § 240.10b-5.  Section 10(b) prohibits "any person, directly or indirectly . . . [t]to use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe."  15 U.S.C. § 78j.  Rule 10b-5 provides that "[i]t shall be unlawful for any person . . . [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."  27 C.F.R. § 240.10b-5.  To state a claim for securities fraud under Section 10(b) and Rule 10b-5 promulgated thereunder, a plaintiff must allege the following:

> (1)  The defendant made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make statements not misleading; (2) the statement complained of was made in connection with the purchase or sale of securities; (3) the defendant acted with scienter, that is with intent to defraud or recklessness; (4) the plaintiff

> relied on the misleading statements; and (5) the plaintiff suffered damages as a result of his reliance.

*Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1094-95 (10th Cir. 2003).

In addition to meeting the pleading standards under Rule 12(b)(6) as set forth in *Twombley* and *Iqbal*, a complaint alleging securities fraud must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b) and the PSLRA. *See Gibson v. Vanisi*, 2005 WL 165382, at *2-3 (D. Utah, Jan. 25, 2005). Rule 9(b) requires that "the circumstances constituting the fraud . . . be stated with particularity." Fed. R. Civ. P. 9(b). In order to satisfy Rule 9(b), the complaint must "set forth the time, place and contents of the false representation, the identity of the party making the false statements, and the consequences thereof." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000). However, under Rule 9(b), malice, knowledge, intent, and other condition of mind may be averred generally. *Id.*

In passing the PSLRA, Congress further heightened the pleading standards for securities fraud claims. *See Gibson*, 2005 WL 165382, at 3. The PSLRA does not add to the above five elements for stating a securities fraud claim, but rather heightens the pleading requirements to the first and third elements. *Id.*

With respect to the first element (*i.e.,* material misrepresentation), to meet the heightened pleading requirements of the PSLRA the complaint must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading . . ." 15 U.S.C. 78u-4(b)(1). *See also Rumbaugh v. USANA Health Sciences, Inc.*, 2018 WL 5044240, at *3 (D. Utah, Oct. 17, 2018). Further, the PSLRA increased the standard for pleading the third element (*i.e.*, scienter). *See Adams*, 340 F.3d at 1095-96. While under Rule 9(b), malice, intent, knowledge or other mental state could be averred generally, the PSLRA requires that:

> In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. 78u-4(b).

Based upon the exacting requirements of the PSLRA, the Tenth Circuit has recognized that a plaintiff asserting a securities fraud claim "bears a heavy burden at the pleading stage." *In re Zagg, Inc. Sec. Litig.*, 797 F.3d 1194, 1201 (10th Cir. 2015) (citation omitted). As discussed below, Plaintiff woefully fails to meet its heavy burden. Plaintiff has failed to plead with the specificity required under Rule 9(b) and the PSLRA. In particular, Plaintiff has failed to sufficiently plead a material misstatement of fact and scienter with the specificity required by Rule 9(b) and the PSLRA. Accordingly, the Court should dismiss the First Cause of Action for a violation of Section 10(b) and Rule 10b-5.

### A.  Plaintiff Has Failed to Sufficiently Allege a Material Misstatement of Fact

Plaintiff fails to clearly identify SAC the purported misstatements upon which its security fraud claim is based. As Defendants can best discern, Plaintiff apparently asserts that three alleged misstatements are attributable to Co-Diagnostics. The first is an alleged statement of Satterfield contained in the April 30, 2020 Salt Lake City Tribune article (which did not quote Satterfield). The article provided that Satterfield "added that Co-Diagnostics' COVID-19 tests scored between 99.52% and 100% in evaluations conducted by the FDA and in Europe." (*See* Am. Compl. ¶ 61; Milazzo Decl. Exh. A.) The second alleged statement, while never specifically identified, apparently is that Co-Diagnostic in the Press Release "unequivocally stated that Co-Diagnostics' Covid-19 tests were 100% accurate based on data gathered around the world". (Am. Compl. ¶ 62.) The third alleged misstatement is an alleged statement of Satterfield also in the Press Release

11

that Co-Diagnostics released data demonstrating that its tests demonstrated 100% sensitivity and 100% specificity in independent evaluations and that Satterfield stated Co-Diagnostics "consistently and repeatedly achieved 100% clinical sensitivity and specificity and you can't do better than that." (*Id*. ¶¶ 62-63; Milazzo Decl. Exh. B.)

