Ryan B. Hancey, Esq., rhancey@keslerrust.com, Utah State Bar Number 9101
Attorney for Defendants
Kesler & Rust
68 South Main Street, Suite 200
Salt Lake City, Utah 84101
(801) 532-800 (TEL.)

Christopher P. Milazzo, Esq., cmilazzo@cmfllp.com, Pro Hac Vice
Attorney for Defendants
Carmel, Milazzo & Feil LLP
55 West 39th Street, 18th Floor
New York, New York 10018
(212) 658-0458 (TEL.)

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **GELT TRADING, LTD., a Cayman Islands limited company,** | Case NO. 2:20-cv-00368-JNP-DBP |
| **Plaintiff,** | REPLY IN SUPPORT OF MOTION TO DISMISS |
| **v.** | Judge Jill N. Parrish |
| **CO-DIAGNOSTICS, INC., a Utah Corporation, DWIGHT EGAN, JAMES NELSON, EUGENE DURENARD, EDWARD MURPHY, RICHARD SERBIN, REED BENSON and BRENT SATTERFIELD,** | |
| **Defendants.** | |

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ......................................................................................... ii

Preliminary Statement.........................................................................................1

Argument ...........................................................................................................2

POINT I
THE SAC IS AN IMPERMISSIBLE PUZZLE PLEADING ............................................2

POINT II
PLAINTIFF HAS NOT ALLEGED AN ACTIONABLE MISSTATMENT ....................3

POINT III
PLAINTIFF HAS FAILED TO SUFFICIENTLY ALLEGE SCIENTER .........................7

CONCLUSION...........................................................................................................10

## Table of Authorities

<u>**Cases**</u>

*Frater v. Hemispherx Biopharma, Inc.*,
996 F.Supp.2d 335, 350 (E.D.P.A 2015) ...............................................................7,8,9

*Glaser v. The9, Ltd.*,
772 F.Supp.2d 573, 587-88 (S.D.N.Y. 2011) ...............................................................7

*Glassman v. Computervision Corp.*,
90 F.3d 617, 624 (1st Cir. 1996) ...............................................................5

*In re Adient plc Sec. Litig.*,
2020 WL 1644018, at *15 (S.D.N.Y. 2020) ...............................................................4

*In re Arfa*,
2015 WL 5610864, at *3-4 (S.D.N.Y. 2015) ...............................................................3

*In re Convergent Technologies Securities Litigation*,
948 F.2d 507, 512-13 (9th Cir. 1991) ...............................................................6

*In re Lululemon Securities Litigation*,
14 F.Supp.3d 553, 580 (S.D.N.Y. 2014) ...............................................................4

*In re Nokia Oyj (Nokia Corp.) Sec. Litig.*,
423 F.Supp.2d 364, 393 (S.D.N.Y. 2006) ...............................................................4,5

*In re Philip Morris International Inc. Securities Litigation*,
437 F.Supp.3d 329, 349 (S.D.N.Y. 2020) ...............................................................4

*In re PXRE Group, Ltd., Sec. Litig.*,
600 F.Supp.2d 510 (S.D.N.Y. 2009) ...............................................................8

*In re Security Capital Assurance, Ltd. Sec. Litig.*,
729 F.Supp.2d 569, 595-96 (S.D.N.Y. 2010) ...............................................................8

*In re Vivendi, S.A. Sec. Litig.*,
838 F3d 223, 240 (2nd Cir. 2016) ...............................................................3

*Lubbers v. Flagstar Bancorp. Inc.*,
162 F.Supp.3d 571, 578 (E.D.Michigan 2016) ...............................................................5

*McGovney v. Aerohive Networks, Inc.*,
367 F.Supp.3d 1038, 1059 (N.D.Cal. 2019) ...............................................................4

*Miller v. Lazard, Ltd.*,
473 F.Supp.2d 5771, 585 (S.D.N.Y. 2007) ......................................................................8

