Ryan B. Hancey, Esq., 9101
Kesler & Rust
68 South Main Street, Suite 200
Salt Lake City, Utah 84101
(801) 532-800 (TEL.)
rhancey@keslerrust.com

Christopher P. Milazzo, Esq., Pro Hac Vice
Carmel, Milazzo & Feil LLP
55 West 39th Street, 18th Floor
New York, New York 10018
(212) 658-0458 (TEL.)
**cmilazzo@cmfllp.com**
Attorneys for Defendants

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| GELT TRADING, LTD., a Cayman Islands limited company, | **ANSWER** |
| Plaintiff, | |
| *v.* | **Case No. 2:20-cv-00368-JNP-DBP** |
| CO-DIAGNOSTICS, INC., a Utah Corporation, DWIGHT EGAN, JAMES NELSON, EUGENE DURENARD, EDWARD MURPHY, RICHARD SERBIN, REED BENSON, BRENT SATTERFIELD, | **Judge Jill N. Parrish** |
| Defendants. | **Magistrate Judge Dustin B. Pead** |

Defendants Co-Diagnostics, Inc. ("Co-Diagnostics"), Dwight Egan ("Egan"), James

Nelson ("Nelson"), Eugene Durenard ("Durenard"), Edward Murphy ("Murphy"), Richard

Serbin ("Serbin"), Reed Benson ("Benson"), and Brent Satterfield ("Satterfield") (collectively,

the "Defendants") (Egan, Nelson, Durenard, Murphy, Serbin, Benson, and Satterfield are

- 1 -

hereinafter collectively referred to as the "Individual Defendants"), by and through their attorneys, the firms of Carmel, Milazzo & Feil, LLP and Kesler & Rust, answer the Second Amended Class Action Complaint (the "Complaint") filed by lead plaintiff Gelt Trading, Ltd. ("Lead Plaintiff") and on purported behalf of the Class Members (as that term is defined in the Complaint) (the Lead Plaintiff and Class Members are collectively referred to herein as the "Plaintiffs") as follows:

## <u>INTRODUCTION</u>

1.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of the Complaint.

2.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2 of the Complaint.

3.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3 of the Complaint.

4.      Deny the allegations contained in Paragraph 4 of the Complaint except denies knowledge or information sufficient to form a belief as to the truth of the allegation that there are some companies and corporate executives who have sought to unfairly exploit the pandemic for financial gain as alleged.

5.      Deny the allegations contained in Paragraph 5 of the Complaint.

6.      Deny the allegations contained in Paragraph 6 of the Complaint except denies knowledge or information sufficient to form a belief as to the truth of the allegation that "Co-Diagnostics seemingly won that race and admits that Co-Diagnostics announced that it received regulatory clearance to sell its tests in the European Community on or around February 24, 2020 and that it received Emergency Use Authorization for its tests from the U.S. Food and Drug

Administration on or around April 6, 2020.

7.     Deny the allegations contained in Paragraph 7 of the Complaint.

8.     Paragraph 8 of the Complaint contains vaguely worded characterizations that render the allegations impossible to admit or deny; Defendants lack knowledge or information sufficient to determine what Plaintiff means by "soared" and "crashed" in the context of stock prices and therefore cannot admit or deny whether its stock price soared and crashed.  To the extent required, deny the allegations and characterizations contained in Paragraph 8 of the Complaint except admit that Co-Diagnostics' stock price fluctuated.

9.     The historical price of Co-Diagnostics stock is a matter of publicly available record which speaks for itself.  Deny the remaining allegations and characterizations contained in Paragraph 9 of the Complaint.

10.     Denies the allegations and characterizations contained in Paragraph 10 of the Complaint except admit that on May 14, 2020, Co-Diagnostics was set to announce its first quarter earnings after markets closed.

11.     The historical price of Co-Diagnostics stock is a matter of publicly available record which speaks for itself.  Paragraph 11 of the Complaint contains allegations of speculation which can neither be admitted nor denied.  The allegations concerning the price of the stock are not made with sufficient specificity as to the date on which the stock traded at the alleged price such that they may be fairly admitted or denied.  To the extent required, deny the allegations and characterizations contained in Paragraph 11 of the Complaint except admit that online newspapers reported on Co-Diagnostics' tests which articles are publicly available and speak for themselves, and admit that trading was paused on Co-Diagnostics' stock on the date alleged.

