IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| GELT TRADING, LTD., a Cayman Islands limited company,<br><br>    Plaintiff,<br><br>v.<br><br>CO-DIAGNOSTICS, INC., a Utah Corporation, DWIGHT EGAN, JAMES NELSON, EUGENE DURENARD, EDWARD MURPHY, RICHARD SERBIN, REED BENSON, and BRENT SATTERFIELD,<br><br>    Defendants. | **ORDER REGARDING ELECTRONICALLY STORED INFORMATION**<br><br>Case No. 2:20-cv-00368-JNP-DBP<br><br>District Judge Jill N. Parrish<br><br>Chief Magistrate Judge Dustin B. Pead |

**ORDER REGARDING
ELECTRONICALLY STORED INFORMATION**

The following protocol shall govern the discovery of electronically stored information

("ESI" or "ESI Protocol") in this matter between Plaintiffs and Defendants:

1.  **General Provisions.**

    a.  The parties agree to exchange initial production of documents based on this ESI Protocol on or before December 16, 2022, and to rolling productions as needed until the parties' productions are complete. To the extent that relevant and responsive documents are not captured through the ESI Protocol, the parties shall have an ongoing obligation to respond to outstanding discovery requests consistent with Section 1(b). Nothing in this provision shall supersede any provision of the Court's case management or scheduling orders, and the parties shall abide by all deadlines set forth therein unless amended by agreement or further court order.

    b.  The agreements set forth herein are without prejudice to the right of a party to request additional information about, or production of, additional ESI, or object to such requests for information or production on grounds related to the particular request. If a responding party cannot comply with any aspect of this protocol, such party shall inform the requesting party before the time of production as to why compliance with the protocol was unreasonable or not possible. The parties shall confer in good faith with regard to whether such

additional efforts are reasonably required and, if so, who should bear the cost, and may seek assistance from the Court to resolve such disputes if agreement cannot be reached.

2.      **Search Methodology.**

**Search Terms:** The parties agree to collect ESI to be reviewed for relevance, responsiveness, and privilege prior to production using search terms agreed upon by the parties, without prejudice to any party's right to seek additional ESI as set forth in Section 1(b) above. The parties will meet and confer regarding search terms and provide search terms to one another.

a.  **Custodians**. The parties agree to meat and confer regarding the maximum amount of custodians. The parties agree to search the ESI using the following custodians:

    i.  Defendants' Custodians
       The Parties will Meet and Confer on a List of Custodians After the Service of Initial Requests for Production

    ii.  Plaintiffs' Custodians
       The Parties will Meet and Confer on a List of Custodians After the Service of Initial Requests for Production

The parties reserve the right to amend and include their custodian list.

b.  **Custodian Tests.**  The parties have agreed that they will test search terms against the data specific to custodians to provide feedback on whether or not the volume retrieved by the same is overly burdensome.  In the event that either party asserts that the volume retrieved by the search terms is so large so as to be overly burdensome, the parties shall make a good faith effort to edit the terms, without waiving any rights to obtain the information sought through such terms. In the event that the parties are unable to resolve a dispute regarding the same, the parties each have the right to seek intervention of the Court before any document production on such disputed terms occurs.

c.  **Sources of ESI**: The parties shall apply the agreed-upon search terms to all available, active and reasonably accessible ESI in this case, including without limitation Microsoft Exchange folders, network drives, shared drives, and hard drives. The search of custodian emails shall include all email addresses maintained by the custodians, including personal and business e-mail address. The parties shall disclose the available sources of ESI for each custodian within fourteen (14) days of the entry of this Order.

d.  **Review of ESI**: After the search terms listed above have been applied to all available ESI for each custodian, the parties shall utilize attorneys or other legal staff to identify privileged ESI and review search results for responsiveness to requests for production and relevance as it may relate to any claim, defense or counterclaim in the litigation. Individual custodians shall not make responsiveness or privilege determination calls with respect to this ESI Protocol.

e. **Time Period of ESI**: The parties have conferred in good faith and have agreed to April 1, 2019 through Present as the time period subject to searching for ESI.

3.   **Electronic Submission of Documents.**
The following guidelines refer to the production of any ESI or digitally imaged hard copy documents.

a. **Parent/Child Documents.** If a document (including any email) is produced, all nonprivileged attachments to it shall be produced. Likewise, if any attachment to a document is produced, all non-privileged portions of the email or other parent document and all other non-privileged attachments to that parent email or other document shall be produced. Bates numbering of a parent document and any attachments shall be sequential such that a parent document has the lowest value Bates Number when compared to its attachment(s).

b. **Formatting**

**(1) IMAGES**

TIFF images for each produced record shall be provided as Group IV, 300-dpi single page TIFF files named "<PageID>.TIF with no spaces in the file name.

TIFF images will be provided in a folder called "IMAGES" on the production media. All TIFF images for a single document will be in one subfolder within the IMAGES folder, and the number of image files in any one subfolder will not exceed 1000.

