D. Loren Washburn (#10993)
ARMSTRONG TEASDALE
201 South Main Street
Suite 2400
Salt Lake City, UT, 84111
Telephone: (800) 243-5070
lwashburn@atllp.com

Michael A. Pineiro (*pro hac vice*)
MARCUS NEIMAN RASHBAUM & PINEIRO LLP
2 South Biscayne Blvd., Suite 2530
Miami, FL 33131
Telephone: (305) 400-4268
mpineiro@mnrlawfirm.com

Michael C. Fasano (*pro hac vice*)
FASANO LAW FIRM, PLLC
2 S. Biscayne Blvd., Suite 2530
Miami, FL 33131
Telephone: (786) 530-5239
mfasano@fasanolaw.com

*Attorneys for Gelt Trading, Ltd. and Proposed Class*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GELT TRADING, LTD., a Cayman Islands limited company,<br><br>      Plaintiff,<br><br>v.<br><br>CO-DIAGNOSTICS, INC., a Utah Corporation, DWIGHT EGAN, JAMES NELSON, EUGENE DURENARD, EDWARD MURPHY, RICHARD SERBIN, REED BENSON, BRENT SATTERFIELD,<br><br>      Defendants. | Case No. 2:20-cv-00368-CMR<br><br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |

1

Lead Plaintiff Gelt Trading Ltd., hereby submits this reply memorandum in support of Gelt's motion for class certification (ECF No. 114) (the "Motion").

## INTRODUCTION

The Defendants cannot dispute that class certification is appropriate, because, like in most securities fraud class actions, this case easily satisfies Rule 23. Unable to submit a meaningful challenge on class certification issues, the Defendants' response memorandum instead exclusively focuses on whether Gelt, as class plaintiff, can demonstrate loss causation in connection with its claim—a merits issue that is not proper at the class certification stage. Proffering arguments without any legal support or precedent, the Defendants argue that based on the date that Gelt sold its shares of Co-Diagnostics at a loss, it cannot prove loss causation and, thus, cannot satisfy commonality, typicality, and adequacy under Rule 23(a). As shown below, the Defendants' arguments are improper and baseless and the Court should certify the proposed class.

*First*, Gelt does not have to demonstrate loss causation at this stage and, relatedly, the Defendants cannot raise that issue improperly cloaked under the guise of challenges to commonality, typicality, or adequacy under Rule 23(a). *Second*, notably, the Defendants do not dispute predominance under Rule 23(b)(3)—a crucial inquiry in securities class actions. And *third*, the Defendants' overlapping (and confusing) arguments all fail for largely the same reason: Gelt has standing because it purchased shares during the class period and sold them at a loss after a partial corrective disclosure, and differences between class members in the timing of purchases and sales of shares are damages issues that are expressly reserved for the merits.

## ARGUMENT

### A.  The Defendants Do Not Dispute that Predominance is Satisfied

As an initial matter, the Defendants do *not* dispute that Gelt has satisfied the predominance requirement under Rule 23(b)(3), and effectively concede that Gelt is entitled to a presumption of

reliance under *Basic* and *Haliburton I*. *See* Motion at 16-24. This is typically the crucial inquiry in class certification of a securities fraud class action. Yet, the Defendants' response memorandum does not reference Rule 23(b)(3), predominance, or reliance whatsoever. Further, the Defendants' own expert report assumes and concedes that Co-Diagnostics' shares traded on an efficient market (as required for the *Basic* presumption) and "accepts the results" of Gelt's expert's event study. *See* Rebuttal Report of Dr. Ran Wei at ¶ 14 (the "Wei Report") (ECF No. 117).

To rebut the *Basic* presumption that Gelt established, the Defendants needed to make a specific showing that the misrepresentation at issue—the May 1st press release—"did not actually affect the market price of the stock." *See Halliburton Co. v. Erica P. John Fund*, 573 U.S. 258, 280 (2014) ("*Halliburton II*"). In other words, the Defendants would have to show, by a preponderance of the evidence, that the misrepresentation at issue did not have a so-called "price impact" resulting in a falsely inflated value of Co-Diagnostics' shares. *Id*. at 283. The Defendants did not even try do that in their response memorandum—because they could not.

