## UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GELT TRADING, LTD., a Cayman Islands limited company,<br><br>Plaintiff,<br><br>v.<br><br>CO-DIAGNOSTICS, INC., a Utah Corporation, DWIGHT EGAN, JAMES NELSON, EUGENE DURENARD, EDWARD MURPHY, RICHARD SERBIN, REED BENSON, BRENT SATTERFIELD,<br><br>Defendants. | Case No. 2:20-cv-00368-JNP-DBP<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO EXTEND FACT-DISCOVERY DEADLINE**<br><br>Judge Jill N. Parrish<br><br>Magistrate Judge Dustin B. Pead |

**DEFENDANTS' OPPOSITION TO**
**PLAINTIFF'S MOTION TO EXTEND FACT-DISCOVERY DEADLINE**

Plaintiff's attempt to reopen fact discovery[1] is a belated fishing expedition designed to put settlement pressure on Defendants. Having failed to elicit the testimony it hoped for in the ten depositions Plaintiff conducted prior to the fact-discovery cutoff, and having failed to reach a settlement in mediation, Plaintiff now disingenuously asserts that it needs an untimely 30(b)(6) deposition to supplement deposition testimony taken many months ago and to explore a preservation issue Plaintiff has similarly known about—and conducted discovery on—for months. These manufactured justifications do not show "excusable neglect" or "good cause" to allow for an untimely 30(b)(6) deposition.

At no time during the nine months of fact discovery (already extended multiple times) did Plaintiff serve a 30(b)(6) deposition notice; indeed, Plaintiff still has not done so, even though both the deadline to serve such notice (July 4) and the previously-extended cutoff for fact discovery (August 18) have long since passed. The Local Rules are clear: "The 30(b)(6) notice must be served at least 28 days prior to the scheduled deposition and at least 45 days before the discovery cutoff date." DUCivR 30-2. These more rigorous timing requirements are necessary because 30(b)(6) depositions are different: preparing for a 30(b)(6) deposition is more time-consuming and expensive than preparing for the average fact deposition, requiring the designated witness to be able to adequately testify on subjects not within his or her personal knowledge or expertise. *See* 8A Charles Wright et al., Federal Practice and Procedure § 2103 (3d ed.) ("[T]he burdens faced by the responding party [to a 30(b)(6) notice] are considerably more challenging than with an ordinary deposition.").

Here, Plaintiff had nine months of fact discovery within which to notice and take the

---

[1] Plaintiff incorrectly styled this as a motion for "extension of the fact discovery period" rather than to reopen discovery (Dkt. #155; "Motion" or "Mot.", at 10), despite the fact that it was filed ten days after the fact-discovery cutoff.

Company's 30(b)(6) deposition. Plaintiff did not seek a 30(b)(6) deposition in connection with any of the three prior extensions to the discovery schedule. Plaintiff did not seek it when it was informed in early-March 2023 of the inadvertent deletion of certain of Dr. Garcia's electronically stored information ("ESI"). Nor did Plaintiff seek it in mid-May after having completed ten fact depositions (including Dr. Garcia's) or in June after receiving Defendants' final document production. At every point in this extensive discovery process, Plaintiff made the strategic decision not to take the Company's deposition. It should not now be allowed to reopen fact discovery for this untimely and unnecessary 30(b)(6) deposition.

## BACKGROUND

### A. Plaintiff Had Nine Months of Fact Discovery and Never Noticed a 30(b)(6) Deposition.

When undersigned counsel took over the defense of this case in mid-January 2023, the parties had already obtained one extension of the discovery schedule. Dkt. #127. Upon entering the case, we asked Plaintiff's counsel to agree to an amended case schedule that would allow us more time to get up to speed. Plaintiff agreed to some (but not all) adjustments, and an amended schedule approved by the Court on February 24 set a June 15 end to fact discovery. Dkt. #139. Through June, Defendants produced more than 250,000 pages of documents in response to Plaintiff's expansive document requests, and made $10^2$ current and former directors, officers, and employees available for deposition. At no point did Plaintiff's counsel notice, or suggest they were considering, a 30(b)(6) deposition.

