# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| GELT TRADING, LTD., a Cayman Islands limited company,<br><br>　Plaintiff,<br><br>v.<br><br>CO-DIAGNOSTICS, INC., a Utah Corporation, DWIGHT EGAN, JAMES NELSON, EUGENE DURENARD, EDWARD MURPHY, RICHARD SERBIN, REED BENSON, and BRENT SATTERFIELD,<br><br>　Defendants. | **FIRST REQUEST FOR PRODUCTION OF DOCUMENTS BY PLAINTIFF**<br><br>Case No. 2:20-cv-00368-JNP-DBP<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Dustin B. Pead |

## **PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

Plaintiffs (defined below), by and through their undersigned counsel, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Utah, hereby demand that Defendants (defined below) produce for inspection within thirty (30) calendar days of the date of this request at the offices of Fasano Law Firm, PLLC, located at 2 S. Biscayne Blvd., Suite 2530, Miami, Florida 33131, all Documents described below in accordance with the definitions and instructions that follow.

### **DEFINITIONS**

1.　　　"Action" refers to the above-captioned case, *Gelt Trading, Ltd. v. Co-Diagnostics, Inc., et al.*, Case No. 2:20-cv-00368-JNP-DBP (D. Utah).

2.　　　"SEC" means and refers to the U.S. Securities and Exchange Commission.

3.　　　"All," "Any," and "Each" shall each be construed as encompassing any and all.

4.      "And" and "Or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

5.      "Class" means and refers to all persons and entities that purchased or otherwise acquired Co-Diagnostics, Inc. securities between April 30, 2020 and May 15, 2020, inclusive.

6.      The use of the singular form of any word includes the plural and vice versa.

7.      You" or "Your" means the party responding to this request.

8.      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

9.      "Complaint" refers to Second Amended Class Action Complaint (Proposed Class Action) (ECF No. 86) filed in this Action.

10.     "Concerning" means relating to, referring to, describing, evidencing, or constituting.

11.     "Defendants" refers to Co-Diagnostics, Inc., Dwight Egan, James Nelson, Eugene Durenard, Edward Murphy, Richard Serbin, Reed Benson, and Brent Satterfield.

12.     "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "Documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

13.     When referring to Documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s). In the alternative, you may produce the Documents, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d).

14. When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

15. "Meeting" means the contemporaneous presence, whether in person or through any other means of Communication, of any natural persons, whether or not such presence was by chance or prearranged and whether or not the meeting was formal, informal or occurred in connection with some other activity.

16. "Person" means and refers to any natural person or legal entity, including without limitation, any business or governmental entity or association.

17. "Plaintiff" refers to lead plaintiff Gelt Trading, LTD.

18. "Referring to" means belonging to, relating to, or regarding.

19. "Relating to" means regarding, relating to, referring to, in connection with, pertaining to, describing, reflecting, discussing, analyzing, summarizing, embodying, or constituting.

20. "SEC" means and refers to the U.S. Securities and Exchange Commission.

21. "Relevant Period" means April 1, 2019, to the present.

22. "Financial Statements" means income statements, balance sheets, and statements of retained earnings and cash flows.

### INSTRUCTIONS

1. All Documents shall be produced as they are maintained in the ordinary course of business, and shall be produced in their original folders, binders, covers or containers, or facsimile,

thereof. i.e., Documents maintained electronically shall be produced in the manner in which such Documents are stored and retrieved.

2.  In responding to these requests, you shall produce all responsive Documents (including those stored electronically), which are in your possession, custody, or control, or in the possession, custody, or control of your predecessors, successors, parents, subsidiaries, divisions, or affiliates, or any of your respective directors, officers, managing agents, agents, employees, attorneys, accountants or other representatives. A document shall be deemed to be within your control if you have the right to secure the document or a copy of the document from another person having possession or custody of the document.

3.  Plaintiff reserves the right to request inspection of the original Documents, including those stored electronically, as they are kept in the usual course of business. If the original is not in your custody, then a copy thereof, and all non-identical copies which differ from the original or from the other copies produced for any reason, including, without limitation, the making of notes thereon.

4.  To the extent that there are Documents contain information relevant to these requests that are currently in electronic format, the Documents are to be produced in their native format.

