D. Loren Washburn (#10993)
WASHBURN LAW GROUP
881 Baxter Dr. Ste. 100
South Jordan, UT, 84095
Telephone: (385) 881-9660
loren@washburnlawgroup.com

Michael A. Pineiro (*pro hac vice*)
MARCUS NEIMAN RASHBAUM & PINEIRO LLP
2 South Biscayne Blvd., Suite 2530
Miami, FL 33131
Telephone: (305) 400-4268
mpineiro@mnrlawfirm.com

*Attorneys for Gelt Trading, Ltd. and the Class*

---

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| GELT TRADING, LTD., a Cayman Islands limited company, <br><br> Plaintiff, <br><br> v. <br><br> CO-DIAGNOSTICS, INC., a Utah Corporation, DWIGHT EGAN, JAMES NELSON, EUGENE DURENARD, EDWARD MURPHY, RICHARD SERBIN, REED BENSON, BRENT SATTERFIELD, <br><br> Defendants. | **CLASS PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF JAMES WESTGARD** <br><br> Case No. 2:20-cv-00368-JNP-DBP |

The Class Plaintiff Gelt Trading hereby submits this response in opposition to the Defendants' motion to exclude the testimony of Dr. James Westgard (D.E. 167).

## **INTRODUCTION**

Defendants' motion to exclude the testimony of Dr. Westgard—a highly experienced clinical chemist with over 50 years of experience in validating laboratory tests—must be denied. As a clinical chemist who has spent his career analyzing both qualitative tests (tests that are binary like a PCR test) and quantitative tests (tests that provide a numerical output like a glucose test), Dr. Westgard is more than qualified to offer opinions in this case even if he does not specialize in PCR tests exclusively. Further, Dr. Westgard is qualified to offer an opinion about whether the May 1 Press Release provided a scientifically accurate summary of the validation summaries on which it was based. Indeed, Defendants' own experts seek to opine on the same topic and Dr. Westgard should be allowed to testify on that same issue. Finally, Defendants' argument that Dr. Westgard's methodologies are not "reliable" is baseless. Using his 50 years of experience and knowledge, and his review of documents produced in this case, he offers opinions about the validation summaries appended to the May 1 Press Release. Defendants offer no good grounds to exclude his testimony.

## **BACKGROUND**

Dr. Westgard is a highly qualified clinical chemist who has over 50 years of clinical and research experience in clinical chemistry and laboratory quality management. D.E. 169-12 at 1 (Westgard Report). Formerly, he was a Professor in the Department of Pathology and Laboratory Medicine at the University of Wisconsin Medical School where he also acted as the Director of Quality Management for Clinical Laboratories. *Id.* In that role, he oversaw all university labs

1

including clinical chemistry labs, microbiology labs, and molecular biology labs. D.E. 161-10 at 22:18-24:10 (Westgard Dep.). He has published over 200 peer-reviewed papers, book chapters and reports on many topics including the validation of laboratory tests, quality control in labs, and performance assessments of different diagnostic tests. D.E. 169-12 at 1 (Westgard Report). He even has a set of rules named after—the eponymously-called "Westgard Rules"—which enable clinical laboratory scientists to judge the results of their validations. *Id.* He now runs his own consulting firm that provides education and training support to medical laboratories. *Id.* at 2. Dr. Westgard has significant experience analyzing the performance of both qualitative (tests that are binary like a PCR test) and quantitative tests (tests that provide a numerical output like a glucose test). D.E. 161-10 at 24:3-10 (Westgard Dep.).

Dr. Westgard's opinion covers six general topics: (1) background knowledge about how to understand the performance of qualitative laboratory tests; (2) validation procedures to assess the accuracy of both qualitative tests and quantitative tests; (3) how to determine a qualitative test's limit of detection; (4) how performance claims should be expressed; (5) whether Co-Diagnostics accurately conveyed to the market its test performance based on the appended validation data; and (6) how Co-Diagnostics' test compares to its competitors' tests based on peer-reviewed publications. D.E. 169-12 at 1 (Westgard Report). Dr. Westgard also provided a rebuttal report, expressly disagreeing with various opinions offered by Dr. Bustin. D.E. 169-88 (Westgard Rebuttal).

