D. Loren Washburn
(#10993) WASHBURN
LAW GROUP
881 Baxter Dr. Ste. 100
South Jordan, UT, 84095
Telephone: (385) 881-
9660
loren@washburnlawgroup.com

Michael A. Pineiro (*pro hac vice*)
MARCUS NEIMAN RASHBAUM & PINEIRO LLP
2 South Biscayne Blvd., Suite 2530
Miami, FL 33131
Telephone: (305) 400-
4268
mpineiro@mnrlawfirm.co
m

*Attorneys for Gelt Trading, Ltd. and the Class*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GELT TRADING, LTD., a Cayman Islands limited company, <br><br> Plaintiff, <br><br><br> v. <br><br> CO-DIAGNOSTICS, INC., a Utah Corporation, DWIGHT EGAN, JAMES NELSON, EUGENE DURENARD, EDWARD MURPHY, RICHARD SERBIN, REED BENSON, BRENT SATTERFIELD, | **CLASS PLAINTIFF'S REPLY IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE THE TESTIMONY OF DEFENDANTS' PROPOSED EXPERT DR. STEPHEN BUSTIN** <br><br> Case No. 2:20-cv-00368-JNP-DBP |

Class Plaintiff Gelt Trading, Ltd. ("Gelt" or "Class Plaintiff"), pursuant to Federal Rules of Evidence 702 and 403 and *Daubert v. Merrell Dow Pharms*, hereby submits its reply in support of its motion to exclude Dr. Bustin's testimony (D.E. 172).

## **INTRODUCTION**

Dr. Bustin's testimony must be excluded under *Daubert*. Without conducting his own independent examination, without evaluating the underlying data, without speaking with the foreign laboratories that reported the failed validation results, without interviewing relevant witnesses, without reviewing deposition transcripts, and, most important, without applying any discernable scientific methodology, Dr. Bustin opines—in conclusory, unsupported fashion—that the prior failed validation results of the Logix Test were due to purported contamination or other unspecified, unknown "non-test factors." Based on that unfounded conclusion, Dr. Bustin opines that the failed results were "legitimately excluded from the May 1 Press Release"—even though he cites no evidence that the Defendants deliberated over this issue when issuing the misleading release.

The best example of the unfounded, speculative nature of Dr. Bustin's testimony is his approach to Defendants' omission of the failed South Africa validation results, which showed serious sensitivity problems. Reviewing just one email that announced these failed results, and with no examination or investigation of any of the underlying test data or application of any methodology, Dr. Bustin goes out on a limb and opines that this failed result was properly omitted merely because it was inconsistent with the Logix Test's other, favorable validation results. In other words, with no actual scientific or evidentiary basis, he wants to tell a jury to disregard the critical failed South Africa validation because it is different than other favorable validation results cited in the release. That is textbook improper expert testimony—it does not rest on any evidentiary or

2

scientific basis and is merely the speculative statement of a well-credentialed expert.

Defendants strenuously try to admit Dr. Bustin's baseless testimony because it is the only way that they can address the glaring problem in their case: that the Logix Test indisputably had several prior failed validation results that render the May 1 Press Release misleading. And the Defendants know that Dr. Bustin's testimony crosses the line and that it is clearly irrelevant, given that there is no testimony or evidence that—consistent with Dr. Bustin's purported opinion—the Defendants omitted the failed results from the release because they believed those results to be inaccurate due to contamination. As a result, Defendants resort to misleadingly trying to minimize the import and substance of his proffered testimony. For example, in their response, they claim that "he merely opines that it is a standard, accepted, and appropriate practice to exclude flawed data, including data due to likely contamination, when reporting performance results." *See* Defs' Resp. (D.E. 176) at 2. In short, they argue, Dr. Bustin testifies about industry standards. That is clearly incorrect. Dr. Bustin goes much further than that, in a highly impermissible fashion.

In sum, the Court should not allow this highly speculative proposed expert testimony, as it is unfounded, irrelevant, and would be highly prejudicial in a key area of the case.