As discussed above, to adequately allege the first element of its security fraud claim, Plaintiff must specify each statement alleged to have been false and/or misleading and the reason or reasons why the statement is false or misleading. *See Kessman v. Myriad Genetics, Inc.*, 2019 WL 1330363, at 4 (D. Utah, Mar. 25, 2019). As discussed below, Plaintiff's allegations fail to set forth the alleged misstatements with the requisite specificity, and how the alleged misstatements were false as required under Rule 9(b) and the PSLRA.

### 1.   Plaintiff Fails to Sufficiently Allege a Purported False Statement

"To state the obvious, the falsity of a statement depends on whether a statement is false, in error or wrong." *Altayyar v. Etsy, Inc*., 242 F. Supp.3d 161, 172 (E.D.N.Y. 2017). Initially, the SACt fails to specify actual statements of Co-Diagnostics and/or the Individual Defendants which were actually false when made and therefore upon which it may base its claim. Rather, it apparently hinges its securities fraud claim on purported representations that Co-Diagnostics and/or Satterfield made that its COVID-19 tests were "100% accurate" – a statement that never actually appears in the Press Releases or the article. (*See* Am. Compl. ¶¶ 63, 67, 83, 84.) However, as discussed below, an examination of the sources of these purported statements demonstrates that was not what was stated, but is Plaintiff's characterization of the statements.

*In re FX Energy, Inc. Sec. Litig.,* 2009 WL 1812828 (D. Utah, Jun. 25, 2009), is instructive. In *FX Energy*, the plaintiffs alleged a securities fraud claim based upon an alleged misrepresentation contained in a press release that the defendant used the latest 3D technology to

drill for oil at two sites.  *Id.* at *7.  The plaintiffs alleged that the statement was false because the defendant actually used older 2D technology to drill the wells.  *Id.*  In analyzing the contents of the press release and documents that the plaintiff alleged contained the misrepresentations, the Court found that the press release and documents did not contain the statement that the plaintiff alleged.  The Court found that:

> Nowhere in any of the documents cited by plaintiffs do the defendants expressly assert that [defendant] was using the latest 3D technology at [the wells] or that 2D technology was not being used at those wells. Accordingly, the actual documents contradict the plaintiffs' characterizations of them in the complaint, so the court is not obliged to credit them as true.

*Id.*  Therefore, the Court held that the plaintiffs failed to sufficiently allege a misrepresentation upon which it could base a claim for securities fraud.  *Id.* at *8.

Here, as in *FX Energy*, the purported misrepresentation as to "100% accuracy" is not contained in any of the documents cited by Plaintiff, and is in fact contradicted by the actual content of the statements contained therein.  For example, Plaintiff alleges that in the Press Release, Co-Diagnostics unequivocally stated that, "Co-Diagnostics' tests were 100% accurate based on data gathered from around the world".  (SAC ¶ 62.)  That is simply not what was stated in the Press Release.  Instead, the Press Release states that Co-Diagnostics "released COVID-19 test performance data demonstrating 100% sensitivity and 100% specificity, the metrics used to determine the accuracy in molecular diagnostic testing."  (Milazzo Decl. Exh. B.)  The Press Release that was published on Co-Diagnostics' website included a link to the results of the tests and the data upon which this statement was made.  (*Id.* Exh. B.).  This data demonstrates this statement in the Press Release was true.  However, Plaintiff does not allege those tests and data were falsified or otherwise did not support the Press Release statement.  In fact, Plaintiff

acknowledges the referenced tests and data came from independent sources and did not originate from Co-Diagnostics.  (*Id.*).

Similarly, in the April 30, 2020 Salt Lake Tribune article, while Plaintiff claims that Satterfield "reassured the market" of the accuracy of Co-Diagnostics' tests the by stating that Co-Diagnostics' tests were between 99.52% and 100% accurate, this was not a quote from Satterfield, but was apparently paraphrasing him.[5]  This portion of the article provided that:

> Co-Diagnostics' COVID-19 tests scored between 99.52% and 100% in evaluations conducted by the FDA and in Europe.  He said those evaluations often put his kits side by side against other available kits to gain consensus results.  "We are in the same ballpark as other tests," Satterfield said.