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*,
694 F.Supp.2d 287, 299-300 (S.D.N.Y. 2010) .............................................................8

*Rumbaugh v. USANA Health Scis., Inc.*,
2018 WL 5044240, at *4 (D.Utah 2018) ........................................................................2

*Securities and Exchange Commission v. Mapp*,
240 F.Supp.3d 569, 584-85 (E.D.Texas 2017) ...............................................................4

*Stein v. U.S. Xpress Enterprises, Inc.*,
2020 WL 3584800, at * (E.D.Tennessee 2020) ..............................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) .....................................................................................................8,9

**<u>Statutes</u>**

15 U.S.C. § 78u-4 1 ................................................................................................................2,7

Fed. R. Civ. P. 9(b) ...................................................................................................................1

Fed. R. Civ. P. 12(b)(6) ............................................................................................................1

Defendants Co-Diagnostics, Inc. ("Co-Diagnostics"), Dwight Egan ("Egan"), James Nelson ("Nelson") Eugene Durenard ("Durenard"), Edward Murphy ("Murphy"), Richard Serbin ("Serbin"), Reed Benson ("Benson") and Brent Satterfield ("Satterfield") (collectively, the "Defendants")[1] respectfully submit this reply brief in further support of their motion, pursuant to Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 9(b) and the Private Litigation Securities Reform Act (15 U.S.C. § 78u-4) ("PSLRA") to dismiss the Second Amended Complaint (the "SAC") filed herein by Lead Plaintiff Gelt Trading Ltd. ("Plaintiff" or "Gelt").

## PRELIMINARY STATEMENT

Plaintiff's opposition is little more than a transparent attempt to misframe the alleged misstatements as "misleading." As set forth in the SAC, Co-Diagnostics reported on laboratory results in which its COVID-19 tests achieved results of 100% in specificity and 100% in sensitivity. These statements were 100% true when made, and Plaintiff has not alleged that the company's tests did not achieve the results reported. Left with the reality that such statements were true, and having no basis to claim that same were false, Plaintiff goes on to argue that what Defendants *really* meant, was not that the COVID-19 tests achieved the results reported – the literal and only contents of the statements at issue – but that the tests themselves were 100% accurate. To be clear, Plaintiff does not allege that the Covid-19 tests did not score as allegedly stated by Defendants, nor does it allege that Co-Diagnostics is in possession of any *specified* materials or information rendering the statements misleading.

In sum Plaintiff is attempting to state a claim for securities fraud not for the statements actually made, but what Plaintiff believes Defendants supposedly "meant" to convey in the

---

[1] Egan, Nelson, Durenard Murphy, Serrbin, Benson and Satterfield are referred to collectively herein as the "Individual Defendants".

1

statements.   Plaintiff argues that the statements made by Defendants are "half truths" that required Defendants to disclose that there was allegedly some problem with Co-Diagnostics' Covid-19 tests.  As discussed below, Plaintiff's position is meritless.

First, the Court should not overlook, that, in making this argument, Plaintiff actually acknowledges that the statements that form the basis of this claim are actually true.  Second, Plaintiff simply cannot alter and misconstrue the actual words allegedly used to manufacture a securities fraud claim based upon some speculative belief regarding what Plaintiff believes Defendants really meant in the statements.  There is no allegation in the SAC that Defendants' statements concerning the laboratory reports of the Covid-19 tests were false, inaccurate or misleading, nor does Plaintiff allege any facts that were not disclosed that make these statements misleading.  Accordingly, Defendants were not required to state additional facts regarding the accuracy of the Covid-19 tests in the field to make the statements not misleading.

Further, with respect to scienter (assuming that Plaintiff can establish an actionable false statement) Plaintiff's general and conclusory allegations fail to satisfy the PSLRA.

Accordingly, as discussed more fully below, the Court should grant Defendants' motion and dismiss the SAC in its entirety.