12.     Paragraph 12 of the Complaint is insufficiently definite in its allegation

concerning "[the] information in hand" and what is meant by a "glowing report," and therefore Defendants can neither admit nor deny the allegations contained in Paragraph 12 within the context and characterization of the allegations made therein.  To the extent required, denies the allegations contained in Paragraph 12 of the Complaint except admits that Co-Diagnostics issued an earnings report for the first quarter of 2020 and that Egan stated Co-Diagnostics had sold 6 million tests and had purchased components to manufacture an additional 20 million tests that were ordered.

13.     The allegations contained in Paragraph 13 of the Complaint are too indefinite, as they pertain to statements allegedly made by third parties, for Defendants to fairly admit or deny. To the extent required, deny the allegations and characterizations contained in Paragraph 13 of the Complaint except admit that Egan and Benson did not mention every statement by every third party relating to the tests' accuracy and admit that Satterfield was not on the call.

14.     Deny the allegations and characterizations contained in Paragraph 14 of the Complaint except admit that financial news services reported on a statement by the FDA concerning Covid-19 tests, all of which speak for themselves.

15.     The historical price of Co-Diagnostics stock is a matter of publicly available record which speaks for itself.  Deny the remaining allegations and characterizations contained in Paragraph 15 of the Complaint except admit that Co-Diagnostics' stock traded at a low of $15.80 on May 15, 2020 and reached a high of $29.72 the prior day and admit that the stock traded at around $10 per share as of the date of the filing of the Complaint.

16.     Deny the allegations and characterizations contained in Paragraph 16 of the Complaint.

17.     Paragraph 17 of the Complaint does not contain any factual allegations requiring

a responsive pleading.  To the extent required, deny the allegations contained in Paragraph 17 of the Complaint.

## JURISDICTION AND VENUE

18.     Paragraph 18 of the Complaint contains a legal conclusion to which no responsive pleading is required.  Deny knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 18 of the Complaint.

19.     Paragraph 19 of the Complaint contains a legal conclusion to which no responsive pleading is required.  Deny the remaining allegations contained in Paragraph 19 of the Complaint except admit that Satterfield, Benson, Reed, and Co-Diagnostics reside in Utah.

20.     Paragraph 20 of the Complaint contains a legal conclusion to which no responsive pleading is required.  Deny any material factual allegations contained in Paragraph 20 of the Complaint.

21.     Paragraph 21 of the Complaint does not contain any factual allegations and is too vague to admit or deny.  To the extent required or possible, deny the allegations contained in Paragraph 21 of the Complaint.

22.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 of the Complaint.

## PARTIES

23.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 of the Complaint.

24.     Admit the allegations contained in Paragraph 24 of the Complaint.

25.     Deny the allegations contained in Paragraph 25 of the Complaint except admit that Satterfield, Egan, and Benson reside and conduct business in the State of Utah.

26.     Paragraph 26 of the Complaint contains non-factual, immaterial allegations, to which no responsive pleading is required.  To the extent required, deny the allegations contained in Paragraph 26 of the Complaint except admit that the Individual Defendants were senior executive officers and/or directors of Co-Diagnostics and were privy to confidential, non-public, and proprietary information concerning Co-Diagnostics.

27.     Paragraph 27 of the Complaint contains a legal conclusion to which no responsive pleading is required.  To the extent required, deny the allegations and characterizations contained in Paragraph 27 of the Complaint.

28.     Paragraph 28 of the Complaint contains a legal conclusion to which no responsive pleading is required.  Deny the remaining allegations and characterizations contained in Paragraph 28 of the Complaint except admit that the Individual Defendants had access to the Company's reports and press releases prior to or shortly after their issuance.

29.     Paragraph 29 of the Complaint contains legal conclusions to which no responsive pleading is required.  To the extent required, deny the allegations and characterizations contained in Paragraph 29 of the Complaint.

30.     Paragraph 30 of the Complaint contains a legal conclusion to which no responsive pleading is required.  To the extent required, deny the allegations contained in Paragraph 30 of the Complaint.