**(2) DATA FILES**

Associated metadata for each produced record will be produced in a Concordance load file format (.dat) and include the following fields, if available:

- BEGDOC
- ENDDOC
- BEGATTACH
- ENDATTACH
- MEDIA_VOLUME
- PAGECOUNT
- ATTACHCOUNT
- CUSTODIANS (alternately, additional custodians may be produced in a DUP_CUSTODIANS field)
- FILENAME
- FILEEXT
- FOLDER
- FILESIZE
- MD5HASH

- AUTHOR
- TITLE
- LASTMODDATE
- LASTMODTIME
- CREATEDDATE
- CREATEDTIME
- TIME_ZONE
- EMAIL_FROM
- EMAIL_TO
- EMAIL_CC
- EMAIL_BCC
- EMAIL_SUBJECT
- EMAIL_DATERCVD
- EMAIL_TIMERCVD
- EMAIL_DATESENT
- EMAIL_TIMESENT
- DESIGNATION (i.e. level of confidentiality if any (e.g. "Attorneys' Eyes Only")
- TEXTLINK
- NATIVELINK

All of the above metadata field information that is available from the native ESI source files will be extracted therefrom and will not be altered or modified from the original.

A properly formatted Concordance .opt or image load file will be produced with the TIFF images and the extracted or OCR-rendered text files (described below), which links the TIFF images and any native files to the Concordance-type database records. There should be a BEGDOC number in each Concordance .dat load file that corresponds with the name of each production TIFF image in the .opt file.

Metadata and image load files (.dat and .opt) will be provided in a folder called "DATA" on the production media.

**(3) <u>TEXT FILES</u>**

Extracted text will be produced for all ESI records and all imaged hard copy documents in a document-level, multi-page text file format, with a corresponding path reference appearing in the TEXTLINK field of the load file. If a record does not have extractable text (e.g. hard copy documents, non-searchable .pdfs or images), then an industry-standard optical character recognition process will be executed and OCR-rendered text will be provided in the multi-page text file instead. The filename of each text file will equal the production BEGDOC number of the corresponding page and have a .txt file extension. The text files will be provided in a folder called "TEXT" on the production media.

**(4) NATIVE FILES**

Files and file types which do not render in a usable manner when converted to image with extracted text, such as spreadsheets, databases and multimedia files should be produced as natives with a TIFF slipsheet indicating this. The parties each reserve the right to request and receive native files for produced records where visibility, usability or functionality is impaired by the TIFF and extracted text formatting. The filename of each native file will equal the production BEGDOC number of the corresponding page and have the same file extension as the original, with a corresponding path reference appearing in the NATIVELINK field of the load file. Native files will be provided in a folder called "NATIVES" on the production media.

c. **Confer and Agree.** As needed, the parties shall confer and agree upon other specifications related to the format of production.

d. **Redaction.** If a relevant document is redacted based on one or more claims of privilege or other protection from disclosure, the producing party shall supply a list of the documents for any such claim or claims of privilege or protection, indicating the grounds for the redaction and the nature of the redacted material. During the pendency of the litigation, an electronic copy of the original unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration, or addition the content of such data including any metadata associated therewith.  Any redaction made for any reason other than a claim of privilege shall be specifically identified.

e. **Color.** Where the original of a produced document is in color, and color is material to the interpretation of the document, the receiving party may request that the document be produced in color (whether in electronic or paper format).

4. **Privilege.**

In addition to the requirements of Section 3(d) above, any responsive document withheld from production under an assertion of the attorney-client privilege, attorney work product protection, or other privilege shall be listed on a privilege log to be provided within fourteen (14) days of the production to which the withheld documents relate. Notwithstanding the foregoing, the parties agree that documents for which a privilege is asserted because of the involvement of counsel of record in this action, and that were sent, received, and/or created on or after the date of such counsel's engagement and/or initial consultation with respect to the dispute leading to this action, need not be listed on a privilege log.  The privilege log shall include the following fields:

- Custodian/Author
- Recipient
- Date sent/received
- Subject title of email or document attachments
- Description of the content of document and any attachments

- Basis for the claimed privilege

The inadvertent production of ESI subject to the attorney-client privilege or attorney work product protection shall be governed by the Confidentiality Stipulation and Order agreed upon by the parties and entered by the Court.

5.    **Waiver.**

A party's inadvertent production of ESI that is not responsive to the receiving party's discovery requests shall not be deemed a waiver of any objection to the admissibility or use of such ESI in any way, including, without limitation, at trial or in any hearing in this action.

6.    **Costs.**

Each party will be responsible for its own production costs unless otherwise ordered by the Court.

7.    **Production Media.**

The parties may exchange production volume deliverables via a web transfer platform, such as an FTP site. Proper encryption should be used on the delivered files where possible. The parties may agree to exchange production volume deliverables in a different matter to the extent practicable.

8.    **Retention.**

The parties agree to take reasonable steps to ensure that relevant electronically stored information is not permanently deleted in the ordinary course of business, nor that it is altered.

9.    **Scope of Agreement.**

This protocol shall govern the conduct of ESI production with respect to the issues addressed in this protocol. The parties may seek to alter the scope and requirements of this protocol, after a good faith effort to meet and confer on the subject, for good cause by Order of the Court. Nothing in this protocol is intended to waive any objections to discovery or any privileges.

DATED this 6 June 2022.

_____

Dustin B. Pead
United States Magistrate Judge