Indeed, Gelt's expert report by Dr. Adam Werner showed that on May 1st, after the Defendants issued the misleading press release, Co-Diagnostics' shares rose 17.1%—a statistically significant price movement that supported a finding of market efficiency. *See* Declaration of Dr. Adam Werner ("Werner Report") (ECF No. 114-1) at ¶¶ 61-62. The Defendants' expert accepted this. And this alone—a statistically significant price increase on the day of the actual misstatement at issue—would defeat any efforts to rebut the *Basic* presumption. *See In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2020 WL 1329354, at *3 (S.D.N.Y. Mar. 23, 2020); *In re CenturyLink Sales Practices and Sec. Litig.*, 337 F.R.D. 193, 209 (D. Minn. 2020) (statistically significant price movement on a misstatement day defeats a defendant's ability to rebut the *Basic* presumption).[1]

---

[1] The Defendants also did not challenge that Co-Diagnostics' share price endured a statistically

As a result, this central element of class certification is uncontested and clearly satisfied, and the Defendants have waived any ability to raise this issue in opposing certification. *See, e.g., Grimaldo v. Reno*, 189 F.R.D. 617, 619 (D. Colo. 1999).

**B.    The Defendants Have Improperly Raised Meritless Loss Causation Arguments at the Class Certification Stage**

Unable to challenge predominance, the entire premise of Defendants' response rests on various confusing and unfounded arguments that are focused on whether Gelt can prove loss causation at trial, which is irrelevant at the class certification stage. Specifically, the Defendants appear to argue that because Gelt sold its shares on May 14th—a day where they claim there was no statistically significant price drop in Co-Diagnostics' shares—Gelt "cannot establish loss causation for itself." *See* Defendants' Response Memorandum ("Resp.") (ECF No. 118) at 2, 18. Consequently, the Defendants assert, Gelt is an inadequate class representative (because it purportedly lacks standing), its claims are not "common" to the class, and its losses are "atypical." *Id*. at 2, 14-25. These arguments are inapplicable at this stage, incorrect, and should be disregarded.

> **i.    Defendants are Prohibited from Raising Loss Causation as a Basis to Deny Class Certification**

It is undisputed that loss causation is a merits issue for trial and that Gelt is not required to prove loss causation at the class certification stage. In a securities fraud class action, "loss causation…requires a plaintiff to show that a misrepresentation that affected the integrity of the market price *also* caused a subsequent economic loss." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 812 (2011) ("*Halliburton I*"). To prove loss causation, a plaintiff must show that "corrective information was revealed and that this revelation caused the resulting decline [in

---

significant price drop (of 25%) on May 15th—following the corrective disclosures on May 14th, including the after-hours disclosure by the United States Food and Drug Administration. *See* Werner Report at ¶¶ 64-54. The Defendants' expert also accepted this conclusion.

the price of stock].” *Oregon Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*, 2020 WL 5500458, at *17 (D. Colo. Sept. 11, 2020) (quoting *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1130, 1137 (10th Cir. 2009)). “Loss causation is easiest to show when a corrective disclosure reveals the fraud to the public and the price subsequently drops.” *Id.*

This is different than price impact, which “refers to the effect of a misrepresentation on a stock price” and which is pertinent to element of reliance (above). *Halliburton I*, 563 U.S. at 814.

> Price impact and loss causation are distinct. Price impact asks “whether the alleged misrepresentations affected the market price” of the stock. *Halliburton I*, 131 S.Ct. at 2187. Loss causation, on the other hand, asks whether the subsequent decline in the price of the stock was caused by a correction of the prior misrepresentations or by other confounding factors. *Id.* at 2185 .... This [distinction] is particularly important at class certification because evidence of loss causation is irrelevant at that stage, [s]ee id. at 2187, while evidence of price impact, or lack thereof, is highly relevant. *See Halliburton II,* 134 S.Ct. at 2415–16.