Notwithstanding this extensive discovery, Plaintiff reached out to Defendants on June 13 seeking to extend the fact-discovery deadline to August 18 in order to, among other things, take

---

[2] After certain emergency medical and scheduling issues, the parties worked together to schedule the depositions of two additional witnesses (Jennifer Webb and Chad Apuli), both of which were noticed before the fact-discovery cutoff. Both occurred on 9/1.

Ms. Webb's and Mr. Apuli's depositions later in the summer. Again, Plaintiff did not mention a 30(b)(6) deposition. On June 15, while Defendants were still considering their response, Plaintiff filed a motion to extend the deadlines as they had proposed. Dkt. #148. The Court granted the motion the next day, before Defendants could oppose, allowing Plaintiff the requested two additional months of fact discovery. Dkt. #150. However, Plaintiff appears to have spent most of that additional time preparing for mediation, which occurred on August 9. That session did not result in a settlement.

On August 10, Plaintiff again proposed extending the case schedule to allow the parties time to further explore the possibility of settlement. *See* 8/23 correspondence (<u>Exhibit A</u>). Defendants agreed to extend all case deadlines except for the fact-discovery deadline, which had nearly expired and which had already been extended multiple times. *Id.* It was only in reply to that communication, on August 11—seven days before the fact-discovery cutoff, and over five weeks after the 30(b)(6) notice deadline—that Plaintiff asked to take a 30(b)(6) deposition. *Id.* That same day, Defendants responded that they would oppose any motion to extend the fact-discovery cutoff, including to allow for an untimely 30(b)(6) deposition. *Id.* Five days later, and two days before the fact-discovery cutoff, Plaintiff said it would "likely" move for an extension of the fact-discovery deadline the following week (after the fact-discovery cutoff). *Id.* Plaintiff did not do so. Plaintiff waited nearly two weeks—ten days after the cutoff—to file its motion, and briefing is now scheduled to be completed on September 25. Dkt. #155. Plaintiff still has not served a 30(b)(6) notice.

### B.  Plaintiff Knew About the Deletion of Dr. Garcia's ESI for at least 5 Months.

Certain of Dr. Garcia's ESI was accidentally deleted when she left the Company in December 2021; the fact of this deletion was affirmatively disclosed to Plaintiff's counsel in early-

March 2023 and has itself been the subject of deposition testimony and discovery requests. Undersigned counsel have engaged with Plaintiff on this issue for months, including in responding to Plaintiff's May 11 request for documents related to the deletion, and in Plaintiff's May 12 deposition of Dr. Garcia on this topic.[3]

## ARGUMENT

### A.  LEGAL STANDARD

Plaintiff's motion is governed by two Federal Rules. First, F.R.C.P. 16(b)(4), which provides that a scheduling order "may be modified only for good cause and with the judge's consent." Second, because Plaintiff's motion was filed after the fact-discovery deadline, F.R.C.P. 6(b)(1)(B) separately requires Plaintiff to establish that it "failed to act [before the close of discovery] because of excusable neglect." *PNHC, LLC v. N. Park Enterprises, LC*, 2022 WL 6161278, at *2 (D. Utah Oct. 7, 2022). Failure to establish excusable neglect necessarily results in failure to establish good cause. *Id.* at *3.