5.  If production of Documents is withheld on the ground of privilege, as to each such withheld document, state the following information:

(a)  which privilege is claimed;

(b)  who is asserting the privilege;

(c)  a precise statement of the facts upon which said privilege is based;

(d)  the following information describing each purportedly privileged

4

document:

    i    a brief description sufficient to identify its nature, *i.e.*, agreement, letter, memorandum, type, etc.;

    ii.    a brief description sufficient to identify its subject matter and purpose of the document;

    iii.    the date it was prepared;

    iv.    the date it bears;

    v.    the date it was sent;

    vi.    the date it was received;

    vii.    the identity of the person preparing it;

    viii.    the identity of the person sending it;

    ix.    the identity of each person to whom it was sent or was to have been sent, including all addresses and all recipients of copies;

    x.    a statement as to whom each identified person represented or purported to represent at all relevant times;

    xi.    all persons to whom its contents have been disclosed; and

    xii.    a precise description of the place where each copy of that document is kept, including the title or description of the file in which said document may be found and the location of such file.

6.    If a portion of any document responsive to these requests is withheld under claim of privilege pursuant to Instruction No. 5, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

7.    You are to produce each document requested herein in its entirety, without deletion

or excision (except as qualified by Instructions Nos. 5 and 6 above), regardless of whether you consider the entire document to be relevant or responsive to the requests.

8.    Whenever a document is not produced in full or is produced in redacted form, so indicate on the document and state with particularity the reason or reasons it is not being produced in full, and describe to the best of your knowledge, information and belief, and with as much particularity as possible, those portions of the document which are not being produced.

9.    If a document responsive to these requests was at any time in your possession, custody, or control but is no longer available for production, as to each such document state the following information:

(a) whether the document is missing or lost;

(b) whether it has been destroyed;

(c) whether the document has been transferred or delivered to another person and, if so, at whose request;

(d) whether the document has been otherwise disposed of; and

(e) a precise statement of the circumstances surrounding the disposition of the document and the date of its disposition.

10.    With respect to any category of Documents, the production of which you contend is in some way "burdensome" or "oppressive," please state the specific reasons for that objection.

11.    If no Documents exist which are responsive to a particular request, state this assertion in writing.

12.    These Document Requests are continuing, and to the extent that at any time after the production of Documents called for by this Document Request, You become aware of or

acquire additional Documents responsive to this Document Request, such Documents shall be produced promptly up to the final resolution of this action, whether by trial or otherwise.

13.     Unless otherwise stated, these requests call for the production of All Documents that were generated and/or maintained during the period April 1, 2019 to the present (the "Relevant Period").

## DOCUMENT REQUESTS

1.     All Director and Officer (D&O) insurance policies for Co-Diagnostics, Inc.

2.     All Documents concerning any insurance policy under which any Defendants may claim coverage to satisfy part or all of any possible liability as a result of any of the claims asserted in this Action.

3.     All Communications between any Lead Plaintiff in this Action and any of Co-Diagnostics, Inc. personnel, including Defendants.

4.     All Documents that form the basis of Your affirmative defenses set forth in your Answer.

5.     All Documents related to any Document and record retention policy for Co-Diagnostics, Inc.

6.     All lists, charts, and other graphic presentations or representations which describe the internal organization and structure of Co-Diagnostics, Inc., its divisions, subsidiaries, divisions, subdivisions, affiliates, joint ventures, or other corporate subdivisions and the relationship among them and changes therein.

7.     All Documents produced by Co-Diagnostics, Inc. to the SEC related to Co-Diagnostics, Inc.'s Covid-19 diagnostic tests.

8. All Documents and Communications between Co-Diagnostics, Inc. and the United States Food and Drug Administration relating to its COVID-19 diagnostic tests, including but not limited to any emergency use authorization and/or authorization in the normal course of business.

9. All Documents and Communications between Co-Diagnostics, Inc. and any State Government relating to its COVID-19 diagnostic tests.

10. All Documents and Communications between Co-Diagnostics, Inc. and any foreign Government and/or regulatory body relating to its COVID-19 diagnostic tests.