## ARGUMENT

### I.    LEGAL STANDARD

"The Federal Rules of Evidence generally favor the admissibility of expert testimony: the

rejection of expert testimony is the exception rather than the rule." *Mickelsen v. Aramark Sports & Ent. Servs.*, 536 F. Supp. 3d 1238, 1241 (D. Utah 2021) (cleaned up). To be sure, "there is a strong and undeniable preference for admitting *any evidence* having *some potential* for assisting the trier of fact[.]" *United States v. Johnson*, 731 F. App'x 638, 656 (10th Cir. 2018) (cleaned up). (unpublished). The "district court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Mickelson*,  536 F.Supp. at 1241 (cleaned up). As a result, often times, the "appropriate means" of attacking "admissible expert testimony is through vigorous cross-examination and presentation of contrary evidence." *Id*. (cleaned up).

## II.    DR. WESTGARD'S REPORTS SHOULD NOT BE EXCLUDED BASED ON TECHNICAL ARGUMENTS

The Defendants raise baseless, hyper-technical arguments to try to exclude Dr. Westgard. They claim his reports and testimony must be excluded under *Daubert* because they are unsworn, did not include his hourly rate, and failed to include a list of data or facts considered as well as a publication list. These procedural arguments cannot be used to exclude Dr. Westgard.

Under Fed. R. Civ. P. 26(a)(2)(B), which addresses the submission of expert reports, there is no requirement that an expert report be made under penalty of perjury; the report must simply be "prepared and signed by the [expert] witness." Nor is there any caselaw stating that an expert report can be *excluded* under Fed. R. Evid. 702 because it is not under penalty of perjury. To be sure, Defendants try to mislead the Court on this front—the cases they cite in support (*Cent. Tank. Coatings*, *Welch*, and *Michelin*) pertain to whether an unsworn expert reports can be considered as admissible evidence for *purposes of summary judgment*. These cases have nothing to do with the

3

exclusion of expert opinions under *Daubert*. The argument ends here.[1]

Next, Defendants claim Westgard's reports should be excluded because they fail to include a "complete" list of "all facts or data considered" and a list of his publications. To begin, Defendants misquote Dr. Westgard's deposition to make it appear that he failed to include facts or data in his reference list. At his deposition, he confirmed that the 14 documents he referenced were the "facts or data" he considered in forming his opinion. D.E. 169-10 at 16:25-17:3 (Westgard Dep.) (Q: So are there additional documents that were not as important but that – where – that you considered and are not named here. A: I don't believe so). That ends that argument.

Defendants cannot cite a single case where an expert has been excluded under *Daubert* for failing to include a list of publications. The cases they cite show that experts were stricken based on failing to adequately disclose their opinions (not mere technicalities like failing to include a list of publications).[2] In any event, Dr. Westgard's publication list and many of the publications

---

[1]    Moreover, to the extent that Class Plaintiff submits Westgard's reports as evidence in contesting summary judgment, the Court must consider it because Mr. Westgard affirmed under oath in a deposition that he prepared his initial and rebuttal reports and they contain his opinions in this case. *See, e.g.*, D.E. 169-10 at 5:14-16, 16:8-11, 18:7-17 (Westgard Dep.). *See Oh v. Trujillo-Montoya*, 2024 WL 1282417, at *5 (E.D.N.Y. Mar. 25, 2024); *Mueller v. Chugach Fed. Sols., Inc.*, 2014 WL 2891030, at *13 (N.D. Ala. June 25, 2014). Further, Defendants rely on Westgard's deposition and reports in their statement of undisputed facts. *See* D.E. 169-5, 169-11, 169-87. Thus, they have waived any arguments they have against those reports' admissibility.

[2]    *See Pine Tel. Co. v. Alcatel-Lucent USA Inc.*, 2014 WL 318331, at *14 (E.D. Okla.) (excluding expert rebuttal report because expert's opinions were conclusory, and he "did not include the basis and reasons for his opinions, much less the facts or data he considered in forming them."); *Anderson v. Foremost Ins.*, 2022 WL 808051 (D. Utah Mar. 17, 2022) (excluding report because it "fail[ed] to include any statement of opinions that [expert] will express."); *Healy-Petrik v. State Farm Fire & Cas. Co.*, 2022 WL 464220 (D. Utah Feb. 15, 2022) (excluding expert not based on technical issues but because expert report "lack[ed] any opinions" at all); *Chambers v. Fike*, 2014 WL 3565481, at *5-6 (D. Kan. July 18, 2014) (denying request to strike expert reports even when they

themselves are accessible on his publicly available website[3] so Defendants were in no way prejudiced or harmed by the lack of a publication list. The Court should thus reject Defendants' attempt to exclude Dr. Westgard based on these arguments.