## **ARGUMENT**

**II.**     **Dr. Bustin's Proposed Expert Testimony About the Exclusion of the Unfavorable Test Results Should Be Excluded Because It is Unreliable.**

The Defendants' Opposition confirms that Dr. Bustin's methodology cannot clear *Daubert*'s reliability hurdle. As the proponent of his testimony, Defendants must show that Dr. Bustin used a "reliable methodology," *United States v. Gardner*, 2012 WL 6680395, at *3-4 (D. Utah. Dec. 21, 2012), including by addressing the *Daubert* factors regarding reliability—whether: (1) the expert's method has been or can be tested or falsified; (2) whether the expert's method has been subject to

peer review; (3) whether there are known or potential error rates with the method; and (4) whether the method has "general acceptance" in a given field. *Stratton v. Thompson/Ctr. Arms, Inc.*, 601 F. Supp. 3d 1139, 1153 (D. Utah 2022).

Besides their impermissible *ipse dixit* ("he himself said it") support for Dr. Bustin's opinion on these matters, Defendants do not set forth any actual methodology employed by Dr. Bustin. Nor do they offer any persuasive or objective authority that a scientist can reach a reliable opinion attributing PCR test validation results to contamination or other unspecified "non-test factors" *without*: (1) analyzing or testing the raw data, (2) speaking to anyone who prepared the data or was involved in the validation study, or (3) at, the very least, speaking with those who contemporaneously received data. Indeed, the Defendants *do not offer even one* treatise or scientific journal stating that Dr. Bustin's approach here is well-established in his field and consistent with scientific principles.

Defendants, instead, try to support Dr. Bustin's bald speculation by citing a few cases that they claim permit experts to simply use their "scientific knowledge" to draw conclusions—regardless of the rigor of the underlying scientific investigation or analysis. But predictably, Defendants misrepresent the holdings of these cases. For instance, they claim that *Turner* is "instructive." *See* Resp. at 6. Not true. In *Turner*, a plaintiff who was terminated due to a failed drug test appealed the dismissal of his ADA claim at the summary judgment stage. *Turner v. Phillips 66 Co.*, 791 Fed. App'x 699, 706-707. Turner, the appellant, argued that the court should not have considered an affidavit submitted by the employer's chief medical officer at the summary judgment stage regarding Turner's failed drug test. As an initial matter, *Turner* does not even contain a real, substantive application of *Daubert* because the appellant did "not challenge[] any of the district court's findings" or submit any authority to show the trial court made a mistake and, thus, submitted only "conclusory

arguments" that did not demonstrate an abuse of discretion. *Id.* at 707. More important, in finding that there was no harmless error in admitting the medical officer's affidavit, *Turner* did not rely on just the physician's experience and training, as the Defendants argue. Rather, *Turner* noted that the medical officer reviewed "various documents" including—*unlike Dr. Bustin*—the actual underlying results and data, including the drug test results, "Specimen Result Certificates," certain medical records, and the results of a hair sample test. *Id.* Based on those materials, the medical officer made a series of seemingly uncontroversial statements—*i.e.*, that Turner's over-the-counter medications would not cause a "false positive" drug test. *Turner* is nothing like this case, where the Class Plaintiff has lodged a full-blown *Daubert* challenge and where the proffered expert has not reviewed any of the underlying data or results and, on the basis of little to no information, reaches far-flung, highly controversial opinions regarding the wholesale exclusion of unfavorable test evaluations.

Defendants' other cases fair no better—they again misleadingly quote short excerpts without giving the full context. In *Zerega*, the court did not admit the proposed expert's causation testimony regarding damage to a marine facility just based on his education and practical experience (as the Defendants appear to falsely suggest), but rather because, applying that education and experience, the expert had *personally inspected* and observed the facility, reviewed photographs and diagrams, and spoken with the plaintiffs about the event that had purportedly caused damage to the facility. *See* Resp. at 6; *see also Zerega Ave. Realty Corp. v. Hanover Ins. Co.*, 2006 WL 1343643, at *3 (S.D.N.Y. May 17, 2006). That is nothing like what Dr. Bustin did here.