(Milazzo Decl. Exh. A.)

No statement in this article actually attributable to Satterfield is alleged to be untrue.  Like the Press Release, Satterfield merely stated the results of evaluations of the tests, and truthfully and accurately so.

Based upon the foregoing, Plaintiff has failed to sufficiently identify the actual purported misrepresentation upon which its securities fraud claim is based.  Accordingly, the Court should dismiss Plaintiff's securities fraud claim.

### 2.   Plaintiff Fails to Sufficiently Plead a Misrepresentation of Material Fact

As discussed above, to meet the heightened pleading requirements of the PSLRA as to the first element, a plaintiff must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading . . ."  15 U.S.C. 78u-4(b)(1); *see also Rumbaugh*, 2018 WL 5044240, at *3; *Kessman*, 2019 WL 1330363, at *4.

---

[5] In *In Re Splash Technology Holdings Inc. Sec. Litig.*, No. C 99-00109, Fed. Sec. L. Rep. ¶91, 250 at *18 WL 1727377 (N.D. Cal. Sept. 29, 2000), the Court found that paraphrasing the alleged misstatement upon which the securities fraud claim was based was insufficient under the PSLRA to allege a misrepresentation. *See*, *also*, *In re Securities Litigation BMC Software, Inc.*,18 F.Supp.2d 860, 914 (S.D. Texas 2001).

Where, as here, a complaint fails to specifically allege each alleged misstatement and leaves it to the Court to sort out the statements and match them with the corresponding adverse facts, the complaint fails to meet the heightened pleading requirements of Rule 9(b) and the PSLRA. *See Rumbaugh*, 2018 WL 5044240, at * *3-4. *See also Primo v. Pacific Biosciences of Cal., Inc.*, 940 F. Supp.2d 1105, 1111-13 (N.D. Cal. 2013). Such practice is referred to as "puzzle pleading". As the Northern District of California explained, in a "puzzle pleading", the plaintiff has "left it up to the defendants and the court to try to figure out exactly what the misleading statements are, and to match the statements up with the reasons why they are false or misleading." *Primo*, 940 F. Supp.2d at 1111.

In *Rumbaugh*, this Court rejected such an approach in the securities class action context. The Court recognized that:

> In the context of securities class complaints, courts have repeatedly lamented plaintiffs' counsels' tendency to place the burden on the reader to sort out the statements and match them with the corresponding adverse facts to solve the "puzzle" of interpreting plaintiffs' claims. . . . Courts have routinely recognized that "puzzle style" complaints are not only an improper means of pleadings, but also an unwelcome and wholly unnecessary strain on the defendants and the courts system. . . .

2018 WL 504240, at *4 (internal citations and quotations omitted). *See also North Port Firefighters/ Pension—Local Option Plan v. Temple-Inland, Inc.*, 936 F. Supp.2d 722, 737 (N.D. Texas 2013) (Court recognized that "complaints must not engage in 'puzzle pleading' by isolating allegations and elements while leaving it to the court to infer a connection as it is the parties' burden to present succinct pleadings which clearly lay out the required elements . . .") (internal quotations and citation omitted);

Here, Plaintiff impermissibly engages in puzzle pleading. As stated above, Plaintiff quotes statements in a news article and the Press Release, and Plaintiff's characterizations of the

statements contained therein.  Plaintiff never specifically identifies what actual statements in the article and Press Release are allegedly false.  This is improper as it cannot be determined which actual statements are allegedly false.

Further, Plaintiff fails to clearly state why the alleged misstatements are allegedly false.  Rather, Plaintiff quotes from several news articles and studies that apparently question the accuracy of Co-Diagnostics' COVID-19 tests.  Plaintiff never attempts to match the alleged actual misstatements of Defendants (as opposed to Plaintiff's characterizations of such statements) to the purported evidence that would show such actual statements were false.  Ultimately the Press Release and other alleged statements only describe the findings of evaluations of Co-Diagnostics' COVID-19 test.  The articles quoted by Plaintiff do not substantiate any allegation that Defendants misrepresented the findings of the evaluations of their COVID-19 test sufficient to meet their pleading burden, at best the articles contest the accuracy of the evaluations themselves.