**POINT I**
**THE SAC IS AN IMPERMISSIBLE PUZZLE PLEADING**

Plaintiff has failed to rebut the argument that the SAC is an impermissible puzzle pleading. Plaintiff is correct that a puzzle pleading forces a Court to sift through pleadings to locate misleading statements and the reasons they are misleading. *Rumbaugh v. USANA Health Scis., Inc.*, 2018 WL 5044240, at *4 (D.Utah 2018).  Plaintiff also does finally, in its opposition, set forth the statements it alleges to have been misleading.  However, Plaintiff is also required to include a concise statement as to *why* the statements are misleading.  Plaintiff has failed to do that and its

2

opposition still does not make clear why the alleged statements were misleading when made. Instead, Plaintiff attempts to string together such an inference without ever saying 'Co-Diagnostics knew there was any flaw in its test at the time of the press release.' Indeed, Plaintiff merely quotes numerous articles questioning the accuracy of Co-Diagnostics' tests and impermissibly leaves it to this Court to figure out how these articles establish that the actual statements at issue were false.

Accordingly, for this reason alone, the Court should dismiss the SAC.

<b>POINT II</b>

<b>PLAINTIFF HAS NOT ALLEGED AN ACTIONABLE MISSTATEMENT</b>

Despite the SAC being replete with untrue allegations that Defendants "touted" "100% accuracy" of its tests, Plaintiff now seems to concede that Defendants did not actually make any false statements.[2] Plaintiff does not allege to proceed on a theory of fraud by omission.[3] Instead, Plaintiff's opposition debuts a theory that the statements constitute "half-truths.[4] It is clear that Plaintiffs have chosen to chart this course because the two statements that form the basis of this action are true. However, this theory still fails for several reasons.

Under the theory of half-truths, "a statement that contains only favorable matters and omits all reference to unfavorable matters is as much a false representation as if all the facts stated were untrue." *In re Vivendi, S.A. Sec. Litig.*, 838 F3d 223, 240 (2nd Cir. 2016). Indeed, Courts have

---

[2] Notwithstanding the allegations in the SAC that Co-Diagnostics should have issued corrective disclosure (SAC ¶¶ 81, 87, 88), Plaintiff states that it does not seek liability based on the theory that Defendants were under a duty to correct the alleged misstatements.

[3] No such theory is set forth in the Complaint and Plaintiff does not allege any duty to inform or any basis therefor.

[4] The Court is respectfully referred to Plaintiff's opposition, in which Plaintiff does not argue any statements made to be false, but instead hinge their argument entirely on their "half truth" theory. Even where Plaintiff argues that "Defendants were telling customers and investors that the Co-Diagnostics' Covid-19 test was 100% accurate" (Opposition p. 14), the argument depends on the "half truth" theory, as the statements actually made were restricted to sensitivity and specificity.

3

suggested that the theory depends on withholding information which renders statements misleading. *In re Arfa*, 2015 WL 5610864, at *3-4 (S.D.N.Y. 2015); *Securities and Exchange Commission v. Mapp*, 240 F.Supp.3d 569, 584-85 (E.D.Texas 2017) (Defendant could only be liable under a half-truth theory where he partially disclosed but understated his compensation; for example disclosing his cash compensation without disclosing stock compensation.)  Thus the Court declared that "half-truth liability requires the declarant to actually speak about a topic to be found liable for omitting the remainder of the truth." *Mapp*, 240 F.Supp.3d at 584-85.