## LEAD PLAINTIFF'S CLASS ACTION ALLEGATIONS

31.     Paragraph 31 of the Complaint does not contain any factual material or allegations to which a responsive pleading is required and contains legal conclusions to which no responsive pleading is required.

32.     Deny knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 32 of the Complaint.

33.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 of the Complaint.

34.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34 of the Complaint except admits that throughout the class period, Co-Diagnostics' stock was actively traded on the NASDAQ exchange and that its trading activity is a matter of public record which speaks for itself.

35.     Deny the allegations contained in Paragraph 35 of the Complaint except deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning whether Plaintiff's claims are typical of the claims of members of the class and as to Lead Plaintiff's alleged purchase of shares.

36.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36 of the Complaint.

37.     Paragraph 37 of the Complaint does not contain allegations of a material factual nature to which a responsive pleading is required.  To the extent required, deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 37 of the Complaint.

38.     Deny the allegations contained in Paragraph 38 of the Complaint.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

I.      **History of Co-Diagnostics and Historical Market Performance**

39.     Admit the allegations contained in Paragraph 39 of the Complaint.

40.     Admit the allegations contained in Paragraph 40 of the Complaint.

41.     Deny the allegations contained in Paragraph 41 of the Complaint.

42.     Admit the allegations contained in Paragraph 42 of the Complaint.

43.     The alleged prospectus is a publicly available document which speaks for itself.

44.     The alleged prospectus is a publicly available document which speaks for itself.
Deny any allegations and characterizations contained in Paragraph 44 of the Complaint which
are inconsistent with the contents of the prospectus.

45.     The alleged prospectus is a publicly available document which speaks for itself.
Deny any allegations and characterizations contained in Paragraph 45 of the Complaint which
are inconsistent with the contents of the prospectus.

46.     The alleged prospectus is a publicly available document which speaks for itself.
Deny any allegations and characterizations contained in Paragraph 46 of the Complaint which
are inconsistent with the contents of the prospectus.

47.     The historical price of Co-Diagnostics stock is a matter of publicly available
record which speaks for itself.  Deny the remaining allegations and characterizations contained
in Paragraph 47 of the Complaint except admits that the stock was first listed on the NASDAQ
on July 12, 2017 with an opening price of $6.

48.     Admit the allegations contained in Paragraph 48 of the Complaint.

II.    **Co-Diagnostics, Without Direction or Strategy, Stumbles Into Its Best Possible Opportunity as the World Begins to Reel from the Covid-19 Pandemic[1]**

49.     Deny the allegations and characterizations contained in Paragraph 49 of the
Complaint except admit that in late 2019 a virus known as Covid-19 began to spread rapidly in
Asia and has ravaged the world's economies and healthcare systems resulting in infections and
deaths as alleged, that it is a virus detectable by DNA-based testing, and that there was a need for

---

[1] Defendants deny any allegations and characterizations contained in Heading II and in any other headings of the Complaint.

accurate testing which presented an opportunity for Co-Diagnostics to use its technology.

50.      The allegations contained in Paragraph 50 of the Complaint are insufficiently definite as to which date, a week from which the Covid-19 test was developed, or what is meant by "rapid[]" development of the Covid-19 tests, to fairly permit an admission or denial thereof. To the extent required, deny the allegations contained in Paragraph 50 of the Complaint except admit that Co-Diagnostics began developing Covid-19 tests using a technology called CoPrimer which was developed and patented by Satterfield before the outbreak.

51.      Paragraph 51 of the Complaint contains a statement of opinion concerning the indication of the CE certification mark, which constitutes a regulatory guideline to which no responsive pleading is required.   Denies the remaining allegations and characterizations contained in Paragraph 51 of the Complaint except admits that CoPrimer "worked" as alleged.

52.      Paragraph 52 of the Complaint refers to a publicly available press release which speaks for itself.

53.      The historical price of Co-Diagnostics stock is a matter of public record which speaks for itself.  To the extent required, denies the allegations and characterizations contained in Paragraph 53 of the Complaint except admits that the stock traded at over $15 per share at the end of February 2020 and that at points traded at over $17 per share in early March 2020.