*In re Conduent Inc. Sec. Litig.*, 2022 WL 17406565, at *5 n. 10 (D.N.J. Feb. 28, 2022). *See also In re Myriad Genetics, Inc. Sec. Litig.*, 2021 WL 5882259, at *7 (D. Utah Dec. 13, 2021).

The Supreme Court has held that “securities fraud plaintiffs should not be required to prove loss causation in order to…achieve class certification.” *Halliburton I*, 563 U.S. at 813; *see also Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 475 (2013) (“loss causation…[is a] common question that need not be adjudicated before a class is certified”). Thus, loss causation is considered a merits issue not appropriate for this stage. *See Halliburton I*, 563 U.S. at 807. Importantly, while *Halliburton II* does permit courts to evaluate price impact in connection with element of reliance at the class certification stage (an issue that the Defendants conceded), “it did not advance the stage at which loss causation should be considered.” *See Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer LP*, 2022 WL 3597200, at *8 (E.D. Pa. Aug. 23, 2022).

As a result, the Court should reject the Defendants' arguments regarding loss causation—the entire basis for their opposition—without any further analysis. These arguments are plainly prohibited at this stage and the Defendants have not offered any reason why this case should be the exception. Further, the Defendants cannot submit arguments regarding loss causation "in disguise" by raising the issue in the context of whether the Rule 23(a) requirements are satisfied. *See, e.g., In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at *20 (S.D.N.Y. July 10, 2019). Otherwise, the Supreme Court's rulings would be easily circumvented, as the Defendants have attempted here. Nonetheless, even though these issues are not proper here, below we address and dispatch each of the Defendants' meritless contentions.

### ii.    Gelt Satisfies Commonality, Typicality, and Adequacy

The Defendants' arguments regarding commonality, typicality, and adequacy are equal parts confusing and baseless. As noted, the Defendants seem to argue that because Gelt sold its shares on May 14th—a day when they argue there was a non-statistically significant price decline and before May 15th, when Co-Diagnostics' shares had a statistically significant loss—it cannot prove loss causation. Defendants claim that this "bars a finding of commonality and typicality," and undermines Gelt's adequacy as a class plaintiff.  *See* Resp. at 15, 18-19, 24. This is incorrect.

As an initial matter, it should be noted that Gelt purchased its shares of Co-Diagnostics after the May 1st press release and sold shares of Co-Diagnostics at a large loss after a partial corrective disclosure on May 14th. Gelt suffered a loss of over $117,000, due to a drop in the price of Co-Diagnostics' shares stemming from the partial corrective disclosures that came to light on May 14th—namely, the Salt Lake Tribune story regarding Co-Diagnostics' Covid-19 tests and the Governor of Iowa's announcement of validation figures regarding Co-Diagnostics' tests. *See* Second Amended Complaint ("SAC") (ECF No. 86) ¶¶ 32, 75-79. As demonstrated by Dr. Werner,

on May 14th, Co-Diagnostics shares were halted for trading on the NASDAQ "due to volatility" on two separate occasions after the partial corrective disclosures were made—at 1:25 p.m. and 1:48 p.m. *See* Rebuttal Report of Dr. Adam ("Werner Rebuttal"), Ex. A at ¶ 18. Trading halts are "imposed as a response to major economic developments and, generally, the more likely the announcement is to harm the stock price, the more likely an exchange is to call for a trading halt pending the dissemination of the news by the company." *Id.* ¶ 19. Co-Diagnostics' shares dropped 37.18% from the start of the first trading halt to the end of the second halt. *Id.* ¶ 21. Gelt sold its shares shortly after the second trading halt for a loss exceeding $117,000.

Accordingly, because it purchased Co-Diagnostics shares during the class period (and after the May 1st fraudulent press release) and then sold the shares and suffered a loss, Gelt clearly has standing as class plaintiff. *See In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 776 (S.D.N.Y. 2012) ("To bring suit on behalf of a class, the named plaintiffs must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."). The Court already found Gelt to have standing when it selected Gelt as lead plaintiff in this action from a group of Co-Diagnostics' investors vying for that position. *See* Memorandum Decision (ECF No. 84). Consistent with their response, the Defendants appear to confuse a class plaintiff's standing with its ability to demonstrate loss causation, which is a fact question typically reserved for trial. With that background, we turn to the Defendants' other specious arguments.