To determine whether excusable neglect is shown, courts consider four factors: "(1) the danger of prejudice to the nonmoving party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith." *Id.* "The Tenth Circuit has . . . held that the third factor . . . is 'perhaps the most important single factor . . . in determining whether neglect is excusable.'" *Id.* "'[A]n inadequate explanation for delay, may, by itself, be sufficient to reject a finding of excusable neglect.'" *Id.*

Even if Plaintiff could somehow demonstrate excusable neglect, it still would have to show

---

[3] <u>Exhibit B</u> Request 10 ("All communications relating to the deletion of documents by Rebecca Garcia."); Garcia Tr. 40:14-49:24.

good cause. This "requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay." *Wagstaff v. Biolife Plasma Servs.*, 2021 WL 6803008, at *1 (D. Utah Nov. 16, 2021). "Good cause comes into play in situations in which there is no fault—excusable or otherwise. In such situations, the need for an extension is usually occasioned by something that is not within the control of the movant." *PNHC*, 2022 WL 6161278, at *2. "It requires the moving party to show the deadline cannot be met despite the movant's diligent efforts." *Id.* Courts consider six factors when making this determination: "(1) whether trial is imminent; (2) whether the request is opposed, (3) whether the non-moving party would be prejudiced, (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and, (6) the likelihood that the discovery will lead to relevant evidence." *Wagstaff*, 2021 WL 6803008, at *1.

### B. PLAINTIFF CANNOT ESTABLISH EXCUSABLE NEGLECT.

The only support Plaintiff offers to try to show excusable neglect—the key factor—is that it "waited to take Co-Diagnostics' corporate representative deposition to keep discovery costs to a minimum while the parties actively pursued mediation throughout the summer." Mot. 3. This makes no sense. As Plaintiff concedes, it was not until June 2023—seven months into discovery— that the parties agreed to mediate. *Id.* 5. Plaintiff offers no explanation for not noticing a 30(b)(6) deposition prior to June, when Plaintiff had already completed ten depositions and was fully aware of the issue concerning deletion of Dr. Garcia's ESI.[4] Moreover, Plaintiff's counsel undoubtedly understood it was possible, or even probable, that the case would not settle, making it inadvisable

---

[4] Plaintiff's cited cases (Mot. 8) are not to the contrary. Neither case had anything to do with a request to reopen or extend discovery to conduct a 30(b)(6) deposition.

to forego taking a 30(b)(6) (or any other) deposition Plaintiff truly believed was necessary based solely on the hope that the matter would resolve. Unsurprisingly, courts in this district have rejected precisely this excuse as insufficient to show excusable neglect:

> Acorn's explanation for the delay is based upon its "decision to attempt mediation and avoid the cost of additional discovery that would have been unnecessary had mediation succeeded." Acorn also asserts that said decision was "based on legitimate concerns that additional discovery would eat up any funds that may have been obtained from North Park at mediation" because North Park is apparently no longer in business. **Even taking those statements as true, they have no relevance to explaining Acorn's delay in filing its motion**. Although Acorn may have had practical reasons for avoiding potentially unnecessary discovery, that does not excuse its decision to ignore the fact discovery deadline. In the court's view, Acorn made a strategic decision to rely upon the success of mediation without attempting to ensure that its ability to conduct further fact discovery was preserved in the event mediation was unsuccessful. **The mere hope of settling a case in mediation does not provide an adequate explanation for Acorn's delay in filing its motion**. . . . [and] **is insufficient to establish excusable neglect**.

*PNHC*, 2022 WL 6161278, at *2 (refusing to extend fact discovery to allow for 30(b)(6) deposition) (emphasis added).

Plaintiff also fails to explain its further delay after the August 9 mediation. Plaintiff waited until August 11 to first raise the prospect of a 30(b)(6) deposition; then it waited until August 16 to inform Defendants it would "likely" file a motion to extend fact discovery the following week (after the fact-discovery cutoff); and it waited almost two more weeks before actually filing the motion. *Supra* 3. Such blatant disregard of the discovery deadline is the antithesis of excusable neglect, and the Court should deny Plaintiff's Motion on this basis alone. *See PNHC*, 2022 WL 6161278, at *3; *Hoopes v. Owners Ins. Co.*, 2018 WL 3320799, at *4 (D. Utah July 5, 2018) ("Plaintiff has had more than ample time in this case to seek Defendant's Rule 30 (b)(6) deposition, yet she waited until after the expiration of fact discovery to do so. Put simply, Plaintiff's Rule 30(b)(6) deposition was untimely.").