11. Any and All lists, including organizational charts, of Co-Diagnostics, Inc. personnel.

12. All diaries, daybooks, appointment calendars, and correspondence files by any Defendant or any Co-Diagnostics, Inc. employee that worked on the development and/or quality control testing for any COVID-19 diagnostic test, including but not limited to the testing of the efficacy and/or accuracy of such tests produced by Co-Diagnostics, Inc.

13. All Documents or Communications concerning all meetings of Co-Diagnostics, Inc.'s Board of Directors, including its committees and/or subcommittees, during the Relevant Period.

14. All meeting minutes of Co-Diagnostics, Inc.'s Board of Directors, including its committees, during the Relevant Period.

15. All financial projections estimating revenue, costs, expenses, and/or income related to Co-Diagnostics, Inc.

16. All Communications between Co-Diagnostics, Inc. and prospective or actual investors or shareholders of Co-Diagnostics, Inc.

17.     All Documents or Communications, including any drafts, relating to Co-Diagnostics, Inc. investor presentations and press releases during the Relevant Period.

18.     All drafts of Co-Diagnostics, Inc.'s SEC filings during the Relevant Period.

19.     All Communications with any securities analyst, stock market analyst, or research analyst that concern, refer, or relate to the following issues:

(a) Sales and sales estimates for Co-Diagnostics, Inc.'s products;

(b) The efficacy, effectiveness, and/or accuracy of any COVID-19 diagnostic test developed, distributed, offered for sale, and/or in any other way related to Co-Diagnostics, Inc.;

20.     Co-Diagnostics, Inc.'s employment and/or personnel files for (a) each of the Defendants, and/or (b) any employee and/or personnel involved in the development, efficacy, accuracy, and/or testing of Co-Diagnostics, Inc.'s COVID-19 diagnostic tests.

21.     All drafts of quarterly and annual Financial Statements for Co-Diagnostics, Inc.

22.     All audit reports and draft audit reports concerning Co-Diagnostics, Inc.

23.     All promotional materials, including drafts, for Co-Diagnostics, Inc.'s COVID-19 diagnostic tests during the Relevant Period.

24.     All Documents or Communications concerning the drafting of Promotional Materials.

25.     All meeting minutes, or notes concerning any meeting relating to the efficacy and/or accuracy of Co-Diagnostics, Inc.'s COVID-19 diagnostic tests during the Relevant Period.

26.     All Documents or Communications concerning potential or actual customer complaints relating to Co-Diagnostics, Inc.'s COVID-19 diagnostic tests.

27.     All Documents or Communications concerning TV interviews, including (a) preparation for TV interviews, and (b) issues raised following the TV interviews.

28.     All Documents or Communications concerning press interviews or inquiries about Co-Diagnostics, Inc.'s COVID-19 diagnostic tests during the Relevant Period, including (a) preparation for any press interviews or inquiries, and (b) issues raised following such press interviews or inquiries.

29.     All Documents or Communications regarding executive compensation for any executive of Co-Diagnostics, Inc. during the Relevant Period.

30.     All Documents or Communications concerning actual or potential competitors to Co-Diagnostics, Inc. specifically in the COVID-19 diagnostic testing space.

31.     All Documents concerning Co-Diagnostics, Inc.'s business plans, marketing reports, strategic plans, revenue goals, pricing strategy, or economic analyses during the Relevant Period.

32.     All Documents or Communications relating to Co-Diagnostics, Inc.'s decision to pursue Covid-19 diagnostic testing, and the development of such tests.

33.     All Documents or Communications relating to Co-Diagnostics, Inc.'s application for and obtaining of CE Mark for Co-Diagnostics, Inc.'s Covid-19 diagnostic tests.

34.     All Documents or Communications relating to Co-Diagnostics, Inc.'s application for and obtaining of regulatory approval in the European Community for Co-Diagnostics, Inc.'s Covid-19 diagnostic tests.

35.     All Documents or Communications relating to the purchase and sale of Co-Diagnostics, Inc. securities, including but not limited to stock and stock options, by any Co-Diagnostics, Inc. executive, including but not limited to the individual Defendants.

36.     All Documents or Communications relating to competing Covid-19 diagnostic tests and technology being submitted and/or considered by the United States Food and Drug Administration from January-May 2020.