## III.    DR. WESTGARD'S IS QUALIFIED TO OPINE ABOUT PCR TESTS

Relying on a narrow view of the scope of this case, Defendants contend that Dr. Westgard is not qualified to offer any opinions about PCR testing or PCR performance evaluations because Dr. Westgard's expertise is in "quantitative" and not "qualitative" tests. But Dr. Westgard has spent his career overseeing and analyzing validation protocols to assess the performance of both qualitative and quantitative clinical tests. That his expertise is broader than just PCR testing does not make him unqualified to express opinions about PCR tests.

So long as an expert "stays within the reasonable confines of his subject area" Tenth Circuit case law establishes that "a lack of specialization does not affect the admissibility of the expert opinion, but only its weight." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969-70 (cleaned up); *see, e.g.*, *Wheeler v. John Deere Co.,* 935 F.2d 1090, 1100 (10th Cir. 1991) (mechanical engineer with expertise in the design of farm equipment permitted to testify on consumer expectations despite lack of experience in consumer sampling); *ClearOne, Inc. v. PathPartner Tech., Inc.*, 2022 WL 1063733, at *16 (D. Utah Apr. 8, 2022) ("Although Balyeat may have no experience developing the specific type of software at issue in this case (i.e., wireless

---

failed to include list of publications); *Connelly v. H.O. Wolding, Inc.*, 2007 WL 2750595, at *2 (W.D. Mo. Sept. 18, 2007) (striking report because it failed to summarize "the substance of the expert's testimony so that defendant could prepare to meet the testimony at trial.").

[3] https://www.westgard.com/about-us/60-jimbio.html

content sharing software) and may not be a "technical coder person," PathPartner has established that Balyeat has significant experience and knowledge regarding the custom software development process and the management of such projects.").

Though Dr. Westgard does not exclusively specialize in PCR tests, he has more than sufficient experience in the analysis and evaluation of diagnostic tests to offer opinions in this case. For example, Dr. Westgard testified that his vast work experience and research covers "validation of methods … broadly to all of the tests in a laboratory" that apply to both quantitative and qualitative tests like PCR tests. D.E. 169-10 at 23:5-25:12, 30:2-7 (Westgard Dep.). Further, while the Director of Quality Management for Clinical Laboratories at University of Wisconsin, Dr. Westgard oversaw various labs that employed PCR testing and provided them "general guidance on validation of methods." *Id.* Dr. Westgard has published articles and publications about validating qualitative tests[4], and various peer-reviewed publications about validating PCR tests generally employ the very rules that Westgard created.[5] In short, he is more than qualified to testify in this case. Any shortcomings that Defendants may perceive in Dr. Westgard's academic or professional background are more properly addressed in cross-examination.

## IV.     DR. WESTGARD IS QUALIFIED TO OPINE ABOUT WHETHER THE MAY 1 PRESS RELEASE IS SCIENTIFICALLY ACCURATE

Defendants contend that Dr. Westgard should not be able to opine that the May 1 Press Release "would have been difficult to understand." The Court should reject this argument.

---

[4]     *See, e.g.*, https://www.westgard.com/lessons/basic-method-validation/879-qualitative-test-clinical-agreement.html (article entitled "How do you validate a qualitative test? Here's an introduction to a tiny little tool you might find useful for virus assay validation.").

[5] *See, e.g.*, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7834634/

First, most importantly, Defendants' experts—Dr. Bustin and Dr. Bard—intend to opine on the very topic they seek to preclude Dr. Westgard from addressing. Both Dr. Bustin and Dr. Bard seek to opine that the May 1 Press Release was not misleading. *See* D.E. 169-5 at 52 (Bustin Report) ("[I]t is my strong opinion that the statements in the May 1 Press Release fairly represented the performance of the Logix Smart Test based on the information available to the Company at the time."); D.E. 169-6 at 14 (Bard Report) ("The way the May 1 Press Release describe the Logix Test's performance was consistent with how manufacturers typically describe diagnostic test performance."). It would be prejudicial to allow Defendants' experts to opine on whether the May 1 Press Release was misleading and preclude Dr. Westgard from doing so. The Court should allow both parties' experts to discuss the May 1 Press Release. *See Hansen Constr. Inc. v. Everest Nat'l Ins.,* 2019 WL 2602510, at *5 (D. Colo. June 25, 2019) (applying the "good for the goose, good for the gander rule" and limiting testimony of both parties' experts in same way); *Milanes v. Am. Fam. Mut. Ins.,* 2016 WL 9735791, at *4 (D. Colo. June 24, 2016) (same).

Second, Dr. Westgard is more than qualified to opine, as he has, that the validation data appended to the press release was not consistent with the conclusion and impression conveyed by the press release. D.E. 169-12 at 25 (Westgard Report). He analyzed the appended validation data and concluded that the Press Release "oversimplified" that data and failed to explain it in a scientifically accurate way. *Id.* at 25.