The citation to *Stratton* is even worse. *See* Resp. at 6; *see also Stratton*, 601 F. Supp. 3d at 1154. That case noted that "observation based on experience and technical knowledge…can be considered reliable if standard in the field." *Id.* That statement pertained to the ballistic expert

testimony of a mechanical engineer in a case involving a rifle that allegedly exploded and injured the plaintiff. But there, unlike here, the expert based his conclusions after he conducted a "multitude of tests and examinations":

> [The expert] measured and photographed the Subject Bullet; scanned the Subject Rifle and Subject Bullet with an electron microscope; observed the propagation of the fracture; sampled the metal and analyzed its composition; measured the thickness of the metal; calculated the yield pressure of the barrel based on generally accepted mathematical equations; and measured the pressure exerted when exemplar rifles were fired.

Thus, the expert in *Stratton* engaged in the very type of extensive investigation or analysis that Dr. Bustin should have done but failed to undertake in reaching his speculative conclusions. Having conducted no tests, examinations, or analysis of the labs or results he seeks to critique, Dr. Bustin did not perform anything resembling the expert analysis at issue in *Stratton*.

Further, importantly, while *Stratton* states that "observation based on experience … can be considered reliable if standard in a field," Defendants have not submitted any authority showing that it is "standard" for a PCR expert to determine that validation results stemmed from contamination by merely looking at one email and doing no other analysis, as Dr. Bustin did here.

***

Dr. Bustin's opinion also lacks reliability based on other problems. Courts should not admit expert testimony when there is "too great an analytical gap between the data and the opinion proffered," or when the expert's testimony ignores key facts and assumes the client's version of the facts. *Dodge v. Cotter*, 328 F.3d 1212, 1222 (10th Cir. 2003); *Conroy v. Vilsack*, 707 F.3d 1163, 1170 (10th Cir. 2013). Both problems "render the analysis unreliable and render the expert testimony inadmissible." *Cotter*, 328 F.3d at 1222. Dr. Bustin's opinion suffers from both flaws.

As noted, Dr. Bustin's opinion regarding the South Africa validation results stems from Dr. Bustin's review of a single email and consists of a few sentences. The email he reviewed noted that "[f]inal results from [a South African] government laboratory" showed that 5 out of 12 Covid-19 positives were missed by the Logix Test and the lab had "concerns" that the Logix Test would miss "very early and later stages of infection." *See* D.E. 171-13. Based on that, Dr. Bustin opines: "[The single e-mail about South Africa] implies that the Logix Smart Test missed true positives past Cq 33. ***Without any information about what was done, this information is useless***. The other laboratory data analysed above clearly show the Logix Smart Test can detect positives well above a Cq of 33 …[T]he fact that this result was so far outside of the test's established confidence interval makes it highly unlikely to be a true measure of the test's performance." D.E. 172-1 at 38 (emphasis added). Thus, Dr. Bustin did not analyze or test the underlying South African validation data—he just reviewed a single, short email announcing results and curtly opined that it could be discarded and disregarded by the jury without any actual scientific analysis. This presents a glaring analytical gap.

Further, his opinion regarding this failed result overlooks key facts and fails to recognize that the South African results aligned with the public criticism aimed at the Logix Test. The South Africa data reflected the very same concerns highlighted by the April 30, 2020, Salt Lake Tribune article— that the Logix Test was not sensitive enough to pick up Covid-19 positive patients with low-viral loads. The post-May 1st evidence suggests the Utah and South African results stemmed from the Logix Test's inability to identify positives from patients with low viral loads. For example, just a day after issuing the May 1 Press Release, Dr. Satterfield wrote to his colleagues that he reviewed data from Nebraska showing that competitor Abbott identified positives that the Logix Test was "unable to detect." D.E. 171-26. He suggested that his employees to work on a new product "offering to

7

compete with Abbott and other *more sensitive players*." *Id.* (emphasis added). And, at least two peer-reviewed studies showed the Logix Test performed the worst of all the kits analyzed in those studies, obtaining only 74.5% sensitivity in an Israeli peer-reviewed study and only 86.7% sensitivity and 66.7% specificity in a Mexican peer-reviewed study. D.E. 169-12 at 23-25.