As a result, the Amended Complaint fails to set forth the alleged misrepresentations of misleading statements with the specificity required under Rule 9(b) and the PSLRA.  Accordingly, the Court should dismiss Plaintiff's First Claim for Securities Fraud.

3.  The Complaint Fails to Plead Facts Sufficient to Raise
Any Duty to Issue a Corrective Statement

Having already filed a complaint and amended complaint, and having had the benefit of seeing Defendant's first motion to dismiss, Plaintiff clearly understood the flaws in the pleadings raised herein.  In an attempt to cure the most glaring deficiency, that the ultimate misrepresentation was a press release simply reporting evaluation results, Plaintiff half-heartedly attempted to plead a theory that the Defendants had a duty to correct or to clarify the statements of third-parties regarding the accuracy of Co-Diagnostics' tests.

16

Plaintiff quotes three articles from third-parties, and alleges that the market accepted Co-Diagnostics' claims of 100 percent accuracy (a statement that it never made). Based upon the foregoing, Plaintiff appears to contend that Co-Diagnostics had a duty to make a corrective or clarifying statement. (SAC ¶¶ 69-70, 87-88.)

At the outset, Plaintiff has not alleged any duty to correct, and silence absent such a duty cannot form the basis of liability under Rule 10b-5. *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1125 (10th Cir. 1997); *Basic Inc. v. Levinson*, 485 U.S. 224, 239 N. 17 (1988) If a statement made is false or later turns out to be false, there may be a duty to correct any misleading impressions from the statement. *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir.1993), cert. denied, 511 U.S. 1017, 114 S.Ct. 1397, 128 L.Ed.2d 70 (1994)  A duty to correct must be fixed at a certain point in time, akin to, and supporting the requirement that only statements made during the class period are actionable. *Lattanzio v. Deloitte and Touche, LLP*, 476 F.3d 147, 154 (2nd Cir. 2007).

Crucially, a company is under no legal duty to correct a statement that it did not make. See *Oron v. Stafford*, 226 F.3d 275, 286 (3d Cir. 2000).  *See also S.E.C. v. Tambone*, 407 F. Supp.2d 127 (D. Mass. 2006) (A defendant owes a duty to clarify a misleading statement only if such statement is attributable to the defendant). Indeed, the securities laws do not require a company to police statements made by third parties. *See Raab v. General Physics Corp*., 4 F.3d 286, 288 (4th Cir. 1993).

Plaintiff's theory fails under a pleading requirement for two reasons. First, as stated above, Plaintiff has failed to plead any misrepresentation of material fact or any purported false statement made by Defendants. Therefore, no such hypothetical duty would have ever arisen. Second, Plaintiff is attempting to create a duty on the part of Co-Diagnostics to correct or clarify the statements of third-parties. The case law is clear that no such duty exists.

Even assuming, *arguendo*, that there was a misstatement or omission of material fact, Plaintiff failed to allege whether, how, or when Co-Diagnostics or Satterfield learned that same was false or misleadin.  For instance, with respect to the Press Release, Plaintiff failed to allege that Co-Diagnostics or Satterfield knew that the tests results reported were inaccurate, and failed to allege that such hypothetical knowledge was gained during the class period.  Likewise, with respect to the ostensible statements in the article, Plaintiff failed to allege that the statement made, that Co-Diagnostics' COVID-19 tests scored between 99.52% and 100% in evaluations conducted by the FDA and in Europe, was untrue or that Plaintiff learned of such untruth sufficient to create a duty to correct, during the class period.

Accordingly, Plaintiff failed to plead facts sufficient to support liability on a theory of a duty to correct.

4. The SAC Does Not Sufficiently
Plead any Obligation to Correct
Statements of Third-Parties

Plaintiff has also attempted to concoct a theory of liability against Defendants on the basis of statements made by third-parties.  Plaintiff has failed to plead facts sufficient to hold any Defendant liable for any third-party statements and has failed to plead facts sufficient to raise a duty for any Defendant to "clarify" certain third party statements.  Plaintiff alleges that certain third-parties published statements concerning Co-Diagnostics' COVID-19 tests and that "Co-Diagnostics did not release any clarifying statement about the accuracy of its test and has not addressed the allegations in public filings or press releases." (Am. Compl. ¶¶69, 70)  Plaintiff alleges that Co-Diagnostics "could have released a clarifying statement about the accuracy of its test." (Am. Compl. ¶88)  This theory is not sufficiently pled, as no facts are alleged such that any of these third party statements are "attributable" to any of the Defendants, and as set forth above,

there are no allegations as to whether any of the Defendants had any knowledge such that a clarification was required, or that any Defendant had such knowledge during the class period sufficient to raise an actionable duty.