At the outset, Plaintiff's half-truth theory fails because it still depends on the non-disclosure of contradictory material information. *In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *15 (S.D.N.Y. 2020).  The complaint must allege "specific" material facts which were omitted and those specific facts must have been known to the maker of the statement. *Id.* at *16; *citing In re Lululemon Securities Litigation*, 14 F.Supp.3d 553, 580 (S.D.N.Y. 2014); *McGovney v. Aerohive Networks, Inc.*, 367 F.Supp.3d 1038, 1059 (N.D.Cal. 2019) (Investor failed to plead falsity in failing to allege specific facts supporting inference of falsity)  In that regard, the SAC is impermissibly conclusory in its allegations and cannot sustain this theory as Plaintiff has not identified any specific facts or information which Co-Diagnostics possessed, which were not known to the public, and which it did not disclose so as to render the alleged statements actionable "half-truths." *In re Philip Morris International Inc. Securities Litigation*, 437 F.Supp.3d 329, 349 (S.D.N.Y. 2020) ("A statement can be misleading, though not technically false, if it amounts to a half-truth by omitting some material fact.") *quoting In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F.Supp.2d 364, 393 (S.D.N.Y. 2006); *Stein v. U.S. Xpress Enterprises, Inc.*, 2020 WL 3584800, at * (E.D.Tenn. 2020) (Court rejected half-truth theory where allegations lacked "meaningful factual underpinnings for the[] allegations.)

The statements at issue concerned only the results of laboratory test of Co-Diagnostics' Covid-19 test. Plaintiff do not allege that Defendants were withholding any *particular* information regarding the laboratory results of the Covid-19 test, *i.e.* studies or unfavorable laboratory results, nor does the SAC allege that Defendants were in possession of any study or evaluation of Co-Diagnostics' Covid-19 test demonstrating that it did not achieve 100% sensitivity and/or 100% specificity. Therefore, contrary to Plaintiff's contention, there was no duty for Co-Diagnostics to include in its statements information regarding the accuracy of its Covid-19 tests in the field.[5] *Lubbers v. Flagstar Bancorp. Inc.*, 162 F.Supp.3d 571, 578 (E.D. Mich. 2016) (A company's obligation, as it concerns half-truths, is to "choose silence or speech elaborated by the factual basis *as then known*.") (emphasis added).

In addition, Plaintiff improperly imputes its own subjective interpretation to the statements actually alleged. Plaintiff has made its own subjective interpretation of the statements and a plaintiff's unreasonable interpretation will not support liability based on a misrepresentation. In fact, the Court in *Glassman v. Computervision Corp.* specifically rejected the contention that a statement was a misleading half-truth merely because of what plaintiff subjectively believed the prospectus to have "suggested." 90 F.3d 617, 624 (1st Cir. 1996) (Affirming District Court ruling that a prospectus would not bear the plaintiffs' characterization of same, and that the alleged "representations were no more than unreasonable inferences drawn by plaintiffs and unsupported by the surrounding language.") Plaintiff's own allegations secure this point in favor of Defendants. In alleging that the medical community came out and said that no test could be 100% accurate,[6]

---

[5] Performance of the Covid-19 test as used in the field is different than what is described in the results of the laboratory tests referred to in Defendants' statements. In the field, many factors can effect the accuracy of tests, including human error in collecting samples.

[6] Without referencing the data, thus forwarding the colloquial usage.

Plaintiffs admit that their own subjective *interpretation* of the data reported could not be reasonable. For example, in *In re Convergent Technologies Securities Litigation*, 948 F.2d 507, 512-13 (9th Cir. 1991), a case cited by Plaintiff, the plaintiff asserted this same argument and the Ninth Circuit rejected the position. Stating that "[t]he challenged statements do not imply any comparison between the rate of past and future growth" and that "[t]hey simply report past performance and assert specific limited predictions," the Court rejected the plaintiff's contention that the statement "implied" that growth would continue at such a pace. *In re Convergent Technologies Securities Litigation*, 948 F.2d, at 513. Therefore, the literal statement was operative as spoken, and deemed truthful, and the plaintiff's subjective belief as to what the statement meant (or implied) was not the correct benchmark. The measure is not whether the Plaintiff, in its misreading of the statement, was subjectively "misinformed" (or, as here, mistaken) but that "when read in light of all the information then available to the market, a failure to disclose particular information, conveyed a false or misleading impression." *In re Convergent Technologies Securities Litigation*, 948 F.2d, at 512-13.