54.      Denies knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 54 of the Complaint except admits that on April 6, 2020 Co-Diagnostics received approval from the FDA for its Covid-19 tests under an Emergency Use Authorization.

55.      The historical price of Co-Diagnostics stock is a matter of public record which speaks for itself.  To the extent required, denies the allegations and characterizations contained

in Paragraph 55 of the Complaint except admits that the stock price rose on certain trading days thereafter.

56.     Deny the allegations and characterizations contained in Paragraph 56 of the Complaint.

### III.    Co-Diagnostics Makes Material Misrepresentations About Its Covid-19 Tests, Sending Its Stock Soaring – And Then Crashing[2]

57.     Deny the allegations and characterizations contained in Paragraph 57 of the Complaint except admits Co-Diagnostics made sales of its Covid-19 tests as alleged and that its stock rose in price on certain trading days thereafter.

58.     Deny the allegations and characterizations contained in Paragraph 58 of the Complaint.

59.     Paragraph 59 of the Complaint contains allegations which are overly vague and/or indefinite such that they may not be fairly admitted or denied.  To the extent required, deny the allegations and characterizations contained in Paragraph 59 of the Complaint except admit that The Salt Lake Tribunal published an article on April 30, 2020 with the alleged title, which is publicly available and speaks for itself.

60.     Deny the allegations and characterizations contained in Paragraph 60 of the Complaint.

61.     Deny the allegations and characterizations contained in Paragraph 61 of the Complaint.

62.     Deny the allegations and characterizations contained in Paragraph 62 of the Complaint except admit that on May 1, 2020, Co-Diagnostics issued a press release which is

---

[2] Defendants deny any allegations or characterizations contained in, or which may be gleaned from, Heading III or any other headings in the Complaint.

publicly available and speaks for itself.

63.     Deny the allegations and characterizations contained in Paragraph 63 of the Complaint, and respectfully refers the Court to the May 1, 2020 Press Release, which speaks for itself.

64.     Deny the allegations, characterizations, and implications contained in Paragraph 64 of the Complaint.

65.     Paragraph 65 of the Complaint refers to an NPR article which is publicly available and speaks for itself.

66.     Deny the allegations and characterizations contained in Paragraph 66 of the Complaint.

67.     Paragraph 67 of the Complaint contains allegations which are not factual in nature such that they may be admitted or denied.  To the extent required, deny the allegations contained in Paragraph 67 of the Complaint.

68.     Deny the allegations and characterizations contained in Paragraph 68 except admit that the Salt Lake Tribune published an article which is publicly available and speaks for itself.

69.     Deny the allegations contained in Paragraph 69 of the Complaint except deny knowledge or information sufficient to form a belief as to the truth of the allegation concerning what the market accepted and understood and respectfully refers to the Court to the alleged publications, the contents of which speak for themselves.

70.     Deny the allegations, characterizations, and implications contained in Paragraph 70 of the Complaint.

71.     The historical price of Co-Diagnostics stock is a matter of publicly available record which speaks for itself.  To the extent required, denies the allegations contained in

Paragraph 71 of the Complaint except admits that the stock price rose on certain days in May 2020 and denies knowledge or information sufficient to form a belief as to the truth of the allegations concerning investor anticipation.

72.     The historical price of Co-Diagnostics stock is a matter of public record which speaks for itself.  To the extent required, deny the allegations, implications, and characterizations contained in Paragraph 72 of the Complaint.

73.     Deny the allegations and characterizations contained in Paragraph 73 of the Complaint.

74.     Paragraph 74 is overly vague not sufficiently definite as to fairly permit an admission or denial.  To the extent required, deny the allegations and implications contained in Paragraph 74 of the Complaint.

75.     Paragraph 75 of the Complaint refers to an article by The Salt Lake Tribune which is publicly available and speaks for itself.  Deny the remaining allegations contained in Paragraph 75 of the Complaint.

76.      Paragraph 76 of the Complaint refers to an article by The Salt Lake Tribune which is publicly available and speaks for itself.

77.     Deny the allegations and characterizations contained in Paragraph 77 of the Complaint except admit that Iowa Governor Kim Reynolds issued the alleged public statement.