### *Commonality*

The Defendants' argument regarding commonality is easily defeated. As noted in the Motion, "[a] finding of commonality requires only a single question of law or fact common to the entire class." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010). This

requirement is easily satisfied in securities fraud class actions, where claims of alleged misrepresentations leading to fraudulently inflated securities prices and the materiality of those statements are common issues that can be resolved on a class-wide basis. *See* Motion at 10-11. In Gelt's Motion, it set out several of the common questions of fact and law in this case, including whether the Defendants' May 1st press release misrepresented material facts, whether the Defendants acted with scienter, and whether Co-Diagnostics' shares were artificially inflated due to the misrepresentations, among other things. These common questions—similar to those presented in any securities fraud class action—easily satisfy the commonality requirement.

The Defendants do *not* argue that there are no common questions of law or fact common to the class, as required under Rule 23(a)(2). That concession should end this inquiry. But rather, the Defendants' argument appears to be that because Gelt suffered its losses on May 14th, that it cannot show loss causation and, thus, it "does not share a common injury with…the proposed class" and commonality is not satisfied. *See* Resp. at 19. Setting aside that this is an improper loss causation argument, there is no case law supporting the argument that Gelt must have sold its Co-Diagnostics' shares for a loss on the same day as the other class members or on a day with a statistically significant price decline to satisfy commonality. No such law exists because it is a patently unfounded suggestion that would eviscerate class certification of securities fraud claims. Nonetheless, the Defendants make this baseless argument, citing to *Wal-Mart Stores, Inc. v. Dukes*, an employment discrimination class action case. *See* 564 U.S. 338, 344 (2011).

*Dukes* has nothing to do with the case. *See Public Employees' Retirement System of Mississippi v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 106 (S.D.N.Y. Aug. 22, 2011) ("The facts in *Wal-Mart*, a case in which three named plaintiffs sought to represent a class of 1.5 million women in an employment discrimination suit, are entirely distinguishable from the facts of the

instant securities class action."). Noticeably absent from Defendants' argument is a single securities fraud case where *Dukes* was applied to somehow require a class plaintiff to suffer a trading loss on the very same date as all other class members or on a day with a statistically significant price decline. That is because no such case could possibly exist.

Moreover, the Defendants appear to misunderstand *Dukes* or intentionally misuse it. *Dukes*'s reference to class members suffering the "same injury" means that to establish commonality in a putative employment discrimination class action, the class needed common allegations or contentions regarding the manner in which they were harmed, and Title VII was violated. *Id*. at 350. The Supreme Court found that there were no common questions of law or fact in *Dukes* that were capable of class-wide resolution and that would resolve an issue central to the claims in "one stroke." But that is clearly not the case here, where the Defendants have not disputed the various common questions of law and fact that we raised in our Motion and that other courts in securities fraud class actions have confirmed satisfy the commonality requirement.

Finally, as discussed in detail below, Gelt has in fact suffered the same injury as the other class members—it purchased shares in Co-Diagnostics at an artificially inflated price based on a fraudulent May 1st press release and it suffered losses as a result. This is the same injury as the other class members. Gelt is not required to have sold its shares on the same date as other class members, or to have sold it on May 15th to have suffered the same injury. *Infra* at 13-14.

To be sure, Gelt has satisfied the "low hurdle" required to satisfy the commonality requirement. *Braver v. Northstar Alarm Services, LLC*, 329 F.R.D. 320, 328 (W.D. Ok. 2018).

### *Typicality and Adequacy*

Just as with commonality, although difficult to decipher, Defendants appear to argue that typicality and adequacy under Rule 23(a) are not satisfied because Gelt is subject to the unique

defense of lack of loss causation and it allegedly "suffered no recoverable damages." *See* Resp. at 18-19, 24-25. Because the Defendants arguments on these two issues overlap and because the issue of allegedly "unique defenses" is relevant to both typicality and adequacy, *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 179 (S.D.N.Y. 2008), we address both issues together. As shown below, the Defendants are wrong as both requirements are satisfied here.