The other factors also weigh against a finding of excusable neglect. Defendants will clearly

be prejudiced and put to significant, unnecessary effort and expense if an untimely 30(b)(6) deposition is allowed to go forward[5] (factor 1), and the length of any such delay (factor 2) would realistically be months, potentially through the end of the year. Plaintiff has not yet served a 30(b)(6) notice, and were the Court to allow it to do so, Defendants would need at least the 45 days required by Local Rule 30-2 in order to: (i) review, negotiate, and potentially object to the scope of the 30(b)(6) topics, which may lead to further motion practice; (ii) identify and evaluate potential corporate representatives, considering each individual's knowledge on the noticed topics and their personal and professional obligations and schedules; (iii) designate a witness; and (iv) prepare the witness to adequately testify on topics not within his or her personal knowledge, potentially requiring the compilation and review of numerous documents as well as interviews with other colleagues.[6] As Plaintiff concedes, all of this would be at significant cost to the Company (Mot. 5). And given the utter implausibility of Plaintiff's excuse, it is hard to believe Plaintiff is acting in good faith (factor 4); it seems far more likely that Plaintiff seeks a 30(b)(6) deposition at this late juncture as a litigation tactic to re-depose one or more executives and push Co-Diagnostics to settle rather than undergo "a costly 30(b)(6) deposition" where the Company would "waste thousands of dollars in fees and costs." Mot. 5.

## C.  PLAINTIFF CANNOT ESTABLISH GOOD CAUSE.

Because Plaintiff fails to establish excusable neglect, it necessarily fails to establish good cause as well. Regardless, the good cause factors also weigh heavily in favor of denying Plaintiff's motion.

---

[5] The untimeliness of Plaintiff's request itself is prejudicial. *Wagstaff*, 2021 WL 6803008, at *2.
[6] As such, Plaintiff is not seeking a mere "brief extension" (Mot. 2). Indeed, briefing on this motion will not be completed until 9/25, one week before the requested 10/2 extension.

7

***The Request is Opposed***.[7] This factor is not disputed—Defendants adamantly oppose reopening fact discovery, or allowing Plaintiff to take an untimely 30(b)(6) deposition. Plaintiff's insinuation that Defendants' agreement to extend other case deadlines somehow suggests otherwise is disingenuous. Mot. 7. We agreed to extend the expert deadlines (which involve out-of-pocket cost to plaintiffs) and summary-judgment deadlines in light of settlement discussions, but there is no legitimate reason to extend fact discovery beyond the nine months already granted to Plaintiff.

***Defendants Will Be Prejudiced***. This factor weighs against a finding of good cause for the reasons explained above. *Supra* 7.

***Plaintiff was Not Diligent in Seeking a 30(b)(6) Deposition and Any Need for It was Entirely Foreseeable Early in Fact Discovery***. Plaintiff has no legitimate excuse for waiting until after the fact-discovery deadline to seek a 30(b)(6) deposition. *Supra* 5-6. And while Defendants do not believe a 30(b)(6) deposition is necessary, any alleged need for it was entirely foreseeable to Plaintiff for most of the nine months of fact discovery. Plaintiff suggests that it only realized it wanted a 30(b)(6) deposition after (i) failing to elicit the testimony it desired from ten fact depositions this spring,[8] and (ii) learning that certain of Dr. Garcia's ESI was deleted,[9] but Plaintiff knew about both issues at least several months prior to the fact-discovery cutoff and chose not to notice a 30(b)(6) deposition. *Supra* 2-4. It is truly incredible that the idea of a 30(b)(6) deposition only dawned on Plaintiff in mid-August.

***The 30(b)(6) Deposition is Not Likely to Lead to Relevant Evidence***. Plaintiff describes

---

[7] No trial date is set yet, but this factor carries less weight. *Wagstaff*, 2021 WL 6803008, at *1–2.