37.     All Documents or Communications relating to working with the following Covid-19 testing initiatives, including but not limited to any analysis of the accuracy of Co-Diagnostics, Inc's Covid-19 diagnostic tests with the following testing initiatives and/or States: 1) Test Utah; 2) Test Iowa; 3) Test Nebraska; 4) Tennessee.

38.     All Documents or Communications relating to the April 30, 2020 article in the Salt Lake Tribune cited in paragraph 59 of the Second Amended Complaint in this action, including but not limited to any discussions about the statements and/or allegations in the article and proposed responses to the article.

39.     All Documents or Communications relating to the basis for Brent Satterfield's statement that Co-Diagnostics, Inc.'s tests were between 99.52% and 100% accurate, including but not limited to all U.S. Food and Drug Administration and European studies regarding the same.

40.     All documents or Communications demonstrating the effect of "population differences" on the accuracy and/or effectiveness of Co-Diagnostics, Inc.'s Covid-19 diagnostic tests.

41.     A complete Curriculum Vitae for Brent Satterfield.

42.     All documents or Communications relating to the changing of roles within Co-Diagnostics, Inc. for Brent Satterfield, including but not limited to Brent Satterfield's role as Chief Science Officer, member of any board (advisory or otherwise) for the company, consultant for Co-Diagnostics, Inc. or any other role with the company.

43.    All Documents or Communications relating to Brent Satterfield's leaving and/or exit from Co-Diagnostics, Inc.

44.    All Documents or Communications relating to the May 1, 2020, Co-Diagnostics, Inc. press release described in paragraph 62 of the Second Amended Complaint, including but not limited to all scientific studies, test, and/or data referenced in and/or relied upon when preparing the press release.

45.    All drafts of the May 1, 2020, Co-Diagnostics, Inc. press release described in paragraph 62 of the Second Amended Complaint.

46.    All Documents or Communications relating to the evaluation of Co-Diagnostics, Inc.'s Covid-19 diagnostic tests against "other tests" as stated in the May 1, 2020 press releases, including but not limited to the actual evaluations and tests being referred to by Brent Satterfield.

47.    All Documents or Communications relating to studies and/or evaluations of the accuracy and/or efficacy of Co-Diagnostics, Inc.'s Covid-19 diagnostic tests by any third party, including but not limited to any government agency and/or entity.

48.    All Documents or Communications relating to the May 14, 2020, Salt Lake Tribune article described in paragraph 75 of the Second Amended Complaint.

49.    All Documents or Communications relating to the May 14, 2020, public statement issued by Iowa Governor Kim Reynolds regarding the accuracy of Co-Diagnostics, Inc.'s Covid-19 diagnostic tests.

50.    All Documents or Communications relating to Co-Diagnostics, Inc.'s relationship with Nomi Health, including but not limited to the accuracy of Co-Diagnostics, Inc.'s Covid-19 diagnostic tests and/or any statements made to any third party about the accuracy of such tests.

51. All Documents or Communications relating to Co-Diagnostics, Inc.'s relationship with Silicon Slopes, including but not limited to the accuracy of Co-Diagnostics, Inc.'s Covid-19 diagnostic tests and/or any statements made to any third party about the accuracy of such tests.

52. All Documents or Communications relating to Co-Diagnostics, Inc.'s relationship with Domo, including but not limited to the accuracy of Co-Diagnostics, Inc.'s Covid-19 diagnostic tests and/or any statements made to any third party about the accuracy of such tests.

53. All Documents or Communications relating to Co-Diagnostics, Inc.'s relationship with Qualtrics, including but not limited to the accuracy of Co-Diagnostics, Inc.'s Covid-19 diagnostic tests and/or any statements made to any third party about the accuracy of such tests.

54. All Documents or Communications relating to Co-Diagnostics, Inc.'s May 14, 2020 release of earnings call, including but not limited to any discussion regarding whether to disclose allegations about the accuracy of Co-Diagnostics, Inc.'s Covid-19 diagnostic tests.

55. All Documents or Communications relating to U.S. Food and Drug Administration's bulletin described in paragraph 83 of the Second Amended Complaint, including but not limited to any discussion regarding whether to disclose allegations about the accuracy of Co-Diagnostics, Inc.'s Covid-19 diagnostic tests.

56. All documents produced or received in any other lawsuit or regulatory proceeding related to Test Utah, Test Nebraska, or Test Iowa.