Finally, Dr. Westgard's opinion on the May 1 Press Release does not violate the "ultimate issue" rule as Defendants suggest. Expert opinions are not objectionable just because they embrace ultimate issues. *See United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015). Here, Dr. Westgard will merely testify that the validation data appended to the Press Release was not

7

accurately summarized by the Press Release thus likely confusing investors. D.E. 169-12 at 25 (Westgard Report).

**V.        DR. WESTGARD'S OPINIONS ARE SUPPORTED BY A RELIABLE METHODOLOGY**

"The law grants a district court … broad latitude when it decides *how* to determine reliability." *Kumho Tire Co., v. Carmichael*, 526 U.S. 137, 142 (emphasis in original). Coupling one's "experience and knowledge with a review of various internal documents" constitutes a reliable methodology. *Harris v. BMW*, 2020 WL 7318087, at *4 (E.D. Tex. Dec. 11, 2020). "A disagreement with the expert's conclusion is not grounds for exclusion [and] vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *North v. Ford Motor Co.*, 505 F. Supp. 2d 1113, 1120 (D. Utah 2007) (cleaned up). Here, Dr. Westgard used his experience and knowledge about validation and performance assessment to reach various conclusions and thus his methodology was reliable. Defendants aim to exclude four opinions rendered by Dr. Westgard on the ground that none are based on a reliable method. In reality, Defendants merely disagree with these opinions, but a disagreement with his conclusion is not a basis to exclude the opinions.

First, Dr. Westgard finds that the underlying data appended to the release was poorly presented and lacked consistency. D.E. 169-12 at 25 (Westgard Report). As a 50-year expert on validation protocols, he should be allowed to present that opinion.

Second, Dr. Westgard concludes that the appended validations lack reliability because they were not peer-reviewed. *Id.* at 20. As an expert in the clinical testing industry, he can reliably testify that peer-reviewed data has more value than non-peer reviewed data. In fact, his opinion that the validations lack reliability because they were not peer-reviewed is supported by the record evidence.

8

Dr. Garcia, the individual who prepared the summary data, testified that it was unusual to append an internal summary of validation data, which was not peer reviewed, to a public press release. D.E. 171-23 at 165:14-166:18 (Garcia Dep.). Co-Diagnostics did not inform Dr. Garcia those summary data would be shared publicly. *Id.* at 187:14-188:20. Had she been asked, she would have told the company that it would "be best not to publish" the reports because they were not peer-reviewed. *Id.* And, when Dr. Hutchins, the head of regulatory, found out the data had been appended to the press release and shared publicly, she asked that the data be removed from Co-Diagnostics' website. Ex. 44 to Class Plaintiff's Appendix (May 13, 2020 email). Dr. Hutchins said that she "kn[ew] for sure that if the FDA sees those not reviewed data [appended to the press release] it'll be a problem." *Id.*

Third, Westgard finds that the validations have less value because of their limited sample size and he points to the Clinical and Laboratory Standards Institute ("CLSI") best practices. Defendants claim that laboratories using PCR tests did not customarily follow CLSI protocols and thus his opinion on sample size should be excluded. This is an issue for cross-examination, not a reason to exclude his opinion about the reliability of the validations.

Finally, Westgard opined that the press release itself should have highlighted the fact that while the validations found 100% sensitivity and specificity, the validations had wide confidence intervals. The confidence intervals were buried in the hyperlinked data but not present on the face of the press release. *See* D.E. 169-10 at 166:15-169:7 (Westgard Dep.) ("I don't see, I guess, on the front pages of this any information of confidence intervals. So for people to understand the reliability of this, that information is missing."). Defendants claim that his opinion is not based on "generally accepted industry standards." Defendants may not like his opinion, but that does not mean the opinion should be excluded.

## **CONCLUSION**

For the reasons above, the Court should deny Defendants' motion to exclude Dr. Westgard.

DATED: May 22, 2024

/s/ *D. Loren Washburn*
WASHBURN LAW GROUP, LLC

MARCUS NEIMAN RASHBAUM & PINEIRO LLP
Michael A. Pineiro

*Attorneys for Class Plaintiff Gelt Trading, Ltd. and All Class Members*

10

**CERTIFICATE OF SERVICE**

I certify that on May 22, 2024 a copy of the foregoing was filed on the CM/ECF system and delivered to all parties of record.

/s/ D. Loren Washburn
D. Loren Washburn