Dr. Bustin's opinion on the failed Indian NIV results is similarly flawed. In preparing his report, Dr. Bustin did not review Dr. Garcia's deposition or speak with her, even though she, in her capacity as lab director, did not believe the failed result was based on contamination. Dr. Bustin also failed to speak with anyone at the Indian NIV and he ignores key evidence showing the Indian NIV results did not result from contamination, including NIV emails showing that it "tested for contamination" and "it was not present" and that there was a "list of specific types of virus that are cross reacting with [the Logix] test." D.E. 171-11. In short, having failed to grapple or even address key facts about the NIV results, Dr. Bustin should not be allowed to opine on the NIV results.

### III. Dr. Bustin's Proffered Testimony is an Irrelevant and Prejudicial Post-Hoc Rationale for Fraud.

Further, not only is Dr. Bustin's testimony unreliable but it is both irrelevant and highly prejudicial. When the factfinder must determine "why" a defendant pursued a certain course of conduct, an expert should not be allowed to provide an "after-the-fact" or "post hoc" rationale for the defendant's conduct. *Fluor Corp. v. Zurich Am. Ins.,* 2021 WL 3021973, at *15 (E.D. Mo. July 16, 2021) (excluding expert whose testimony offered "post hoc…rationales" because it was "not only unhelpful but may serve to confuse the jury"); *Wanner v. State of KS, Dep't of Admin.*, 1991 WL 151050, at *2 (D. Kan. July 5, 1991) ("Some 'after-the-fact' justification offered by an expert witness might confuse the issues and prompt the jury to place undue emphasis on this evidence.").

Here, Dr. Bustin opines that the failed results were "legitimately excluded from the May 1

Press Release" based on his findings. This testimony attempts to justify the Defendants' knowing omission of the failed results and to contend it was reasonable. However, Dr. Bustin's opinion is *not* based on any actual evidence; there is no evidence that Defendants did what Dr. Bustin suggests— *i.e.*, that they actually deliberated and decided to omit any reference to the failed tests in the May 1 Press Release based on their belief that those failed evaluations stemmed from contamination or were otherwise unreliable. Notably, Dr. Bustin does not cite to any evidence in support of this opinion because there is none. To the contrary, the undisputed record evidence shows that the Defendants buried the negative results and made a conscious decision to only identify and publish favorable evaluations. For example, though Dr. Satterfield was aware of the negative Greek and Indian NIV evaluations (at a minimum) on April 30, 2020, he wrote to Co-Diagnostics' scientists and asked them to put together "multiple papers … the faster the better." D.E. 171-17. He did not ask his lab to provide *all* evaluations performed as of April 30, 2020, and then examine whether or not they should be included in the release based on their reliability. He specifically sought to include in the May 1 Press Release only the favorable results.

Thus, Dr. Bustin, under the guise of expert testimony, is attempting to insert an unfounded, post-hoc justification for a knowing act of fraudulent omission. That is not allowed.

## CONCLUSION

For the above reasons, Dr. Bustin should be precluded from testifying about the unfavorable, foreign evaluations from the NIV, South Africa, and Greece.

DATED: July 17, 2024

/s/ *D. Loren Washburn*
WASHBURN LAW GROUP, LLC

MARCUS NEIMAN RASHBAUM & PINEIRO LLP
Michael A. Pineiro
Brandon Floch

*Attorneys for Certified Class and Class Plaintiff*

## **CERTIFICATE OF SERVICE**

I certify that on July 17, 2024 a copy of the foregoing was filed on the CM/ECF system and

delivered to all parties of record.


/s/ D. Loren Washburn
D. Loren Washburn