A defendant is only under an obligation to correct or clarify prior statements that it made itself or if such statement is attributable to it. *In re Polaroid Corp. Securities Litigation*, 134 F.Supp.2d 176, 184 (D. Mass. 2001) (Company may be held liable for report which it "has adopted, endorsed, or sufficiently entangled itself with); *U.S. S.E.C. v. Tambone*, 417 F.Supp.2d 127, 135 (D. Mass. 2006) (Defendant only responsible to clarify statements attributable to itself); *Raab v. General Physics Corp.*, 4 F.3d 286, 298 (4th Cir. 1993 (Securities laws do not require company to police statements made by third-parties).

The Tenth Circuit has taken a considerably more stringent view, that a defendant *can* be liable for representations made by third-parties when it provides significant or substantial assistance to those third-parties' representations. *Anixter v. Home-Stake Production Co.*, 77 F.3d 1215, 1225-26 (10th Cir 1996) (*See*, Fn. 10 describing the law of other jurisdictions requiring varying degrees of involvement, including being "inextricably involved," in order to be held liable for a third-party's statements).  Even more to the point is that *Anixter* concerns shared liability between an auditor and issuer, which have a working relationship regarding the securities and statements.

In the instant case, Plaintiff does not allege that Defendants were in any way involved with the third-party statements.  They are not alleged to have participated in making those statements, to be attributable for those statements, or any other involvement.  Therefore, no duty to correct or clarify would have arisen, and since Defendants have no obligation to police third-parties, no liability may arise.  Moreover, these third-parties are totally unrelated to Defendants.  They do not

19

have the working relationship of an auditor for example.  Therefore, Defendants posit that their own involvement with such statements (or lack thereof) should be viewed under a more stringent standard.  In either case, Plaintiff has not made allegations to satisfy any standard.  Accordingly, there can be no liability with respect to the third-party statements as alleged.

### B.   Plaintiff Fails to Sufficiently Allege Scienter

Even if the Court finds that Plaintiff has adequately alleged material misrepresentations to support its securities fraud claim, Plaintiff failed to adequately plead that Defendants acted with scienter.  Under the PSLRA, a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with . . . [scienter]."  *Adams*, 340 F.3d at 1105. *See also City of Philadelphia v. Fleming Companies, Inc.*, 264 F.3d 1245, 1258 (10th Cir. 2001).   Under the PSLRA, a complaint must allege sufficient fact giving rise to a strong inference of scienter with respect to each act or omission alleged to have violated Section 10(b) and Rule 10b-5.  *See Wolfe v. Aspenbio Pharma, Inc.*, 587 Fed.Appx. 493, 497 (10th Cir. 2014).

In a securities fraud action, the level of scienter needed to establish a violation of Rule 10b-5 is "a mental state embracing an intent to deceive, manipulate or defraud, or recklessness.*" See City of Philadelphia v. Fleming Companies, Inc., 264 F.3d 1245, 1258 (10th Cir. 2001).*   In determining whether scienter is sufficiently alleged under the PSLRA, a court must examine the allegations in their entirety and determine whether the plaintiff's allegations, taken as a whole, give rise to a strong inference of scienter.  *Id.*  To give rise to a strong inference of scienter,

> [i]t does not suffice that a reasonable factfinder plausibly could infer from the complaint the requisite state of mind.  Rather, . . . a court . . . must engage in a comparative evaluation, it must consider, not only the inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged.

*Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 314 (2007).  Thus, as the Supreme

Court. recognized, "[t]o qualify as 'strong' within the intendment of [the PSLRA] . . . an inference

of scienter must be more than merely plausible or reasonable – it must be cogent and at least as

compelling as any opposing inference of nonfraudulent activity." *Id.*

      Thus, although an inference of scienter need not be irrefutable, it must be more than merely

plausible or reasonable.  *See Smaller v. The Western Union Co*., drawn950 F.3d 1297, 1305 (10th

Cir. 2020) (citing *Tellabs*, 551 U.S. at 314.))   A complaint will survive dismissal "only" if a

reasonable person would deem the inference of scienter cogent and at least as compelling as any

opposing inferences that could be drawn from the allegations.  *Id. See also In re Thornburg Mtg.,*

*Inc. Sec. Litig.,* 695 F. Supp.2d 1165, 1187 (D.N.M. 2010) (Court held that to allege the "strong

inference" of scienter that the PSLRA requires, a plaintiff must allege specific facts giving rise to

an inference of culpability that is at least as strong as any competing inference of good faith).

      In the SAC, Plaintiff makes only the most general allegations as to scienter.  Essentially,

Plaintiff's allegations amount to nothing more than conclusory allegations that Defendants knew

the purported statement of 100% accuracy was false.  For example, the Amended Complaint

contains the following generalized allegations regarding scienter:

- Co-Diagnostics knew that even a highly accurate test – such as 96%, 98% or even 99%
  -- was not the same, and not remotely as valuable, as a 100% accurate test.  That is
  because having a 100% accurate test would have significantly distinguished Co-
  Diagnostics from other larger, more reputable competitors introducing Covid-19 tests
  into the marketplace.  And also because the widespread administration of a Covid-19
  test that is even minimally inaccurate can have adverse public health consequences.
  Co-Diagnostics knew this – and so it intentionally issued statements to the public to
  fend off truthful analysis and scientific skepticism about its supposed miracle test.
  (SAC. ¶ 86.)

- As alleged herein, Defendants acted with scienter in that Defendants: knew that the
  public documents and statements issued or disseminated in the name of the Company
  were materially false and misleading; knew that such statements or documents would

be issued or disseminated to the investing public, and knowingly participated in or acquiesced in the issuance or dissemination of such statements as primary violations of the federal securities laws.  (SAC ¶ 89.)

- Each of the Individual Defendants directly benefited from the fraudulent overstatement of the Company's technological capabilities at least in the form of their own stock and stock options, which Co-Diagnostics insiders have been cashing in on since the onset of the pandemic. .  (SAC ¶ 90.)

### 1.   The Allegations of Scienter Fail to Satisfy the PSLRA

First, Plaintiff only makes generalized, conclusory allegations that Co-Diagnostics knew that the alleged misstatements were false.  Such generalized, conclusory allegations are insufficient to meet the pleading requirements under the PSLRA with respect to scienter.  *See Prissert v. EMCORE Corp.*, 894 F. Supp.2d 1361, 1371-72 (D. N.M. 2012) (Court held that general allegations of scienter were insufficient to allege scienter under the PSLRA); *Anderson v. First Sec. Corp.*, 249 F. Supp.2d 1256, 1269 (D. Utah 2002) (court dismissed securities fraud claim finding that the plaintiff failed to plead specific contemporaneous facts showing that the defendants knew their statements were false when made).  As described above, Plaintiff was required to make particularized allegations as it pertains to scienter.  Instead, it largely relies on the generalized allegations that Defendants ostensibly knew the statements to be untrue.  As discussed above, these allegations are not even sufficient to establish the elements of knowing and falsity, better yet scienter.

The allegations in the SAC with respect to scienter, by and large, amount to nothing more than general, conclusory allegations that Defendants knew that the statements were false and that such information would be disseminated to the investing public.  (SAC ¶¶ 89, 90.)  Such general allegations, devoid of any specific facts, fail to meet the PSLRAs exacting requirements in

pleading scienter.[6]  This matter was raised in Defendant's initial motion to dismiss.  Plaintiff attempted to resolve this by alleging more detail with respect to the manner by which it alleges the individual Defendants "cashed in," but included no further detail, as it was required to sufficiently plead a claim, as to actually setting forth the element of scienter.  In that regard, Plaintiff's additional allegations that several of the Individual Defendants sold Co-Diagnostics shares, even if true, is insufficient to establish scienter. (SAC. ¶¶91-97)

Resolving the issue, the District of Utah has already held that the sale of stock has "no independent significant" as it pertains to scienter. *Caprin v. Simon Transp. Services*, 112 F.Supp.2d 1251, 1259 (D. Utah 2000); *In re Overstock Securities Litigation*, 2020 WL 5775845, at *12 (D. Utah 2020).  The *Caprin* Court explained that stock sales can illustrate that there was a "motive and opportunity to commit securities fraud," but that such allegations "do not show that defendants knowingly made false statements." *Caprin*, 112 F.Supp.2d at 1259.  In the instant case, there are no specific allegations that any of the Defendants knew any of the alleged statements to be false, and so there is nothing to move the needle with respect to what the stock sales might indicate.