Moreover, in rejecting this argument the Court in *In re Convergent* reasoned that the market knew of the fact that growth rates would not continue as they had previously, holding that "an omission is materially misleading only if the information has not already entered the market. If the market has become aware of the allegedly concealed information, the facts allegedly omitted by the defendant would already be reflected in the stock's price." *Id.* Here, Plaintiffs do not allege a single fact not known to the market (or otherwise, for that matter) at the time of the alleged statements.

Accordingly, the Court should find that the "half-truth" theory does not apply to the statements at issue here, and does not operate to make Defendants' admittedly true statements

6

false.  Accordingly, the Court should find that Plaintiff has not alleged any actionable misstatement to support a securities fraud action.

**POINT III**

**PLAINTIFF HAS FAILED TO SUFFICIENTLY ALLEGE SCIENTER**

Plaintiff has also failed to demonstrate that the SAC adequately alleges scienter.  First, as set forth above, no misstatement was made.  The only statements alleged are absolutely true, Co-Diagnostics' Covid-19 test performed at 100% specificity and 100% sensitivity in laboratory evaluations.  To support its contention of scienter, Plaintiff raised "five categories" of facts which it argues create a strong inference of scienter.  However, the SAC does not allege several of the facts offered in the opposition, and even those actually alleged do not carry the weight to support scienter.  The PSLRA requires inferences of scienter to be more than reasonable or permissible, it requires them to be cogent and compelling.

In order to plead scienter (and misrepresentation) Plaintiff must specifically allege Defendants' knowledge of facts contradicting the public statements, and must specifically identify the same or provide specific instances in which Defendants received such information. *Glaser v. The9, Ltd.*, 772 F.Supp.2d 573, 587-88 (S.D.N.Y. 2011)  Contrary to Plaintiff's argument, Defendants were *not* in possession of adverse information from a regulatory, or any other body. *c.f. Frater v. Hemispherx Biopharma, Inc.*, 996 F.Supp.2d 335, 350 (E.D. Pa. 2015) (Defendant possessed adverse information from a regulatory body about its product).  Instead of pointing to any concrete information Co-Diagnostics possessed to the exclusion of the investing public, as none existed or was alleged, Plaintiff took a quote from the Salt Lake Tribune out of context.  The quote uses the word "unknowns" and it appears Plaintiff has (very) liberally construed that to have meant 'unknown to the public but known to Co-Diagnostics.'  That is not the case.  Indeed, the

7

SAC and the opposition fail to point to a single fact known to Co-Diagnostics which was not known to the public. (Opposition pp.20-21).  Plaintiff harps on the alleged statements and argues that Defendants did not "disclose or even discuss any adverse information [known]" and that "Satterfield knew investors would want this adverse information, and he knew that by failing to discuss the totality of the information investors would be misled." (Opposition p.21)  However, neither the SAC nor the opposition identify any adverse information known by Defendants. Plaintiff only points to the general statement that no test can be 100% accurate, which is alleged to have been a matter of public "knowledge."  The Salt Lake Tribune article and the purported public knowledge do not satisfy this requirement. *Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F.Supp.2d 287, 299-300 (S.D.N.Y. 2010) (Broad reference to raw data and generalized forecasting and speculation in the media is insufficient); *Miller v. Lazard, Ltd.*, 473 F.Supp.2d 5771, 585 (S.D.N.Y. 2007) (A news article relied upon in a pleading "must indicate particularized facts about a defendant's conduct); *In re PXRE Group, Ltd., Sec. Litig.*, 600 F.Supp.2d 510 (S.D.N.Y. 2009) (Contentions that defendants 'must have known' fail to support inferences that defendants had knowledge); *In re Security Capital Assurance, Ltd. Sec. Litig.*, 729 F.Supp.2d 569, 595-96 (S.D.N.Y. 2010) (Plaintiff cannot rely on information generally known or available to the public to support an inference of scienter).