78.     Deny the allegations and characterizations contained in Paragraph 78 of the Complaint.

79.     Paragraph 79 of the Complaint is insufficiently definite as to the date of the stock prices and alleged and lacks a relevant date or time frame as to the alleged investor call so as to fairly permit an admission or denial.  To the extent required, Defendants respond that the

historical price of Co-Diagnostics stock is a matter of publicly available record which speaks for itself and deny the remaining allegations, implications, and characterizations contained in Paragraph 79 of the Complaint.

80.    Paragraph 80 of the Complaint is insufficiently defined as to which "point" it refers.  Paragraph 80 of the Complaint contains a legal conclusion to which no responsive pleading is required.    To the extent required, deny the allegations, implications, and characterizations contained in Paragraph 80 of the Complaint.

81.    Deny the allegations contained in paragraph 81 of the Complaint except admit that Co-Diagnostics reported record sales.

82.    Deny the allegations and characterizations contained in Paragraph 82 of the Complaint except states that the alleged article by The Gazette is a publicly available document, the contents of which speaks for itself.

83.    Paragraph 83 of the Complaint is insufficiently definite as to what date the FDA press release was issued, and therefore what it was on the same date as.  To the extent required, admit that on May 14, 2020, the FDA issued a press release which is a publicly available document, the contents of which speaks for itself.

84.    Paragraph 84 of the Complaint is not sufficiently definite as to the identity of the alleged third parties or the ostensible serious problems alleged and so the allegations cannot fairly be admitted or denied.  Further, the historical price of Co-Diagnostics stock is a matter of public record which speaks for itself. To the extent required, deny the allegations and characterizations contained in Paragraph 84 of the Complaint.

85.    Paragraph 85 of the Complaint refers to an article by Zhiyuan Sun, which is a publicly available document which speaks for itself.

- 13 -

86.     Deny the allegations and characterizations contained in Paragraph 86 of the Complaint.

87.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 87 of the Complaint.

88.     Deny the allegations and characterizations contained in Paragraph 88 of the Complaint.

## IV.     Additional Scienter Allegations

89.     Deny the allegations contained in Paragraph 89 of the Complaint.

90.     Deny the allegations contained in Paragraph 90 of the Complaint.

91.     Deny the allegations contained in Paragraph 91 of the Complaint except respectfully refer the Court to Co-Diagnostics' public filings as they pertain to the sales of stock, which are accurate and speak for themselves.

92.     Paragraph 92 of the Complaint lacks any material factual allegations which require a responsive pleading.  To the extent required, deny the allegations, implications, and characterizations contained in Paragraph 92 of the Complaint.

93.     Deny the allegations contained in Paragraph 93 of the Complaint.

94.     Deny the allegations contained in Paragraph 94 of the Complaint except admit that Serbin paid a civil penalty and did not contest the suspension of his law license and voluntarily gave up his pharmacist license as he practiced neither profession at the time**.**

95.     Deny the allegations contained in Paragraph 95 of the Complaint except respectfully refer the Court to Co-Diagnostics' public filings as they pertain to the sales of stock, which are accurate and speak for themselves.

96.     Deny the allegations contained in Paragraph 96 of the Complaint

97.     Deny the allegations and characterizations contained in Paragraph 97 of the Complaint except respectfully refer the Court to Co-Diagnostics' public filings as they pertain to the exercise of options and sales of stock, which are accurate and speak for themselves.

## V.     Loss Causation/Economic Loss

98.     Deny the allegations contained in Paragraph 98 of the Complaint except deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning alleged losses suffered by Lead Plaintiff and other class members.

99.     Deny the allegations contained in Paragraph 99 of the Complaint.

## VI.     Applicability of Presumption of Reliance Fraud on the Market

100.     Deny the allegations contained in Paragraph 100 of the Complaint except deny knowledge or information sufficient to form a belief as to the allegations concerning the alleged purchase of shares by Lead Plaintiff and other members of the Class, in which it is alleged they purchased securities relying upon the integrity of the market price of Co-Diagnostics securities and market information.