As noted in the Motion, typicality is almost always satisfied in securities cases like this one. *See, e.g., In re Cigna Corp. Sec. Litig.*, 2006 WL 2433779, at *3 (E.D. Pa. Aug. 18, 2006). In evaluating the typicality of a lead plaintiff's injury, "[c]ourts do not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Rodriguez v. Cascade Collections LLC*, 532 F. Supp. 3d 1099, 1120 (D. Utah 2021). "While it is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification, class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Lapin*, 254 F.R.D. at 179; *see also In re Williams Sec. Litig.*, 2006 WL 8439136, at *7 (N. D. Okla. June 12, 2006). However, this unique defense rule "is intended to protect plaintiff class—not to shield defendants from a potentially meritorious suit." *Id.* "A class representative may satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him that would not impact other class members." *Id.*

As this Court found when it appointed Gelt as lead plaintiff from among several potential candidates, Gelt's claim is typical and it is an adequate class representative.

***First***, it bears repeating that this argument regarding the timing of the sale of shares is a pure issue of loss causation that is improper at this stage. *See, e.g., Thorpe v. Walter Inv. Mgmt., Corp.*, 2016 WL 4006661, at \*8 (S.D. Fla. Mar. 16, 2016) (citing *Halliburton I*, finding that whether "Plaintiffs are unable to prove loss causation with respect to….selling their shares before the…disclosure" is a loss causation issue that is not proper at class certification).

***Second***, Gelt's claim satisfies typicality (and adequacy) based on the timing of its sale of Co-Diagnostics' shares. Gelt purchased shares of Co-Diagnostics after the May 1st fraudulent press release and sold its shares at a significant loss *after* the May 14th partial corrective disclosures—but before the final corrective disclosure by the FDA, which was issued after trading hours on May 14th. Courts have uniformly held that a class representative who purchases shares after the alleged misrepresentation and sells his or her shares after a partial corrective disclosure— but before the final corrective disclosure and the end of the class period—satisfies the typicality requirement. *See Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 238-39 (E.D.N.Y. 2011) ("courts have 'routinely' appointed investors as lead plaintiff "when they sell their shares of stock after a partial disclosure and are not holding any shares at the time of a later disclosure").

There are countless cases supporting typicality in this very circumstance. *See, e.g., Dang v. Amarin Corp. PLC*, 2022 WL 15524944, at \*11 (D.N.J. Oct. 27, 2022) ("the Pension Fund's sale of its shares before the Class Period ended does not render it incapable of adequately protecting the interests of the Class or subject it to unique defenses because it sold its shares after two of the four alleged disclosures during the Class Period."); *Wilson v. LSB Indus., Inc.*, 2018 WL 3913115, at \*6 (S.D.N.Y. 2018) (finding that an "in-and-out" trader who did not hold shares throughout the class period did not render him "atypical or inadequate" because his claim relied "on the same alleged course of conduct and theory of liability" as other class members); *Christian*

11

*v. BT Grp. PLC*, 2017 WL 3705804, at *6–8 (D.N.J. Aug. 28, 2017) (movant that sold its shares after one of two "corrective disclosures" during a class period was not subject to unique defenses because it still suffered losses as a result of the alleged misrepresentations); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 115 (E.D.N.Y. 2012) (where "there [were] several plausible and legitimate partial disclosures prior to October 4, 2011 [the date of the last corrective disclosure]," the fact that some lead plaintiff movants sold their shares prior to the end of the class period did not disqualify them from appointment as lead plaintiff); *Freudenberg v. E\*Trade Fin. Corp.*, 2008 WL 2876373, at *7 (S.D.N.Y. July 16, 2008) ("Nor does the sale by KSG of their E\*Trade securities by August 20, 2007, prior to the end of the alleged class periods in the current complaints, render them inadequate or atypical under the PSLRA, absent a showing that such divestiture creates divergent interests."); *In re Catalina Mktg. Corp. Sec. Litig.*, 225 F.R.D. 684, 687 (M.D. Fla. 2003) ("The fact that the [named] Plaintiffs sold their ... stock prior to the time the alleged fraud was fully disclosed does not indicate an absence of loss causation and does not pose an obstacle, in and of itself, to meeting the requirements in Fed. R. Civ. P. 23(a).").