[8] The last deposition prior to the fact-discovery cutoff was on 5/16/23.

[9] The only "new" information disclosed on 6/28 concerned issuance of a hold notice. Mot. 4. All pertinent information regarding deletion of Dr. Garcia's ESI was previously disclosed.

two categories of topics that it desires to cover in a 30(b)(6) deposition: (1) deletion of certain of Dr. Garcia's ESI, and (2) certain topics already covered in prior depositions. But a 30(b)(6) deposition on these topics will not lead to relevant evidence because it would be duplicative of the discovery already in Plaintiff's possession. As noted, Plaintiff previously served Defendants with document requests concerning the deletion of Dr. Garcia's ESI, and to the extent any such documents existed, they were produced. Plaintiff also deposed Dr. Garcia on this very topic on May 12. *Supra* 4. To the extent Plaintiff seeks further information on this subject, or information related to the Company's document retention policies and efforts more broadly, this is more suitably sought through written disclosures and document production.[10] However, the fact-discovery deadline has long since passed and Defendants have already responded to discovery requests on these topics.[11]

As for topics related to prior deposition testimony (Mot. 9-10), Plaintiff already has the information it seeks. Defendants (including the Company) have already answered Plaintiff's interrogatory asking them to "[i]dentify all companies that performed Validation Studies on the Logix Smart Test, and then declined to purchase and/or use the test." Mot. 9; 6/12/23 Defs' Answers and Objections to Interrogatories. The topics of most concern—press releases, validation studies, and the accuracy/performance of the Logix Smart test—were thoroughly covered in Plaintiff's document requests, and Defendants have produced all such responsive, non-privileged documents. Moreover, Plaintiff has already taken testimony on these topics from the twelve individuals most likely to have actual knowledge of them and—contrary to Plaintiff's assertions—

---

[10] *In re Pressure Sensitive Labelstock Antitrust Litig.*, 2006 WL 8462373, at *2 (M.D. Pa. Oct. 23, 2006) (quashing 30(b)(6) notice because ESI issues "lend themselves more readily to written disclosures and production of documents than oral depositions"); F.R.C.P. 26(b)(2)(C).

[11] *E.g.*, Defendants have already produced "All Documents related to any Document and record retention policy for Co-Diagnostics" Exhibit C Request 5.

the full transcripts reflect that these questions were directly responded to.[12] Plaintiff offers no explanation as to how a 30(b)(6) deposition would elicit any additional information on issues far more likely to be within the direct knowledge of those already deposed. And even assuming it could, that is not sufficient to establish good cause. *Wagstaff*, 2021 WL 6803008, at *2.

## CONCLUSION

Having made the calculated decision not to take a 30(b)(6) deposition at any point during nine months of fact discovery, Plaintiff cannot now show this delay was excusable neglect or that good cause exists to reopen discovery. Defendants respectfully urge the Court to deny Plaintiff's Motion and reject its request to take an untimely 30(b)(6) deposition.

Dated: September 11, 2023

**BAKER & HOSTETLER LLP**

By:    */s/ Douglas W. Greene*
Douglas W. Greene (*Pro Hac Vice*)
Genevieve G. York-Erwin (*Pro Hac Vice*)
Zachary R. Taylor (*Pro Hac Vice*)
45 Rockefeller Plaza
New York, NY 10111-0100
Phone: 212-589-4200
dgreene@bakerlaw.com
gyorkerwin@bakerlaw.com
ztaylor@bakerlaw.com

Robert Wing (4445)
PARR BROWN GEE & LOVELESS, P.C.
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
rwing@parrbrown.com

*Attorneys for Defendants*

---

[12] *See, e.g.,* Satterfield Tr. 202:24-203:5; Egan Tr. 282:9-23.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 11th day of September, 2023, a copy of the foregoing DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO EXTEND FACT-DISCOVERY DEADLINE was served electronically upon opposing counsel.

/s/ Zachary R. Taylor
Zachary R. Taylor