Finally, with respect to the sale of shares and the ostensible relation to scienter, it must be noted that while Plaintiff attempts to impute the alleged sales by a few of Co-Diagnostics' officers and directors upon all of the Defendants, Plaintiff did *not* allege Satterfield to be among them. Plaintiff also failed to make any other allegations of scienter against Satterfield.  Thus the

---

[6] In an effort to show motive and a benefit to support its scienter allegations, Plaintiff makes the bald allegation that the "Individual Defendants directly benefited from the overstatement of the Company's technological capabilities in the form of at least the false inflation of their own stock and stock options, which Co-Diagnostics insiders have been cashing in on since the onset of the pandemic."  (Am. Comp. ¶ 90.)  Plaintiff has failed to allege any specific evidence of sales of stock or exercise of options by any of the Individual Defendants.  Even assuming the truth of this allegation, the mere fact that insiders sold stock during the class period fails to sufficiently allege scienter; instead, the plaintiff must allege that such sales were "suspicious" or "unusual".  See *In re Hain Celestial Grp., Inc. Sec. Litig.*, 2020 WL 1676762, at * 16 (E.D.N.Y., Apr. 6, 2020).  Plaintiff fails to do so.  Accordingly, this Court is not required to accept this entirely unsupported allegation as true.

generalized allegations described above are entirely insufficient, and given that no particularized allegations of scienter were made against him, the SAC fails to state a claim against Satterfield.

Accordingly, the SAC fails to sufficiently allege scienter and Court should therefore dismiss Plaintiff's securities fraud claim.

**POINT III**

**THE COURT SHOULD DISMISS PLAINTIFF'S CLAIM UNDER SECTION 20(a)**

In Count II of the Amended Complaint, Plaintiff purports to assert a claim for control person liability against the Individual Defendants under Section 20(a) of the Exchange Act. Section 20(a) of the Exchange Act provides that:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person . . . . is liable . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a). To state a cause of action under Section 20(a), a plaintiff must establish: (1) a primary violation of the securities laws; and (2) "control" over the primary violator. *See Rumbaugh*, 2018 WL 5044240, at *10 (citing *City of Philadelphia*, 264 F.3d at 1270-71).

Accordingly, where, as here, a plaintiff fails to adequately allege a primary violation of the securities laws, a claim under Section 20(a) must be dismissed. *See, e.g.*, *Rumbaugh*, 2018 WL 5044240, at *10 (holding because the amended complaint failed to state a claim under Section 10(b) of the Exchange Act for securities fraud, the plaintiff's control person liability claim also failed); *Gibson v. Vanisi*, 2005 WL 165382, at *5 (D. Utah, Jan. 25, 2005) ("Because the court concludes that Plaintiff failed to adequately plead primary claims that any of the defendants violated section 10(b) and Rule 10b-5, Plaintiff's section 20(a) claim is dismissed"); *TDC Lending LLC Private Capital Group, Inc.*, 340 F. Supp.3d 1218, 1230-31 (D. Utah 2018), (dismissing

24

Section 20(a) claim where the plaintiff failed to sufficiently allege a primary violation of the securities laws).

Because, as discussed above, Plaintiff has failed to adequately plead a primary violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, the Court must dismiss Count II for control person liability under Section 20(a).

### Conclusion

For all the foregoing reasons, the Court should grant Defendants' motion, and dismiss the Second Amended Complaint in its entirety.

Dated: New York, New York
May 5, 2021

CARMEL, MILAZZO, & FEIL, LLP
   */s/ Christopher P. Milazzo* _____
Christopher P. Milazzo, Esq.
*Admitted Pro Hac Vice*
55 West 39th Street, 18th Floor
New York, New York 10018
(212) 658-0457
CMilazzo@cmfllp.com
*Attorneys for Defendants*