To that degree, Plaintiff points to caselaw in which "sophisticated scientists" heralded scientific results which they knew were the product of faulty procedures. *Citing*, *Frater*, 996 F.Supp.2d at 350.  However, in stark contrast to *Frater*, Plaintiff does not make even the slightest allegation that the lab evaluations of the Covid-19 tests were "empirically faulty."

The timing of the Press Release also does not help establish scienter.  *Tellabs, Inc.* provides that the inquiry is one of comparison between how likely it is that one conclusion as compared to

the others follows from the facts.  *Id.* at 323.  While Plaintiff alleges that the Press Release came out a day after the Salt Lake Tribune article, the data underlying the Press Release came out less than a week and a half before the Press Release was issued, a fact notably omitted by Plaintiff and negating the theory that this was purposefully timed.   Thus, by Plaintiff's argument, Co-Diagnostics would have been required to digest all of the information from the studies and draft an accurate press release in one business week in order to satisfy Plaintiff.  The inference is not compelling.  It is equally, if not more likely, that Co-Diagnostics its statement quickly and in due course, without rushing out a press release.

Fourth, Co-Diagnostics did not have a unique motive or opportunity to mislead.  With respect to the opportunity, the nature of the allegation relied upon by Plaintiff, that no test is 100% accurate, is not specific to Co-Diagnostics' test but is alleged to be public knowledge.  Moreover, the Press Release disclosed the entirety of the results from the evaluations.  Thus, there was no opportunity to mislead.  There was also no motive.  While Plaintiff argues that other larger companies were "nipping at its heels," Plaintiff has failed to identify any ostensible problem with Co-Diagnostics' tests in particular, as compared to any other Covid-19 test.  The generalized criticism alleged, to the extent it can be understood in the specific sense, would seemingly be applicable to any Covid-19 test.  Thus there was no such motive for Defendants to 'differentiate' their test from others with respect to such a generalized charge.[7]

---

[7] In addition, Plaintiffs failed to take Satterfield's full quote from the Salt Lake Tribune.  Satterfield is reported to have stated "the tests scored between 99.52% and 100% in evaluations conducted by the FDA and in Europe – **comparable to other available test kits**." https://www.sltrib.com/news/2020/05/14/testutah-declines-join/.   This contradicts Plaintiff's theory that Satterfield sought to distinguish Co-Diagnostics' tests as superior.  He did not say they scored 'better' than other test kits.

Finally, Plaintiff's fifth category of 'fact' is totally false.  Plaintiff argues that Co-Diagnostics declined to join a joint experiment.  Very notably, and misleadingly, the word Co-Diagnostics was placed outside of the quote cited by Plaintiff. (Opposition p.24).  This is because Co-Diagnostics did not decline to join the experiment.  TestUtah declined to join the experiment.  Co-Diagnostics is not alleged to speak for TestUtah, to make its decisions, or to have any other relationship with TestUtah so as to impute TestUtah's decision to Co-Diagnostics.  Instead, TestUtah was a "statewide testing operation."  As such, this may not support an inference against Co-Diagnostics.[8]

Accordingly, not one of the allegations raised by Plaintiff can support scienter, and most lack any factual basis at all.  Therefore, Plaintiff has failed to sufficiently allege scienter and the SAC should be dismissed.

## Conclusion

For all the foregoing reasons, the Court should grant Defendants' motion, and dismiss the Second Amended Complaint in its entirety.

Dated:  New York, New York
       July 7, 2021

                     CARMEL, MILAZZO, & FEIL, LLP
                      __/s/ Christopher P. Milazzo_____
                     Christopher P. Milazzo, Esq.
                     *Admitted Pro Hac Vice*
                     55 West 39th Street, 18th Floor
                     New York, New York 10018
                     (212) 658-0457
                     CMilazzo@cmfllp.com
                     *Attorneys for Defendants*

---

[8] https://www.sltrib.com/news/2020/05/14/testutah-declines-join/