101.     Deny the allegations contained in Paragraph 101 of the Complaint.

102.     Deny the allegations contained in Paragraph 102 of the Complaint.

103.     Paragraph 103 of the Complaint contains legal conclusions and regulatory guidelines, to which no responsive pleading is required.   Deny the remaining allegations contained in Paragraph 103 of the Complaint except deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in subparagraph (d) and admit that Co-Diagnostics common stock met the requirement for listing and was listed and actively traded on the NASDAQ, that Co-Diagnostics filed periodic public reports with the SEC and NASDAQ as a regulated issuer, and that Co-Diagnostics regularly communicated with public investors.

104.     Deny the allegations contained in paragraph 104 of the Complaint except deny knowledge or information sufficient to form a belief as to the truth of the allegation that the market for Co-Diagnostics digested current information from public sources.

**VII.    No Safe Harbor**

105.     Paragraph 105 consists of legal conclusions to which no responsive pleading is required.   To the extent required, deny the allegations contained in Paragraph 105 of the Complaint.

**COUNT I**

**Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against Co-Diagnostics and Brent Satterfield**

106.     Defendants repeat and reallege each and every admission and denial in the above-paragraphs as if set forth fully herein.

107.     Deny the allegations contained in Paragraph 107 of the Complaint.

108.     Deny the allegations contained in Paragraph 108 of the Complaint.

109.     Deny the allegations contained in Paragraph 109 of the Complaint except deny knowledge or information sufficient to form a belief as to Lead Plaintiff and the Class's alleged reliance on the integrity of the market.

110.     Deny the allegations contained in Paragraph 110 of the Complaint.

**COUNT II**

**Violation of Section 20(a) of the Exchange Act Against the Individual Defendants**

111.     Defendants repeat and reallege each and every admission and denial in the above-paragraphs as if set forth fully herein.

112.     Paragraph 112 of the Complaint contains legal conclusions to which no responsive

pleadings are required.  Deny the remaining allegations contained in Paragraph 112 of the Complaint.

## AFFIRMATIVE DEFENSE

### First Affirmative Defense

The Complaint fail to state a claim upon which relief can be granted.

### Second Affirmative Defense

The alleged statements at issue were true when made.  In the alternative, the alleged statements were not known by Defendants to be untrue when made.

### Third Affirmative Defense

The alleged misstatements were not materially misleading.

### Fourth Affirmative Defense

Any information and/or corrective statement that purportedly should have been disclosed or made to Lead Plaintiff and/or the Class Members would not have had an appreciable effect on the value of the stock or how a reasonable investor would act in response and/or was not material in nature.

### Fifth Affirmative Defense

Defendants were not required to, and had no obligation or duty to, make any further disclosures or make any corrective statements.

### Sixth Affirmative Defense

The alleged statements at issue did not make or contain any untrue implications.

### Seventh Affirmative Defense

The claims are barred under the truth-in-the-market doctrine.

**Eighth Affirmative Defense**

Lead Plaintiff and/or the Class Members propose a flawed methodology for assessing what a reasonable investor would consider material.

**Ninth Affirmative Defense**

There is no connection between the alleged statements and the purchase or sale of a security. Alternatively, the alleged purchase and/or sale of securities was not based on the alleged statements but on other factors.

**Tenth Affirmative Defense**

Lead Plaintiff and/or the Class Members were unreasonable in relying on the alleged statements and/or the mischaracterizations or paraphrasing of such alleged statements as recast by third-parties. Lead Plaintiff and/or the Class Members did not exercise the diligence a reasonable person would have exercised under the circumstances to protect their interests.

**Eleventh Affirmative Defense**

Lead Plaintiff and/or the Class Members were unreasonable in relying on the alleged statements based on their own sophistication.

**Twelfth Affirmative Defense**

Lead Plaintiff and/or the Class Members did not trade shares during the relevant time period.

**Thirteenth Affirmative Defense**

Any alleged omitted information was immaterial.

**Fourteenth Affirmative Defense**

Lead Plaintiff and/or the Class Members were aware of the risks of their investments.

### Fifteenth Affirmative Defense

Lead Plaintiff and/or the Class Members' alleged losses did not occur as a result of any alleged misrepresentation or omission.

### Sixteenth Affirmative Defense

Loss causation cannot be established based on the price of the stock during and/or outside of the class period.

### Seventeenth Affirmative Defense

Loss causation cannot be established as the alleged losses were not a result of any violation.