Indeed, courts find that a class representative satisfies typicality and adequacy even where it is possible that the plaintiff will not be able to demonstrate any loss causation or there is so-called "negative causation," including where the class plaintiff sold his or her shares before any corrective disclosure. *See, e.g., Lopez v. Ageagle Aerial Sys., Inc.*, 2021 WL 2377343, at *5 n. 4 (C.D. Cal. June 7, 2021) ("Although it is possible that Bradley could be subject a defense on the basis of negative loss causation because he sold shares prior to the end of the class period, that alone does not render him 'atypical or inadequate to serve as lead plaintiff' because "there are likely many class members who sold shares prior to any partial disclosure or between partial disclosures who are similarly susceptible to a negative loss causation defense.");

*see also In re Lyft Sec. Litig.*, 2020 WL 1043628, at *6 (N.D. Cal. Mar. 4, 2020) (certifying class and finding typicality despite lead plaintiff's susceptibility to negative loss causation defense); *Kernsv. SpectraLink Corp*, 2003 WL 27380785, at *5 (D. Colo. July 2, 2003) (certifying class where class plaintiff "sold his stock after eight days and prior to any corrective disclosure").

This is consistent with the case law providing that differences between class members in the timing of purchases and sales of shares during the proposed class period do not undermine typicality (or adequacy). *See Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 611 (S.D. Ohio 2003) ("[I]ndividual differences regarding the purchasing and selling of stock during the proposed class period does not destroy the typicality requirement. All purchasers of stock during a class period share a common interest in showing that the stock was unlawfully inflated."). Courts evaluating the adequacy under Rule 23(a) have uniformly ruled that the timing of a class plaintiff's purchases or sale of shares does *not* create serious conflicts between class members or impact adequacy and, instead, is a damages issue that should not be addressed at the class certification stage.

> **The substantial majority of courts that have addressed the propriety of class certification based on the timing of the class representative's sales or purchases have found, however, that the timing of the transactions does not necessarily create fundamentally divergent interests with the putative class.** Rather, the supposed intra-class conflict based on the timing at which stock positions were divested or acquired is principally a damages issue, which is an inquiry premature at the class certification stage.

*Thorpe*, 2016 WL 4006661, at *9 (emphasis added) (collecting cases). There are a numerous cases supporting this well-established proposition.[2] Consistent with this precedent, Courts find that any

---

[2] *See, e.g., In re Miller Indus., Inc. Sec. Litig.*, 186 F.R.D. 680, 686–87 (N.D. Ga. 1999) (addressing various scenarios, including seller/purchaser and equity conflicts, proffered by the defendants with respect to the timing of the sale and purchase of the class plaintiffs' shares and those of the proposed class, and finding that the "alleged conflicts present no impediment to certification" and the "conflicts are primarily with respect to damages issues"); *Picard Chemical Profit Sharing Plan*

purported "conflict due to the timing of class members' purchases and sales of the shares at issue is far outweighed by the common interest in establishing misrepresentations made by defendants." *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D. 382, 392 (D. Mass. 2011) (quoting *In re Baan Co. Sec. Litig.,* 2002 WL 32307825, *7 (D.D.C. July 19, 2002)). And any such conflicts between members of the class can be remedied through the creation of different sub-classes to address any different damages calculations. *Id*.

Notably, the Defendants have not addressed any of the numerous cases (those above or the countless others that are available) supporting typicality and adequacy under these circumstances. And, conversely, they have *not* proffered any case law that a class representative, like Gelt, who sold after a partial corrective disclosure is not typical or adequate and subject to unique defenses that would require the denial of class certification. The reason is simple: their position is meritless.