### Eighteenth Affirmative Defense

Any loss of stock value was not due to the release of negative information relating to the alleged statements.

### Nineteenth Affirmative Defense

Lead Plaintiff and/or the Class Members' methodology does not control for previously disclosed information, economic conditions, or other confounding factors.

### Twentieth Affirmative Defense

Loss causation cannot be established due to the market's reaction to the information which is alleged to have been omitted or 'revealed' as contrary to the alleged statements at issue.

### Twenty First Affirmative Defense

The alleged losses have been miscalculated.

### Twenty Second Affirmative Defense

Defendants lacked the motive or opportunity to commit the alleged fraud.

### Twenty Third Affirmative Defense

Defendants were under no duty to correct any alleged misstatements.

### Twenty Fourth Affirmative Defense

The alleged misstatements do not constitute "half-truths."  The information which Lead Plaintiff and the Class Members allege should have been disclosed was already publicly known or was otherwise included within the total public mix of information.

### Twenty Fifth Affirmative Defense

Neither the Lead Plaintiff nor any Class Member relied upon the alleged statements to their detriment, the alleged statements were not material to their decision to buy or sell stock and did not influence the same.

### Twenty Sixth Affirmative Defense

The alleged statements at issue did not significantly alter the total mix of information available in the market.

### Twenty Seventh Affirmative Defense

Neither the Lead Plaintiff nor any Class Member relied upon the alleged misstatements to their detriment.

### Twenty Eighth Affirmative Defense

Defendants did not act with scienter and all of their actions taken in association with the events in question were taken in good faith.

### Twenty Ninth Affirmative Defense

Defendants acted reasonably at all times and performed all necessary due diligence.  Their conduct constitutes neither misbehavior nor recklessness.

### Thirtieth Affirmative Defense

The allegations of scienter improperly depend on a collective scienter theory.

### Thirty First Affirmative Defense

The alleged stock trades by Defendants were permissible under all state, federal, and regulatory laws, regulations, and guidelines.

### Thirty Second Affirmative Defense

The alleged stock trades by Defendants were made in good faith with an honest belief in the truth of the allegedly fraudulent statements.

### Thirty Third Affirmative Defense

Lead Plaintiff and/or the Class Members did not suffer any actual losses.  To the extent any losses were suffered, the alleged acts and/or omissions of Defendants were not the actual or proximate cause of same.

### Thirty Fourth Affirmative Defense

Lead Plaintiff and/or the Class Members failed to mitigate the damages alleged.

### Thirty Fifth Affirmative Defense

Lead Plaintiff and/or the Class Members failed to exhaust other remedies available to them.

### Thirty Sixth Affirmative Defense

There may be no 20(b) violation in the absence of any underlying wrongdoing.

### Thirty Seventh Affirmative Defense

Neither the Lead Plaintiff nor any Class Member purchased or sold shares of Co-Diagnostics stock during the applicable time frame.

### Thirty Eighth Affirmative Defense

Lead Plaintiff and/or Class Members lack standing/capacity to bring the instant lawsuit.

### Thirty Ninth Affirmative Defense

Neither the Lead Plaintiff nor any Class Member relied upon the alleged misstatements to

their detriment.

### Fortieth Defense

Lead Plaintiff and/or the Class Members had the opportunity to sell the stock for gain and/or to minimize losses following the release of information which either constituted the information which they allege should have been disclosed by Defendants or which completed all of the relevant or required information.

### Forty First Affirmative Defense

Any alleged decrease in stock price was due to factors other than any alleged wrongdoing of Defendants.

**WHEREFORE**, Defendants demand judgment as follows:

a)      Dismissal of the Complaint in its entirety;

b)      For their costs and disbursements in this action, including their reasonable attorneys' fees; and

c)      For such other and further relief as the Court deems just, proper, and appropriate.

Dated:        April 13, 2022

CARMEL, MILAZZO & FEIL LLP

By: */s/ Christopher P. Milazzo*
Christopher P. Milazzo
55 West 39th Street, 18th Floor
New York, New York 10018
(212) 658-0458 (tel.)
(646) 838-1314 (fax)
cmilazzo@cmfllp.com
*Admitted Pro Hac Vice*

*Attorneys for Defendants*

- 22 -