---

*v. Perrigo*, 1996 WL 739170 *6 (finding that an alleged intra-class equity conflict a "peripheral concern" related to damages); *In re Vesta Ins. Grp., Inc., Sec. Litig.*, 1999 WL 34831475, at *3 (N.D. Ala. Oct. 25, 1999) (discussing alleged seller/purchaser and equity conflicts and timing of certain class members who purchased after corrective disclosure, finding conflict mainly concerned with damages); I*n re Recoton Corp. Sec. Litig.*, 248 F.R.D. 606, 615–16, 619 (M.D. Fla. 2006) (certifying class despite named plaintiffs who purchased majority of shares after partial disclosure, bought and sold shares throughout class period, and owned shares at the end of the class period); *Weikel v. Tower Semiconductor Ltd.*, 183 F.R.D. 377, 393 (1998) (named plaintiffs purchased after one of two alleged corrective statements); *In re Enron Corp. Securitie*s, 529 F. Supp. 2d 644, 713–14 (S.D. Tex. June 5, 2006) (discussing class who included investors who purchased and sold prior to disclosure of the alleged fraud, "and made have even made money," and those who purchased after disclosure, and noting that individualized damage issues do not preclude certification); *Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir. 1975) ("Courts have generally declined to consider conflicts, especially as they regard damages, sufficient to defeat class action status at the outset unless the conflict is apparent, imminent, and on an issue at the very heart of the suit."); *Nathan Gordon Trust v. Northgate Exploration, Ltd.*, 148 F.R.D. 105, 108 (S.D.N.Y.1993) (refusing to exclude in-and-out traders from class, and observing that "[w]hile there may be a later issue as to damages for these in-and-out traders, they are still proper members of a plaintiff class"); *In re Symbol Techs., Inc. Sec. Litig.*, No. 05–CV–3923 DRH AKT, 2015 WL 3915477, at *7 (E.D.N.Y. June 25, 2015) (stating "class conflicts relating to the time at which particular class members purchased their securities, and which could potentially motivate different class members to argue that the securities were relatively more or less inflated at different time periods, relate to damages and do not warrant denial of class certification").

Unable to marshal legal support for their hollow arguments, the Defendants resort to miscitng and distorting case law and even this Court's own rulings. The Defendants say that "this very Court, in this very case"—in its decision appointing Gelt as lead plaintiff—found that a plaintiff selling shares on May 14th would be subject to unique defenses. *See* Resp. at 16. This is a misrepresentation of the Court's ruling. In actuality, the Court declined to select plaintiff Tejeswar Tadi, who purchased Gelt *stock options* on May 14th, as lead plaintiff, noting that Tadi could be subject to unique defenses regarding loss causation given that he was a short-term options trader. *See Gelt Trading, Ltd. v. Co-Diagnostics, Inc.*, 2021 WL 913934, at \*5 (D. Utah Mar. 10, 2021). The Court explained its reasoning as set forth below:

> The stock purchaser class members would be required to prove that corrective disclosures made on May 14, 2020 caused the stock price to decline. But Tadi, as a short-term options trader, could be required to show that, but for the corrective disclosures, the stock price would have appreciated by more than 7% by the following day in order to attain the strike price set by the options contracts. If the stock would not have reached the strike price, Tadi's result would have been the same: the options contracts would be worthless and expire on May 15. This would require specialized expert testimony that would not be relevant to the other class members

*See Id*. Plainly, the Court did not suggest that selling shares on May 14th would subject Gelt (or anyone else) to a unique defense regarding loss causation; it was addressing unique issues stemming from Tadi's purchase of *options* rather than shares.

**_Third_**, relatedly, the Defendants also argue that there are "six subgroups within the proposed class whose claims are not common to one another or typical." *See* Resp. at 19. The Defendants contend that "it is expected that the findings of both sides' experts' **_merit reports_** raise substantially significant differences among the proposed class members, making certification of the class…inappropriate." *Id*. (emphasis added). The Defendants then purport to set out the

differences between the class members based on the timing of their purchases and sales and argue that there are distinct damages for these alleged subgroups. *Id*. at 19-23.

Here, the Defendants explicitly admit they oppose class certification by forecasting future merits disputes related to the damages of the different class members. But, as noted, intraclass differences in the timing of purchases and trades is a damages issue that is not addressed at the class certification stage. *See supra* at 13-15; *see also In re Symbol Techs., Inc. Sec. Litig.*, at *7 (E.D.N.Y. June 25, 2015) ("Class conflicts relating to the time at which particular class members purchased their securities, and which could potentially motivate different class members to argue that the securities were relatively more or less inflated at different time periods, relate to damages and do not warrant denial of class certification"). To the extent that there are some members of the class who did not suffer damages based on the timing of their purchases and sales, that is not addressed at this stage. *See In re Vale S.A. Securities Litig.,* 2022 WL 122593, at * 20 (E.D.N.Y. Jan. 11, 2022) ("Other courts in this Circuit have rejected the argument that investors who are ineligible for damages should be excluded from the class at certification, because such exclusions are 'unnecessary' and 'premature' at this stage … The Court finds no basis to deny class certification because the class includes individuals whose recovery may be zero.").

***Fourth***, even though it is a merits issue not appropriate at this stage (and without waiving our objection to the insertion of the issue by Defendants), it should be noted that the Defendants' position regarding loss causation—that Gelt cannot prove loss causation because it did not sell on May 15th—is incorrect. The Defendants argue that Gelt is foreclosed from showing loss causation because on May 14th—when it sold its shares—Co-Diagnostics' shares did not have a statistically significant drop in price based on Dr. Werner's event study. Setting aside that Dr. Werner's event study was solely focused on market efficiency and not causation (because that is a merits issue),

16

the Defendants are wrong. As stated by Dr. Werner in his rebuttal report, the lack of a statistically significant price drop on May 14th "does not prove that the [May 14th partial] corrective disclosures had no price impact." *See* Werner Rebuttal at ¶ 15. As noted, Dr. Werner points out that on May 14th, following the partial corrective disclosures, Co-Diagnostics' shares were subject to multiple trading halts and had significant intraday losses—including before and at the time Gelt sold its shares—that he opines "do[] not reflect…random volatility," but "[r]ather,…price movement in response to negative information." *Id*. ¶¶ 17-21. Further, Dr. Werner notes that "the lack of statistical significance of May 14, 2020 was caused by the market participants' protracted digestion of the news, itself induced by trading halts," and that the impact of the May 14th partial disclosures is evident based on the massive price decline the very next day. *Id.* ¶¶ 19-20.

As usual, the Defendants do not provide any actual law supporting their argument that a plaintiff cannot prove loss causation—or that it is subject to a unique defense—if he or she did not sell securities on a day when there was a statistically significant price drop. No such law exists.

## CONCLUSION

For the reasons stated above, the Court should grant Gelt's motion for class certification. Gelt has satisfied the requirements of Rule 23, and the Defendants' arguments in opposition—predicated entirely on merits-based issues—are unfounded and should be set aside. This case, like the legions of securities fraud class actions that are routinely certified across the country, easily satisfies the Rule 23 requirements and should be certified as a class action.

DATED: December 23, 2022          ARMSTRONG TEASDALE

                                             /s/ D. Loren Washburn
                                     D. Loren Washburn

                                     Michael A. Pineiro (*pro hac vice*)
                                     MARCUS NEIMAN RASHBAUM & PINEIRO LLP

2 South Biscayne Blvd., Suite 2530
Miami, FL 33131

Michael C. Fasano (*pro hac vice*)
FASANO LAW FIRM, PLLC
2 S. Biscayne Blvd., Suite 2530
Miami, FL 33131

*Attorneys for Gelt Trading, Ltd. and Proposed Class*

**CERTIFICATE OF SERVICE**

I certify that on December 23, 2022, a copy of the reply in support of the motion for certification was filed on the CM/ECF system and delivered to all parties of record.


/s/ D. Loren Washburn
D. Loren Washburn